Submitted by Counsel:

*Ulysses J. Ware*

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
12/12/2012 05:22:22 P.M. printed



**PRIORITY**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 9 2012

JAMES N. HATTEN, CLERK
By:
    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ULYSSES THOMAS WARE,<br>    PETITIONER,<br><br>      VS.<br><br>WARDEN DARLEEN DREW,<br>BUREAU OF PRISONS,<br>ATLANTA PRISON CAMP.<br>    RESPONDENTS. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |



CASE #: 12-CV- **1:12-CV-4397**

EMERGENCY PETITION FOR IMMEDIATE RELEASE
28 USC §2241: PETITION FOR A WRIT OF HABEAS CORPUS
ACTUAL AND FACTUAL INNOCENCE OF ALL CHARGES

Exhibit to 12/12/2012 Declaration

Pages: 1 – 48

# 5

# SA-73

7ac6wars

1            Excuse me, 71.  Again, to the extent it is just

2    reciting the --

3            THE COURT:  It is just a recital of a charge in an

4    indictment.

5            MR. WARE:  I will not object to it, your Honor.

6            THE COURT:  Next.

7            MR. WARE:  Paragraph 76.

8            THE COURT:  Yes, sir.

9            MR. WARE:  Page 15 where it says July 1, 2004.  That

10   should be September 1, 2004.

11           THE COURT:  That is on line 1 of page 15?

12           MR. WARE:  Yes, sir.

13           THE COURT:  Does the government have any reason to

14   disagree with that?

15           MR. FELDMAN:  We have no reason to disagree, your

16   Honor.

17           THE COURT:  I am physically striking July 1 and

18   inserting September 1.  2004.

19           Next objection.

20           MR. WARE:  Paragraph 77.  First line where it says

21   June 24, 2004, that should be September 28, 2004.

22           THE COURT:  I am physically making that change on line

23   1 of paragraph 77.

24           MR. WARE:  Your Honor, at this time I do make an

25   objection as far as Mr. Feldman's sentencing memorandum at this

8/25/2012

7ac6wars

1   point.

2          THE COURT:  We are just focusing on the presentence

3   report.

4          MR. WARE:  Yes, sir.

5          Those are my objections, your Honor.

6          THE COURT:  Now, do you wish to be heard with respect

7   to the sentencing submissions?

8          MR. WARE:  Yes, sir.

9          THE COURT:  I will hear you.

10          MR. WARE:  Mr. Feldman submitted a sentencing

11   submission to the government, your Honor, dated August 14,

12   2007.

13          THE COURT:  Mr. Ware, we are going to take a short

14   break for the benefit of the Court and the court reporter.  We

15   will reconvene in 10 minutes.

16          (Recess)

17          THE COURT:  Before Mr. Ware proceeds with his

18   argument, I would like to make an inquiry of the government.

19          Mr. Ware has requested a Fatico hearing.  Let me put

20   it to the government this way:  Does the government want to

21   proceed with sentencing and put aside restitution, or does the

22   government want to press for restitution?  If the government

23   wants to press for restitution then I think we should have a

24   Fatico hearing concerning among other things the efficiency of

25   the market.  Because at the end of the day, Mr. Feldman, I

7ac6wars

1    don't think that I can simply take judicial notice that the
2    over-the-counter market is an efficient market. But I am
3    wondering -- and I recognize that the Circuit's decision
4    certainly complicates the government's burden. The game may
5    not be worth the candle. Before I spend the next 45 minutes or
6    goodness knows how long hearing further argument concerning the
7    sentencing, I think it be better for the parties to understand
8    that if the government wants to pursue restitution, they are
9    going to have to come forward and make a showing on their
10   fraud-on-the-market theory.

11        MR. FELDMAN: Your Honor, I would then ask that we
12   continue with sentencing as to the issues other than
13   restitution and we can schedule -- as your Honor knows you have
14   60 days to determine restitution matters, and if we need to
15   come back. At this point, I intend to pursue restitution, your
16   Honor. We think these victims deserve it who we have
17   identified were victims of Mr. Ware's fraud. If that requires
18   someone to say the OTC market was efficient, we will check the
19   appropriate witnesses and see if we can put on people who will
20   give that testimony. We have not done that to this point.

21        It was my view in our sentencing submission and our
22   restitution submission that we explained that the rules from
23   the civil procedure in the civil cases aren't taken as a whole
24   and dropped into criminal cases. Mr. Ware has now talked about
25   this efficient market and the test in the Fifth Circuit in

8/25/2012

7ac6wars

1  restitution where we explained detail of our view of the Rifler
2  decision.

3       THE COURT: Where is the proof in this case of an
4  efficient market in these stocks?

5       MR. FELDMAN: Your Honor --

6       THE COURT: Just point to me the proof of an efficient
7  market and that these stocks that they weren't thinly traded.

8       MR. FELDMAN: Your Honor, one, these may well be
9  thinly traded stocks. Your Honor heard that. These were OTC
10 Bulletin Board stocks. So it is our view that even if those
11 stocks were thinly traded, those people were still victimized
12 by Mr. Ware's press releases. Your Honor doesn't need to
13 determine whether the market was efficient or not based on a
14 thinly traded stock analysis. Your Honor has, and the exhibits
15 we presented at trial shown that Mr. Ware's press releases
16 caused the market to move.

17       Now, in these civil cases that Mr. Ware is pointing to
18 it may be the case because the market is so huge there is a
19 question of whether any little piece of evidence, any little
20 misrepresentation would affect people who buy. We have direct
21 causation here. That direct causation is the charts in
22 evidence that we presented at trial that as Mr. Ware put out
23 the press releases, the market shot up and then Mr. Ware dumped
24 his shares.

25       We don't have the problem that you normally need a

8/25/2012

7ac6wars

1    fraud-on-the-market analysis to prove causation.  We have that

2    causation.  In addition, as to those particular 250 victims who

3    we haven't interviewed each one of them, they are in fact

4    victims and we explained that because of this concept that the

5    causation to the degree it applies can be substituted by the

6    idea that Mr. Ware had generally caused this market to be

7    inflated.

8          If what you are looking for is that this wasn't a

9    thinly traded market, that kind of evidence that Mr. Ware has

10   just pointed out today, we are not going to find it.

11         THE COURT:  If the government is advancing a fraud on

12   the market theory, then the government should be able to prove

13   the elements of a fraud on the market theory.  That is what a

14   hearing would be about.

15         MR. FELDMAN:  Your Honor, if that is your holding and

16   your Honor's version is that a fraud-on-the-market theory

17   means, among other things, that these were not thinly traded

18   stocks, I know we are not going to be able to meet that burden.

19   These were thinly traded stocks.  That is why Mr. Ware's press

20   releases were able to have the effect that they did.

21         So if that is your Honor's holding, I respectfully

22   object to it.  I know I cannot meet it and we should move

23   forward with sentencing.

24         THE COURT:  Have you looked at Mr. Ware's Fifth

25   Circuit case?

8/25/2012

7ac6wars

1    it to purchasers during a particular time not holders. You've

2    done a lot of things. I don't know whether that is enough

3    based upon my reading of Rifler. I really don't want to see

4    this case again so be guided accordingly.

5           MR. FELDMAN: Your Honor, why don't we adjourn the

6    sentencing again. What I would like to do is speak with my

7    supervisors and let your Honor know whether the government is

8    going to pursue a Fatico hearing. I don't want to promise you

9    that we are going to do that.

10          THE COURT: I understand completely. It goes back to

11   the question of whether the government should have sought

12   reargument in the Rifler case. The government blinked there

13   and now I think the government needs to decide not only how it

14   is going to handle this case but how it is going to handle

15   other securities fraud cases when it comes to restitution.

16          If the government is going to proceed with a Fatico,

17   would you like me to simply schedule a further conference in

18   this case at the moment or will you notify me by letter? I can

19   schedule another sentencing date on the assumption that you are

20   not going to proceed with the Fatico or on the assumption that

21   you are going to proceed with the Fatico. Tell me what you

22   think makes the most sense. I don't know. It is too late.

23          MR. FELDMAN: Can we schedule another sentencing date

24   and then I will write the Court and let you know if we think we

25   need a time period for a Fatico hearing with witnesses and a

8/25/2012

7ac6wars

1    longer spot.

2          THE COURT:  How much time do you think you need to

3    come to this decision?

4          MR. FELDMAN:  We can make that decision, I think,

5    within the next 10 days, your Honor.

6          THE COURT:  Mr. Ware, are you still scheduled to go to

7    trial on October 29th?

8          MR. WARE:  As far as I know, sir, yes, sir.

9          THE COURT:  I will put the matter on for sentencing on

10   October 26th at 3:00.  If the government decides that it wishes

11   to go forward with a Fatico hearing, we will use that time to

12   schedule a Fatico hearing because I assume that Mr. Ware will

13   be here anyway.

14         If there is no Fatico hearing, I will sentence

15   Mr. Ware on October 26th.

16         Will that work for the government?

17         MR. FELDMAN:  Yes, your Honor.

18         THE COURT:  Mr. Ware?

19         MR. WARE:  Yes, sir.

20         MR. BECKER:  Yes, your Honor.

21         THE COURT:  Thank you, Mr. Becker.

22         Have I good weekend.

23                          o0o

24

25

8/25/2012

# SA-116

7AQ6WARS

1  defraud the investing public. And of course the services of
2  those unknowing participants, the wire services that published
3  his false press releases, etc., they were all peculiar and
4  necessary to the criminal scheme. So it is against this
5  backdrop that the Court is prepared to sentence the defendant
6  at this time.

7          Mr. Ware, I would ask you to stand.

8          Mr. Ware, it is a sad day because you've disgraced the
9  profession to which you've been admitted to practice and
10 unfortunately you have used that license to practice to commit
11 this wide-ranging fraud that has undermined the financial
12 markets and investors' confidence in the markets. It is my
13 judge that you be sentenced to a term of 60 months of
14 imprisonment on Count One and 97 months of imprisonment on
15 Count Two to run concurrently followed by three years of    .
16 supervised release subject to certain conditions that I am
17 going to impose in a moment. I am going to further impose an
18 order of forfeiture in the amount of $228,388. I am going to
19 impose a 25,000-dollar fine and a 200-dollar special
20 assessment.

21         With respect to restitution about which much ink has
22 been spilled in this proceeding, the Sentencing Guidelines
23 state that "The Court need only make a reasonable estimate of
24 the loss given the available information." This estimate must
25 be legally acceptable. *United States v. Rutkoske*, 2007 WL

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8/25/2012

7AQ6WARS

1    3102187, at *8 (2d Cir. October 25, 2007). In awarding

2    restitution in a criminal securities fraud case, the Court must

3    consider whether the victims could prevail in a civil case

4    against the defendant. *United States v. Reifler*, 446 F.3d 65,

5    137. (2d Cir. 2006). See also Rutkoske 2007 WL 3102187 at *9.

6    However, the Second Circuit through Judge Kearse has noted that

7    sentencing courts should not make determinations of "complex

8    factual issues relate to the cause or amount of the victims

9    losses." *Rifler*, 446 F.3d at 136. Where such determinations

10   are necessary, restitution is not mandatory. *Rifler*.

11              Reliance is an essential element of the civil

12   securities fraud claim. *Dura pharmaceuticals Inc. v. Broudo*,

13   545 U.S. 336 (2005).

