Submitted by Counsel:

*Ulysses J. Ware*

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
12/12/2012 05:22:22 P.M. printed



FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 9 2012

JAMES N. HATTEN, CLERK
By:                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| ULYSSES THOMAS WARE,<br>     PETITIONER, | : <br> : <br> : <br> : |
| VS. | : <br> :   CASE #: 12-CV-<br> :   **1:12-CV-4397**<br> : |
| WARDEN DARLEEN DREW,<br>BUREAU OF PRISONS,<br>ATLANTA PRISON CAMP.<br>     RESPONDENTS. | : <br> : <br> : <br> : |

EMERGENCY PETITION FOR IMMEDIATE RELEASE
28 USC §2241: PETITION FOR A WRIT OF HABEAS CORPUS
ACTUAL AND FACTUAL INNOCENCE OF ALL CHARGES

Exhibit to 12/12/2012 Declaration

Pages: 49 - 98

6

12/13/2012

# In a Lawsuit Over a Song, a Plaintiff Takes an Unorthodox Approach

## By BENJAMIN WEISER

The lawsuit traversed familiar ground: lesser-known songwriter sues established artist, claiming that her work was poached and turned into a hit song.

The two songs shared the same themes, touching on pain and regret. The hit song, nominated for a Grammy Award, vowed that the protagonist "never meant to cause you pain."

But Ms. Harley proceeded to do just about everything possible to salvage her own claim.

She failed to appear for hearings in court, including one for her "to interrupting them, filing frivolous motions, disobeying court orders and refusing to participate in the discovery process. She acknowledged at one point that she was being "incredibly difficult."

The songwriter, Peggy Harley of Queens, filed a copyright infringement suit in 2008 in Federal District Court in Manhattan and, acting without a lawyer, demanded millions of dollars in damages.

"My lies work was stolen from me," she wrote in a 13-page complaint riddled with misspellings and grammatical errors. "I am afflicted with pain and suffering and emotional distress."



PATRICIA ALLITINE NEW YORK TIMES
Ann Nesby's song "I Apologize" produced litigation in 2008.

clined several requests for comment. But her "heavy hitters" and "heavy hitters" said she was going up against the music industry's "heavy hitters" and feared being jailed "for telling the truth and taking justice." She had been "robbed" of a potential Grammy Award, she said. The lyrics involved.

On a Web site that seeks support for Ms. Harley's efforts, she is described as an "incredibly powerful singing sensation" who has worked with numerous well-known artists. Her name appears on vocal credits on albums by Mariah Carey and the Trans Siberian Orchestra.

The rest of the story is laid out in her often voluminous court filings.

Among the remaining defendants were Ms. Nesby; Mr. Harper and Shanachie Entertainment, an independent record label in New Jersey; and "I Will Never Happen Again."

Four years later, she said, she brought five CDs of her songs, including that one, to Vaughn Harper, a D.J. with WBLS. Mr. Harper "expressed great interest in her music," Ms. Harley said, but



she said in the lawsuit. She asserted that Ms. Nesby's song duplicated about 90 percent of the music and production of hers.

"The two songs are ideally one," Ms. Harley wrote.

The Nesby song, "I Apologize," was nominated for a Grammy in 2007 in the category of best traditional R&B vocal performance, but did not win.

In 2008, Ms. Harley filed suit against about a dozen defendants, including Mr. Harper, Ms. Nesby and a record company. She accused Mr. Harper of giving a copy of "I Will Never Happen Again" to the song and turned it into her own.

She offered little in the way of evidence yet made sweeping claims. She had no involvement in the creation of the recording. He said that if there had been the ingredient, it was "completely inadvertent," and that the firm had been ready to settle at the outset of the litigation.

But the firm's lawyer, Roger Juan Maldonado, and Shanachie could not persuade Ms. Harley "to settle the dispute amicably," he wrote.

Others also grew frustrated with Ms. Harley.

When she would not provide discovery materials to the defense, a magistrate judge, Henry B. Pitman, imposed sanctions, including ordering Ms. Harley to pay the legal fees incurred by the defendants in the discovery dispute (about $13,000).

The case ended up being reassigned to Judge Katherine B. Forrest, who undertook a careful review of the songs.

## ONLINE: HEAR FOR YOURSELF

▶ Audio clips from the songs "I Will Never Happen Again" and "I Apologize."
nytimes.com/nyregion

friend, Roosevelt George, who sang it, including listening to them repeatedly, as she explained from the bench in April and in a later opinion.

As to Ms. Nesby's argument that "I Apologize" stemmed from the Roosevelt George song from the 1990s, she found little or no similarity between the performances that the could not similarity said, and when she recorded it in 2007, they changed the title to "I Apologize."

Mr. Harper said in court papers that he had never met Ms. Harley or heard her song, or given her music to Ms. Nesby.

Randall Grass, general manager of Shanachie Entertainment, said by e-mail that the case "has been particularly painful to Shanachie because we had no involvement in the creation of the recording." He said that if there had been the ingredient, it was "completely inadvertent," and that the firm had been ready to settle at the outset of the litigation.

"It defies credulity," she said in court, "to believe that I could have found it, as close to Ms. Nesby's work as it is, without there having been some unlawful copying of portions of that work."

There were still the issue of whether Ms. Nesby had ever had access to Ms. Harley's song. It fell to Judge Forrest to scrutinize the evidence, and she decided that Ms. Harley's song was from the start.

"There are no profits for plaintiff to recover," the company wrote, Ms. Harley is expected to disagree.

If Ms. Harley feels any pride in her legal accomplishment so far, she would share it with no reporter: she did not return calls or e-mails to a report questions for comment, and when a reporter tried to talk with her at her building, Ms. Harley, who wore a black T-shirt, black leggings and silver hoop earrings, held up the palm of her hand and said only, "Goodbye."

Nate Schweber contributed reporting.

8/19/2012 (NYT)

*Management Corp, Thomas Ware, Len Churn and Barry Corker,* 02 Civ. 2219 (LBS) (S.D.N.Y.) (the "Judge Sand Case"), and *United States v. Thomas Ware, a/k/a 'Ulysses Thomas Ware,'* 04 Cr. 1224 (RWS) (S.D.N.Y.) (the "Judge Sweet Case"). In his brief on appeal, Ware challenges many of the rulings in these other cases. Because the other cases are not before this Court for review, the Government will not respond to these challenges. For the benefit of the Court, the other cases will be described briefly.

### a. The SEC Case

In July 2003, the SEC office in Fort Worth, Texas filed the SEC Case, a civil securities enforcement action against Ware and others. The SEC Case was filed in the United States District Court for the District of Nevada and assigned to United States District Judge Ken Dawson. Ware represented himself and his co-defendants in that case. The SEC attorney assigned to litigate the SEC Case was Jeffrey Norris.

In October 2004, Judge Dawson entered default judgment against Ware and the other defendants. Judge Dawson found that "[a]ll of [Ware's] arguments are completely frivolous, lacking in fact, and legally irrelevant" and include arguments that are "simply untrue." *Securities and Exchange Commission v. Small Cap Research Group,* 2004 WL 2812108 (D. Nev. Oct. 22, 2004), *aff'd,* 226 Fed. Appx. 656 (9th Cir. 2007). Judge Dawson further found that the "arguments in opposing default are another example of [the defendants'] bad faith supporting this final sanction of default" and noted the defendants' "well-documented misconduct, frivolous

motions, arguments made in bad faith, and dilatory tactics," including conduct that was "willful rather than due to excusable neglect." *Id.* Judge Dawson also found that this conduct had "obstructed the proceedings" and that Ware, despite having been sanctioned for past violations, continued to [violate discovery rules]and "continued to file motions making even more ludicrous arguments than before." *Id.*

### b. The Judge Sand Case

The Judge Sand case was a civil lawsuit filed in March 2002 in the Southern District of New York. According to the pleadings, in 2001 a group of four investment companies loaned approximately $1.1 million to an entity that was later renamed Group Management Corporation ("GMC"). Under the governing loan agreements, at the request of any of the four investors, GMC was required to convert a portion of the outstanding loan amount into shares of GMC and deliver these shares to the requesting investor. Over time, GMC failed to comply with requests from the investors — called "conversion requests" — that GMC convert the outstanding loan amount into GMC shares.

In May 2002, Judge Sand entered a written order directing GMC to honor the then-outstanding conversion requests. In November 2002, Judge Sand entered judgment in favor of the investors, finding "repeated and willful violations" of the court's orders. On or about March 13, 2003, Judge Sand issued a written order holding GMC and Ware in contempt of court for failing to comply with the November 2002 order and judgment. After further proceedings, on or about August 25, 2003, Judge Sand issued

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2812108 (D.Nev.)

of prejudice if entry is denied; [3] the sum of money at stake; [4] the possibility of a dispute concerning material facts; [5] whether default was due to excusable neglect; and [6] the strong policy favoring decisions on the merits. See *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir.1986).

*2 In support of their opposition to the motion for default, Defendants argue the following: (1) Plaintiff's motion is frivolous and Plaintiff's counsel does not understand complex laws and rules; (2) the Court relied upon matters outside the pleadings in resolving Defendants' motion to dismiss, thereby converting it to a motion for summary judgment; and (3) a rehash of its motion to dismiss. All of these arguments are completely frivolous, lacking in fact, and legally irrelevant. None of these arguments counsel against the Court entering default. Defendants do not dispute that they have failed to file an answer and have failed to associate local counsel. Defendants frivolously argue that the Court considered matters outside the complaint in resolving the motion to dismiss. This is simply untrue. In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and 9(b), the Court is required to take the allegations of the complaint as true. That is all the Court did in resolving the motion to dismiss. It was unnecessary to convert the motion to dismiss into a motion for summary judgment, because the Court did not need to consider extrinsic evidence in resolving the motion. Defendants' arguments in opposing default are another example of their bad faith supporting this final sanction of default.

Four of the six *Eitel* factors counsel that default judgment is appropriate in this case: (1) the Court has already ruled on the complaint's sufficiency; (2) because of Defendants' well documented misconduct, frivolous motions, arguments made in bad faith, and dilatory tactics Plaintiff would continue to be severely prejudiced if the Court denied entry of default; (3) the sum of money at stake is readily ascertainable; and (4) Defendants' failure to file an answer and associate local counsel is willful rather

than due to excusable neglect. While this Court favors the resolution of cases on their merits, Defendants' conduct has obstructed the proceedings in this case and signals their reluctance to resolve any disputes of material fact. Furthermore, the Court has already considered and imposed less drastic alternatives than default. First, the Court ordered Defendants to associate local counsel, but Defendants have refused to do so. Second, the Court ordered monetary sanctions for discovery violations, but Defendants have continued to violate discovery rules. Third, the Court ordered Defendants' counsel to show cause why he should not be sanctioned for filing frivolous motions, but counsel has denied fault and continued to file motions making even more ludicrous arguments than before. Since lesser sanctions have not worked, and in light of Defendants' refusal to answer the complaint, the Court grants Plaintiff's Motion for Entry of Default Judgment (# 42).

## III. Final Judgment Granting Permanent Injunction and Other Relief as to All Defendants

This matter came before this Court on the motion of Plaintiff Securities and Exchange Commission, seeking entry of a final judgment by default, providing it with the relief requested in its Complaint against Defendants Investment Technologies, Inc. ("IT"), Investment Technology, Inc. ("IT"), Thomas D. Vidmar ("Vidmar"), Rosenfeld, Goldman & Ware, Inc. ("RGW"), Ulysses "Thomas" Ware (" Ware"), Small Cap Research Group, Inc. ("Small Cap"), and Centennial Advisors, L.L.C. ("Centennial") (collectively referred to as ("Defendants"), by reason of their failure to answer the Commission's Complaint in this civil action and as sanction for their continued misconduct.

*3 This Court having considered the pleadings and declarations on file herein makes the following findings of fact and conclusions of law:

1. The Commission's Complaint was filed on July

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:03-cv-00831-KJD-RJJ   Document 95-2809400   Filed 10/04/05   Page 9 of 17

to practice before the United States District Court for the District of Nevada pursuant to LRIA 10-3. A true and correct copy of the order signed by District Judge David W. Hagen is attached to this Declaration as Exhibit 3.

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on the 3rd day of October 2005.

JEFFREY B. NORRIS

SEC v. Investment Technology, Inc., et al.
Declaration of Jeffrey B. Norris

3

---

Case 2:03-cv-00831-KJD-RJJ   Document 95-2809400   Filed 10/04/05   Page 10 of 17

08/20/05  16:12  FAX  8 0014  DIR REG OFC O.  Ø005

OT-17-2004  11:48

Cf. Id. at 62(*), infra -- Mr. Ware's 08/17/2004 email to the SEC that SEC lawyer Webster (who sat in the deposition of Peter Barron in July-August 2002 in Ft. Worth, TX).