14              In an efficient market, reliance can be established

15   using the fraud-on-the-market doctrine. *Teamsters Local 445*

16   *Freight Div. Pension Fund v. Bombardier, Inc.* 2006 WL 2161887

17   at *5 (S.D.N.Y. Aug. 1, 2006) (citing *Hevesi v. Citigroup,*

18   *Inc.*, 366 F.3d 70, 77 (2d Cir. 2004) and *Basic Inc. v.*

19   *Levinson*, 485 U.S. 224, 245 (1988). While the Second Circuit

20   has not enunciated a precise test for establishing market

21   efficiency, courts may considering a variety of factors to make

22   this determination. *Bombardier.* These include:

23              (1) The average weekly trading volume expressed as a

24   percentage of total outstanding shares.

25              (2) The number of securities analysts following and

8/25/2012

7AQ6WARS

1    reporting on the stock.

2         (3)    The extent to which market makers and

3    arbitrageurs trade in the stock.

4         (4)    The company's eligibility to file SEC

5    registration form S-3 as opposed four S-1 or S-2.

6         (5)    The existence of empirical facts showing a cause

7    and effect relationship between unexpected corporate events or

8    financial releases and an immediate response in the stock

9    price.

10         (6)    The company's market capitalization.

11         (7)    The bid-ask spread for stock sales and,

12         (8)    The float, the stock's trading volume without

13    counting insider-owned stock.

14         *Bombardier*, 2006 WL 2161887 at *5.

15         The government has identified a pool of victims on

16    whose behalf it seeks restitution.  The government utilizes a

17    fraud-on-the-market theory to establish reliance by these

18    victims.  Because as the government concedes reliance is not an

19    element of criminal fraud, *United States v. Haddy*, 134 F.3d

20    542, 551 (3d Cir. 1998), this factual analysis would be

21    undertaken for the first time at sentencing and seems to be

22    precisely the type of "complex factual issue' The Second

23    Circuit has suggested sentencing courts should avoid.  *Rifler*,

24    446 F.3d at 136-37.

25         Moreover, the government has failed to address all but

8/25/2012

7AQ6WARS

1    two of the eight efficient market factors. The government also

2    declined the Court's invitation to present evidence on this

3    score. Accordingly, this Court declines to award restitution

4    in this case.

5    Now, Mr. Ware, with respect to your three-year term of

6    supervised release, I am going to impose all of the standard

7    conditions of supervision together with the following special

8    conditions: First, that you provide your Probation officer

9    with access to any requested financial information; second that

10   you not incur new credit cart charges or open additional lines

11   of credit without the approval of your Probation officer unless

12   you are in compliance with the other financial terms of this

13   judgment, including 25,000-dollar fine in the forfeiture.

14   Mr. Ware, this constitutes the sentence of this Court.

15   I advise you that you have the right to appeal the judgment of

16   conviction in this case and I am confident that you are very

17   able standby counsel, Mr. Becker, will advise you further in

18   this regard.

19   Do you have any further applications that I would like

20   to make to the Court?

21   MR. WARE: Yes, sir, your Honor. First of all, I

22   would like to petition the Court to volunteer to surrender.

23   Secondly, I would like to petition the Court for my bond

24   pending appeal. If I need to file that in a formal written

25   application to the Court, if the Court would give me several

8/25/2012

TAQ6WAFS

1   days. I will make that application in writing.

2           THE COURT:  Have a seat.

3           Mr. Feldman, does the government wish to be heard?

4           MR. FELDMAN:  Two matters.

5           One, we included in our initial sentencing submission

6   a draft forfeiture order. I have now changed that to today's

7   date. I am handing up a copy for the Court's consideration.

8   It is in all respects the same as the one included in our

9   submission, but now this conforms with today's date and we

10  request that your Honor sign that.

11          Secondly, the government would move to dismiss --

12          Your Honor, the date I am talking about is on page two

13  where it says at the top where it says the defendant was

14  sentenced on October 26, 2007. That is where we change the

15  date.

16          THE COURT:  Fine.

17          MR. FELDMAN:  We move to dismiss the underlying

18  indictment at this time.

19          Finally, we do oppose the defendant's request for

20  release pending appeal or voluntary surrender. We request that

21  the Court detain Mr. Ware at this time. Mr. ware, as your

22  Honor knows from our submissions; our view he has been involved

23  with a variety of fraud. He has been less than truthful with

24  this Court. Among other things that we pointed out was a

25  supplemental submission regarding Mr. Ware's finances that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8/25/2012

7AQ6WARS

1  is an ability to follow Court orders and directions in that

2  way, he should be detained.

3        THE COURT: First, with respect to the government's

4  application to dismiss outstanding counts in this indictment,

5  the government's application is granted.

6        Second, with respect to Mr. Ware's application to

7  remain on bail pending his appeal, that application is denied.

8        With respect to Mr. Ware's application for voluntary

9  surrender, this Court is going to grant that application.

10  Mr. Ware has known for a long time what the range of penalties

11  were in this case. He has appeared on every single occasion

12  that this Court has required his attendance here. And in the

13  end he has complied with orders that the Court has imposed on

14  him. To the extent that the government believes that Mr. Ware

15  has been untruthful in post-conviction concerning his financial

16  condition, I imagine that the government can charge him with

17  crimes if the government desires to do that. The defendant has

18  another criminal trial starting in this district in a short

19  period of time.

20        Mr. Ware, when is that trial scheduled to commence?

21        MR. WARE: November 13th.

22        THE COURT: Clearly given the defendant's attendance

23  here on each and every occasion when he has been required to

24  appear and the fact that he now needs to defend himself in

25  another criminal proceeding, I am going to fix a date for his

8/25/2012

7AQ6WARS

1  surrender to the Bureau of Prisons in connection with this

2  case.

3      MR. WARE: Your Honor, can I be heard on that issue?

4      THE COURT: Yes.

5      MR. WARE: I would petition the Court to allow me 90

6  days, that is within the Court' purview. And as far as

7  location the facility in the Atlanta, Georgia area.

8      THE COURT: Look, I am going to require you, Mr. Ware,

9  to surrender to a facility to be designated by the Bureau of

10  Prisons by January 10, 2008. I will include in the judgment of

11  conviction a recommendation that you be housed at a facility as

12  close to the metropolitan Atlanta area as possible.

13      Are there any further matters or applications that

14  counsel or Mr. Ware wish to make at this time?

15      Anything from the government?

16      MR. FELDMAN: No, your Honor.

17      MR. WARE: Your Honor, I have one question. Because

18  you denied the bail pending appeal, it is not necessary for me

19  to submit an application, is there?

20      THE COURT: A written application with respect to

21  what?

22      MR. WARE: Bail pending the appeal, it is not

23  necessary to do a written application?

24      THE COURT: Look --

25      MR. BECKER: May I confer with Mr. Ware about that?

7AQ6WARS

1              THE COURT:  Yes.

2              (Pause)

3              MR. WARE:  Nothing further, your Honor.

4              THE COURT:  I am not releasing that bail.  That bail

5    is not being released until after you have surrendered and are

6    in the custody of the Bureau of Prisons.  If the fine has not

7    been paid by that time, the bail is not to be released without

8    the payment of the fine.  The government is to make sure that

9    the bail is not released without the fine and the forfeiture

10   being addressed.

11             This unfortunate and sad matter is concluded.

12                              oOo

13

14

15

16

17

18

19

20

21

22

23

24

25

8/25/2012

| | | |
|---|---|---|
| | | Ulysses Thomas Ware re: 89 MOTION. *Last Minute Request for Fatico Hearing.* (Feldman, Steven) (Entered: 10/15/2007) |
| 10/24/2007 | ❷ 95 | DEFT'S THOMAS WARE RESPONSE IN OPPOSITION TO GOVT'S BRIEF IN FURTHER SUPPORT OF ITS REQUEST FOR RESTITUTION.. as to Ulysses Thomas Ware. (pr) (Entered: 10/30/2007) |
| 10/26/2007 | ❷ 93 | REPLY MEMORANDUM OF LAW by USA as to Ulysses Thomas Ware re: 92 Response filed by Ulysses Thomas Ware *In Further Support of Request for Restitution*. (Attachments: # 1 Exhibit One# 2 Exhibit Two)(Feldman, Steven) (Entered: 10/26/2007) |
| 10/26/2007 | ❷ | Minute Entry for proceedings held before Judge William H. Pauley III:Sentencing held on 10/26/2007 for Ulysses Thomas Ware (1) Count 1s,2s. (jw) (Entered: 11/01/2007) |
| 10/29/2007 | ❷ 94 | MEMO ENDORSEMENT as to Ulysses Thomas Ware.On Deft's Thomas Ware's Application for an Immediate Order for an Extension purs to Federal Rule of Appellate Procedure 4(b)(4) for good cause for an extension of 30 days to file the Notice of Appeal. Application Denied. This court lacks jurisdiction to grant the requested relief. So Ordered.. (Signed by Judge William H. Pauley III on 10/2907)(pr) (Entered: 10/30/2007) |
| 10/30/2007 | ❷ | DISMISSAL OF COUNTS on Government Motion as to Ulysses Thomas Ware (1) Count 1,2. (jw) (Entered: 11/01/2007) |
| 10/30/2007 | ❷ 96 | FILED JUDGMENT IN A CRIMINAL CASE as to Ulysses Thomas Ware (1), Count(s) 1, 2, Underlying indictments and counts are dismissed on the motion of the US; Found guilty to Count(s) 1s, 2s, Imprisonment for a total term of 60 Months on Count 1 and 97 months on count 2 to run concurrently. Supervised release for a term of 3 Years on both counts. The Court makes the following recommendations to the Bureau of Prisons: The Court recommends the deft be designated to a facility closest to the Atlanta, Georgia Metropolitan area. The deft shall surrender for service of sentence at the institution designated by the Bureau of Prisons before 2pm on January 10, 2008. Special Assessment of $200 which is due immediately. Fine of $25,000. The defendant shall pay a fine payable to the Clerk, US District Court in the amount of $25,000. The fine shall be paid by 1/10/08. The defendant shall forfeit to the US any and all property constituting or derived from any proceeds obtained from violations, including but not limited to a sum of money equal to $228,388.00 in US currency, which represents the amount of proceeds obtained as a result of the offense. (Signed by Judge William H. Pauley III on 10/30/07)(jw) (Entered: 11/01/2007) |
| 10/30/2007 | ❷ | Judgment entered in money judgment book as #07,2105 as to Ulysses Thomas Ware in the amount of $ 25,200.00, re: 96 Judgment,. (ml) (Entered: 11/05/2007) |
| 11/01/2007 | ❷ 97 | ORDER OF FORFEITURE as to Ulysses Thomas Ware...., on or about 9/14/06, the dft was charged in a two-count Superseding Indictment.... |