**FACSIMILE COVER SHEET**

U.S. ATTORNEY'S OFFICE, SDNY
ONE ST. ANDREW'S PLAZA
NEW YORK, NY 10007

From:  Alexander H. Southwell,
       Assistant United States Attorney

Office Phone No.:   (212) 637-2417

Fax Number:         (212) 637-2452

No. pages (including cover sheet): __

Date sent:          August 17, 2004

"FOR OFFICIAL USE ONLY" U.S. ATTORNEY FACSIMILE COMMUNICATION

The information contained in this facsimile message, and any and all accompanying documents, constitutes "FOR OFFICIAL USE ONLY" information. This information is the property of the U.S. Attorney's Office. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this information in error, please notify us immediately by telephone at the above number and destroy the information.

To:               Jeffrey B. Norris, SEC Ft. Worth District Office

Office Phone No.:  (817) 978-6452

Fax Number:        (817) 978-4927

Re:                Thomas Ware

Remarks:           Please see attached.

EXHIBIT
1

8/26/2012

08/29/05   16:51   TR... 8 8614   DIR REG OFC 0...—   @004

R.E.:17-2004   11:41   P. 02

**ORIGINAL**

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

August 17, 2004

**BY FACSIMILE**

Jeffrey B. Norris
Trial Counsel
United States Securities & Exchange Commission
Fort Worth District Office
801 Cherry Street, Unit 18
Forth Worth, TX 76102

Dear Mr. Norris:

Re: Thomas Ware

We understand that the files in this matter do contain "financial records" of "customers," as those items are defined in the Right to Financial Privacy Act of 1978 [12 U.S.C. §§ 3401-22]. We have reason to believe that information is relevant to our investigation and/or proceeding.

We request access to the investigative and other non-public files of the Forth Worth District Office of the United States Securities & Exchange Commission (the "Commission") related to the captioned matter. This request is made in connection with an ongoing lawful investigation or official proceeding, inquiring into a violation of, or failure to comply with, a criminal or civil statute or regulation, rule or order issued pursuant thereto, being conducted by the United States Attorney's Office for the Southern District of New York.

We will establish and maintain such safeguards as are necessary and appropriate to protect the confidentiality of files to which access is granted and information derived therefrom. The files and information may, however, be used for the purpose of our investigation and/or proceeding, and any resulting proceedings. They may also be transferred to criminal law enforcement authorities and self-regulatory organizations subject to our oversight. We shall notify you of any such transfer and use our best efforts to obtain appropriate assurances of confidentiality.

Other than as set forth in the preceding paragraph, we will:

make no public use of these files or information without prior approval of your staff;

---

08/29/05   16:52   TR... 8 8614   DIR REG OFC 0...—   @005

R.E.:17-2004   11:41   P. 03

Mr. Jeffrey B. Norris
August 17, 2004
Page 2

notify you of any legally enforceable demand for the files or information prior to complying with the demand, and assert such legal exemptions or privilege on your behalf as you may request; and

not grant any other demand or request for the files or information without prior notice to and lack of objection by your staff.

We recognize that until this matter has been closed, the Commission continues to have an interest and will take further investigatory or other steps as it considers necessary to discharge its duties and responsibilities.

Should you have any questions, please contact Assistant United States Attorney Alexander H. Southwell at (212) 637-2417.

Very truly yours,

DAVID N. KELLEY
*United States Attorney*

By:
STEVEN R. PEIKIN
Chief, Securities &
Commodities Fraud Task Force

P. 54

Case 2:03-cv-00631-RJD-RJU   Document 85-2809400   Filed 10/04/05   Page 13 of 17

**Recommendation To Grant Access To Enforcement Files**

Control Number: 2004-0642     Run on 08/30/2004

Name of Requester: STEVEN R. PEIKIN    Case Name: INVESTMENT TECHNOLOGY, INC.

Title of Requester: CHIEF, SECURITIES & COMMODITIE    Class Number: FW-02394-A

Requesting Agency: U.S. DEPARTMENT OF JUSTICE
Address: UNITED STATES ATTORNEY
THE SILVIO J. MOLLO BUILDING
ONE SAINT ANDREWS PLAZA
NEW YORK, NY 10007

Name of SEC Contact: NORRIS, JEFFREY B

Telephone: 617-678-6422

The request for access meets applicable requirements of the Division of Enforcement Access Manual and RFPA Manual, in particular:

The request is in writing and the requester occupies, or the request has been ratified by a person in, a sufficiently senior or supervisory position so as to meet and enforce the non-penalizations in the request.

The request contains required representations by the requester regarding the need for, and safekeeping and confidential treatment of, the information.

If the case is open, the request contains the required language acknowledging the continued interest of the Commission.

If applicable, RFPA customer notice will be provided.

Granting this request is not adverse to Commission enforcement efforts or contrary to the public interest. I recommend that access be granted.

BARASCH, SPENCER C      _____      9-2-04

Recommending Official       Signature          Date

Concurring Official        Signature         Date

This request is to be reviewed at the Home Office, and may be granted only by a Home Office official at or above the level of Associate Director.

Approving Official       _____        7/8/04

Approving Official        Signature         Date

Note: Send this form and the Access Request Letter to Office of Chief Counsel, Division of Enforcement, Mail Stop 0800 (Attn: Don Chournay), OCC will obtain necessary signatures, file the original documents, and record the access grant to the case tracking system.



RECEIVED
SEP 0 7 2004
DIVISION OF ENFORCEMENT
OFFICE OF CHIEF COUNSEL

EXHIBIT 2

---

Case 2:03-cv-00631-RJD-RJU   Document 85-2809400   Filed 10/04/05   Page 16 of 17

SECURITIES AND EXCHANGE COMMISSION
UNITED STATES
450 Fifth Street, N.W.
Washington, D.C. 20549

DIVISION OF
ENFORCEMENT

SEP 15 2004

Steven R. Peikin
Chief, Securities And Commodities
Fraud Task Force
U.S. Attorney's Office - SDNY
The Silvio J. Mollo Bldg.
One Saint Andrew's Plaza
New York, NY 10007

Re: In the Matter of Investment Technology, Inc. (FW-02394-A)

Dear Mr. Peikin:

Your request, by letter dated August 17, 2004, for access to Commission files has been granted, in reliance upon the assurance regarding use and confidentiality set forth in your letter. The Commission makes no recommendation with respect to investigation or prosecution by your agency. In addition, unless and until this matter is closed, the Commission continues to have an interest and will take such further investigatory or other steps as it considers necessary in the discharge of its duties and responsibilities.

We will identify any information disclosed to you that is subject to the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-22) (RFPA). If we disclose "financial records" of a "customer" to another federal agency, the customer generally must be notified of the disclosure within 14 days. This notice is not required when we disclose to: (i) federal financial institution supervisory agency, or the Commodity Futures Trading Commission pursuant to Section 1112(e) of the RFPA (12 U.S.C. 3412(e)); the Criminal Investigative Division of the Internal Revenue Service for criminal investigative purposes relating to money laundering or other financial crimes pursuant to Section 1112(f) of the RFPA (12 U.S.C. 3412(f)); the Department of Justice pursuant to Section 21(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78u(b)); or any person other than a federal agency.

8/26/2012

Case 2:03-cv-00851-KJD-RJJ   Document 95-28   09/04/07   Filed 10/04/05   Page 15 of 17

Steven R. Peikin

Page 2

The files to which access has been granted are being retained by the Fort Worth Office of the Commission. Your representative should contact Jeffrey B. Norris at 817-978-6452 to make arrangements to review the files. I would also appreciate it if you would inform that person in the event that your agency institutes public proceedings based upon information that you obtain as a result of this grant of access.

Very truly yours,

*Joan E. McKown*

Joan E. McKown
Chief Counsel

---

Case 2:03-cv-00851-KJD-RJJ   Document 95-28   09/04/07   Filed 10/04/05   Page 16 of 17

**FILED**

OCT 15 2001

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY_____ DEPUTY

1 | KATHRYN B. LANDRETH
  | Nevada Bar No. 1393
2 | United States Attorney
  | BLAINE T. WELSH
3 | Nevada Bar No.
  | Assistant U.S. Attorney
4 | 333 Las Vegas Blvd. So.
  | Suite 5000
5 | Las Vegas, Nevada 89101
  | Ph: 702/388-6336
6 | Fax: 702/388-6787

7

8

9

10 |   | SECURITIES AND EXCHANGE
11 |   | COMMISSION,

12 |   |     Applicant,

13 |   | vs.                                Case No. CV-S-01-0225-DWH-PAL

14 |   | INTERNET SOLUTIONS FOR
15 |   | BUSINESS, INC.;

16 |   | And

17 |   | LAWRENCE SHAW,

18 |   |     Respondents.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

19

**MOTION TO PERMIT APPEARANCE OF GOVERNMENT ATTORNEYS**

20        The United States of America, by and through the United

21 States Attorney for the District of Nevada, and pursuant to IRLA

22 10-3, respectfully requests that this honorable Court permit

23 Jeffrey B. Norris to practice before this honorable Court in all

24 matters relating to the above-captioned cases.

25        Jeffrey B. Norris is an attorney with the Securities and

26 Exchange Commission, an agency of the federal government.

EXHIBIT
3



**SEC IMMUNIZED EVIDENCE RESULTING FROM NORRIS' 04/29/2005 IMMUNITY GRANT.**

# UNITED STATES COURT OF APPEALS
THURGOOD MARSHALL UNITED STATES COURTHOUSE
40 FOLEY SQUARE
NEW YORK, NY 10007

CATHERINE O'HAGAN WOLFE
CLERK OF COURT

(212) 857-8585
FAX (212) 857-8710

June 11, 2009

Maria E. Douvas, A.U.S.A.
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

     RE: United States v. Ware, USCA# 07-5222-cr(L), 07-5670-cr(XAP)

Dear Ms. Douvas:

     The panel that is considering the above matter asks that you provide the court with copies of the following trial exhibits:

     GX  2
     GX  10
     GX  21-R
     GX  31-R
     GX  32-C
     GX  61
     GX  70
     GX  92
     GX  93
     GX  100-A
     GX  100-B

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

By: _____
Frank Perez, Deputy Clerk

Encl.

CC:   Panel
     Ulysses Thomas Ware, defendant-appellant-cross-appellee

The Second requested the USAO to provide it with the SEC's immunized evidence gathered in 0831 based on the SEC's grant of statutory immunity (18 USC §§6002-04) to Mr. Ware on 04/29/2005.



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 18, 2009

By Hand

Honorable Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals for the Second Circuit
United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:   *United States* v. *Ware,* 07-5222-cr (L), 07-5670-cr (XAP)

Dear Ms. Wolfe:

Pursuant to the Court's request, I enclose four copies of the following trial exhibits: GX 2, GX 10, GX 21-R, GX 31-R, GX 32-C, GX 61, GX 70, GX 92, GX 93, GX 100-A, GX 100-B.

                                    Respectfully submitted,

                                      LEV L. DASSIN
                                    Acting United States Attorney

          By:

                    Andrew L. Fish
                    Assistant United States Attorneys
                    (212) 637-2548

Enclosures

cc:     Ulysses Thomas Ware (with one copy of each exhibit enclosed)

The USAO provided the Second Circuit with the Immunized Evidence -- which irreparably tainted the 07-5222-Cr and 07-5670-CR (XAP) proceedings, requiring the conviction and sentence to be reversed and vacated.

**ORIGINAL**

Jeffrey B. Norris
Attorney for Plaintiff
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, Texas 76102-6882
(817) 978-6452
(817) 978-4927 (fax)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**LAS VEGAS DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

INVESTMENT TECHNOLOGY, INC.,
THOMAS D. VIDMAR,
ROSENFELD, GOLDMAN & WARE, INC.,
ULYSSES "THOMAS" WARE,
SMALL CAP RESEARCH GROUP, INC.,
and CENTENNIAL ADVISORS, L.L.C.,

Defendants.

Case No.: CV-S-03-0831-KJD (RLJ)

**RESPONSE OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION TO THOMAS WARE'S FRIVOLOUS EMERGENCY EX PARTE MOTION TO STAY ALL MATTERS PENDING IN THIS CASE**

**I. PRELIMINARY STATEMENTS**

It is with great frustration that Plaintiff Securities and Exchange Commission is forced to waste both its own resources and those of the Court responding to yet more groundless accusations and unsupported claims for relief by Thomas Ware. In a pleading styled "Defendants' Emergency Ex Parte Motion to Stay All Matters Pending in This Case," Mr. Ware once exceeds his own past record of ignoring evidence and

---

seeking remedies without legal precedent. If Mr. Ware were not already ignoring his obligation to pay the Commission more than $1 million, Plaintiff would seek attorney's fees and costs, as well as Rule 11 sanctions, from Mr. Ware.

Mr. Ware's claims for extraordinary relief are based on two factual assertions. First, he states that the Commission, and, in particular, the Commission's trial counsel in this matter, unlawfully shared information with the Federal Bureau of Investigation ("FBI"), leading to pending felony charges against Mr. Ware in the Southern District of New York. Second, Mr. Ware claims that all relief granted against the Defendants in this matter is void because Commission trial counsel was not admitted to practice in the United States District Court for the District of Nevada. As set forth below, Mr. Ware's statements are, as usual, false and fail to support the relief he seeks.