| | | |
|---|---|---|
| | | the Indictment included a forfeiture allegation seeking, pursuant to 18 U.S.C. Sec. 981(a)(1)(c) and 28 U.S.C. Sec. 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commision of the offense, including, but not limited to, a money judgment in the amount of $300,000.00 in the U.S. currency; on or about 4/30/07, the dft was found guilty at a jury trial to all counts of the Indictment; the dft was sentenced on 10/26/07, pursuant to 18 U.S.C. Sec. 981(a)(1)(C) and 28 U.S.C. Sec. 2461, to a forfeiture money judgment in the amount of $228,388.00 in U.S. currency, representing the amount of proceeds obtained as a result of the offense charged in the Indictment. NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT: 1) a money judgment in the amount of $228,388 shall be entered against the dft; 2) this Order of Forfeiture shall be final as to dft Ulysses Thomas Ware....; 3) the Court shall retain jurisdiction to enforce this Order....; and 4) the Clerk shall forward certified copies to AUSA. SO ORDERED. (Signed by Judge William H. Pauley III on 10/31/07) The Clerk's Office Has Mailed Copies.(ja) (Entered: 11/02/2007) |
| 11/01/2007 | ❸ 98 | MEMO ENDORSEMENT on Defendant's Thomas Ware's Second Application for an Immediate Order for an Extension Pursuant to Federal Rule of Appellate Procedure 4(b)(4) for Good Cause for an Extension of 30 Days to file the Notice of Appeal. -- Judge endorsed: Dft's application for a extension of 30 days to file the Notice of Appeal is GRANTED. SO ORDERED. (Signed by Judge William H. Pauley III on 11/1/07)(ja) (Entered: 11/02/2007) |
| 11/05/2007 | ❸ 99 | TRANSCRIPT of Proceedings as to Ulysses Thomas Ware held on 10/12/2007 before Judge William H. Pauley III. (wb) (Entered: 11/05/2007) |
| 11/06/2007 | ❸ 100 | TRANSCRIPT of Proceedings as to Ulysses Thomas Ware held on 11/17/06 before Judge William H. Pauley III. (cd) (Entered: 11/06/2007) |
| 11/09/2007 | ❸ 101 | TRANSCRIPT of Proceedings as to Ulysses Thomas Ware held on 10/26/07 before Judge William H. Pauley III. (cd) (Entered: 11/09/2007) |
| 11/21/2007 | ❸ 102 | NOTICE OF APPEAL by Ulysses Thomas Ware from 96 Judgment. Filing fee $ 455.00, receipt number E 634101. (nd) (Entered: 11/21/2007) |
| 11/21/2007 | ❸ | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Ulysses Thomas Ware to US Court of Appeals re: 102 Notice of Appeal - Final Judgment. (nd) (Entered: 11/21/2007) |
| 11/21/2007 | ❸ | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Ulysses Thomas Ware re: 19 Indictment, 75 MOTION for Hearing *Government's Sentencing Submission.*, 53 Notice of Appeal - Interlocutory, 102 Notice of Appeal - Final Judgment, 39 Endorsed Letter, 96 Judgment,,,, 45 Order,, 54 Order,, 98 Memo Endorsement, 97 Order,,,,, 71 Order on Motion to Produce, Order on Motion for Miscellaneous Relief,, 91 Reply |

| | | |
|---|---|---|
| | | Memorandum of Law in Opposition to Motion, 60 Order, 94 Memo Endorsement, 83 Order, Set Deadlines/Hearings,, 59 Endorsed Letter, 65 Endorsed Letter, 30 Order, 85 Memorandum in Opposition to Motion, 51 Order, 29 Order, Set Deadlines/Hearings,,,, 81 Order, 52 Order, 42 Order, 82 Sentencing Memorandum, 37 Certificate of Service, 36 Proposed Examination of Jurors, 15 MOTION for Discovery *; bill of particulars and to dismiss for lack of venue..*, 67 USCA Mandate - Final Judgment Appeal, 66 Endorsed Letter, Set Deadlines/Hearings,, 93 Reply Memorandum of Law, 57 Endorsed Letter, 38 Certificate of Service, 28 MOTION in Limine., 34 Notice of Attorney Appearance - USA, 78 Order on Motion for Miscellaneous Relief, 35 Order, Set Deadlines/Hearings,,,, 55 Endorsed Letter, Set Deadlines/Hearings,, 86 Sentencing Memorandum, 16 Memorandum in Opposition to Motion, 7 Indictment, 41 Request to Charge, 22 Order, 87 Endorsed Letter, 50 Memorandum in Opposition to Motion, 33 Memorandum in Opposition to Motion, 9 Notice of Attorney Appearance - Defendant were transmitted to the U.S. Court of Appeals. (nd) (Entered: 11/21/2007) |
| 12/17/2007 | 🔾 103 | NOTICE OF APPEAL by USA as to Ulysses Thomas Ware from 96 Judgment. Copies mailed to Ulysses Thomas Ware. (tp) (Entered: 12/19/2007) 07-5670-Cr (XAP) c.f. Id at 21, infra |
| 12/17/2007 | 🔾 | Appeal Remark as to Ulysses Thomas Ware re: 103 Notice of Appeal - Final Judgment. NO FEE, A.U.S.A. (tp) (Entered: 12/19/2007) |
| 12/19/2007 | 🔾 | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Ulysses Thomas Ware to US Court of Appeals re: 103 Notice of Appeal - Final Judgment. (tp) (Entered: 12/19/2007) |
| 12/19/2007 | 🔾 | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Ulysses Thomas Ware re: 103 Notice of Appeal - Final Judgment, 19 Indictment, 75 MOTION for Hearing *Government's Sentencing Submission.*, 53 Notice of Appeal - Interlocutory, 102 Notice of Appeal - Final Judgment, 39 Endorsed Letter, 96 Judgment, 45 Order, 54 Order, 98 Memo Endorsement, 97 Order, 71 Order on Motion to Produce, Order on Motion for Miscellaneous Relief, 91 Reply Memorandum of Law in Opposition to Motion, 60 Order, 94 Memo Endorsement, 83 Order, Set Deadlines/Hearings, 59 Endorsed Letter, 65 Endorsed Letter, 30 Order, 85 Memorandum in Opposition to Motion, 51 Order, 29 Order, Set Deadlines/Hearings, 81 Order, 52 Order, 42 Order, 82 Sentencing Memorandum, 37 Certificate of Service, 36 Proposed Examination of Jurors, 15 MOTION for Discovery *; bill of particulars and to dismiss for lack of venue.*, 67 USCA Mandate - Final Judgment Appeal, 66 Endorsed Letter, Set Deadlines/Hearings,, 93 Reply Memorandum of Law, 57 Endorsed Letter, 38 Certificate of Service, 28 MOTION in Limine., 34 Notice of Attorney Appearance - USA, 78 Order on Motion for Miscellaneous Relief, 35 Order, Set Deadlines/Hearings, 55 Endorsed Letter, Set Deadlines/Hearings, 86 Sentencing Memorandum, 16 Memorandum in Opposition to Motion, 7 Indictment, 41 Request to Charge, 22 Order, 87 Endorsed Letter, 50 Memorandum in Opposition to |

|  |  | Motion, 33 Memorandum in Opposition to Motion, 9 Notice of Attorney Appearance - Defendant were transmitted to the U.S. Court of Appeals. (tp) (Entered: 12/19/2007) |
|---|---|---|
| 10/27/2008 | ❹ 110 | ORDER of USCA (Certified Copy) as to Ulysses Thomas Ware re: 103 Notice of Appeal - Final Judgment, 102 Notice of Appeal - Final Judgment USCA Case Number 007-5222-cr(L) and 07-5670-cr(XAP). Appellant's, pro se, motion for bail is DENIED. Ware's motion to vacate order of September 12, 2008, granting the government leave to file an out of time motion to file its brief is DENIED. Catherine O'Hagan Wolfe, Clerk USCA. Certified: 10/22/2008. (nd) (Entered: 10/27/2008) |
| 04/15/2009 | ❹ 111 | First Supplemental ROA Sent to USCA (Index). Notice that the Supplemental Index to the record on Appeal as to Ulysses Thomas Ware re: 103 Notice of Appeal - Final Judgment USCA Case Number 07-5222, 3 Copies of the index, Certified Supplemental Clerk Certificate and Certified Docket Sheet were transmitted to the U.S. Court of Appeals. (tp) (nd). (Entered: 04/15/2009) |
| 04/15/2009 | ❸ | First Supplemental ROA Sent to USCA (File)(4 VOL). Supplemental Indexed record on Appeal Files as to Ulysses Thomas Ware re: 103 Notice of Appeal - Final Judgment USCA Case Number 07-5222, were transmitted to the U.S. Court of Appeals. (tp) (Entered: 04/15/2009) |
| 04/17/2009 | ❸ | Payment of Fine from Ulysses Thomas Ware in the amount of $50.00. Date Received: 4/17/09. (mn) (Entered: 04/17/2009) |
| 04/20/2009 | ❹ 112 | SEALED DOCUMENT placed in vault. (jri) (Entered: 04/20/2009) |
| 08/20/2009 | ❹ 113 | MANDATE of USCA (certified copy) as to Ulysses Thomas Ware re: 102 Notice of Appeal - Final Judgment, 103 Notice of Appeal - Final Judgment, USCA Case Number 07-5222-cr(L), 07-5670-cr. Ordered, Adjudged and Decreed that the judgment of the District Court is AFFIRMED and the matter is REMANDED for additional proceedings in connection with sentencing in accordance with the opinion of this court. Catherine O'Hagan Wolfe, Clerk USCA. Issued As Mandate: 7/18/2009. (nd) (Entered: 08/20/2009) |
| 08/20/2009 | ❸ | Transmission of USCA Mandate/Order to the District Judge re: 113 USCA Mandate - Final Judgment Appeal,. (nd) (Entered: 08/20/2009) |
| 08/31/2009 | ❹ 114 | ENDORSED LETTER as to Ulysses Thomas Ware, addressed to Judge Pauley, from Nicholas S. Goldin, AUSA, dated 8/26/09, re: On 8/18/09, the Court of Appeals affirmed the conviction of the dft Ulysses Thomas Ware and rejected all of his claims on appeal with one exception: whether there is a factual basis for applying the four-level role enhancement under the Sentencing Guidelines.... The Gov't is reviewing the decision of the Court of Appeals and the record in this Court with respect to the role enhancement issue, and seeks until 9/17/09 to make a submission in this Court addressing the role adjustment issue and how it believes the Court should proceed. -- Judge endorsed: Application granted. SO ORDERED. (Signed by Judge William H. Pauley, III on 8/27/09)(ja) (Entered: 08/31/2009) |



1. The DOJ's Office of the Solicitor General, (the "OSG"), pursuant to 18 USC §3742(b) and 28 CFR §.20(b) notified the Second Circuit that the Executive Branch was not "pursuing a cross-appeal" in 07-5670-cr (CON) -- the Gov't "cross-appeal" of Pauley, J. 10/12/2007 (S. Tr. 30-31) and 10/26/2007 (S. Tr. 73-76) insufficiency of the evidence ruling on the Gov't trial proof on "elements of a fraud on the market theory" (quoting Pauley, J., (S. Tr. at 36 L 11-14, Ex. at 5, supra)).

2. Fed. R. App. Proc. 28.1(c)(2) required the United States (as appellee-cross-appellant) to "file a principal brief in the 'cross-appeal' [07-5670-Cr (XAP)] and must in the **same** brief [the 07-5222-Cr response brief] respond to the [appellant's Mr. Ware's] principal brief [in 07-5222-Cr challenging the sufficiency of the evidence] in the appeal."

3. The Executive Branch waived and forfeited the sufficiency of the evidence issue ruled against it in the District Court's insufficiency rulings: (1) 10/12/2007 (S. Tr. at 30-31, Ex. at 2-5, supra; and (2) 10/26/2007 (S. Tr. 73-76, Ex. at 8-11, supra (the "Inefficiency Rulings").

4. Cf.(Kearse, J.) Love v. City of Syracuse, 670 F.3d 127, 172 (2d Cir. 2010) ("Rule 28.1(c)(2) (principal brief of appellee-cross-appllant [United States in 07-5670-Cr (XAP)] must comply with Rule 29(a)[.]" [Accordingly] [w]e decline to address [or consider any argument on the] [] enlightening challenge[s] to the [issue]."). (emphasis added).