**II. THE COMMISSION PROVIDED INFORMATION TO THE FBI AND UNITED STATES ATTORNEY'S OFFICE PURSUANT TO A VALID ACCESS REQUEST**

As he did in the Commission's civil action, Mr. Ware would rather blame others for the criminal charges filed against him, than take responsibly for his culpable conduct. Accordingly, Mr. Ware's response to the criminal complaint in the Southern District of New York is to point his finger at Commission trial counsel and claim that he is the victim of a nefarious conspiracy.

In fact, the Commission makes no secret of the fact that it often provides assistance to criminal authorities, whether local, state or federal. It does so because the civil remedies available to the Commission are often inadequate to effectively deter future misconduct that is detrimental to the investing public. [Norris Dec. at ¶ 3]

SEC v. Investment Technology, Inc., et al.
Plaintiff's Response to Ware's Frivolous
Emergency Ex Parte Motion to Stay All Matters

2

Moreover, often, as in this case, criminal authorities take the initiative of seeking the assistance of the Commission.

In the present case, the Commission shared information with the FBI and United States Attorney's Office for the Southern District of New York. This exchange took place at the request of the criminal authorities and followed prescribed procedures for sharing public and non-public information with other law enforcement agencies.

Some time after the Complaint was filed in this matter, the Commission trial counsel was contacted by Special Agent David Makol ("Makol") of the FBI. [Norris Dec. at ¶ 4] At that time, the Commission trial counsel disclosed only information about the Commission's civil injunctive action that was in the public record. [Id.] Following the conversation, the Commission supplied the FBI with publicly filed documents, including the Complaint in this matter. [Id.]

Eventually, the FBI and Assistant United States Attorney requested access to the arguably non-public information procured during the Commission's investigation. Following the procedure required by law, the Commission was furnished with a formal letter requesting access to the "investigative and other non-public files" related to Thomas Ware, on behalf of the United States Attorney for the Southern District of New York, signed by Steven R. Peiken, Chief of the Securities & Commodities Fraud Task Force ("Access Request"). [Norris Dec. at ¶ 5, Exh. 1] The Access Request was then approved by appropriate officials in both the Fort Worth and Washington, D.C., offices of the Commission. [Norris Dec. at ¶ 6, Exh. 2] After approval was granted, the Chief Counsel of the Commission provided Peiken with a formal letter granting access to

*SEC v. Investment Technology, Inc., et al.*
Plaintiff's Response to Ware's Frivolous
Emergency Ex Parte Motion to Stay All Matters

3

investigative and non-public records. [Id.] Thereafter, the Commission trial counsel freely provided the FBI and United States Attorney's Office with records they requested from the Commission's investigation of the Investment Technology stock manipulation scheme. [Id.]

Contrary to Mr. Ware's self-serving diatribe, the Commission trial counsel had no obligation to inform the Court about the Access Request by criminal authorities. Indeed, to impose such an obligation would often result in premature disclosure of non-public criminal investigations and compromise the ability of criminal authorities to prosecute conduct harmful to the public. It is no accident that Mr. Ware can cite no authority to support the disclosure obligation he seeks to impose on the Commission trial counsel.

II. **THE COMMISSION TRIAL COUNSEL IS ADMITTED TO PRACTICE IN THE DISTRICT OF NEVADA**

Ware's claim that Commission trial counsel is not permitted to practice in the District of Nevada is equally groundless. Local Rule IA-10-3 states:

**LR IA 10-3. GOVERNMENT ATTORNEYS.**

Unless otherwise ordered by the Court, any nonresident attorney who is a member in good standing of the highest court of any state, commonwealth, territory or the District of Columbia, who is employed by the United States as an attorney and, while being so employed, has occasion to appear in this court on behalf of the United States, shall, upon motion of the United States Attorney or the Federal Public Defender for this district or one of the assistants, *be permitted to practice before this court during the period of such employment.*

Commission trial counsel is admitted to practice law in California, the District of Columbia and Texas. Further, he is an attorney employed by the United States and the

*SEC v. Investment Technology, Inc., et al.*
Plaintiff's Response to Ware's Frivolous
Emergency Ex Parte Motion to Stay All Matters

4

present case has been, and is an enforcement action filed and pursued by Commission

trial counsel in his capacity as an attorney employed by the an agency of the United

States, the Securities and Exchange Commission. [Norris Dec. at ¶¶ 2 and 7]

Finally, on March 15, 2001, Commission trial counsel was admitted to practice in

the District of Nevada pursuant to Local Rule IA-10-3. [Norris Dec. at ¶ 7, Exh. 3] As set

forth in Rule 10-3, this admission is effective while Commission trial counsel is

employed by the United States.

IV.   CONCLUSION

For the reasons set forth above, the Commission requests that Thomas Ware's

most recent frivolous motion be denied.

Dated: October __, 2005

Respectfully submitted,

JEFFREY B. NORRIS
District of Columbia Bar No.: 424258
SECURITIES & EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-3821-6452
FAX: (817) 978-4927

SEC v. Investment Technology, Inc., et al.
Plaintiff's Response to Ware's Frivolous
Emergency Ex Parte Motion to Stay All Matters

5

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October 2005, I caused the foregoing

Response of Plaintiff Securities and Exchange Commission to Thomas Ware's

Frivolous Emergency Ex Parte Motion to Stay All Matters Pending In This Case to be

served on those persons and/or parties listed below and by causing a true and correct

copy thereof to be deposited in an authorized Federal Express depository at Fort Worth,

Texas, with express charges (priority overnight) prepaid and addressed to:

Thomas Ware
Thomas Ware, Esq.
6050 Peachtree Parkway
Norcross, GA 30092

Attorney for:
U. Thomas Ware, Esq.
Investment Technology, Inc.,
Thomas D. Vidmar
Rosenfeld, Goldman & Ware, Inc.
Small Cap Research Group, Inc.
Centennial Advisors, L.L.C.

Jeffrey B. Norris

8/27/2012

## DECLARATION OF JEFFREY B. NORRIS

1. I, Jeffrey B. Norris, make the following declaration under penalty of perjury, in accordance with 28 U.S.C. § 1746. I have personal knowledge of the matters set forth herein, except as to those matters stated on information and belief, and as to those matters I believe them to be true, and could and would testify thereto under oath if called upon as a witness.

2. I am over 21 years of age and am employed by the Securities and Exchange Commission ("Commission") as a trial attorney. I have been employed by the Commission since February 1992. I am the Commission trial attorney chiefly responsible for the above-captioned litigation.

3. In my experience as trial counsel for the Commission, I often assist criminal prosecutors who are investigating a securities law violator against whom the Commission has brought a civil action. In fact, in the case of recidivists and perpetrators of serious fraud, I consider such assistance to be one of my highest priorities, as criminal prosecution of securities law violators will likely provide a more effective deterrent to future violations than our civil remedies.

4. In the present matter, some time after the Commission filed its Complaint, I was contacted by Special Agent David Makol of the FBI about illegal conduct by Thomas Ware. At that time, I discussed with Makol information that was part of the public record. I also supplied the FBI and Office of the United States Attorney with documents that were part of the public record.

5. Eventually, the FBI and United States Attorney's Office requested access to what was arguably non-public information gathered by the Commission staff in the course of its investigation. At my request, the Commission was furnished with a formal letter requesting access to the "investigative and other non-public files" relating to Thomas Ware ("Access Request"). A true and correct copy of the Access Request is attached to this Declaration as Exhibit 1. The Access Request was furnished on behalf of the United States Attorney for the Southern District of New York and signed by Steven R. Peiken, Chief of the Securities & Commodities Fraud Task Force.

6. Following the usual channels, the Access Request was circulated to, and approved by, appropriate officials in both the Fort Worth and Washington, D.C. offices of the Commission. After the approval process was completed, Joan E. McKown, Commission Chief Counsel, provided Steven R. Peiken with a letter formally granting access to investigative and other non-public records. A true and correct copy of the Recommendation to Grant Access to Enforcement Files and the formal letter Peiken granting access are attached to this Declaration as Exhibit 2. After this process was complete, I freely shared with the FBI and United States Attorney all information they requested concerning Mr. Ware and the Investment Technology stock manipulation.

7. I am a member in good standing of the bars of the states of California and Texas and the District of Columbia. In March 2001, I became the trial attorney chiefly in charge of a civil injunctive action filed in the District of Nevada entitled *SEC v. Internet Solutions For Business, Inc., et al.,* Cause No.: CV-S-01-0225-DWH-PAL ("SEC v. ISFB"). In connection with the *SEC v. ISFB* matter, I was admitted on March 15, 2001

8/27/2012

Case 2:03-cv-00831-KJD-RJJ Document 95-2869400 Filed 10/04/05 Page 9 of 17

to practice before the United States District Court for the District of Nevada pursuant to LRIA 10-3. A true and correct copy of the order signed by District Judge David W. Hagen is attached to this Declaration as Exhibit 3.

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on the 3rd day of October 2005.

JEFFREY B. NORRIS

SEC v. Investment Technology, Inc., et al.
Declaration of Jeffrey B Norris

3

---

Case 2:03-cv-00831-KJD-RJJ Document 95-2869400 Filed 10/04/05 Page 10 of 17

09/19/05  18:32  FAX  8 0814  DIR REG OFC O.  ☒005
FJJ-J-7-2004  '11:48  P. 91

## FACSIMILE COVER SHEET

U.S. ATTORNEY'S OFFICE, SDNY
ONE ST. ANDREW'S PLAZA
NEW YORK, NY  10007

*********************************************

From:        Alexander H. Southwell,
             Assistant United States Attorney

Office Phone No.:    (212) 637-2417

Fax Number:          (212) 637-2452

No. pages (including cover sheet):

Date sent:   August 17, 2004

*********************************************

"FOR OFFICIAL USE ONLY" U.S. ATTORNEY FACSIMILE COMMUNICATION

The information contained in this facsimile message, and any and all accompanying documents, constitutes "FOR OFFICIAL USE ONLY" information. This information is the property of the U.S. Attorney's Office. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this information in error, please notify us immediately by telephone at the above number and destroy the information.

*********************************************

To:           Jeffrey B. Norris, SEC Ft. Worth District Office

Office Phone No.:    (817) 978-6452

Fax Number:          (817) 978-4927

Re:           Thomas Ware

Remarks:      Please see attached.



EXHIBIT
1

8/27/2012

***** 

Page 4 of 4

Cc: Korotash, Stephen J. ; Barasch, Spencer C. ; Webster, Stephen ; Draper, Julia D.
Sent: Tuesday, August 17, 2004 12:18 PM
Subject: RE: Deposition of Steve Webster

Mr. Ware:

   As you are aware, Steve Webster is an Assistant Director at the Commission's Fort
Worth District Office. I am completely at a loss to understand your desire to take his
deposition. I do not believe that Mr. Webster's testimony could possibly be relevant to any
matter at issue in this lawsuit, even when relevance is defined in its broadest sense. Do
you believe that Mr. Webster was a percipient witness to any of the conduct that the
Commission has alleged? Moreover, Mr. Webster's communications with the Commission
staff are protected from disclosure by various privileges, including attorney-client, law
enforcement and investigative privileges and by the work product doctrine.

   Please identify the relevant issues upon which you believe Mr. Webster could testify.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth District Office
801 Cherry St., Unit 18
Fort Worth, TX 78102
Tel: (817) 978-6452
Fax: (817) 978-4927

--------Original Message--------
From: THOMAS Ware [mailto:rgwinc@mindspring.com]
Sent: Tuesday, August 17, 2004 11:09 AM
To: Norris, Jeffrey B.
Subject: Fw: Deposition of Steve Webster

---- Original Message ----
From: Thomas Ware
To: Norris, Jeffrey B.
Sent: Monday, August 16, 2004 2:51 PM
Subject: Deposition of Steve Webster

Please identify when Steve Webster will be available for deposition.

Rosenfeld, Goldman & Ware, Inc.
Thomas Ware
101 Marietta St.
Suite 1070
Atlanta, GA 30303
(404) 522-1202 phone
(404) 522-1447 fax

*Norris fishing for clues of whether or not the SEC – USAO collusion is known to Mr. Ware.*

Reference (*):
Cf. Id. at 52(8), supra: 31
minutes after Mr. Ware notified
the SEC that Webster would be
deposed, the fraudulent file
access "communication" was faxed
to Norris by AUSA Southwell. CF.
Id. at 71-73, infra, for
Southwell's lies and perjury, and
"deliberate deception" on the
suppression court. See also
Southwell's lies and perjury on
01/05/06 (Appx. III at 20-31),
see also Ex. at 29-30 for SEC and USAO email "communications."

8/27/2012

**Sent:** Tuesday, August 17, 2004 2:59 PM
**To:** Norris, Jeffrey B.
**Subject:** Re: Deposition of Steve Webster

I guess in your frivolous motion that you will file, you will not be able to certify that you reviewed the relevant case law as indicated by your last email. I will forward the notice to your attention along with the notice to produce and the Subpoena.