**United States Court of Appeals**

**FOR THE SECOND CIRCUIT**

**Docket Nos. 07-5222-cr(L), 07-5670-cr(CON)**

UNITED STATES OF AMERICA,

*Appellee-Cross-Appellant,*

-v.-

ULYSSES THOMAS WARE, also know as Thomas Ware,

*Defendant-Appellant-Cross-Appellee,*

JEREMY JONES,

*Defendant.*

**BRIEF FOR THE UNITED STATES OF AMERICA**

**Preliminary Statement**

Ulysses Thomas Ware appeals from a judgment of conviction entered on November 1, 2007, in the United States District Court for the Southern District of New York following a nine-day trial before the Honorable

5. Kearse, J. was the purported author of the 08/18/2009 opinion reported at U.S. v. Ware, 577 F.3d 442 (2d Cir. 2009), allegedly finding the Gov't trial evidence sufficient, Id. at 447-51, notwithstanding the indisputable fact the Courtlacked subject matter jurisdiction to review the Executive Branch's "cross-appeal" in 07-5670-CR (XAP), i.e., the OSG failed to file a Rule 28.1(c)(2) appellant brief in 07-5670-Cr (XAP) -- the insufficiency of the Gov't trial evidence on "elements of a fraud on the court theory" was waived and forfeited on 11/07/2008, ergo, an Art. II, §3 unreviewable nonjusticiable prosecutorial political decision. Cf. Baker v. Carr, 369 U.S. 186, 217 (1962); U.S. v. Nixon, 419 U.S. 683, 693-94 (1974)(Executive Branch has absolute discretion regarding criminal prosecutions, and the exercise of the discretion is unreviewable by the court according to'separation of powers' doctrine). Cf. Ex. at 4 L 3-7, and Id. at 5 L 11-14; and Ex. at 21, infra, abandonment of "cross-appeal" by OSG pursuant to federal law 18 USC §3742(b) and 28 CFR §0.20(b).

USAO's 11/07/2008 appeals brief in 07-5222-CR and 07-5670-Cr (XAP).

2

William H. Pauley III, United States District Judge, and a jury.[*]

Indictment S1 05 Cr. 1115 (WHP) (the "Indictment") was filed on September 14, 2006, in two counts. Count One charged Ware and Jeremy Jones with conspiring to commit securities fraud and wire fraud, in violation of Title 18, United States Code, Section 371. Count Two charged Ware and Jones with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

*Superseded by the USAO based of Mr. Wray's retained counsel passing confidential trial strategy to the USAO regarding INZS' CEO' trial testimony that he could testify there was no securities fraud.*

Ware's first trial began on January 15, 2007. Ware, a securities attorney, represented himself *pro se* with the assistance of standby counsel appointed under the Criminal Justice Act. On January 23, 2007, Judge Pauley declared a mistrial at Ware's request after one of the Government's witnesses fell critically ill during a weekend recess in the course of his testimony.

*Jones has since stated that he was not sick but his lawyer and Southwell tricked Pauley into declaring the mistrial.*

*jury was never urged on the sufficiency of the evidence.*

Ware's retrial began on April 16, 2007, with Ware again representing himself with the assistance of standby counsel. On April 30, 2007, the jury found Ware guilty on both counts.

On October 26, 2007, Judge Pauley sentenced Ware to a term of 97 months' imprisonment, to be followed by

*ey, J. (S. Tr. found the gov't trial proof to be insufficient on elements fraud on the market theory. Ex. at 11, supra.*

United States' Art. II, §3 political decision made on 11/7/2008 regarding U.S. v. Ware 05-cr-1115 rulings or

* The Government filed a notice of appeal but is not pursuing a cross-appeal.

10/12/2007 (S.Tr. 30-31) and 10/26/2007 (S.Tr. 73-76)

See Dkt. #99 or Ex. at 1-2 and Ex. at 8-11.

A. The Gov

The evide
mately Decen
Ware orchest
to artificially
for the stock
Investment T
and Service
tems"). Ware
and Service S
to issue fraud
After issuing
stock in thos
profit of mor

The Unite
sion ("SEC")
market for In
thwart the inv
employees w
Ware's fraud
mistake. War
submitted the

The evide
former emplo
and nonprose

the market place concerning the track record and prospects of Investment Technology and its on-line casino operation. Through April 22, 2002, when the Commission issued a trading suspension of Investment Technology stock, Defendants jointly issued over 20 press releases or "analyst reports" under the names RGW, Small Cap and Centennial. The press releases and reports were prepared by, or under the direction of Ware, and approved in advance by Vidmar. The releases and reports were distributed over the business wires and several were posted on a financial website prepared by Ware.

30. The information disseminated into the market place by Defendants was rife with blatant misrepresentations and omissions. The releases and analysts reports, for example, referred to Investment Technology as "a leader in the on-line gaming industry" and touted the company's "experienced management", its "innovative marketing and costs structure," its "established customer base," and its "traffic growth." A February 7, 2002 release by Ware and Centennial Advisers made the outlandish claim that on February 3, 2003 alone, the day of the Super Bowl, Investment Technology accepted over 100,000 wagers, totaling more than $4 million. The releases and reports recommended that readers should purchase Investment Technology stock, stating repeatedly that the stock was undervalued and projecting that the price of Investment Technology shares, then trading at prices ranging from $.017 to $.04, would quickly accelerate to a price of $.40 per share and could realistically be expected to attain a price of $5.00 per share.

31. In reality, these glowing descriptions and rosy predictions had no basis in fact. Far from being the leader in the on-line casino business, the Investment Technology website did not generate a single cent of revenue for Investment Technology. Indeed, during the approximately three-month blitz of reports and press releases touting the company's casino operation and stock, not a single wager was placed on the on-line casino's website. Moreover, no wager has ever been made on the website at any time.

32. The reports produced by Ware, RGW, Small Cap Research, and Centennial presented their recommendations of Investment Technology and its stock in terms that led readers to believe the recommendations were objective and disinterested. None of the reports disclosed that Ware and/or RGW had received 7.5 million Investment Technology shares for their capital-raising and promotional efforts.

33. For the two months prior to the casino promotion, Investment Technology stock had an average daily volume of 194,000 shares. During the three-month campaign, the average daily volume increased to 757,000 shares traded, with volume in excess of 2 or 3 million on several days. The misleading and fraudulent promotional campaign did not have the intended effect of increasing the company's stock price; however, because of the demand generated by the dissemination of positive, but false, information about Investment Technology, Vidmar and Ware, as set forth below, were able to sell collectively approximately 8.8 million shares of Investment Technology stock without causing a complete collapse of the stock's price.

*Not material as a matter of law.*

1

**Draper, Julia D.**

| | |
|---|---|
| From: | Norris, Jeffrey B. |
| Sent: | Wednesday, October 06, 2004 1:18 PM |
| To: | Alexander.Southwell@usdoj.gov |
| Cc: | Draper, Julia D.; Korotash, Stephen J. |
| Subject: | RE: Thomas Ware |

Alexander:

Who raised the 100 mile limit argument? That is a specious argument with no legal basis. I have won that issue with a number of district courts where a person held in civil commitment was trying to avoid extradition. Based on orders from courts in the Northern District of Texas, I have had the Marshals arrest people in California, Washington, Wisconsin, Nevada and probably other jurisdictions that I can't remember. Several of these people have been incarcerated in Texas for more than a year. One person arrest in Washington state for civil contempt is still in prison in Texas after more than 2 years.

Read Federal Rule of Civil Procedure 4.1. It states that an order of civil commitment for a person held in contempt "may be served and enforced in any district." It goes on to state that other orders in contempt proceedings are subject to the 100 mile limit.

Whoever argued this matter didn't do his or her homework. Someone needs to file a motion for reconsideration and have him arrested again!

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth Office
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102
Phone: (817) 978-6452
Fax: (817) 978-4927
E-mail: norrisj@sec.gov

-----Original Message-----
From: Alexander.Southwell@usdoj.gov [mailto:Alexander.Southwell@usdoj.gov]
Sent: Wednesday, October 06, 2004 1:04 PM
To: 'NorrisJ@SEC.GOV'
Subject: RE: Thomas Ware

He likely means when he was arrested on the civil contempt order. He was arrested in Atlanta and released the same day, which was somewhere around the beginning of September. As it turned out, a warrant on a civil contempt order cannot extend beyond 100 miles from the courthouse or in the same state, so he was *improperly arrested* (which he pointed out to Judge Sand, the wily guy that he is). So we are working on a criminal contempt charge ⟸ which (confidentially) should happen within a week or two.

Alex

-----Original Message-----
From: NorrisJ@SEC.GOV [mailto:NorrisJ@SEC.GOV]
Sent: Wednesday, October 06, 2004 12:57 PM
To: Southwell, Alexander
Subject: Thomas Ware

Alexander:

3501 - 72

Have there been any developments in the contempt prosecution of Thomas Ware since the beginning of September? I got a cryptic e-mail from

1

*Norris was aware of the Grand Jury investigation.*

---

**Draper, Julia D.**

| | |
|---|---|
| From: | Norris, Jeffrey B. |
| Sent: | Thursday, August 26, 2004 12:42 PM |
| To: | 'Thomas Ware' |
| Cc: | Draper, Julia D.; Korotash, Stephen J.; Webster, Stephen |
| Subject: | RE: Deposition Steve Webster |

Mr. Ware:

If you wish to seek an order from the Court requiring such an affidavit, do so. We will, however, oppose such an order and seek our attorney's fees and costs. We do not and will not provide declarations from all of our administrators stating that they have no personal knowledge of every fraud we investigate. Furthermore, whether Mr. Webster participated in the investigation or not is irrelevant. He has no personal knowledge of the fraudulent conduct alleged in the Complaint and the knowledge of defendants' conduct he gained in the course of the investigation would appear to be inadmissible as hearsay or otherwise privileged. Moreover, the Commission has never indicated an intent to call Mr. Webster as a witness in the matter.

My incredulity at your effort to take Mr. Webster's deposition is genuine. I again request that you identify the issues upon which you believe Mr. Webster could give relevant and admissible testimony. Otherwise, I can only assume that you are again wasting the time and resources of the Commission and the Court through actions that are frivolous and taken in bad faith.

You will not be receiving the affidavit that you ask for. I have already explained what the Commission's course of action will be should you attempt to schedule Mr. Webster's deposition. I will not reiterate what I have clearly stated before.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth District Office
801 Cherry St., Unit 18
Fort Worth, TX 76102
Tel: (817) 978-6452
Fax: (817) 978-4927

-----Original Message-----
From: Thomas Ware [mailto:rgwinc@mindspring.com]
Sent: Thursday, August 26, 2004 12:27 PM
To: Norris, Jeffrey B.
Subject: Deposition Steve Webster

Mr. Norris in light of your recent comments concerning the direct or indirect knowledge of Steve Webster, if Mr. Webster will prepare an affidavit stating that he has no direct or indirect knowledge of any of the issues in controversy in the current litigation concerning Investment Technology, Inc., et al., and did not participate in the investigation of Investment Technology, Inc., then we will not depose him.

I must receive a fax copy of the affidavit not later than close of business, 5:00 pm EST on Friday August 26, 2004. Otherwise I will have Steve Webster served and the deposition noticed

3501 - 58

---

I was not aware that your sense of irony was so finely honed. Unlike yours (as set forth in the Court's July 29 Order), my papers will be supported by pertinent legal authority, and will not consist of meritless speculation or unsubstantiated conclusions. Please be advised that I have not agreed to accept any legal process beyond that which the law requires. Accordingly, you will have to determine whether your mailing of a notice and subpoena are legally binding. This is my last communication on the subject matter of Mr. Webster's deposition until such time as you receive the motions I have promised.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth District Office
801 Cherry St., Unit 18
Fort Worth, TX 76102
Tel: (817) 978-6452
Fax: (817) 978-4927

-----Original Message-----
From: Thomas Ware [mailto:rgwinc@mindspring.com]
Sent: Tuesday, August 17, 2004 2:59 PM
To: Norris, Jeffrey B.
Subject: Re: Deposition of Steve Webster

I guess in your frivolous motion that you will file, you will not be able to certify that you reviewed the relevant case law as indicated by your last email. I will forward the notice to your attention along with the notice to produce and the Subpoena.