Rosenfeld, Goldman & Ware, Inc.
Thomas Ware
101 Marietta St.
Suite 1070
Atlanta, GA 30303
(404) 522-1202 phone
(404) 522-1447 fax

—— Original Message ——
**From:** Norris, Jeffrey B.
**To:** 'Thomas Ware'
**Cc:** Korotash, Stephen J. ; Webster, Stephen ; Draper, Julia D.
**Sent:** Tuesday, August 17, 2004 3:54 PM
**Subject:** RE: Deposition of Steve Webster

Mr. Ware:

If you are inclined to further undermine your credibility with the Court and incur further sanctions, then, to quote the Duke of Wellington, "publish and be d—ed." I remind you that the Court stated in the July 29 Order that you are perilously close to having a default sanction entered against you. I assure you that if you notice Mr. Webster's deposition—an act that can only be done in bad faith—my Motion for Protective Order will be accompanied by a motion renewing the Commission's request that the Court enter a default judgment against you and Rosenfeld, Goldman and Ware. I will not give you dates on which the Commission will make Mr. Webster available because, as I stated, I can envision no issue upon which he can offer relevant testimony. Your silence confirms my conclusion. I ask only that, should you make the mistake of attempting to schedule Mr. Webster's deposition, you schedule it no earlier than September 1, 2004.

*Jeffrey B. Norris*
*Trial Counsel*
*United States Securities and Exchange Commission*
*Fort Worth District Office*
*801 Cherry St., Unit 18*
*Fort Worth, TX 76102*
*Tel: (817) 978-6452*
*Fax: (817) 978-4927*

-----Original Message-----
**From:** Thomas Ware [mailto:rgwinc@mindspring.com]
**Sent:** Tuesday, August 17, 2004 2:37 PM
**To:** Norris, Jeffrey B.
**Subject:** Re: Deposition of Steve Webster

I'll take this to mean that you will not make Mr. Webster available for deposition. If I were you, I would educate myself on the current state of the law regarding depositions of public officials before you file a frivolous motion, that will undoubtedly be defective. Unless, you provide me with a date for

**to**

8/27/2012

the deposition of Steve Webster by close of business today, 5:00 pm EST, then I will notice the deposition and serve the notice along with the requisite notice to produce and a Subpoena demanding his appearance.

Rosenfeld, Goldman & Ware, Inc.
Thomas Ware
101 Marietta St.
Suite 1070
Atlanta, GA 30303
(404) 522-1202 phone
(404) 522-1447 fax

—— Original Message ——
From: Norris, Jeffrey B.
To: 'THOMAS Ware'
Cc: Korotash, Stephen J. ; Webster, Stephen ; Draper, Julia D.
Sent: Tuesday, August 17, 2004 3:03 PM
Subject: RE: Deposition of Steve Webster

Mr. Ware:

I again request that you provide me with the contact information for local counsel Defendants were ordered to associate in Court's July 29 Order. The 15 day grace period provided in the Court's Order has now expired; accordingly, I assume you have complied with the Court's mandate by this time.

I believe you would be well-served to seek the advice of this attorney before making the mistake of scheduling the deposition of Mr. Webster purely for the purpose of harassment.

*Jeffrey B. Norris*
*Trial Counsel*
*United States Securities and Exchange Commission*
*Fort Worth District Office*
*801 Cherry St., Unit 18*
*Fort Worth, TX 76102*
*Tel: (817) 978-6452*
*Fax: (817) 978-4927*

——Original Message——
From: THOMAS Ware [mailto:rgwinc@mindspring.com]
Sent: Tuesday, August 17, 2004 11:26 AM
To: Norris, Jeffrey B.
Subject: Re: Deposition of Steve Webster

I will go ahead and notice the deposition and you can make whatever claims at that time.

Thomas Ware

—— Original Message ——
From: Norris, Jeffrey B.
To: 'THOMAS Ware'

**Draper, Julia D.**

| | |
|---|---|
| **From:** | Norris, Jeffrey B. |
| **Sent:** | Thursday, August 26, 2004 12:42 PM |
| **To:** | 'Thomas Ware' |
| **Cc:** | Draper, Julia D.; Korotash, Stephen J.; Webster, Stephen |
| **Subject:** | RE: Deposition Steve Webster |

Mr. Ware:

If you wish to seek an order from the Court requiring such an affidavit, do so. We will, however, oppose such an order and seek our attorney's fees and costs. We do not and will not provide declarations from all of our administrators stating that they have no personal knowledge of every fraud we investigate. Furthermore, whether Mr. Webster participated in the investigation or not is irrelevant. He has no personal knowledge of the fraudulent conduct alleged in the Complaint and the knowledge of defendants' conduct he gained in the course of the investigation would appear to be inadmissible as hearsay or otherwise privileged. Moreover, the Commission has never indicated an intent to call Mr. Webster as a witness in the matter.

My incredulity at your effort to take Mr. Webster's deposition is genuine. I again request that you identify the issues upon which you believe Mr. Webster could give relevant and admissible testimony. Otherwise, I can only assume that you are again wasting the time and resources of the Commission and the Court through actions that are frivolous and taken in bad faith.

You will not be receiving the affidavit that you ask for. I have already explained what the Commission's course of action will be should you attempt to schedule Mr. Webster's deposition. I will not reiterate what I have clearly stated before.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth District Office
801 Cherry St., Unit 18
Fort Worth, TX 76102
Tel: (817) 978-6452
Fax: (817) 978-4927

——Original Message——
**From:** Thomas Ware [mailto:rgwinc@mindspring.com]
**Sent:** Thursday, August 26, 2004 12:27 PM
**To:** Norris, Jeffrey B.
**Subject:** Deposition Steve Webster

Mr. Norris in light of your recent comments concerning the direct or indirect knowledge of Steve Webster, if Mr. Webster will prepare an affidavit stating that he has no direct or indirect knowledge of any of the issues in controversy in the current litigation concerning Investment Technology, Inc., et al., and did not participate in the investigation of Investment Technology, Inc., then we will not depose him.

I must receive a fax copy of the affidavit not later than close of business, 5:00 pm EST on Friday August 26, 2004. Otherwise I will have Steve Webster served and the deposition noticed.

65JAAWARC                    Conference

DOC # 17

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    - - - - - - - - - - - - - - - - - - - - - - - - - x

3    UNITED STATES OF AMERICA,

4                    v.                          05 CR 1115 (WHP)

5    ULYSSES THOMAS WARE, aka
     "Thomas Ware" JEREMY JONES,
6
7                    Defendants.

     - - - - - - - - - - - - - - - - - - - - - - - - - x

U.S. DISTRICT COURT
FILED
JUN 23 2006
S.D. OF N.Y.

8
                                                New York, N.Y.
9                                               May 19, 2006
                                                2:20 p.m.
10

11   Before:

12                    HON. WILLIAM H. PAULEY III,

13                                                District Judge

14

15                           APPEARANCES

16   MICHAEL J. GARCIA
          United States Attorney for the
17        Southern District of New York
     ALEXANDER SOUTHWELL
18        Assistant United States Attorney

19   MICHAEL F. BACHNER
          Attorney for Defendant Ware
20
     MARLON KIRTON
21        Attorney for Defendant Jones

22

23

24

25

65JAAWARC                    Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ---------------------------x

3   UNITED STATES OF AMERICA,

4                v.                        05 CR 1115 (WHP)

5   ULYSSES THOMAS WARE, aka
    "Thomas Ware" JEREMY JONES,
6
                 Defendants.
7
    ---------------------------x
8
                                           New York, N.Y.
9                                          May 19, 2006
                                           2:20 p.m.
10

11  Before:

12                  HON. WILLIAM H. PAULEY III,

13                                          District Judge

14
                          APPEARANCES
15
    MICHAEL J. GARCIA
16       United States Attorney for the
         Southern District of New York
17  ALEXANDER SOUTHWELL
         Assistant United States Attorney
18
    MICHAEL F. BACHNER
19       Attorney for Defendant Ware

20  MARLON KIRTON
         Attorney for Defendant Jones
21

22

23

24

25

| 65JAAWARC | Conference |
|---|---|

1        (Case called)

2        MR. SOUTHWELL: Alexander Southwell, for the

3    government.

4             Good afternoon, your Honor.

5        MR. BACHNER: Michael Bachner, on behalf of Mr. ware.

6        Mr. Ware is seated to my left, your Honor

7        MR. KIRTON: Marlon Kirton, on behalf of Jeremy Jones.

8        THE COURT: Good afternoon Mr. Kirton.

9        And I note the presence of the defendant Jeremy Jones

10    at counsel table.

11        And good afternoon, Mr. ware.

12        All right. This Court has fully briefed pretrial

13    motions seeking a wide -- of relief. Do the parties wish to be

14    heard? Let's hear from the moving parties first.

15        All right, Mr. Southwell.

16        MR. SOUTHWELL: Yes, your Honor.

17        MR. BACHNER: Your Honor, I think we briefed the

18    issues in a good amount of detail. Unless the Court has any

19    direct questions about any of the relief we request we will

20    rely on our papers.

21        THE COURT: Very well. Mr. Kirton, do you wish to be

22    heard?

23        MR. KIRTON: No, your Honor, not at this time.

24        THE COURT: All right. The submissions here have been

25    extensive. I've reviewed them and the Court's prepared to rule

1  on the matters at this time.

2          First, with respect to the defendant's motion to

3  dismiss the indictment on venue grounds, under Rule 12 B of the

4  Federal Rules of Criminal Procedure the allegations in the

5  indictment must be taken as true in connection with any motion

6  to dismiss.  The government in the indictment certainly makes a

7  sufficient allegation of proper venue in this district by

8  reciting that the criminal activity occurred "in the Southern

9  District of New York and elsewhere".  Thus, this Court denies

10  the motion to dismiss on venue grounds.  The defendants, of

11  course, are free to renew such a motion after the government

12  has presented its proof at trial in this case.

13          With respect to disclosure of 404(b) material, we're

14  scheduled for trial only September 18 in view of that trial

15  date and because of the late part of the summer's generally a

16  quiet time for at least some lawyers I am inclined,

17  Mr. Southwell, to require the government to provide notice of

18  any 404(b) materials 45 days before trial and I'll fix August 1

19  as the date by which the government should give notice of its

20  intention to offer 404(b) material.

21          Defendants also move for a bill of particulars.  The

22  indictment in this case is fairly descriptive and details a

23  number of overt acts and it certainly is sufficient to put the

24  defendants on notice as to the charges against them and to

25  permit them to prepare fully for trial.  See United States

8/27/2012

65JAAWARC          Conference

1    versus Torres, 901 F.2d 205 2d Cir. 1990.

2              In denying that application this Court specifically

3    notes that the government has agreed to provide more

4    specificity to the defendants in connection with the press

5    releases that are a pivotal part of the indictment in this case

6    and the government's proposed two alternatives including

7    providing counsel with a letter detailing the press releases

8    the government contends contained false or misleading

9    information or alternatively the government offers to present a

10   superseding indictment containing similar additional

11   particularization.

12             It strikes me that in the end it might be better for

13   the defendants if they simply received a letter from the

14   government setting forth with specificity, the particular

15   releases the government contends are fraudulent given the

16   practice in this district of sending indictments into the jury.

17             So I am going to select that alternative for the

18   government at this juncture and direct them to do that.

19             By when will the government be prepared to provide

20   that additional particularity to the defendants, Mr. Southwell?

21             MR. SOUTHWELL: Your Honor, in our papers we had said

22   in 60 days and that was in order to accommodate the possibility

23   of a superseding indictment. I think that a letter I can do

24   sooner. I want to make sure that we are very precise in doing

25   it. I want enough time to do that so I would ask for 30 days

65JAAWARC                    Conference

1   for that and to let the Court know there may -- the government

2   may seek to return a superseding indictment because we may add

3   additional counts.

4          THE COURT:  The government always has that right,

5   obviously, so long as it's not close to trial.

6          MR. SOUTHWELL:  Certainly, your Honor.

7          THE COURT:  I'll direct the government to provide the

8   defendants with such a letter by June 21.

9          Now, the defendants also make applications for early

10  disclosure of Brady material and Jinx Act material and Giglio

11  material.  The government has acknowledged its continuing duty

12  to turn over exculpatory material and asserts that it is not

13  aware of any materials of the current time.  The government's

14  representation is sufficient to satisfy the government's Brady

15  obligations in this case.  See United States versus Gallo, 1999

16  Westlaw 9848 at star 7 SDNY 1999.

17         With respect to Jinx Act and Giglio material,

18  obviously, that material needs to be produced in time for its

19  effective use at trial.  It's the government's responsibility

20  to determine when that material should be produced to permit

21  its effective use.  See En Re United States v. Coppa, 273 F3rd

22  132 2d Cir. 2001.

23         This Court will direct the government to produce no

24  later than the Thursday before the start of trial that

25  exculpatory material unless the government believes that such

8/27/2012

65JAAWARC                Conference

1  early disclosure would create a security risk for a witness in

2  which case the government can make an ex parte application to

3  the Court and the disclosure that I am requiring on the

4  Thursday before the start of trial relates to witnesses the

5  government intends to call during the first week of trial so

6  that we can avoid any delays during the course of the trial to

7  afford defense counsel an opportunity to review material.