Rosenfeld, Goldman & Ware, Inc.
Thomas Ware
101 Marietta St.
Suite 1070
Atlanta, GA 30303
(404) 522-1202 phone
(404) 522-1447 fax

-----Original Message-----
From: Norris, Jeffrey B.
To: Thomas Ware
Cc: Korotash, Stephen J.; Webster, Stephen; Draper, Julia D.
Sent: Tuesday, August 17, 2004 3:54 PM
Subject: RE: Deposition of Steve Webster

Mr. Ware:

If you are inclined to further undermine your credibility with the Court and incur further sanctions, then, to quote the Duke of Wellington, "publish and be d---ed." I remind you that the Court stated in the July 29 Order that you are perilously close to having a default sanction entered against you. I assure you that if you notice Mr. Webster's deposition--an act that can only be done in bad faith--my Motion for Protective Order will be accompanied by a motion renewing the Commission's request that the Court enter a default judgment against you and Rosenfeld, Goldman and Ware. I will not give you dates on which the Commission will make Mr. Webster available because, as I stated, I can envision no issue upon which he can offer relevant testimony. Your silence confirms my conclusion. I ask only that, should you make the mistake of attempting to schedule Mr. Webster's deposition, you schedule it no earlier than September 1, 2004 ⟸

Jeffrey B. Norris

8/18/2004

14

---

3

**Draper, Julia D.**

| | |
|---|---|
| From: | Norris, Jeffrey B. |
| Sent: | Tuesday, August 31, 2004 12:29 PM |
| To: | Draper, Julia D. |
| Subject: | Investment Tech--Additional Filing |

Yesterday, we received a pleading from Ware stating that we had provided insufficient evidence to support our petition for attorneys' fees. To properly punish him from questioning our judgment, I have prepared a Supplemental Affidavit and revised proposed Order. These demonstrate that the original motion we asked for were too low and I request that new, higher rates for both attorneys' fees and paralegal fees be applied by the Court. I'd like to get this out the door today.

3501 - 61

8/25/2012

4

Draper, Julia D.

From:      Norris, Jeffrey B.
Sent:      Monday, April 18, 2005 2:58 PM
To:        Pennington, Mark R.
Cc:        Draper, Julie D.
Subject:   FW: Supplemental Brief

This is one of my favorite e-mail of all time. Ware sent it to me after I filed the Supplemental Memo in Opposition to his motion to vacate the final judgment. Of course, everything he says is true, but the fact that if's Ware saying it makes it somehow inappropriate.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth Office
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102
Phone: (817) 978-6452
Fax: (817) 978-4927
E-mail: norrisj@sec.gov

From: Thomas Ware [mailto:rgwinc@mindspring.com]
Sent: Tuesday, December 14, 2004 9:21 AM
To: Norris, Jeffrey B.
Subject: Re: Supplemental Brief

Your ignorance of the law appears to be boundless. Had you spent some time in the law library you would have discovered, to your amazement, that your brief in opposition is also frivolous. Your lack of understanding of law is amazing, truly amazing.

Perhaps in the future you will spend less time giving libelous and slanderous interviews to newspaper reporters prematurely, and spend more time in the law library.

Thomas Ware

----- Original Message -----
From: Norris, Jeffrey B.
To: Thomas Ware
Cc: Draper, Julia D. ; Korobash, Stephen J.
Sent: Tuesday, December 14, 2004 9:09 AM
Subject: RE: Supplemental Brief

Mr. Ware:

    Thank you for sharing your opinion, but I have a good faith belief in the merit of my arguments. Moreover, I believe, in fairness, I should have the opportunity to respond to issues that you raised for the first time in your "reply" brief. Accordingly, I will not be withdrawing my Supplemental Brief. I am confident that the Court will agree with me both procedurally and substantively.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth Office

4/18/2005                   9                    3501 - 98

1/11

52              11

Subject: Ware

Good talking to you. Below are my contact details.

Alex

Alexander H. Southwell
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2417
(212) 637-2452 (fax)
Alexander.Southwell@usdoj.gov

---

Draper, Julia D.

From:      Norris, Jeffrey B.
Sent:      Monday, August 30, 2004 9:25 AM
To:        Alexander.Southwell@usdoj.gov
Cc:        Draper, Julie D.
Subject:   RE: Ware

Thanks for the information. I was able to use it in a brief to fix Rule 11 sanctions against Ware. As you can see, he is still misbehaving in Nevada. I now have additional motions for default pending on a couple of different grounds. What's happening in New York?

Rule11Response.do
c

-----Original Message-----
From: Alexander.Southwell@usdoj.gov
[mailto:Alexander.Southwell@usdoj.gov]
Sent: Monday, August 18, 2004 9:44 AM
To: NorrisJ@SEC.GOV
Subject: RE: Ware

Cas is Alpha Capital v. Group Management, 02 Civ. 2219 (LBS) and the order of referral is dated 12/22/03. I will fax you a copy.

Alex

-----Original Message-----
From: NorrisJ@SEC.GOV [mailto:NorrisJ@SEC.GOV]
Sent: Monday, August 16, 2004 10:21 AM
To: Southwell, Alexander
Subject: RE: Ware

Alexander:

    Can you provide me with the name and/or case number of the matter in which the District Judge has requested a prosecution of Ware for criminal contempt? I would like to cite the case or even attach the order in my petition to fix the Rule 11 sanctions against Ware in the Nevada District Court. Thanks.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth District Office
801 Cherry St., Unit 18
Fort Worth, TX 76102
Tel: (817) 978-6452
Fax: (817) 978-4927

-----Original Message-----
From: Alexander.Southwell@usdoj.gov
[mailto:Alexander.Southwell@usdoj.gov]
Sent: Thursday, August 12, 2004 2:53 PM
To: norrisj@sec.gov

6/11            10

3501 - 60
21

54              12

Ware referring to "the events of Sept. 1, 2004." Do you have any idea what he might be referring to?

Jeffrey B. Norris

Trial Counsel

United States Securities and Exchange Commission

Fort Worth Office

Burnett Plaza, Suite 1900

801 Cherry St., Unit #18

Fort Worth, TX 76102

Phone:  (817) 978-6452

Fax:  (817) 978-4927

E-mail:  norrisj@sec.gov <mailto:norrisj@sec.gov>

## Draper, Julia D.

**From:** Norris, Jeffrey B.
**Sent:** Tuesday, August 31, 2004 12:29 PM
**To:** Draper, Julia D.
**Subject:** Investment Tech--Additional Filing

Yesterday, we received a pleading from Ware stating that we had provided insufficient evidence to support our petition for attorneys' fees. To properly punish him from questioning our judgment, I have prepared a Supplemental Affidavit and revised proposed Order. These demonstrate that the original rates we asked for were too low and request that new, higher rates for both attorneys' fees and paralegal fees be applied by the Court. I'd like to get this out the door today.

3501 - 61

8/25/2012

⌣Stewart, Angelia L.

**REDACTED**

**From:** Norris, Jeffrey B.
**Sent:** Wednesday, July 27, 2005 4:19 PM
**To:** Pennington, Mark R.
**Cc:** Korotash, Stephen J.; Stewart, Angelia L.
**Subject:** RE: Hear anything good from Mr. Ware?

I have now received Ware's offer of settlement "pending appeal to the Ninth Circuit Court of Appeals." He has offered us $1,00C plus an assignment of periodic payments that he will receive as a result of a "commitment for the sale of one of [his] screenplays This will be for "full satisfaction of the judgment due pending appeal." The amounts are to be escrowed while the appeal is ...ing and disbursed if the Commission prevails. Do you feel the pressure?

As tempting as this offer is, and as anxious as I am to become part of the Hollywood scene and rub elbows with Alec Baldwin, I'i afraid I will have to decline the offer at this time. Ware has never provided us with satisfactory evidence of his financial conditior which has been the entire point of our dialogue over the past three months. Accordingly, a compromise is premature.

*Jeffrey B. Norris*
Trial Counsel
United States *Securities and Exchange Commission*
Fort Worth Office
Burnett *Plaza, Suite 1900*
801 Cherry St., *Unit #18*
Fort Worth, *TX 76102*
Phone: (817) 978-*6452*
Fax: (817) 978-*4927*
E-*mail:* norrisj@sec.gov

**From:** Pennington, Mark R.
**Sent:** Wednesday, July 27, 2005 1:15 PM
**To:** Norris, Jeffrey B.
**Subject:** RE: Hear anything good from Mr. Ware?

So far as you know, is the sole issue for this hearing whether he can pay? And do you think there is any chance he could?

i....   ⌐: Norris, Jeffrey B.
Sent: Wednesday, July 27, 2005 2:14 PM

16

**3501 - 119**

8/25/2012

f   his medical condition. He has refused to provide me with any proof of this health problem, which I seriously suspect is just
...ler file. Unless this situation changes, on August 12, the Court will throw his sorry ass in prison. He can write his brief from
there, like Dostoevsky.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth Office
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102
Phone: (817) 978-6453
Fax: (817) 978-4927
E-mail: norrisj@sec.gov

From: Pennington, Mark R.
Sent: Monday, July 25, 2005 1:51 PM
To: Stillman, Jacob H.; Norris, Jeffrey B.
Subject: Ware to seek additional extension of time in Investor Tech case

He's going to ask for 60 more days. I'm not sure the 9th Cir. will give it to him, since he earlier took
the automatic two weeks. I told him we didn't object, which will probably irritate Jeff. My
experience is that the 9th Cir. is extraordinarily free with its grants of time, so an objection would have
served no purpose. I promise to object to the next one. I'll also go forward on the assumption that
he's not going to get the extension til I hear otherwise.

---

Stewart, Angella L.

From: Norris, Jeffrey B.
Sent: Friday, September 30, 2005 8:49 AM
To: Fairchild, Rebecca R.
Cc: Korotash, Stephen J.; Pennington, Mark R.; Stewart, Angella L.
Subject: Thomas Ware

Rebe:

You may have seen that Ware filed an Emergency Exparte Motion in the District Court, seeking a stay of all
proceedings pending an investigation of my misconduct. He does us the favor of attaching the recent criminal charges
against him to his motion. In light of the Judge's knowledge that Ware is delusional and the Court's history of taking
it's time to rule on motions, I'm not concerned about responding today. This can wait until Angella comes back on
Monday.

As far as I can see, the Motion we received would have no impact on the actions of the Appeals Court.
However, please fax a copy to Mark Pennington. Thanks.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth Office
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102
Phone: (817) 978-6453
Fax: (817) 978-4927
E-mail: norrisj@sec.gov

---

---

Draper, Julia D.

From: Norris, Jeffrey B.
Sent: Tuesday, August 24, 2004 11:23 AM
To: Draper, Julia D.
Cc: Fairchild, Rebecca R.; Korotash, Stephen J.
Subject: Blistering Over Atlanta

It's time to bury Ware and Co. It has been almost a month since the frivolous Motion to Dismiss was denied and
Ware was required to retain local counsel. Defendants have failed to file an answer following the denial of the Motion to
Dismiss and no local counsel has been retained. We are going to file a standard default motion as to all defendants. We
will file a separate motion to default the corporate defendants on the grounds that they do not have local counsel and
cannot represent themselves.

---

Draper, Julia D.