8          Obviously, at the same time and this feeds directly

9  into the government's need to exercise appropriate discretion

10  and judgment here, the more materials that the government has

11  to produce concerning a particular witness, the more important

12  it is for the government to produce them earlier rather than

13  later.

14          Finally, the defendants make an application for

15  disclosure of communications between the SEC and the United

16  States Attorney's Office in connection with this matter.

17          The defendants' allegations of collusion between the

18  SEC staff and the U.S. Attorney staff are conclusory and

19  they're belied by documents that including a letter exchange

20  that the government has produced as part of its opposition to

21  this motion.  And I take it, Mr. Southwell, that the only

22  communications between the U.S. Attorney's Office and the SEC

23  that are in writing are these letters or are there other

24  letters or exchange between the agencies?

25          MR. SOUTHWELL:  I believe there may be some

65JAAWARC                    Conference

1  transmittal letters from the SEC to the U.S. Attorney's Office

2  when they sent materials but they're non substantive and other

3  than that there's no other letters.

4        THE COURT:  All right then, I'd simply note that the

5  defendants have been provided with the material communications

6  between the SEC and the U.S. Attorney's office and those

7  communications reveal that the SEC investigation here have been

8  initiated long before any direction by District Judge Sand that

9  Mr. Ware be investigated on criminal contempt and that Mr. Ware

10 was not indicted until more than two months after the SEC

11 approved the government's request for SEC files in this matter

12       So in this case it appears to me from everything that

13 I've seen that the investigation conducted by the SEC and the

14 investigation conducted by the U.S. Attorney's office were

15 independent of each other and there is no evidence that the SEC

16 was acting as some instrumentality or apparatus of the U.S.

17 Attorneys Office in connection with the criminal investigation

18 in this case.

19       MR. SOUTHWELL:  Your Honor, I am sorry.  I may have

20 misheard your Honor.  The SEC the access request was granted in

21 September of 2004.  The indictment in this case was returned in

22 October 2005.  So it's over a year later.  Although, it's,

23 frankly, not really relevant to the ultimate inquiry.

24       THE COURT:  You are right.  It's not two months.  It's

25 long, long after.

65JAAWARC     Conference

1   All right. Now, I think I have addressed all of the

2 applications that have been made by the defendants.

3   Are there other matters that counsel want to raise?

4   MR. SOUTHWELL: Your Honor, nothing other than perhaps

5 setting a few additional dates. Perhaps we could set a date

6 for any limine motions prior to trial and perhaps if your Honor

7 is inclined we could set an acceptance cut-off date if that's

8 your Honor's practice.

9   THE COURT: Well, I don't, for a good reason, involve

10 myself in any negotiations between the government and the

11 defendants and it is generally not my practice to set a cut-off

12 date. Each case stands on its own with due regard for the

13 circumstances but I would simply say to the defendants that the

14 government's preparation in any criminal securities case

15 necessarily has to be extensive. And to the extent that a

16 defendant in a securities case waits till the last moment to

17 decide to enter into an agreement with the government they do

18 so in part at their peril. That is the peril of losing a point

19 for acceptance of responsibility or perhaps more depending upon

20 the amount of effort the government has put into preparing the

21 case for trial and bringing in witnesses but I am not going to

22 set any specific cut-off date.

23   With respect to in limine motions, however, I do think

24 that we need to key those up. I like to get a sense from

25 counsel about any significant in limine motions in advance of

65JAAWARC                    Conference

1  trial so that I can research the issues and to the extent I am

2  able rule on the in limine motions in advance of trial so that

3  each side will know where they stand.

4          And so toward that end I think that any motions in

5  limine should be filed no later than August 11 and any reply

6  and any opposition by August 22, any reply by August 29 and I

7  will set the matter down for a conference on any such motions

8  and any other matters relating to the trial and I set it down

9  for September 12, at 2:15.

10         All right.  Now, will that be convenient for counsel?

11         MR. KIRTON:  Yes, your Honor.

12         MR. BACHNER:  Yes, your Honor.

13         THE COURT:  Are there think other issues?

14         MR. SOUTHWELL:  Your Honor, the government would ask

15  that time be excluded until September 12.  But, frankly, we

16  could do September 18 in the interest of justice to allow

17  defense to prepare for trial.

18         THE COURT:  Actually, I think we've already excluded

19  time till September 18.  But like chicken soup it can't help to

20  do it again.  But the docket entry for January 6 reflects that

21  it that did occur but what is the defendant's views with

22  respect to the exclusion of time between now and September 18?

23         MR. KIRTON:  Judge, I have no objection to that.

24         MR. BACHNER:  Neither do I, your Honor.

25         THE COURT:  All right.  Since this continuance is due

8/27/2012

65JAAWARC                    Conference

1   to the need for counsel to prepare for trial and to continue

2   their review of extensive discovery produced by the government

3   and to ensure the continuity of counsel I respectively exclude

4   the time from today to September 18, 2006 from Speedy Trial Act

5   calculations. I find that this continuance serves to ensure

6   the effective assistance of counsel and prevents any

7   miscarriage of justice.

8          ·. Additionally, I find that the ends·of justice served

9   by such a continuance outweigh the best interests of the public

10   and the two defendants before me in this case in a speedy trial

11   pursuant to 18 U.S.C. Section 3161.

12               Anything else, gentlemen?

13          MR. SOUTHWELL: Not from the government.

14          MR. BACHNER: Your Honor, just a very quick question.

15   September 12, your Honor, is a conference that we're going to

16   be having only if there are issues or a date we come before the

17   Court. That's date we're going to come in before the Court

18   because if there are --

19          THE COURT: I assume there are going to be some in

20   limine applications.

21          MR. BACHNER: That's probably right.

22          THE COURT: And I think it's better for everybody to

23   have the benefit -- ordinarily, I do these conferences on a

24   Friday but I am going to be out of the district at the Second

25   Circuit judicial conference and then --

65JAAWARC                    Conference

1    MR. BACHNER:  The date is fine, your Honor.  I just
2    wanted to be make sure of that.

3         And finally, your Honor, Mr. Ware flies down from
4    Atlanta.  Can his appearance be waived on that day or he'll be
5    here a week later as well for the trial?

6         THE COURT:  I can't think of anything more important
7    for Mr. Ware than to be here.

8         •    MR. BACHNER:  He'll be here then, your Honor.

9         Your Honor, did you set a schedule down for voir dire
10   requests and all of that as well?  I don't remember if you did
11   that last time.  I apologize.

12        THE COURT:  Well, let's do that again anyway right
13   now.  Why don't you get any proposed voir dire and a joint
14   request to charge by September 8 and we can discuss that if
15   necessary on September 12 as well.

16        Mr. Southwell, at this juncture how long does the
17   government anticipate that the trial will take?

18        MR. SOUTHWELL:  We had estimated previously about two
19   to three weeks.  I think we ought to be able to get it in under
20   two.

21        THE COURT:  All right.  Remember, gentlemen, our trial
22   schedule will be as follows:  We will try the case from Monday
23   through Thursday from 9:45 until 5 p.m. typically, we will take
24   our luncheon recess between one and 2:15.  We'll have a short
25   recess midmorning and a short recess mid afternoon.

8/27/2012

65JAAWARC                    Conference

1          We will not try the case on Fridays except and unless

2    the jury is deliberating.  Then we will sit on Friday but

3    otherwise we will have Fridays off.  All right.

4          Anything further?

5          MR. SOUTHWELL:  Not from the government.

6          MR. BACHNER:  No, your Honor.

7          MR. KIRTON:  No, your Honor.

8          THE COURT:  Thank you very much for coming in.  Have a

9    good afternoon and a good weekend.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8/27/2012

*United States Bankruptcy Court*
*Northern District of Georgia*
*1290 United States Courthouse*
*75 Spring Street, S.W.*
*Atlanta, Georgia 30303-3367*

*Chambers of*
*Margaret H. Murphy*
*Judge*

*(404) 215-1008*

December 28, 2011

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P O Box 150160
Atlanta, GA  30315

Re: Alpha Capital, AG Atlanta, GA Litigation

Dear Mr. Ware:

Your letter dated December 10, 2011 was referred to me. The local rules, BLR 9003-2 provides:

Communications to a Bankruptcy Judge regarding a request for an order or other relief (including a request for an extension of time) or matters that are or may be in dispute, or communications of facts or legal issues regarding a particular case, proceeding, or matter pending before that Bankruptcy Judge, shall be by written motion, pleading, or other paper, and not by letter. Ordinarily, a letter seeking such action will not be treated as a motion, will not be considered by the Bankruptcy Court, and will not be filed with the Bankruptcy Clerk. Parties and their counsel shall not provide the Bankruptcy Court with copies of correspondence among themselves relating to matters that are or may be in dispute.

Your letter will not be shown to Judge Murphy and will not be made a part of Debtor's file. If you wish to communicate with the court concerning the above-referenced case, you should do so by means of an appropriate motion or application which complies with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia.

Very truly yours,

Pat Sinback
Law clerk to
Judge Margaret H. Murphy

cc:    State Bar of Georgia, Office of General Counsel
       Supreme Court of Georgia, State Disciplinary Board
       Dennis S. Meir

8/27/2012                    8/4/2012                    8/15/2012

*United States Bankruptcy Court*
*Northern District of Georgia*
*1290 United States Courthouse*
*75 Spring Street, S. W.*
*Atlanta, Georgia 30303-3367*

*Chambers of*
*Margaret H. Murphy*
*Judge*

*(404) 215-1008*

January 11, 2012

Mr. Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P. O. Box 150160
Atlanta, GA 30315

Dear Mr. Ware:

The copies of pleadings you mailed to Judge Murphy on or about December 21, 2011, were referred to me. The pleadings do not appear to relate to any active bankruptcy case before Judge Murphy and your purpose in sending copies of the pleadings is unclear.

The pleadings will not be shown to Judge Murphy and will not be made a part of any bankruptcy case file. If you wish to communicate with the court concerning the above-referenced case, you should do so by means of an appropriate motion or application that complies with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia.

Very truly yours,

Pat Sinback
Law clerk to
Judge Margaret H. Murphy

8/27/2012                    8/4/2012                    8/15/2012

# United States Bankruptcy Court
### Northern District of Georgia
1340 U.S. COURTHOUSE
75 SPRING STREET S.W.
ATLANTA, GEORGIA 30303

**M. REGINA THOMAS**
CLERK OF COURT

July 25, 2012

Mr. Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

        RE:    Documents received by United States Bankruptcy Court

Dear Mr. Ware:

     This Court has received papers mailed by you, or on your behalf, that do not relate to any active bankruptcy case filed in the Bankruptcy Court for the Northern District of Georgia. The case to which you make reference in your letter, Group Management Corp. 03-93031, was dismissed on May 21, 2003 and closed on June 3, 2003.

     No action can be taken with respect to the papers sent to the Court as they do not commence a case over which this Court would have jurisdiction.

Sincerely,

M. Regina Thomas
Clerk of Court

MRT/bm

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

August 8, 2012

M. Regina Thomas
Office of the Bankruptcy Clerk
U.S. Courthouse
Rm 1340
75 Spring St., SW
Atlanta, GA 30303

**LAST AND FINAL INQUIRY - TIME OF THE ESSENCE**

RE: In re Group Management Corp., 03-93031-MHM (NDGA), ("93031")
Certified Docket Sheet request
07/12/2012 Emergency Motion
07/30/2012 Emergency Motion

Dear Ms. Thomas:

This letter of inquiry is in regard to the above referenced matters. In particular I am writing in regard to obtaining a certified docket (cf. Bankr. Rule 5006), and requesting that your office respond as to the costs required to obtain the certified copy of the 93031 docket reflecting all pleadings submitted to the Court for filing and docketing as required by Bankr. Rule 5005(a).

Please inform of the necessary costs and procedures necessary to obtain the certified copy of the 93031 docket -- the certified copy is needed in another proceeding, where time is of the essence.

Second, I am inquiring in regard to the 07/13/2012 and 07/30/2012 Emergency Motions submitted to the Court for filing and emergency processing. As of today (08/08/2012) I have not received confirmation from your office, or the Office of the Chief Judge that the pleadings have in fact been docketed and filed into the records of the Court.

Accordingly, I am requesting that your office and the Office of the Chief Judge return immediately to my attention on or before close of business on 08/12/202 all unfiled and undocketed pleading submitted to the Court by Ulysses Thomas Ware with respect to 93031. Please return all unfiled and undocketed pleadings to the address above.

Unless I receive on or before 08/013/2012 either confirmation that all pleadings submitted to the Court with respect to 93031 have been filed and docketed, or the returned pleadings, then I will presume that the Office of the Clerk does not intend to comply with federal law, and intends to obstruct justice, and I will seek the necessary relief, and sanctions in the appropriate court.

Sincerely,

Ulysses Thomas Ware

cc: Chief Judge Joyce Bihary
U.S. Dept. of Justice (Criminal Division)

8/15/2012

-------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: Bihary: Material Witness Designation
DATE: 08/12/2012 09:36:14 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE GROUP MANAGEMENT CORP.,
  DEBTOR,

ULYSSES THOMAS WARE,
  INTERESTED PARTY, PETITIONER

V.                                         CASE # 03-93031-MHM

MARGARET H. MURPHY, ET AL.
  RESPONDENTS,
  UNINDICTED CO-CONSPIRATORS.