From: Norris, Jeffrey B.
Sent: Tuesday, December 14, 2004 2:50 PM
To: Korotash, Stephen J.; Draper, Julia D.; Martin, John C.; Hannan, Robert C.
Subject: RE: Supplemental Brief

I guess I get the last laugh for today. The Commission instituted the 102(e) against Ware this afternoon.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth Office
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102
Phone: (817) 978-6453
Fax: (817) 978-4927
E-mail: norrisj@sec.gov

From: Norris, Jeffrey B.
Sent: Tuesday, December 14, 2004 9:23 AM
To: Korotash, Stephen J.; Draper, Julia D.; Martin, John C.; Barasch, Spencer C.
Subject: FW: Supplemental Brief

If I had any feelings, they would be hurt!!!

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth Office
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102
Phone: (817) 978-6453
Fax: (817) 978-4927
E-mail: norrisj@sec.gov

From: Thomas Ware [mailto:rgwinc@mindspring.com]
Sent: Tuesday, December 14, 2004 9:21 AM
To: Norris, Jeffrey B.
Subject: Re: Supplemental Brief

Your ignorance of the law appears to be boundless. Had you spent some time in the law library you would have
discovered, to your amazement, that your brief in opposition is also frivolous. Your lack of understanding of law is
amazing, truly amazing.

Perhaps in the future you will spend less time giving libelous and slanderous interviews to newspaper reporters
prematurely, and spend more time in the law library.

Thomas Ware

----- Original Message -----
From: Norris, Jeffrey B.
To: Thomas Ware
Cc: Draper, Julia D.; Korotash, Stephen J.

8/25/2011-23

SEC lawyer Norris emails between he and AUSA Alexander H. Southwell who on
stated in open court the emails did not exist (cf. Ex. at 5).

PP29

## Draper, Julia D.

**From:** Norris, Jeffrey B.
**Sent:** Monday, August 30, 2004 9:25 AM
**To:** 'Alexander.Southwell@usdoj.gov'
**Cc:** Draper, Julia D.
**Subject:** RE: Ware

Thanks for the information. I was able to use it in a brief to fix Rule 11 sanctions against Ware. As you can see, he is still misbehaving in Nevada. I now have additional motions for default pending on a couple of different grounds. What's happening in New York?



Rule11Response.do
c

——Original Message——
From: Alexander.Southwell@usdoj.gov
[mailto:Alexander.Southwell@usdoj.gov]
Sent: Monday, August 16, 2004 9:44 AM
To: 'NorrisJ@SEC.GOV'
Subject: RE: Ware

Cas is Alpha Capital v. Group Management, 02 Civ. 2219 (LBS) and the order of referral is dated 12/22/03. I will fax you a copy.

Alex

——Original Message——
From: NorrisJ@SEC.GOV [mailto:NorrisJ@SEC.GOV]
Sent: Monday, August 16, 2004 10:21 AM
To: Southwell, Alexander
Subject: RE: Ware

Alexander:

Can you provide me with the name and/or case number of the matter in which the District Judge has requested a prosecution of Ware for criminal contempt? I would like to cite the case or even attach the order in my petition to fix the Rule 11 sanctions against Ware in the Nevada District Court. Thanks.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth District Office
801 Cherry St., Unit 18
Fort Worth, TX 76102
Tel: (817) 978-6452
Fax: (817) 978-4927

——Original Message——
From: Alexander.Southwell@usdoj.gov
[mailto:Alexander.Southwell@usdoj.gov]
Sent: Thursday, August 12, 2004 2:53 PM
To: 'norrisj@sec.gov'

6/11

1

10  8/25/2012

3501 - 60
21
8/15/2012

EXHIBIT #4

PP.32
4

## Draper, Julia D.

| `rom: | Norris, Jeffrey B. |
| ~~ent:~~ | Wednesday, October 06, 2004 1:18 PM |
| To: | → Alexander.Southwell@usdoj.gov ← |
| Cc: | Draper, Julia D.; Korotash, Stephen J. |
| Subject: | RE: Thomas Ware |

Alexander:

Who raised the 100 mile limit argument? That is a specious argument with no legal basis. I have won that issue with a number of district courts where a person held in contempt was trying to avoid extradition. Based on orders from courts in the Northern District of Texas, I have had the Marshals arrest people in California, Washington, Wisconsin, Nevada and probably other jurisdictions that I can't remember. Several of these people have been incarcerated in Texas for more than a year. One person arrest in Washington state for civil contempt is still in prison in Texas after more than 2 years.

Read Federal Rule of Civil Procedure 4.1. It states that an order of civil commitment for a person held in contempt "may be served and enforced in any district." It goes on to state that other orders in contempt proceedings are subject to the 100 mile limit.

Whoever argued this matter didn't do his or her homework. Someone needs to file a motion for reconsideration and have him arrested again!

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth Office
Burnett Plaza, Suite 1900
01 Cherry St., Unit #18
Fort Worth, TX 76102
Phone: (817) 978-6452
Fax: (817) 978-4927
E-mail: norrisj@sec.gov

-----Original Message-----
From: Alexander.Southwell@usdoj.gov [mailto:Alexander.Southwell@usdoj.gov]
Sent: Wednesday, October 06, 2004 1:04 PM
To: 'NorrisJ@SEC.GOV'
Subject: RE: Thomas Ware

He likely means when he was arrested on the civl contempt order. He was arrested in Atlanta and released the same day, which was somewhere around the beginning of September. As it turned out, a warrant on a civil contempt order cannot extend beyond 100 miles from the courthouse or in the same state, so he was improperly arrested (which he pointed out to Judge Sand, the wily guy that he is). So we are working on a criminal contempt charge which (confidentially) should happen within a week or two.

Alex

-----Original Message-----
From: NorrisJ@SEC.GOV [mailto:NorrisJ@SEC.GOV]
Sent: Wednesday, October 06, 2004 12:57 PM
To: Southwell, Alexander
Subject: Thomas Ware

Alexander:

Have there been any developments in the contempt prosecution of Thomas Ware since the beginning of September? I got a cryptic e-mail from

1

3501 - 72

Norris8/25620,2... of the Grand Jung 8/15/2012.

- Note that Norris suggested "September 1, 2004" as the date to depose Webster, the day the SEC and USAO conspired and colluded to have Mr. Ware illegally arrested in Atlanta, GA. (Cf. Ex. at 2 for AUSA Southwell's email to Norris, email which supposedly did not exist.

Pp.33

Page 2 of 5

I was not aware that your sense of irony was so finely honed. Unlike yours (as set forth in the Court's July 29 Order), my papers will be supported by pertinent legal authority, and will not consist of meritless speculation or unsubstantiated conclusions. Please be advised that I have not agreed to accept any legal process beyond that which the law requires. Accordingly, you will have to determine whether your mailing of a notice and subpoena are legally binding. This is my last communication on the subject matter of Mr. Webster's deposition until such time as you receive the motions I have promised.

*Jeffrey B. Norris*
*Trial Counsel*
*United States Securities and Exchange Commission*
*Fort Worth District Office*
*801 Cherry St., Unit 18*
*Fort Worth, TX 76102*
*Tel: (817) 978-6452*
*Fax: (817) 978-4927*

——Original Message——
**From:** Thomas Ware [mailto:rgwinc@mindspring.com]
**Sent:** Tuesday, August 17, 2004 2:59 PM
**To:** Norris, Jeffrey B.
**Subject:** Re: Deposition of Steve Webster

I guess in your frivolous motion that you will file, you will not be able to certify that you reviewed the relevant case law as indicated by your last email. I will forward the notice to your attention along with the notice to produce and the Subpoena.

Rosenfeld, Goldman & Ware, Inc.
Thomas Ware
101 Marietta St.
Suite 1070
Atlanta, GA 30303
(404) 522-1202 phone
(404) 522-1447 fax

—— Original Message ——
**From:** Norris, Jeffrey B.
**To:** 'Thomas Ware'
**Cc:** Korotash, Stephen J. ; Webster, Stephen ; Draper, Julia D.
**Sent:** Tuesday, August 17, 2004 3:54 PM
**Subject:** RE: Deposition of Steve Webster

Mr. Ware:

If you are inclined to further undermine your credibility with the Court and incur further sanctions, then, to quote the Duke of Wellington, "publish and be d—ed." I remind you that the Court stated in the July 29 Order that you are perilously close to having a default sanction entered against you. I assure you that if you notice Mr. Webster's deposition—an act that can only be done in bad faith—my Motion for Protective Order will be accompanied by a motion renewing the Commission's request that the Court enter a default judgment against you and Rosenfeld, Goldman and Ware. I will not give you dates on which the Commission will make Mr. Webster available because, as I stated, I can envision no issue upon which he can offer relevant testimony. Your silence confirms my conclusion. I ask only that, should you make the mistake of attempting to schedule Mr. Webster's deposition, you schedule it no earlier than September 1, 2004.

*Jeffrey B. Norris*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
UNITED STATES OF AMERICA          :          05 Cr. 1115 (WHP)
                                  :
          -against-               :          ORDER
                                  :
ULYSSES THOMAS WARE,              :
                                  :
               Defendants.        :
------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 25
DATE FILED:   1-8-07

WILLIAM H. PAULEY III, District Judge:

By letter applications dated December 1, 2006 and December 19, 2006, Ulysses

Thomas Ware ("Defendant" or "Ware") sought an adjournment of the January 16, 2007 trial date

and a suppression hearing. This Court denied those applications in separate orders on December

11, 2006 and December 22, 2006 respectively.

On November 28, 2006, the Government filed an in limine motion, seeking to

preclude Defendant from offering at trial any evidence of collusion between the Securities and

Exchange Commission ("SEC") and the United States Attorney's Office ("USAO") ("November

28 motion"). On December 28, 2006, the Government filed another in limine motion, seeking to

preclude Defendant from cross-examining certain Government witness regarding collateral

matters ("December 28 motion"). On January 2, 2007, Defendant filed a motion, seeking (a) an

adjournment of the January 16, 2007 trial date; (b) a suppression hearing concerning all

documents and information obtained from the SEC; (c) a log prepared by the SEC and the USAO

of all documents, telephone calls and email correspondence between the two; and (d) other

related relief ("January 2 motion"). Finally, by letter dated January 8, 2007, Defendant seeks

1

eight different orders requiring the Government to provide information, emails and logs to

Defendant immediately. The relief sought on January 8, 2007 largely overlaps with relief

requested in Defendant's January 2 motion or at argument on January 5, 2007. In turn,

Defendant's January 2 application essentially reiterates his earlier requests for relief on

December 1, 2006 and December 19, 2006.

A.      Defendant's January 2 Motion

Defendant's January 2 motion revolves around alleged improper collusion

between the SEC and the USAO. At the January 5, 2007 hearing, Ware clarified his argument:

> Any documentation, communication subsequent to December 3, 2003 during the
> ongoing civil litigation in Nevada is subject to suppression because notice was not
> given by the SEC nor Mr. Southwell's office that an imminent criminal
> investigation was ongoing pertaining to the same conduct as was ongoing in the
> civil litigation. That information is subject to suppression, your Honor, because
> notice was not given to the civil litigants in the civil action in Nevada.

(Transcript of Oral Argument, dated Jan. 5, 2007 ("Oral Arg. Tr.") pg. 29.)