DESIGNATION OF MATERIAL WITNESS STATUS FOR CHIEF JUDGE JOYCE BIHARY IN OBSTRUCTING JUSTICE in 93031

  The Petitioner Ulysses Thomas Ware, hereby designates Chief Judge Joyce (U.S.Bankr. Court (NDGA)) as a material witness with respect to the filing of the Emergency Motion (07/12/2012) and Emergency Motion (07/30/2012) filed in the U.S. Bankr. Court (NDGA), in 93031; and (2) with respect to the proceedings in 93031, and Ware v. Hatten, et al., 12-CV-1671 (MHS)(GGB), (NDGA), ("1671"), and all related proceedings; and hereby names Judge Bihary as a respondent in her personal and individual capacity for the willful and flagrant violation of federal laws and rules of bankruptcy procedure.

  Judge Bihary is in possession of evidence material to the issues and contentions at play in 93031, and has personally obstructed justice and violated federal laws in not filing pleadings submitted to the Court (cf. Bankr. Rule 5005(a)), in 93031 to aid, abet, and directly participate in the ongoing criminal conspiracy to commit a fraud on the court to cover up the crimes committed by Margaret H. Murphy and the respondents named in the 07/12/2012 Emergency Motion.

  Judge Bihary acting in her individual and personal capacity has committed a Hazel Atlas-Glass fraud on the court by an officer of the court to defile the judicial process, and corrupt the judicial machinery to prevent the Petitioner from having is claims adjudicated in a fair and impartial manner by the Court.

SUBMITTED BY COUNSEL:

_Ulysses J. Ware_

ULYSSES/THOMAS WARE
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
08/12/2012

CERTIFICATE OF SERVICE:

  I Ulysses Thomas Ware have this 13th day of August, 2012 deposited into the U.S. Mail at the Atlanta Prison Camp a true and correct copy of this pleadings addressed to the Office of the Bankr. Clerk, 75 Spring St., SW, Atlanta, GA 30303 for filing in 93031.

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315



July 12, 2012

Office of the Clerk
U.S. Bankruptcy Clerk
U.S. Courthouse
75 Spring St., SW, 13th Flr.
Atlanta, GA 30303

RE:  In re Group Management Corp., 03-93031-MHM (ND GA), ("93031")
     Emergency Motion pursuant to Bankr. Rule 9024: Fed. R. Civ. Proc. 60(b)(4, 6), and
     Rule 60(d)(3).

Dear Clerk:

     The petitioner, Ulysses Thomas Ware, is submitting the enclosed pleadings for filing
pursuant to the emergency procedures of the Court where the petitioner is currently
suffering irreparable harm, and will continue to suffer irreparable harm unless this
matter is processed according to the Rules of the Court.

     Enclosed for filing and docketing are the following documents:

1.  A Declaration of Service (P. 0.1).

2.  Sworn Statement of Indisputable Material which there is no opposition (P. A - 9).

3.  Appendix to Sworn Statement of Material Facts (P. 1 - 40).

4.  Memorandum of Points and Authorities of Law (P. A - 104).

     At page V of the Opening Statement is a disqualification of Margaret H. Murphy
designation as a material witness in this proceeding, and pursuant to 28 USC
§455(b)(5)(iv) she is statutorily disqualified from any judicial participation in this
matter.

     Therefore, please assign this matter to another bankruptcy judge who does not have
an interest in this proceeding.

     The respondents or their legal representative have been served, see P. 0.1 enclosed,
additionally pursuant to Bankr. Rule 9036 the petitioner is requesting that all parties
file all pleadings via the PACER system and electronic notification be implemented due
to the numerous respondents.

     Please date stamp the enclosed duplicate copy of this letter and return in the SASE
enclosed.

     If there are any questions please contact the undersigned at the above address.

Sincerely,

Ulysses Thomas Ware

enclosures

7/12/2012

MEMORANDUM OF POINTS AND AUTHORITIES OF LAW IN SUPPORT OF EMERGENCY MOTION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---

IN RE GROUP MANAGEMENT CORP., DEBTOR, 03-93031-MHM (ND GA)

PETITIONER: ULYSSES THOMAS WARE (PARTY IN INTEREST).

RESPONDENTS - UNINDICTED COCONSPIRATORS:

Alpha Capital, AG, Stonestreet, LP, Markham Holdings, Ltd., Amro International, SA, Kenneth A. Zitter, Ari Rabinowitz, Nathan Ladenburg, Edward D. Grushko, Barbara R. Mittman, Dennis S. Meir, John W. Mills, III, Kilpartick, Townsend, & Stockton, LLP, Edward T. M. Garland, Manny Arora, David Levitt, Don Samuel, Garland, Samuel & Loeb, P.C., William P. Smith, III, William A. Myers, Johnathn Hewitt, Jenny Mittleman, Carmen Rojas-Rafter, Christina A. Petrig, Connie P. Henry, Dan O'Sullivan, George H. Carley, Carol Hunstein, Margaret H. Murphy, Thomas W. Thrash, Jr., Linda T. Walker, Orinda D. Evans, Julie E. Carnes, Marvin H. Shoob, Garrilyn G. Brill, James N. Hatten, Alexander H. Southwell, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Preet Bharara, Michael J. Garcia, David Kelly, Katherine Polk-Failla, Kent J. Dawson, Robert J. Johnston, James Morewitz, Jeffrey B. Norris, Spencer C. Barasch, Robert C. Hannan, John C. Martin, Rebecca R. Fairchild, Stephen Korotash, Stephen Webster, Michael Post, Robert W. Sweet, Leonard B. Sand, William H. Pauley, III, Barbara S. Jones, Ruby Krajick, Amalya L. Kearse, Robert D. Sack, Peter W. Hall, Robert A. Katzmann, B.D. Parker, Reena Raggi, Rosemary S. Pooler, Dennis G. Jacobs, Gail McKenzie, U.S. Marshals (ND GA), James Olas, U.S. Marshal (#2) LNU, U.S. Marshal (#3) LNU, U.S. Marshal (#4) LNU, Thomas J. McCarthy, Andrews & Kruth, LLP, Thomas V. Sjblom, Prokauser & Rose, LLP, Grushko & Mittman, P.C. (NYC), Steven D. Feldman, David Makol, Eric H. Holder, Jr., the United States of America, and others known and unknown,

**COLLECTIVELY, THE RACKETEERS,** in their individual and personal capacity.

---

### EMERGENCY MOTION FOR FRAUD ON THE COURT PROCEEDINGS.

---

The petitioner moves the Court pursuant to Bankr. Rule 9024 and Fed. Rule of Civ. Proc. Rule 60(b)(4, 6) and Rule 60(d)(3) to set this matter down under the emergency procedures of the Court and direct and order the respondents to file a response in opposition, if any, on or before close of business on July 25, 2012 in writing by filing any and all pleadings with the Office of the Bankruptcy Clerk at 75 Spring St., Atlanta, GA 30303, or via the PACER system, and filing a paper copy of the same on the petitioner at the Atlanta Prison Camp, P.O. Box 150160, Atlanta, GA 30315 (Reg. No. 56218-019).

Submitted by Counsel:

Ulysses Thomas Ware, (Reg. No. 56218-019), pro se
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
07/12/2012 10:04:22 AM printed

**PRIORITY**

Via Certified Mail #: 7003 1680 0005 1206 0748

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

July 30, 2012

The Honorable Joyce Bihary
Chief Judge
U.S. Bankruptcy Court
For the Northern District of Georgia
U.S. Courthouse
75 Spring St., SW
Atlanta, GA 30303

RE:  In re Group Management Corp, 03-93031-MHM (NDGA), ("93031")
     July 12, 2012 Emergency Motion, July 25, 2012 Letter, and 07/30/2012 Emergency
     Motion.

Dear Judge Bihary:

     This letter is in regard to the above pleadings, and the July 25, 2012 letter of
Clerk M. Regina Thomas, included in the 07/30/2012 Emergency Motion as Ex. #1.

1.       First, I am requesting that the enclosed pleading be processed according to the
         emergency procedures of the Court, where time is of the essence, and the petitioner
         Mr. Ware is currently suffering irreparable harm, and will continue to suffer
         irreparable harm unless the requested relief is granted on an emergency basis as set
         forth in the 07/30/2012 Emergency Motion.

2.       Second, Judge Bihary (as an officer of the court) you have a duty of candor and
         a fiduciary duty to the orderly administration of justice in the Court to process
         all pleadings submitted to the Court in a timely and orderly manner, which M. Regina
         Thomas did not do with respect to the 07/12/2012 Emergency Motion, thus
         necessitating the 07/30/2012 Emergency Motion.

3.       Judge Bihary, as Chief Judge of the Court, pursuant to Bankr. Rule 5005(a), the
         enclosed pleadings are being submitted to your attention, due to the fact that M.
         Regina Thomas (Clerk), is names as a respondent, and thus has a conflict of interest
         regarding this matter.

4.       The petitioner Mr. Ware has requested a relief date of 08/07/2012, and for the
         enclosed pleadings to the processed on an emergency basis.

     If there are any question please contact the undersigned on or before close of
business on 08/02/2012, else I will assume that the pleadings will be timely processed
on an emergency basis.

Sincerely,

*Ulysses Thomas Ware*
Ulysses Thomas Ware, pro se
enclosures: 07/30/2012 Emergency Motion, Sup. Appx. 1.0, Exhibit #1.
            8/27/2012

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE GROUP MANAGEMENT CORP., DEBTOR, | : |
| | : CASE #: 03-93031-MHM |
| ULYSSES THOMAS WARE, (INTERESTED PARTY) PETITIONER, | : **EMERGENCY MOTION TO SHOW CAUSE** |
| AND | : **RENEWAL OF 07/13/2012 EMERGENCY MOTION FOR FILING.** |
| MARGARET H. MURPHY, ET AL. RESPONDENTS, CO-CONSPIRATORS. | : |

**EMERGENCY MOTION TO SHOW CAUSE BY M. REGINA THOMAS
RETURNABLE ON OR BEFORE CLOSE OF BUSINESS ON 08/07/2012
WHY M. REGINA THOMAS SHALL NOT BE REFERRED FOR CRIMINAL PROSECUTION
FOR WILLFUL VIOLATION OF THE FINAL ORDER OF THE UNITED STATES DISTRICT COURT
(SDNY) ENTERED ON 12/20/2007 AT DKT. #90 DISMISSING 02-CV-2219 WITHOUT PREJUDICE
RENDERING ALL ORDERS ENTERED IN 03-93031 ANNULLED AND VOIDED.**

**NATURE OF THE EMERGENCY:** By letter dated July 25, 2012, (Ex. at 1) M. Regina Thomas (Clerk of the Bankruptcy Court) stated: "No action can be taken [with respect to the 07/13/2012 Emergency Motion filed pursuant to Rule 9024, Rule 60(b)(4, 6), and Rule 60(d)(3) of the Fed. R. Civ. Proc.] with respect to the papers sent to the Court as they do not commence a case over which this Court would have jurisdiction." (emphasis added).

**REQUESTED RETURN DATE:**     08/07/2012

**STATEMENT OF IRREPARABLE HARM:** The petitioner is currently suffering irreparable harm due to the illegal actions of M. Regina Thomas, and will continue to suffer irreparable harm unless the relief requested is granted on an emergency basis.
The petitioner is suffering irreparable harm at the rate of $100,000.00 per day due to M. Regina Thomas collusion, conspiring, and racketeering to obstruct justice with the respondents to the Emergency Motion from 07/13/2012 and continuing until the Emergency Motion is filed, docketed, and processed under the emergency procedures of the Court.

**REQUESTED RELIEF:** For the Court to enter an order referring M. Regina Thomas to the U.S. Dept. of Justice for criminal prosecution for obstruction of justice in a deliberate and intentional malicious breach of her duty of candor, and fiduciary duty to the public as Clerk of the Court; and to enter an order filing, and docketing the Emergency Motion, nunc pro tunc, 07/13/2012, providing any respondent seven (7) days to respond, else a default will be taken, and enter an order awarding the petitioner $100.000.00 per day in damages from 07/13/2012 until the order is entered; and enter an order referring Dennis Meir to the State Bar.

Submitted By: _Ulysses D. Ware_

8/27/2012

Ulysses Thomas Ware (petitioner), pro se
P.O. Box 150160, Atlanta Prison Camp, Atlanta, GA 30315 (07/30/2012)

1           THE COURT:  But you have not done so yet?

2           MR. GORDON:  That is correct, Your Honor.  Also expect to

3      show that the -- that there are assets of the corporation and we

4      expect the evidence will show that there are ongoing business

5      concerns including taking the corporation public and helping to

6      capitalize corporations, among others.  We also expect the

7      evidence to show that the --

8           THE COURT:  Wait a minute.  What are the ongoing business

9      concerns?

10          MR. GORDON:  Ongoing business concerns, Your Honor,

11     taking corporations who happen to be clients of Group Management

12     Corp., public, and also helping to capitalize corporate clients as

13     well as advising corporate clients on public trading issues.