Assistant United States Attorney ("AUSA") Alexander Southwell responded "that

this case did not come about as a referral from the SEC, and to [his] knowledge, Mr. Norris [trial

counsel for the SEC] never contacted the [USAO's] office or the FBI about this case prior to

when the FBI contacted Mr. Norris sometime after December 2003." (Oral Arg. Tr. pg. 30.) As

for Ware's assertions of collusion between the USAO and the SEC, AUSA Southwell

represented that none of the correspondence between those agencies concerned "what should

happen in the civil litigation, [what] depositions should be taken or anything of that ilk. It was

all in the nature primarily of Mr. Norris reporting on what had happened in the proceeding,

mostly public events and providing documents." (Oral Arg. Tr. pgs. 29-30.) There is nothing in

2

the record to support Ware's arguments that the USAO exerted any control whatsoever over the SEC's civil investigation or enforcement action. Finally, there is no authority for Ware's proposition that the Government was required to give him notice that a criminal investigation or proceeding was imminent. (Oral Arg. Tr. pg. 30.)

This Court finds that Defendant has offered only conclusory allegations and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ speculation of collusion between the USAO and the SEC. While Defendant argues that those ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ agencies were in contact "shortly after" July 2003, he mischaracterizes the Jeffrey Norris affidavit dated October 3, 2006. The Government represents that the SEC civil investigation started in June or July of 2002 while the USAO's criminal investigation did not begin until after a referral from District Judge Sand in December 2003. (See Transcript of Hearing on May 19, 2006, pgs. 6-7.) Defendant does not refute the Government's time line. Even if there were a temporal overlap between the civil and criminal investigations, information sharing is not subject to suppression when the investigations are independently motivated. See United States v. Teyibo, 877 F. Supp 846 (SDNY 1995). Accordingly, Defendant has provided no factual basis for a suppression hearing.

B.    Defendant's January 8 Application

In his January 8 Application, Defendant's requests for orders requiring the Government to disclose communications between the SEC and the USAO are denied. For the reasons set forth above, Defendant's conspiracy theory is rejected because Defendant has failed to proffer any credible evidence supporting it.

C.    The Government's November 28 Motion

The lack of factual support for Ware's allegations also forms the basis for the

3

Government's motion to preclude evidence of alleged collusion between the SEC and the USAO.
For the reasons discussed above, this Court finds that Ware is precluded from alleging collusion
between the agencies.

In its November 28 motion, the Government further moves to introduce evidence
of Ware's obstructive conduct in the course of the SEC investigation. Specifically, the
Government seeks to introduce the affidavit of Myron Williams submitted by Ware to the SEC.
(See Transcript of January 3, 2007 at pgs. 10-11.) The Government argues that this evidence is
directly admissible because it involves the same illegal activity alleged in this action. Although
this evidence may be admissible on this basis, the Government must first demonstrate that the
allegedly obstructive conduct was intended to prevent detection of the criminal fraud for which
he was indicted.

The Government argues alternatively that the evidence is admissible as 404(b)
evidence on the issues of knowledge and intent. If Ware raises lack of knowledge or intent as a
defense, then such evidence is admissible. See United States v. Mickens, 926 F.2d 1323, 1328
(2d Cir. 1989) (providing a three part test to determine admissibility of "other crimes" under
Rule 404(b)).

## D. The Government's December 28 Motion

The Government moves to preclude Defendant from cross-examining
Government witness Jeremy Jones concerning 1997 and 1999 misdemeanor convictions for
deposit account fraud, which is commonly known as the issuance of a bad check. The
Government's argument under Rule 609 lacks merit. While the Government may claim during
direct examination that Jones' criminal convictions resulted from an "unintentional oversight",

4

Jones' convictions concerning check fraud bear on his credibility. Accordingly, Defendant may
question Jones about his 1997 and 1999 convictions.

The Government also seeks to preclude cross examination of Carlton Epps
concerning a 1997 arrest for deposit account fraud and a 2002 misdemeanor conviction for
driving with a suspended license. The 1997 arrest is not an appropriate basis for inquiry. The
unfair prejudice outweighs any probative value. Moreover, the misdemeanor conviction for
driving with a suspended license is irrelevant and is precluded under Rule 609.

Finally, the Government seeks to admit Certified Public Documents as self-
authenticating under Rule 902(4) and as business records under Rule 803(6). If these documents
are indeed certified public records or business records maintained in the normal course, they are
admissible provided that they are relevant.

The balance of the parties' respective applications are denied. A final pre-trial
conference is scheduled for January 12, 2007 at 2:00 p.m.

Dated: January 8, 2007
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

5

8/25/2012

8/15/2012

Compare the USAO's witness (FBI analyst's chart testimony with the supervening
case <u>U.S. v. Ferguson6WARS</u>  , 653 F.3d 61 (2d. Cir. 2011) (rejecting chart evidence
as "overerly prejudicial" and "violated the substantial rights of the defendants."
Id. at 75.

51

1    more pertinent points that he addressed.

2             I think Mr. Feldman's opening statement he said

3    alleged which is correct, your Honor, there is no information

4    at trial or here for restitution, that any press release caused

5    any stock -- INZS or SVSY -- to raise or to fall.

6             Now, Mr. Feldman wants to say the government brought

7    forth charts, Government Exhibit 92, 93, etc., during the trial

**Ferguson, rejected
chart evidence
to establish
materiality in
an efficient
market.**

8    that "alledge that a press release caused INZS, SVSY stock to

9    rise." But I want to take you to one of the government's

10   witnesses in that case, your Honor. That was Maria Font. She

11   testified on behalf of the government and under

12   cross-examination questions put to Ms. Font:

13   "Q. Is it your testimony that you do not know whether or not

14   press releases caused the volume to increase or decrease?

15   "A. I have no idea whether press releases did.

16   "Q. And is it also your testimony you have no way to determine

**Illegal evidence
due process
violation**

17   whether or not press releases were read by anyone or anyone

18   person, is that correct?

19   "A. I can't determine who read them.

20   "Q. Or if they were read at all, is that correct?

21   "A. I can't determine if they were read."

22             So you have the only government witness that testified

23   regarding government exhibits, the charts 92, etc., Ms. Font,

24   the FBI agent testify that she had no idea of whether or not

25   the press leases caused the stock to go up or down.

The Gov't chart evidence (GX-92, GX-93 series), per <u>Ferguson</u>, supra "violated the
substantial rights" of Mr. Ware ... the USAO's charts were "overly prejudicial" and
violated Mr. Ware's due process rights.

**8/25/2012**

7AQ6WARS

1    Now, Mr. Feldman marchs in here saying they brought

2    forth all these witnesses and evidence showing the stock went

3    up or the stock went down. That's it, your Honor. We had that

4    one witness Ms. Font. You just heard the testimony. She is

5    the only witness that testified to those government exhibits.

6    So if Ms. Font didn't testify to it, there was no testimony on

7    it at trial. So the government clearly has not established

8    that there was any causation between a press release and a rise

9    or a fall in the stock of the SVSY or INZS.

10    Moreover, your Honor, I would like to take to you to

11    the case of *In Re: Polymedical Corp.*, SEC litigation, 432 F.3d

12    1, 19 (1st Cir. 2005).

13    Your Honor, this case is very similar to that case

14    that *In Re: Polymedical* was a case that there was allegations

15    stock prices were raised or declined based upon press releases.

16    The court in that particular case said, If you are going to

17    utilize a fraud-on-the-market theory, you have to do a

18    scientific analysis to determine whether or not there was

19    causation between a news events, press releases, analyst

20    reports, newspaper articles, etc., that have a causal

21    connection between the rise or falling of a particular stock.

22    I will just read to you what the Court said in that

23    case, your Honor. It said, All you did was went and picked the

24    largest stock price drop and said oh, gee, that just shows it

25    is informational efficient. You picked five days out of about

7AQ6WARS

1    160 days. What you should do is look at all 160 trading days
2    and do a scientific study to see if there is a difference
3    between the news date and the non-news days. And if you would
4    have done that, you would have found that there wasn't any
5    difference between them."

6         So in case, your Honor, there was no scientific
7    analysis done by anybody. Ms. Font testified, which I just
8    said what her testimony was, which is the only witness the
9    government put forth that testified to those government
10   exhibits, she has no idea of what any of those press releases
11   caused the stock do, whether go up or down. So number one,
12   there is no causation between a news event, press release,
13   rising and falling of a stock price of INZS or SVSY.

14        Moreover, your Honor, those two stocks trade on what
15   is called OTC Bulletin Board. An OTC Bulletin Board is not a
16   listed market according to New York Stock Exchange, NASDAQ,
17   American Stock Exchange. The NASDAQ is a market-maker based
18   type of transactional type of market sort to speak. Before any
19   investor can purchase any stock, there are certain disclosures
20   the investor would have to basically become aware of and
21   acknowledge they were aware of. One of those disclosures is
22   the fact that the OTC Bulletin Board price and mechanism for
23   the stocks are not necessarily based upon the market
24   competitive forces. What that means is that market makers
25   because some of these stocks are very thinly traded has a

8/25/2012

7AQ6WARS

1   reliance is the number of analysts following the stock,

2   analysts meaning a securities analyst. Mr. Feldman brought

3   forth no evidence at trial nor here during this proceeding that

4   would indicate any analyst following INZS or SVSY. Again, that

5   is a factor to determine whether or not the market is

6   efficient. So the government has brought forth no S-3 filing,

7   no number of analysts, nor the number of market makers that

8   actually traded in the stock.

9       Moreover, the government's own witness testified under

10  cross-examination she has no idea if a press release was read

11  by anyone. Because the press release is not read by anyone,

12  how could it possibly have any effect on the market if no one

13  read it. So you couldn't have relied on it to rise or drop in

14  the stock if no one read it. That is what Maria Font testified

15  to.

16      She also testified to that she utilized the Bloomberg

17  data in basically putting together all of her documents. I

18  cited a case in my brief where the Court indicated the

19  Bloomberg data utilizes statistical analysis when it formulates

20  a price process. I was very careful with Ms. Font on

21  cross-examination to elicit from her the fact that she did

22  utilize the Bloomberg market data, which Bloomberg issues

23  disclaimers as to the inaccuracy of that data. In other words,

24  you are relying on it at your own risk. All of Ms. Charts,

25  Government Exhibits 92, 93, etc., and Mr. Feldman's GX 1 and GX

7AQ6WARS

1    2 relied exclusively on Bloomberg data which therefore

2    according to court holdings in various cases that data is

3    unreliable. It may or may not be relied on, but they are

4    solely relying on Bloomberg data. There is no indication of

5    reliability for that.

6        Secondly, your Honor, is that materiality is a

7    necessary element for securities fraud in civil or criminal

8    cases. In order to have materiality, you must have an

9    investor, a purchasing decision to be made based upon

10    information that is released into marketplace. The OTC

11    Bulletin Board, according to various holdings in various cases

12    is pricing process is basically inefficient. So where you have

13    an inherently inefficient market can you have materiality when

14    the pricing processing is not necessarily controlled or

15    dictated by market forces as OTC Bulletin Board definitely is?

16    I will give you a citation to that also, your Honor.

17        Going back to *In Re: Polymedical*, "Investors

18    therefore cannot be presumed to rely reasonably on the

19    integrity of the marketplace of a security that is traded in

20    such a market. An efficient market by definition does not

21    incorporate into its price all available information about the

22    value of a security."

23        Your Honor, also I cited in my brief at footnote

24    number two which says, "When there are only one or two market

25    makers, there is a risk that the dealer or group of dealers may

7AQ6WARS

1   utilize a fraud-on-the-market theory and they will therefore

2   have to bring each alleged investor or victim forth to qualify

3   that victim as to what document, press release they read

4   individually to make their personal decision. So with no

5   reliance, the government has to bring forth 360-something

6   alleged victims, put each one on the witness stand, have each

7   one testify what determined their personal decision in INZS or

8   SVSY. At trial the government called no one who testified that

9   they made any personal decision in SVSY at all. There is no

10   trial testimony from any witness, there is no restitution

11   hearing testimony from any witness that anyone bought INZS

12   based upon a press release -- excuse me SVSY. There is no

13   testimony that anyone purchased SVSY based upon press release

14   at trial or here today at restitution, your Honor.