14          We also expect the evidence to show that the respondents

15     by shortselling the stock of the corporation, the debtor

16     corporation, that they were driving down the stock prices which in

17     turn crippled Group Management's ability to do business and

18     scaring away present and potential clients.

19          We expect the evidence to show also, Your Honor, that the

20     subscription agreement is an executory contract, and that just

21     because it is a -- there are material bilateral monetary and

22     non-monetary obligations remaining to be formed.

23          And, lastly, we expect the evidence to show that pursuant

24     to Section 365(a) of Title 11 in the United States Bankruptcy Code

25     that trustee or debtor in possession may assume or reject any

Brown Reporting Inc.                    1-800-637-0293                    404-876-8979
                                        93031 Transcript
04/23/2003 excerpts of hearing on GPMT's Emer. Motion to reject executory contracts
(Loan Agreements) in 2219 -- Subscription Agreements, Convertible Notes, etc., in 2219

8/27/2012                                                        8/15/2012

1.   executory contract, and that in -- under Section 365(c)(2) of the

2    Bankruptcy Code deals with special class of contracts, more

3    specifically issuance of securities of the debtor, and that they

4    are -- the trustee or debtor in possession may not assume the

5    executory contract or issuance of securities, and therefore, once

6    we put up the evidence and present the case and statutory law, we

7    will prove that there is an executory contract which not only may

8    be rejected by the debtor in possession, but should be or is

9    required to be rejected by the debtor in possession under 365(a)

10   and (c).

11          THE COURT:  Now, what provision of the Code includes the

12   issuance of securities as to executory contracts?

13          MR. GORDON:  Section 365(c)(2), Your Honor.

14          THE COURT:  And you're arguing what under (c)(2)?

15          MR. GORDON:  That the trustee or debtor in possession, as

16   in this case, may not assume executory contract when it has to do

17   with the issuance of securities of the debtor; in other words, in

18   this case the -- under the subscription agreement, which is

19   Debtor's Exhibit 1, the debtor in possession may not issue

20   securities to the respondents per the notice of conversion

21   request.

22          THE COURT:  All right.  Thank you.

23          MR. GORDON:  Thank you.

24          MR. MEIR:  Your Honor, Dennis Meir, on behalf of four

25   creditors of this debtor, each of whom is a foreign investment

04/23/2003 excerpts of hearing on GPMT's Emer. Motion to reject executory contracts
(Loan Agreements) in 2219 -- Subscription Agreements, Convertible Notes, etc., in 2219

-------------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 12:1671:Caption_Ex. #6
DATE: 05/26/2012 08:33:26 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ULYSSES THOMAS WARE,
  PETITIONER,

VS.                                        CASE # 12-CV-1671 (MHS)

JAMES N. HATTEN, ET AL.,
  RESPONDENTS

   Exhibits #6 in Support of Emergency Motion: Frauds of Kilpatrick, Townsend, & Stockton, LLP, Dennis Meir, Esq. and co-conspirator Kenneth A. Zitter, Esq. to cover-up the frauds and criminal activities of Dennis S. Meir, Esq., John W. Mills, III, Kenneth A. Zitter, Esq. (officers of the court), and others known and unknown which conduct violated Bar Rule 4-102 with respect to the matters in Group Management Corp.'s bankruptcy petition filed in the U.S. Bankruptcy Court (N. D. GA) on or about March 2003 and 12/03/2003.

   The 2219 plaintiffs pled themselves out of court via their counsel (Zitter), by pleading in the 2219 complaint at para. 10-21, of in fact being 15 USC 77b(a)(11) statutory underwriters of the 2219 defendant's (GPMT's) restricted securities.

SUBMITTED BY COUNSEL:

*Ulysses Thomas Ware*

ULYSSES THOMAS WARE, PRO SE
REG. NO. 56218-019
ATLANTA PRISON CAMP
P.O. BOX 150160
ATLANTA, GA 30315
05/26/2012

CERTIFICATE OF SERVICE:

I Ulysses Thomas Ware have this 26th day of May, 2012 served a true and correct copy of this pleading for filing in the above styled case pursuant to Rule 5(d) of the Fed. R. Civ. Proc., and Houston v. Lack, on the Honorable District Judge Marvin H. Shoob, 75 Spring St., SW, Atlanta, GA 30303.

8/27/2012

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

December 19, 2011

Dennis S. Meir, Esq.
Kilpatrick, Townsend, & Stockton, LLP
1100 Peachtree St, NW
Suite 2800
Atlanta, GA 30309-4528

RE: In re Group Management Corp., 03-93031-MHM (N.D. Ga), ("93031").

Mr. Meir:

This letter is in regard to the proceedings in 93031 and your clients the
plaintiffs in Alpha Capital AG, et al. v. IVG Corp., et al, 02-CV-2219(LBS)(SDNY),
("2219"); and the criminal violations of the federal securities laws admitted to
by your clients (the 2219 plaintiffs), their lawyer (Kenneth A. Zitter, Esq.) and
their agents (Ari Rabinowitz, **fugitive** Thomas Badian, **convicted felon** Edward D.
Grushko, Esq., and others), (the "Racketeers").

1.          Enclosed is the October 23, 2011 motion for leave filed in 11-4181-
CV (2d Cir.) detailing the criminal conduct of your clients in regard to
the matters in 2219, 93031, and 1224 in the federal courts.

2.          Enclosed is a MEMORANDUM OF LAW dated November 27, 2011 detailing "the
dire consequences" your client Stonestreet, L.P.'s August 13, 2003 admission
had on the 93031, 2219, and 1224 proceedings.

            At pages 6-8 of the Memo. Stonestreet, L.P. judicially admitted to
in fact being the beneficial owner of more than 9.9% of GPMT's outstanding
stock, and accordingly, Stonestreet admitted to being a §16 statutory insider
of GPMT, an affiliate of GPMT, and in the 2219 complaint at ¶¶12-13 Stonestreet
and the 2219 plaintiffs judicially admitted to being 15 USC §77b(a)(11),
(§2(a)(11)), **statutory underwriters** of GPMT's securities, prohibiting your
clients (the 2219 plaintiffs) from any claim in regard to the 2219 matters,
i.e., your clients thus, were not lawful creditors of GPMT having standing
to appear in 93031.

3.          Even assuming, arguendo, that the 2219 plaintiffs had a claim against
GPMT, as a result of the August 13, 2003 admission of Stonestreet, L.P. being
the **beneficial owner** of more than 9.9% of GPMT's stock, 17 CFR §240.13d-
5(b)(1) and the reasoning and holding of Roth v. Jennings, 489 F.3d 499,
506-10 (2d Cir. 2007), each of the 2219 plaintiffs were deemed the **beneficial
owner** of Stonestreet's more than 9.9% beneficial ownership **nunc pro tunc**, Roth,
489 F.3d at 507, February 2, 2001 (the acquisition date of GPMT's Notes),
i.e., §16 statutory insiders required to disgorge any profits back to GPMT --
your clients (the 2219 plaintiffs) still lacked a claim (a legal obligation)
to the 2219 plaintiffs.

            Rather, according to federal law (§16 of the 1934 Act) the 2219 plaintiffs
owed GPMT the profits (more than $18 million) realized from the securities
fraud committed by your clients and the Racketeers: your clients lacked a
claim, thus were not lawful **creditors**, and therefore lacked standing to

(1)

impede and appear in 93031.

Hence, lacking standing to appear in 93031, the April 11, 2003 filing made by yourself and John W. Mills, III and KTS on behalf of the 2219 plaintiffs (admitted §2(a)(11) statutory underwriters, affiliates, and statutory insiders) was flagrantly frivolous, malicious, filed in bad faith, lacked any factual basis, and violated your and the 2219 plaintiffs' fiduciary duty to GPMT as a result of admitting to being statutory underwriters of GPMT's securities.

4.      Mr. Meir had you prior to entering your appearance and filing the frivolous April 11, 2003 pleading, (the "Frivolous Pleading") researched your clients' complaint (Dkt. #1:2219) in particular ¶¶10-21, especially ¶¶12-13 and compared your clients' judicial admissions to the statutory language of Section 77(b)(a)(11) of the 1933 Act, and Section 77x, and 78ff, competent counsel would have advised the 2219 plaintiffs of the danger of attempting to oppose GPMT's Chap. 11 reorganization (criminal violations of the federal securities laws by the 2219 plaintiffs) and declined the engagement.

5.      Rather, instead, you colluded and conspired with the Racketeers to commit a fraud on the court, as an officer of the court, and did not inform the 93031 bankruptcy court that your clients had admitted (2219 complaint at ¶¶10-21) of being Section 2(a)(11) statutory underwriters, and in addition were secreting the fact of being §16 statutory insiders and members of a statutory group (Rule 13d-5(b)(1)), and accordingly the judicial admissions pled in the 2219 complaint (¶¶10-21) pled the 2219 plaintiffs out of court, i.e., the 2219 plaintiffs **judicially admitted** they lacked Art. III, §2 standing in 2219, and therefore, the 2219 district court **lacked all subject matter jurisdiction** to adjudicate (hear or accept any evidence in 2219 on the 2219 plaintiffs' claims'), ergo, the November 25, 2002 purported judgment in 2219 (Dkt. #54) and Memorandum Opinion (Dkt. #50) were null and void ab initio, "advisory" and lacked all preclusive effect. Cf. Steel Co v. Citizens for a Better Environment, 523 U.S. 83, 94 (1995) (J. Scalia)(Federal courts lack authority to enter judgment lacking subject matter jurisdiction in the proceedings, judgment entered would be "advisory").

6.      Furthermore, as a result of 2219 plaintiffs' binding uncontravertible judicial admissions made at ¶¶10-21 of the 2219 complaint; in pari materia with the admissions made by the 2219 plaintiffs at ¶10.1(iv) of the subscription agreement (requiring GPMT to file a "Form SB-2" registration statement registering GPMT's conversion shares for an immediate public offering), (the "Dire Consequences") the 2219 plaintiffs judicially admitted to (which cannot be contradicted by the 2219 plaintiffs nor their lawyers in any proceeding including the Rule 9011 proceeding to be filed in 93031) primary violations of Section 78j(b) and 17 CFR §240.10b-5, (Rule 10b-5) of the 1934 Act, (the "Primary Violations").

7.      The 2219 plaintiff's Primary Violations and the Dire Consequences were **criminal** admissions of the federal securities laws -- which cannot be contraverted by you or your clients at the 9011 proceeding, or the fraud on the court proceeding, nor in the Section 1961-62 civil racketeering suit to be filed naming you John W. Mills, III, KTS, the Racketeers and others as defendants seeking compensatory and punitive damages of +$5.0 billion: the issue is res judicata and collateral estoppel -- a directed verdict in the amount of +$5.0 billion will be entered against you, Mills, KTS, the 2219 plaintiffs, the racketeers and others jointly and severally.

(2)

8.      Mr. Meir, as a result of the judicial admissions made by your clients in 2219 proceedings ¶¶10-21 of the complaint; ¶10.1(iv) of the subscription agreement; and the sworn testimony of both Ari Rabinowitz (2219 plaintiffs' agent) and Kenneth A. Zitter, Esq. (2219 plaintiffs' lawyer) at trial in U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224"), i.e., further judicial admissions of the primary violations of the federal securities laws and criminal statutes, Cf. Rabinowitz's testimony at (Tr. 204-06: admitted that LH Financial and 2219 plaintiff Alpha Capital, AG were **unregistered** broker-dealers operating in violation of the federal securities laws (Section 15(a) of the 1934 Act).

## II.   SWORN TESTIMONY OF KENNETH A. ZITTER, ESQ. AT TRIAL IN 1224.
1.



2219 plaintiffs' counsel Mr. Zitter testified for the United States at trial in 1224; and under vigorous and thorough cross-examination by Mr. Ware testified as follows in regard to Dennis S. Meir, Esq. and KTS' illegal involvement in GPMT's Chap. 11, 93031 in March-April 2003:

Tr. 376:

Mr. Ware:    Did you ever at any time file for relief from [the] automatic stay in the Northern District of Georgia pursuant to [GPMT's] Chapter 7 or SSG Corporation Chapter 7 filing [in December 2003] at any time?

Mr. Zitter: L 20: I don't know. All right. we retained --

Mr. Ware:    Who would have been responsible for knowing?

Mr. Zitter: We retained separate bankruptcy counsel in the Northern District of Georgia and I don't know whether he applied for relief to [the] automatic stay or he applied to have the case [GPMT's Chap. 11] dismissed or whatever other relief he applied, but we had separate bankruptcy counsel and we acted on his advise and consent. (emphasis added).

.Tr. 377:

Mr. Ware:    Who was that separate bankruptcy counsel?

Mr. Zitter: Dennis Meir (sic). He is a partner in a large firm [KTS] down there.

Mr. Ware:    You hired him, right?

Mr. Zitter: Yes.

Mr. Ware:    On behalf of your client?

Mr. Zitter: On behalf of my client.

Tr. 377 L 20-25:

Mr. Ware:    Did you hire Mr. Me[ir]?