15         So therefore I put forth to the Court the government

16   didn't meet its burden of proof at trial nor has it met its

17   burden of proof here at restitution, therefore, I demand the

18   Court call a Fatico hearing so the government to bring forth

19   its witnesses, trial evidence, etc. to prove beyond a

20   preponderance of evidence that restitution is reliable in this

21   case.

22         THE COURT: Anything further on restitution?

23         MR. FELDMAN: Your Honor, may I respond briefly to

24   what Mr. Ware just said?

25         Reliance, first of all, is not an element of criminal

8/25/2012

7AQ6WARS

1 securities fraud as to liability. We cited that in our brief,
2 *united States v. Haddy*. That is why an attempt to commit
3 securities fraud is also a crime. A victim doesn't actually
4 have to be defrauded and rely on it. It is just not an
5 element. Given our restitution issue here, I understand
6 reliance is something that Mr. Ware says we need to prove. So
7 we have done that. The reliance element has been met here by
8 the fraud on the market analysis.

9 Mr. Ware in his brief he served last night around 8:00
10 talked about the market makers and one or two. Back in June we
11 sent Mr. Ware the blue sheet data for both SVSY and INZS for
12 the entire period of time covered by this case. So Mr. Ware
13 has at his disposal everything to go through and see if there
14 were in fact market makers. I went and did that this afternoon
15 before coming in here to count how many market makers are on
16 that blue sheet data that we provided to Mr. Ware months ago.

17 I picked out quickly by looking at their names and
18 checking on the Internet to determine whether they were in fact
19 market makers. Eight different market makers for INZS and
20 seven different market makers for SVSY, and I can name them.
21 For INZS there ICapital Markets LLC Facilitation; USCC Trading;
22 Fleet Trading; MH Myerson & Co, Incorporated; Wien Securities
23 Corporation; V Finance Investments Incorporated; Night
24 Securities LP; Herzog Heine Geduld. That is for INZS.
25 For SVSY there is National Securities Corporation;

7AQ6WARS

1  Hill, Thompson & Company; M H Myerson & Co.; Wien Securities
2  Corporation; Night Securities LP, Herzog Heine Geduld; ICapital
3  Markets LLC Facilitation.

4       I don't think your Honor has to consider that at all.
5  I think based on what we have already shown you, the cause and
6  effect analysis since the volume of price analysis, we have
7  shown that these markets were efficient but Mr. Ware also had
8  the data that if he wanted to actually show there were no
9  market makers to show it to your Honor. It is just not the
10  facts.

11       Mr. Ware has commented how OTC Bulletin Board markets
12  might not necessarily be efficient markets and that is surely
13  true. That is why we have gone through the process here of
14  showing how the factors fit.

15       Mr. Ware has mentioned a lot of Ms. Font's testimony.
16  She wasn't an expert witness to opine on whether Mr. Ware
17  caused the fraud. Ms. Font's job was to explain as a financial
18  analyst that there were charts she created based on data. That
19  is what she did. No one purported to claim that Ms. Font could
20  explain how many people read press releases or even give an
21  expert analysis on the causation.

22       Unlike the case Mr. Ware cited, though, we didn't cite
23  five of 160 days and say there is causation here. We provided
24  the chart to your Honor for each stock for every single day
25  that Mr. Ware was carrying out his fraud and that showed the

8/25/2012

62

7AQ6WARS

1    cause and effect. So no one has to perform a scientific

2    analysis and guess at what was going on here. We provided

3    information of every single day's trading in the exhibits that

4    Ms. Font put into evidence.

5            Mr. Ware also again talked about this Bloomberg issue.

6    Judge Scheindlin's opinion as he described it is being

7    overstated. Judge Scheindlin did not say that Bloomberg is not

8    reliable. What she said is that as to the *Bombardier*

9    certificates, which are not equities and didn't trade on a

10   regular market, Bloomberg's data couldn't be substituted for

11   the actual trading data looking back on it. Your Honor had the

12   evidence at this trial in fact from Bloomberg and we all heard

13   about how Bloomberg is the industry standard, the gold standard

14   for financial data.

15           So, your Honor, given all that we think restitution is

16   appropriate here.

17           MR. BECKER: Your Honor, given that Mr. Feldman

18   responded to my letter, may I briefly reply to that?

19           THE COURT: Very briefly.

20           MR. BECKER: Yes, your Honor. I think, your Honor, as

21   set forth in my letter and from reading *Dura Pharmaceuticals*

22   and *U.S. v. Rutkoske*, the Second Circuit decision later, we now

23   have some clarity of a few issues that have been presented to

24   this Court which heretofore lacks some clarity and that is

25   specifically whether or not civil securities fraud principles

8/25/2012

---

**BOAT BASIN INVESTORS, LLC; PAPELL HOLDINGS, LTD.; MARC SIEGEL; DAVID STEFANSKY; and RICHARD ROSENBLUM, Plaintiffs, -against- FIRST AMERICAN STOCK TRANSFER, INC.; PAUL EGAN; PHILLIP YOUNG; MARGAUX INVESTMENTS GROUP, S.A.; and JOHN DOES 1-10, Defendants.**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2003 U.S. Dist. LEXIS 1838**

**03 Civ. 493 (RWS)**

**February 7, 2003, Decided**

**February 10, 2003, Filed**

---

**Disposition:**

Seller's motion for preliminary injunction was denied and action was stayed.

**Counsel** ————▶ KENNETH A. **ZITTER**, ESQ., ALAN SASH, ESQ., Of Counsel, LAW OFFICES OF KENNETH A. **ZITTER**, New York, New York, for Plaintiffs.

ANTHONY A. LOPRESTI, THOMAS D. SHANAHAN, Of Counsel, DAVIDSON & LOPRESTI, LLP, New York, New York, for Defendants.

STANLEY C. MORRIS, Of Counsel, CORRIGAN & MORRIS LLP, Los Angeles, California, for Third-Party Freestar Technologies, Inc.

**Judges:** ROBERT W. **SWEET**, U.S.D.J.◀————

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff sellers moved pursuant to Fed. R. Civ. P. 65 for an injunction ordering the delivery of a certain number of free-trading shares of a corporation by defendant companies and individuals.Court stayed instant action, where plaintiff sellers had initiated involuntary bankruptcy action against a corporation, and corporation was indispensable party to instant litigation, but corporation could not be joined because of automatic stay.

**OVERVIEW:** The corporation was an indispensable party under Fed. R. Civ. P. 19(a). Thus, the court could not reach the merits of the seller's claim ; the seller's could not show the likelihood of success on the merits or serious questions going to the merits. The court assumed the corporation had acquiesced to the jurisdiction of the court, as the corporation submitted papers and appeared before the court. Further, there was no evidence that the corporation would destroy diversity jurisdiction. Thus, the corporation met the jurisdictional requirements of Rule 19. The corporation was also a necessary party, as complete relief could not be accorded in the absence of the corporation, which was the principal in a principal/agent relationship with two defendants and had given its agents limited ability to provide the relief requested. Further, the sellers appeared to acknowledge that the corporation should be a party to this action; however, they did not join the corporation because they had initiated an involuntary bankruptcy petition against the corporation under 11 U.S.C.S. § 303. Because the resulting automatic stay, the court had to stay this action until the corporation could be joined.

**OUTCOME:** The court denied the motion.

**LexisNexis Headnotes**

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

authority to issue any, much less 7.7 million, shares, and relief may not be granted. 6

Second, Freestar has persuasively laid the ground work for a number of potential counterclaims in this action should it be named a party. In its absence, the Sellers (and potentially some of the defendants) may be subject to inconsistent obligations because Freestar will almost certain commence suit in the absence of joinder. Freestar appears to claim that the Sellers are not entitled to have converted the number and amount of March 2002 and June 2002 Convertible Notes that they did. In addition, the suspiciously large brokerage commissions and fees charged on these deals may also provide grist for the mill. These claims underscore the fact that Freestar is a party to almost all of the agreements underlying the dispute here and should not have those agreements interpreted, enforced or vitiated in its absence.

In addition, the SEC has taken a keen interest in the transactions and parties at the heart of this dispute. Freestar may be held liable for failure to ensure that the Sellers complied with Rule 144. SEC Interpretative Release 5121 ("Precautions by issuers are essential to ensure that a public offering does not result from resale of securities initially purchased in transactions claimed to be exempt under § 4(2) of the Act."). Another federal court may take a different view of issues than this Court. Freestar has a justifiable interest in having the issues litigated only once, and enjoying (or suffering) the results of the doctrines of collateral estoppel and res judicata.



Finally, the Sellers themselves appear to acknowledge that Freestar should be a party to this action. Stefansky Affm. at n. 2 (discussing why they did not join Freestar) & P 29 (asserting that there is "no harm to . . . Freestar . . . in compelling [it]to comply with [its] written agreements") & Compl. P 7 (referring to "Defendant Freestar").

It is patent, however, why the Sellers did not join Freestar: they could not if they wanted immediate relief. 7 On January 9, 2003, the Sellers initiated an involuntary bankruptcy petition under 11 U.S.C. § 303 against Freestar. The filing of such petition

> operates as a stay, applicable to all entities, of (1) . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor . . .; and (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.11 U.S.C. § 362(a).

It is inconceivable that this case proceed in the absence of the party whose stock underlies the transactions at issue and who will be irrevocably affected by any large-scale transfer of unrestricted shares of its common stock. Yet § 362 bars the commencement of an action against it. In the absence of the stay, this Court would order the joinder of Freestar. Because of the stay, this Court has no alternative but to stay this action until such time as Freestar, as a necessary party, may be joined.

The defendants did not seek to have this action dismissed pursuant to Fed. R. Civ. P. 19(b). Rule 19(b) "commands a district court to dismiss an action where it is impossible to have the participation of an indispensable party." *Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co.,* 312 F.3d 82, 87 (2d Cir. 2002). It is not "impossible" to join Freestar because its joinder will not defeat the jurisdiction of this Court. Rather, Freestar is unable to be joined at this time, but may be so joined in the future. Therefore, it is held that the fact that a necessary party is currently the subject of a stay pursuant to 11 U.S.C. § 326 does not result in joinder being not feasible pursuant to Rule 19(b).

### Conclusion

The Sellers' motion is denied for the foregoing reasons, and the action is stayed until such time as

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

S.D.N.Y.–N.Y.C.
04-cr-1224
Sweet, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 2nd day of March, two thousand twelve.

United States of America,

                *Appellee*,

v.

11-2151-cr

Thomas Ware, AKA Ulysses Thomas Ware,

                *Defendant-Appellant.*

Appellant, *pro se*, moves for rehearing of an order by a Circuit Judge denying his motion for leave to appeal and has also filed a "supplement" to his motion to dismiss the indictment. Upon due consideration, it is hereby ORDERED that the motion for rehearing is DENIED. *See* Fed. R. App. P. 40(a)(2) (stating that a motion for rehearing "must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended"). It is further ORDERED that, in light of this Court's denial of the Appellant's motion to dismiss the indictment prior to the filing of the Appellant's motion to "supplement" his motion to dismiss the indictment, the latter document is construed as a motion to dismiss the indictment, and it is DENIED. *See United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002); *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (stating that a party may not relitigate issues that were previously decided, expressly or impliedly, by this Court).

                FOR THE COURT:
                Catherine O'Hagan Wolfe, Clerk



SAO-MAM