Mr. Zitter: I Hired Mr. Me[ir] yes. I didn't hire him personally. I retained him on behalf of my client [the 2219 plaintiffs].

(3)

Tr. 380 L 15:

Mr. Ware      Mr. Zitter, do you know Dennis Meir (sic)?

Mr. Zitter:   Yes, I do,

Mr. Ware:     How do you know him?

Mr. Zitter:   We went to law school [together at Harvard].

*Meir, Zitter, and J. Thrash all Harvard Law alums, the same as Polk-Failla*

Mr. Ware:     Did you contact Dennis Meir (sic) and asked him to represent [your]
              client  [the 2219 plaintiffs in 93031]?

Mr. Zitter:   I contacted Dennis Meir (sic) and asked him to represent [m]y clients
              [the 2219 plaintiffs] in the bankruptcy, yes.

Tr. 381 L 11:

Mr. Ware:     Did you have any communications with Mr. Meir (sic)?

Mr. Zitter:   Yes, I communicated [with Mr. Meir].

Mr. Ware:     What was the communication regarding?
              Mr. Goldin : objection.
              The Court: overruled.

Mr. Zitter:   It was in regard to the bankruptcy proceeding [93031].

Mr. Ware:     So you have knowledge of what happened in the bankruptcy proceeding
              of what happened in Georgia?

Mr. Zitter:   I have some knowledge. I have knowledge based on what Mr. Meir (sic)
              told me.

Tr. 382:
Mr. Zitter:   Mr. Meir (sic) would communicate with [me] from time to time about
              what was going on [in 93031].

Tr. 399 L 7-25:

Mr. Ware:     Mr. Zitter, what I've shown you has been marked as Defense Exhibit
              P.  Could you take a look at that?

     Mr. Ware showed Mr. Zitter (the drafter of the 2219 complaint) Dennis Meir's
April 11, 2003 pleading filed in In re Group Managment Corp., 93031 for review
prior to having Ex. P admitted into evidence. Cf. Doc. #16 in 93031.

Tr. 400 L 1-25 Mr. Zitter explained that the Atlanta bankruptcy counsel (Dennis
S. Meir, Esq.) "talked about the strategies and the pleadings" that Mr. Meir
(sic) was going to file on behalf of the creditors [the 2219 plaintiffs]?

Mr. Ware:     Your testimony is you hired Dennis Meir (sic) to represent the creditors
              in the Chapter 11 bankruptcy case [93031]?

Mr. Zitter: Correct.

8/27/2012

Mr. Ware:    Is that correct?

Mr. Zitter: Yes, it's correct.

Mr. Ware:    And you communicated with Mr. Meir (sic) during the Chapter 11 bankruptcy
             [93031]?

Mr. Zitter: Yes, I did.

Mr. Ware:    You talked about the strategies and the pleadings that Mr. Meir (sic)
             was going to file on behalf of the creditors [in 93031]?

Mr. Zitter: I don't remember the conversations but that is certainly reasonable.
             I assume I did.

Mr. Ware:    He told you the strategy that he was going to apply to the Chapter
             11 bankruptcy --

Mr. Zitter: I'm sure that he did.

     Hence, at trial in 1224 you have Mr. Zitter the drafter of the 2219
complaint, which contained the binding judicial admissions of the 2219 plaintiffs
(¶¶10-21), admitting that Mr. Meir of KTS was hired by Mr. Zitter (Tr. 376-
77) to represent the 2219 plaintiffs in 93031; (2) who Mr. Zitter had "communications
with" in regard to 93031 (Tr. 381); (3) who Mr. Zitter discussed "strategies
and the pleadings" filed by Mr. Meir in 93031 (Tr. 399-400).

     Thus, there is no question that Mr. Meir had access to Mr. Zitter and
the documents Mr. Zitter used to prepared the frivolous 2219 complaint: the
subscription agreement; the November 25, 2002 (Dkt. #50) Memorandum Opinion,
and the November 25, 2002 "advisory" judgment (Dkt. #54) to conduct a 'reasonable
investigation' prior to filing the bogus and frivolous April 11, 2003 (Dkt.
#16) pleading to interfere with GPMT's Chapter 11 (93031).

     **8.**    Therefore, as Mr. Zitter's agent, his knowledge is imputed to Mr. Meir,
Mr. Mills, and KTS where Mr. Zitter testified (Tr. 400) that Mr. Meir "told
you [Mr. Zitter] the strategy that he [Mr. Meir] was going to apply to the
Chapter 11 bankruptcy" 93031; and which Mr. Zitter approved.

     **9.**    Moreover, Mr. Meir is judicially bound and the same are judicial estoppel
by the statements and admissions made in the 93031 bankruptcy filings (Dkt.
## 15 and 16) in §2 "STATEMENT OF FACTS" and other portions of Doc. #16:

(a).  Mr. Meir judicially admitted which cannot be contraverted by Mr.
      Meir, the 2219 plaintiffs of Mr. Zitter at the 9011 proceeding, the
      civil racketeers suit, or the fraud on the court proceeding the following:

(i)   "Movants [2219 plaintiffs] are holders of Convertible Notes issues on
      or about February 2, 2001, which, pursuant to Subscription Agreement,
      are convertible to the common stock of [GPMT]."

(ii)  Mr. Meir referenced the November 25, 2002 "Order and Judgment" and
      attached it to his Frivolous Pleading as "Exhibit A" yet failed to
      inform the Court in his pleading that pursuant to the Memorandum Opinion
      (Dkt. #50) entered on November 25, 2002 the District Judge (Sand) found
      as the 'law of the case' -- which his clients (the 2219 plaintiffs)
      did not appeal -- which adopted the judicial admissions (¶¶10-21 of

(5)



the 2219 complaint) as the 'law of the case' which borrowing Mr. Meir's
terminology "ha[d] been fully litigated ... and mandated by a final
order and judgment of that Court" the 2219 court. Id. at §1, P.1

10.       The obvious problem in regard to the Frivolous Pleading was that Mr.
Meir was and is incompetent in advanced securities law, and therefore failed
to grasp and fully comprehend his own "Exhibit A" (the November 25, 2002
Order and Judgment of the 2219 court).

          Mr. Meir planned his "strategies and pleadings" lacking complete understanding
and competence in an area of law for which he was incompetent to accept employment;
and subsequently filed the Frivolous Pleading on April 11, 2003 ignorant
to the consequences of the admissions he and his clients were making in Doc.
#16, and moreover ignorant to the admissions already made by his clients
and their lawyer (Mr. Zitter) in the 2219 complaint (¶¶10-21), the subcription
agreement (¶10.1(iv)), and the November 25, 2002 Memorandum Opinion's language
P. 2-7.

11.       Accordingly, on April 11, 2003 when Mr. Meir, Mr. Mills and KTS filed
Doc. #16 in the 93031 Chapter 11 proceedings, as a result of his clients
not appealing that portion of the Memorandum Opinion (which was not appealable
by the 2219 plaintiffs) adopted by the 2219 court from ¶¶10-21 of the plaintiffs'
own complaint: the portions conferring Section 2(a)(11) statutory underwriter
status on the 2219 plaintiffs; that portion which held the 2219 plaintiffs
committed primary violations of the federal securities law (by the sale of
the unregistered securities of GPMT), those portions of the Memorandum Opinion
were res judicata and collateral estoppel on Mr. Meir, Mr. Mills, KTS, Mr.
Zitter, and the 2219 plaintiffs. Cf. Federated Dept. Stores, Inc. v. Moitie,
452 U.S. 394, 398-400 (1981) (Res judicata is binding on the parties and
"their privies", and binding on all courts and there are not exceptions).

12.       Mr. Meir., Mr. Mills, KTS, Mr. Zitter, and others were "privies" of
the 2219 plaintiffs, and therefore were all bound by the res judicata effect
of the November 25, 2002 Order and Judgment, including the 93031 bankruptcy
court in regard to GPMT's reorganization.
          Therefore, the 93031 bankruptcy court, Mr. Meir, Mr. Mills, KTS, Mr.
Zitter were all required by federal law, 28 USC §1738, to accord full res
judicata effect to the November 25, 2002 judgment in GPMT's favor, in addition
to Art. IV, §1 of the Constitution (Full Faith and Credit Clause).

          And the 93031 court or the district court will be required by 28 USC
§1738 in the Rule 9011 proceeding for $22.2 million, plus attorneys fees,
costs, expense, market capitalization loss, to give full res judicata effect
to final and unappealed portions of the November 25, 2002 judgment and the
Memorandum Opinion; and res judicata effect to the binding judicial admissions
(¶¶10-21 of the 2219 complaint, ¶10.1(iv) of the subscription agreement,
and Mr. Meirs' judicial admissions in the Frivolous Pleading), i.e., Mr.
Meir, Mr. Mills, KTS, Mr. Zitter, and the 2219 plaintiffs lack a nonfrivolous
defense to a Rule 9011 sanction as a matter of law. Federated, supra.

          Mr. Meir, this matter is of the utmost seriousness. You and your clients
have inflicted untold damages to more than 3,000 investors in GPMT and have irreparably
harmed Mr. Ware, GPMT, its shareholders, and others due to the criminal conduct
and tactics employed by you, Mr. Mills, KTS, the 2219 plaintiffs, and the Racketeers.
          A copy of this letter is being filed with the 93031 bankruptcy judge, the
State Bar of Georgia, the Georgia Supreme Court (S120-0472), and the U.S. Dept.
of Justice's criminal division.

Furthermore, a copy of this letter is being filed with Chief Judge Julie Carnes and is being submitted as an affirmation verified pleading to initate a disciplinary proceeding against Dennis S. Meir, Esq., John W. Mills, III, Kenneth A. Zitter, Esq. for conduct unbecoming an officer of the court, i.e., a fraud perpetrated on the 93031 bankruptcy court, by officers of the court, who have up to today December 19, 2011 failed to inform the 93031 court of the following indisputable facts:

1.  The 2219 plaintiffs (the movants in the Frivolous Pleading) on February 2, 2001 at Dkt. #1:2219, ¶¶10-21, admitted to being Section 2(a)(11) statutory underwriters of GPMT's securities according fiduciary status on the 2219 plaintiffs and their privies.

2.  On November 25, 2002 (Dkt. #50) in the Memorandum Opinion, the 2219 district court adopted the 2219 plaintiffs' binding judicial admissions at Dkt. #1, ¶¶10-21, and incorporated the same as the 'law of the case' in 2219 which the 2219 plaintiffs could not and did not appeal, Federated, 452 U.S. at 398-400, which are now res judicata and collateral estoppel. Cf. P. 2-7 (Dkt.#50).

3.  On February 2, 2001 the 2219 plaintiffs through their attorney of record (Kenneth A. Zitter, Esq.) in the 2219 complaint (¶¶10-21) made binding judicial admissions of primary vioations of the federal securities laws; and in the 2219 subscription agreement (¶10.1(iv)) the 2219 plaintiffs admitted that: (a) they were Section 2(a)(11) statutory underwriters, (b) admitted they intended an immediate 'public offering' of GPMT's securities, (c) admitted they were not bona fide **investors** in GPMT's securities, but dealers and underwriters conducting an **imminent** 'public offering' in violation of the federal securities laws. Cf. Section 5(a, c), Section 77x, and Section 78ff.

4.  As a result of the 2219 plaintiff's February 2, 2001 binding judicial admissions made in the 2219 complaint and the subscription agreement of primary violations of Section 10b and Rule 10b-5 of the 1934 Act, 15 USC §78cc(b) voided all contractual rights of the 2219 plaintiffs to enforce GPMT's Convertible Notes, Promissory Notes, and the subscription agreement, i.e., the 2219 plaintiffs' February 2, 2001 binding judicial admissions pled the 2219 plaintiffs out of court -- the 2219 complaint failed to state a claim on which relief could be granted by the 2219 district court (Rule 12b(4-6)).

5.  As a result of Id. §78cc(b) voiding all contractual rights of the 2219 plaintiffs based on the 2219 plaintiffs' judicial admissions (which are binding in all subsequent proceedings and cannot be contraverted -- res judicata) the 2219 plaintiffs lacked Art. III, §2 standing to file the 2219 complaint, and conversely the 2219 district court lacked subject matter jurisdiction to hear or accept any evidence on the 2219 plaintiffs' claims -- the November 25, 2002 (Dkt. #50) Memorandum Opinion, and the November 25, 2002 (Dkt. #54) Judgment are both null and void ab initio as "advisory", cf. Steel Co., 523 U.S. at 94 and the 2219 court currently lacks an Art. III, §2 "live case or controversy" and must "announce the fact and dismiss the cause." Id.

### AFFIRMATION OF ULYSSES THOMAS WARE

I, Ulysses Thomas Ware have this 19th day of December, 2011 under oath and pursuant to the penalty of perjury, have made this affirmation pursuant to 28 USC §1746 and state that I have personal knowledge of the statements contained herein and state the same are true and correct according to my understanding of the facts and law.

Ulysses Thomas Ware

8/27/2012

U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY) Transcript Excerpts.

Testimony of Government witness Kenneth A. Zitter, Esq.