Submitted by Counsel:

*Ulysses D. Ware*

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
12/12/2012 05:22:22 P.M. printed



**PRIORITY**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 9 2012

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ULYSSES THOMAS WARE,<br>PETITIONER,<br><br>VS.<br><br>WARDEN DARLEEN DREW,<br>BUREAU OF PRISONS,<br>ATLANTA PRISON CAMP.<br>RESPONDENTS. | :<br>:<br>:<br>:<br>: CASE #: 12-CV-_____<br>: **1: 12-CV-4397**<br>:<br>:<br>:<br>:<br>: |

EMERGENCY PETITION FOR IMMEDIATE RELEASE
28 USC §2241: PETITION FOR A WRIT OF HABEAS CORPUS
ACTUAL AND FACTUAL INNOCENCE OF ALL CHARGES

Exhibit to 12/12/2012 Declaration

Pages: 99 - 155

**7**

<u>U.S. v. Ware</u>, 04-Cr-1224 (RWS)(SDNY) Transcript Excerpts.

Testimony of Government witness Kenneth A. Zitter, Esq.

78FAAWARF

Georgia. specifically, prohibit you from collecting on any debt
from Group Management Corporation?
MR. GOLDIN: Objection.
THE COURT: Overruled.
A. Was there an order directed to me from the bankruptcy.
Q. To the clients Alpha Capital, Amro, Stonestreet and Markham
holding?
A. I don't believe there was a specific order in that regard
Q. Isn't that order issued each time a company files Chapter 7
A specific order is issued to the creditors to prohibit any
further collection activity?
MR. GOLDIN: Objection.
THE COURT: Overruled.
A. I am not that familiar with bankruptcy procedure, so I
don't know whether a specific order is generally entered or
not.
Q. Mr. Zitter didn't violate U.S.C. Section 362(H) where you
deliberately violate a automatic stay and attempted to collect
on the debts of Amro, Stonestreet, Alpha?
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
374

78FAAWAR4          Zitter - Cross
MR. GOLDIN: Objection.
A. I don't believe I did.
THE COURT: Overruled.
Q. Excuse me?
A. I don't believe that I violated any bankruptcy rule or
regulation.
Q. Do you know what 362(H) is?
A. 362(H)?
Q. Yes.
A. Could you read it to me.
Q. Do you know what section 362 of the bankruptcy code is?
A. Yes. In general it provides for automatic stay.
Q. What does automatic stay mean?
A. Once a bankruptcy petition is filed absent relief from the
Court you cannot attempt to collect on the bankrupt's assets.
Q. Both of these companies filed a Chapter 7 bankruptcy; isn't
that correct?
A. Which company is Group Management SSG corporation.
Q. They both filed captain chapter 7 bankruptcy, didn't they?
A. Yes. You filed petitions on their behalf but you also
filed a notice of dissolution with respect to.
Q. That's not what we talk about. We're talking --
A. Yes, I filed on their behalf.
Q. Once a bankruptcy case went into effect Section 362 as you
just testified preventing you and your clients from any further
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
375

78FAAWAR4          Zitter - Cross
collection activity pursuant to any debts owed by Group
Management to your client; isn't that correct?
A. Well, I know in general.
Q. Yes or no; isn't that correct?
A. I know in general that there is an automatic stay.
Q. Automatic stay preventing you and your clients from taking
any further collection activity in pursuant of any conversion
notices on behalf of Group Management, Amro, Alpha Capital,
Stonestreet and Markham Holding; isn't that correct?
A. It's correct that once you file.
Q. So if you attempted to collect anything?
Page 59

78FUNWARF

P. 99

MR. GOLDIN: Can he finish the answer?
THE COURT: Just a second. Let the question be posed.
A. Right.
Q. So if you attempted any further collection at this time
after the Chapter 7 was filed you would be in violation of
automatic stay; isn't that correct?
A. Well --
Q. Yes or no?
A. Yes.
Q. So you violated 11 U.S.C. Section 362(H)?
A. No.
Q. Did you continue to have further collection activity?
A. I don't recall the timing of it. I don't recall what
happened. I know the bankruptcy petitions at some point or
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
376

78FAAWAR4          Zitter - Cross
some bankruptcy petitions were dismissed. I remember there was
an issue with respect to the bankruptcy filing. I remember
Judge Sand raised an issue and if I saw something in these
papers that we did some research or something which said that
the bankruptcy rules are not effective with respect to bringing
on the contempt motions. I know we focused on that issue and
we focused on it with Judge Sand.
Q. Did you ever at any time file for relief from automatic
stay in the Northern District of Georgia pursuant to Group
Management Chapter 7 filing or SSG Corporation Chapter 7 filing
at any time? Did you ever on behalf --
THE COURT: Have you posed your question?
A. I understand the question The answer is --
Q. Yes or no?
A. We were --
Q. Yes or no?
THE COURT: You may answer yes or no. If you wish to
explain your answer you may.
A. I don't know. All right. We retained --
Q. Who would have been responsible for knowing?
A. We retain separate bankruptcy counsel in the Northern
District of Georgia and I don't know whether he applied for
relief to automatic stay or he applied to have the case
dismissed or whatever other relief he applied, but we had
separate bankruptcy counsel and we acted on his advise and
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
377

78FAAWAR4          Zitter - Cross
consent.
Q. Who was that separate bankruptcy counsel?
A. Dennis Meyer. He is a partner in a large firm down there.
Q. You hired him, right?
A. Yes.
Q. On behalf of your client?
A. On behalf of my client.
Q. Any actions he took were taken on behalf of your clients;
isn't that correct?
A. I don't want to quibble with you.
Q. Is it correct you hired him?
A. The facts are that we retained him.
Q. The actions he took in the bankruptcy court were taken on
behalf of your clients?
A. Presumably that's correct.
Q. Since you hired him he is your agent isn't that correct?
Page 60

78FBWARF

MR. GOLDIN: Objection.
THE COURT: Sustained.
A. I don't know the answer to that.
Q. Did you hire Mr. Meyer?
A. I hired Mr. Meyer yes. I didn't hire him personally. I
retained him on behalf of my client.
Q. You retained him on behalf of my client?
A. Yes.
Q. What did you retain him to do?
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
378

78FBWARF4          Zitter - Cross
A. To represent my clients in the bankruptcy proceedings
Q. What all did Mr. Meyer do in terms of representation for
your clients?
A. I know you filed several bankruptcy petitions, so.
THE COURT: Ladies and gentlemen, I really -- what is
the materiality of this?
MR. WARE: Your Honor, Mr. Zitter or his --
THE COURT: I am just asking what is the materiality
of the actions in Georgia and the filing.
MR. WARE: They couldn't collect on any debts.
THE COURT: Okay. That's, you are testifying now.
MR. WARE: I am not testifying.
THE COURT: You are.
MR. WARE: You asked me --
THE COURT: You are testifying. Now, as far as this
witness is concerned he doesn't know what action was taken on
behalf of his client in the bankruptcy.
MR. WARE: Let Mr. Zitter say that then.
THE COURT: He just said it.
MR. WARE: He didn't say that.
THE COURT: He did say that.
MR. WARE: He hired this man.
THE COURT: I know he did not hire him. His client
hired him.
MR. WARE: He said he went to school with him.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
379

78FBWARF4          Zitter - Cross
THE COURT: Look. Look. Just a second. It's getting
late. The jury's being very patient and we want to get through
this. Is there anything if you want to put some --
MR. WARE: I've got plenty of questions. We're going
through every one of these documents that the government went
through. We are going to go through each and every one of
them.
THE COURT: Well, go ahead then. That's fine. But
don't ask him about a proceeding that he is not involved in.
MR. WARE: He wasn't involved. He hired the lawyer --
THE COURT: Now, listen sir, let's get a couple of
things straight, okay. One, neither one of us should raise our
voices.
MR. WARE: I agree.
THE COURT: So that's first and the second thing is I
don't think this witness has any probative knowledge of what
happened in the bankruptcy court in Georgia and he is not
responsible for it in any way.
MR. WARE: He hired the lawyer, your Honor. He just
testified he hired Dennis Meyer.
THE COURT: Okay. We are not going to have any more
Page 61

78FUNWARF
testimony about the activities in Georgia from this witness.
Go ahead.
MR. WARE: Your Honor, Mr. Zitter and his clients --
THE COURT: Please. Please. Please.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
380

78FAAWAR4          Zitter - Cross
Please. Please.
MR. WARE: -- by the Georgia bankruptcy court.
THE COURT: Please. I've ruled on it. It is not
material through this witness. It might be from somebody else
but he is not involved. Go ahead.
MR. WARE: Well, your Honor, what do you mean "not
involved"? He hired the lawyer.
THE COURT: Now, you've said that three times. He did
not hire the lawyer. He referred the matter to the lawyer to
represent his clients. He did not hire the lawyer and there's
no testimony in this record to that effect.
MR. WARE: Well, let's ask him.
THE COURT: Well, that's a good idea. You already did
and he testified. Go ahead. If you want to do it again.
BY MR. WARE:
Q. Mr. Zitter, do you know Dennis Meyer?
A. Yes, I do.
Q. How do you know him?
A. We went to law school.
MR. WARE: Let him testify, your Honor.
THE COURT: He did. He's already testified.
Q. Did you contact Dennis Meyer to represent your client?
A. I contacted Dennis Meyer and asked him to represent my
clients in the bankruptcy, yes.
Q. It was in -- pursuant of the Chapter 7 bankruptcy cases in
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
381

78FAAWAR4          Zitter - Cross
Georgia?
A. There were several bankruptcy cases in Georgia. Let's
identify those. Nubia 2000.com Chapter 7, SSG Acquisition
Corp Chapter 7, Group Management Corp Chapter 7.
Q. Did you hire Mr. Meyer to represent your clients on behalf
of those three?
A. I believe that I did, yes.
Q. So you hired him?
A. I don't want to quibble with you. I recommended Mr. Meyer
to my clients to represent them and that is what happened.
Q. Did you have any communications with Mr. Meyer?
A. Yes, I communicated.
Q. What was the communication regarding?
MR. GOLDIN: Objection.
THE COURT: Overruled.
A. It was in regard to the bankruptcy proceeding.
Q. So you have knowledge of what happened in the bankruptcy
proceeding of what happened in Georgia?
A. I have some knowledge. I have knowledge based on what
Mr. Meyer told me.
Q. The lawyer you hired to represent your client, so you have
knowledge of what happened?
MR. GOLDIN: Objection on hearsay grounds.
MR. WARE: He didn't say he said he had knowledge.
MR. GOLDIN: I am objecting to the line.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
Page 62

7BFAAWAR4                     Zitter - Cross            382
1   A.  Mr. Meyer would communicate with him from time to time
2   about what was going on.
3   Q.  About what was going on in the bankruptcy proceedings in
4   Georgia?
5   A.  Absolutely.
6   Q.  So you knew a automatic stay was in effect in the
7   bankruptcy court in Georgia, didn't you?
8   A.  I also knew.
9       THE COURT:  You may answer yes or no.  You may explain
10  your answer.
11  A.  I knew that upon filing of a bankruptcy petition an
12  automatic stay goes in effect.
13  Q.  So that precluded --
14      THE COURT:  Just a second, sir.
15  A.  I also knew that in consultation with Mr. Meyer and perhaps
16  I don't remember if I did independent research on this also
17  that issue was addressed internally by our clients and by our
18  attorneys and we decided, concluded that whatever we were doing
19  was not in violation of automatic stay.
20  Q.  Right, you concluded?
21  A.  Otherwise we would --
22  Q.  You didn't -- you concluded you didn't go to the Court and
23  seek redress, but by filing a motion to lift the automatic
24  stay, did you?  Nor did you hire your client?
25  A.  I don't know.

7BFAAWAR4                     Zitter - Cross            383
1       THE COURT:  We're through with the bankruptcy court.
2       MR. WARE:  Your Honor.
3       THE COURT:  You may refer to any of the documents you
4   wish but we're through with this line of inquiry as far as his
5   knowledge of the bankruptcy proceedings which I may say --
6   well, enough said.
7       MR. WARE:  I want to take you to Government Exhibit
8   253.  Take a look at that.
9   A.  Can you tell me what it is.
10  Q.  Group Management Chapter 7?
11  A.  253, I have it.
12  Q.  What is 253?
13  A.  It's a bankruptcy petition filed by Group Management Corp
14  on December 3, 2003.
15  Q.  What does that mean when you say Chapter 7?
16  A.  I said a bankruptcy petition.
17  Q.  What does a bankruptcy petition mean?
18  A.  I don't understand the question.
19  Q.  You don't understand what is means what when a company
20  files Chapter 7 what does that mean?
21      MR. GOLDIN:  Objection.
22      THE COURT:  Sustained.
23  Q.  Do you know what it means?
24      MR. GOLDIN:  Objection.
25      THE COURT:  Sustained.

7BFAAWAR4                     Zitter - Cross            384
1   Q.  Do you know what happened when Group Management filed
2   Chapter 7 in this particular case, case number 03-83009 in the

Page 63

---

Northern District of Georgia?
3   A.  I don't know what you mean by "what happened".
4   Q.  Were you and your client stayed from any further collection
5   activity for the debts of Alpaa Capital, Aaro International,
6   Markham Holdings, Stonestreet Limited Partnership?  At the
7   month this bankruptcy was filed were you stayed from any
8   further collection activity, yes or no?
9   A.  Perhaps.  I don't know.  I don't know.
10  Q.  What does -- are you and your clients. specifically.
11  according to the Second Circuit holding level U.S.C --
12      MR. GOLDIN:  Objection.
13      THE COURT:  Sustained.
14  Q.  Mr. Zitter, are you familiar with the case of in re.
15  Crenshaw Son Month Ray Energy corp 902 F.2d 1098, 1105 Second
16  Circuit 1990?
17  A.  No, I am not.
18      MR. GOLDIN:  Objection.
19  Q.  You are not familiar with that?
20  A.  I am not.
21  Q.  Have you done any research on Section 362 Automatic Stay of
22  the Bankruptcy?
23      MR GOLDIN:  Objection.
24  A.  I know that in connection with the bankruptcy filing which

7BFAAWAR4                     Zitter - Cross            385
1   you did we were cognizant of the rules and regulations of
2   bankruptcy court.  We sought bankruptcy advice, and to the best
3   of my knowledge everything we've done in this case is
4   consistent --
5   Q.  You violate --
6       THE COURT:  Just a second.  He hasn't finished his
7   answer.
8   A.  Okay.  And as far as I know everything that we've done is
9   consistent with our understanding of the applicable rules and
10  regulations of bankruptcy court and federal court and of all
11  laws that we're aware of.
12  Q.  To your reasonable representation?
13      MR. GOLDIN:  Objection.
14      THE COURT:  Objection is sustained.
15      Ladies and gentlemen, you are free to have lunch and a
16  pleasant afternoon.  We will resume tomorrow morning at 9:30.
17  Please, don't discuss the case with anyone else.  And buy an
18  umbrella.
19      (Jury not present)
20      MR. GOLDIN:  Judge, I am just going to tell the
21  witness that he is on cross-examination.  We can't speak and he
22  is free to leave till tomorrow morning.
23      THE COURT:  Fine.  I don't know how long the cross
24  will go and nor do I know how long the redirect will go.  Is
25  the next witness the one that presents the tape problem?

7BFAAWAR4                     Zitter - Cross            386
1       MS. DOUVAS:  No, your Honor.  The next witness is
2   Kelly Gwinn from Computershare, the last witness.  The fourth
3   witness is going to be the person with the tape.
4       THE COURT:  So we're not going to have to worry about
5   that tomorrow, one assumes.
6       MS. DOUVAS:  I don't know how long this is going to
7   take.

Page 64

---

8       THE COURT:  Let's do this.  It sounds to me based on
9   what you've said we have to have a hearing with respect to --
10      THE WITNESS:  I just want to raise one point.
11  Tomorrow I cannot go past one o'clock.
12      THE COURT:  Well, we will deal with tomorrow tomorrow.
13      THE WITNESS:  Okay.
14      THE COURT:  We need a hearing, I take it.
15      MS. DOUVAS:  I don't think that we do, your Honor,
16  because I think basically this witness is just authenticating
17  by having spoken to him how many times.
18      THE COURT:  I understand.  But I am assuming that
19  Mr. Ware is going to want to cross-examine the witness on his
20  ability to identify his voice and all of that.  I don't think
21  it's appropriate before the jury.
22      MS. DOUVAS:  I think that would go though more towards
23  the weight of it.  The jury itself who's been listening to the
24  defendant's voice really can make its determination.  What is
25  being said on that tape is really limited to things like his

7BFAAWAR4                     Zitter - Cross            387
1   background and who he is and what he does.
2       THE COURT:  What is your view of this Mr. Ware?
3       MR. WARE:  Your Honor, to the extent that they are
4   going to introduce my background, that I went to such and such
5   law school, I have such and such knowledge of securities, etc.
6   I don't have any objection to that, if that is the extent of
7   the government's introduction with the information on this
8   tape.  I don't object to that but now if there is something
9   beyond that --
10      THE COURT:  Is there anything beyond that?
11      MS. DOUVAS:  He has the transcripts in front of him.
12  If he can just, if I could hand him another copy.
13      THE COURT:  All right.  Well, that may obviate the
14  problem then, perhaps, you all should talk and see if we could
15  just admit the transcript.
16      Anything else that I need to deal with?
17      MR. GOLDIN:  What is the schedule tomorrow?
18      THE COURT:  9:30.
19      MR. GOLDIN:  We're going until --
20      THE COURT:  Who knows.
21      MR. GOLDIN:  The outside possibility just for witness
22  purposes, it's possible we're going to sit a full day.
23      THE COURT:  Oh, yeah.  We will, certainly, I hope will
24  quit at 4:30, five o'clock.
25      MR. GOLDIN:  I can't remember if we had any Sabbath

7BFAAWAR4                     Zitter - Cross            388
1   observers.
2       THE COURT:  Wall, we will see what happens to Zitter
3   If he finishes, that's fine.  If he doesn't, he'll have to come
4   back.  That's all.  I think that is the solution to that
5   problem.
6       Okay.  Anything else?  Thanks.
7       (Adjourned to Friday, November 16, 2007, at 9:30 a.m.)
8
9
10
11
12

Page 65

20 Q. Turn on page 2 of this document on the second paragraph
21 where it says creditors may not take certain actions. Do you
22 see that?
23 A. Yes.
24 Q. Read that?
25 A. Creditors may not take certain actions prohibited actions

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

78GAAWAR1    Zitter - Cross

1 are listed in the bankruptcy Section 362 common examples of
2 prohibited actions include contacting the debtor by telephone,
3 mail or otherwise to demand repayment, taking actions to
4 collect property or obtain property from the debtor, repossessing
5 debtor's property, starting or continuing lawsuits or
6 foreclosures.
7 Q. After the comma read that again where it says "start "?
8 THE COURT: No. I think that's enough.
9 (Pause)
10 Q. It says starting and continuing lawsuits, doesn't it?
11 A. That's what it says.
12 Q. So that would include a lawsuit in the Southern District of
13 New York that was before Judge Sand. That would be stayed;
14 isn't that correct?
15 A. I assume so.
16 Q. So any action taken after the time of this Chapter 7 was
17 filed would be stayed; isn't that correct?
18 A. Not necessarily. It depends what happened afterwards. It
19 depends on the particular type of action. Not every action
20 against the debtor is stayed by the filing of a bankruptcy
21 petition.
22 Q. It says continuing lawsuits, so there was a lawsuit --
23 there was a case that you filed on behalf of Alpha Capital
24 against Group Management would be stayed pursuant to Section
25 362; isn't that correct?
A. A lawsuit, as I understand it, on the date a bankruptcy is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

78GAAWAR1    Zitter - Cross

1 filed a lawsuit would stayed that, however, does not prevent --
2 it doesn't prevent every action from being taken.
3 Q. But it prevents you or your client from contacting Group
4 Management attempting to collect on any prepetition judgment;
5 is that correct?
6 A. Well, I don't want to pause words with you.
7 MR. WARE: May I publish this to the jury?
8 THE COURT: Yes.
9 (Pause)
10 Q. Now, we were talking on page one where it says creditors
11 may not take certain actions; do you see that, Mr. Zitter?
12 A. Yes.
13 Q. It says the filing of the bankruptcy case automatically
14 stays certain actions against the debtor and debtor's property
15 if you attempt to collect a debtor take other action in
16 violation of bankruptcy code you may be penalized; is that
17 correct?
18 A. That is what it says.
19 Q. Look at page 2.
20 A. Yep.
21 Q. Now, at the top where it says, creditors may not take
22 certain actions prohibited collection actions are listed in
23 bankruptcy code 362 common examples of prohibited actions
24 include contacts the debtor by telephone, mail or otherwise to

Page 3

25 demand repayment taking actions to collect money or obtain

SOUTHERN DISTRICT REPORTERS, P.C
(212) 805-0300

78GAAWAR1    Zitter - Cross

1 property from the debtor, repossessing the debtors property,
2 starting or continuing lawsuits or foreclosure; you see that,
3 right?
4 A. Yes, I do.
5 Q. So you and your clients at the moment this case was filed
6 would be governed by Bankruptcy Code Section 362, isn't that
7 correct?
8 A. Well, all creditors of Group Management Corp would be
9 governed by bankruptcy code.
10 Q. Which would be Amro Capital, Stonestreet Capital, Markham
11 Holding and Alpha Capital?
12 A. Correct.
13 Q. So the moment that case was filed they could no longer
14 contact the debtor by telephone, mail or otherwise or take any
15 actions to collect money or other property from the debtor;
16 isn't that correct? Yes or no, isn't that correct?
17 A. Yes, it's correct, but there are exceptions.
18 Q. Right. The exceptions are if you petition the bankruptcy
19 court to lift the automatic stay, isn't that correct, that's
20 the exception?
21 A. That's one exception. There are others.
22 Q. Okay. But prior to doing any action you must petition the
23 bankruptcy court before you take any action to collect any
24 property of the debtor or money of the debtor; isn't that
25 correct? And all lawsuits are stayed; isn't that correct?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

78GAAWAR1    Zitter - Cross

MR. GOLDIN: Objection.
THE COURT: Sustained.
1 Q. So the case you had before Judge Sand with the civil
2 plaintiffs from the date this case was filed would have been
3 stayed; isn't that correct?
4 MR. GOLDIN: Objection.
5 THE COURT: Overruled.
6 A. I'm sorry. Could I hear the question again?
7 Q. The case that you filed on behalf of civil plaintiffs
8 against Group Management Corporation where Judge Sand was the
9 judge the collection activity would have been stayed, in that
10 case the judgment of November 25, 2002 would have been stayed;
11 isn't that correct?
12 A. As of the date, as I understand it, as of the date of the
13 filing I believe that's correct, yes.
14 Q. So neither you nor your clients could take any actions
15 pursuant to the judgment of November 25, 2002?
16 A. No, that's not correct. It depends what happened
17 afterwards. It depends what actions we were trying to take.
18 Q. If you were trying to collect money or get property of
19 debtor, meaning, aversion notices which was a collection of the
20 judgment November 25, 2002, at that point you were trying to
21 pursuant to Section 362; isn't that correct?
22 A. Yes. But okay, I don't recall cause it's been a while ago.
23 What happened in the bankruptcy proceeding thereafter I think

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

78GAAWAR1    Zitter - Cross

Page 4

1 it was dismissed at some point, at which point, obviously,
2 Section 362 wouldn't apply. And I know that we consulted with
3 bankruptcy counsel before we took any actions with regard to
4 enforcement or any actions with regard to the collection
5 notices. And we were not violating Section 362 or any other
6 aspect of the bankruptcy act, bankruptcy code, I guess.
7 Q. Mr. Zitter, what I've shown you is what's been marked as
8 Defense Exhibit P. Could you take a look at that?
9 A. Yes.
10 Q. Now, you've testified that you hired bankruptcy counsel in
11 Chapter 7 against Group Management to take certain action?
12 A. Yes.
13 Q. That counsel was -- what was the name of counsel?
14 A. Dennis Meyer.
15 Q. Turn to page number 3 of this document, Mr. Zitter  Again,
16 don't read from. Just turn to that page. It's not in evidence
17 yet.
18 (Pause)
19 Q. Are you there, sir?
20 A. Yes.
21 Q. Is this a document drafted by Mr. Meyer filed in the
22 Chapter 7 Group Management Corp?
23 A. I assume, sir.
24 MR. GOLDIN: We have a 403 concern. In connection
25 with Defense Exhibit Q and Defense Exhibit P they relate to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

78GAAWAR1    Zitter - Cross

1 different bankruptcies.
2 MR. WARE: They do  They were two different
3 bankruptcies. They enter the exhibit yesterday Chapter 7 and
4 Chapter 11. This is the Chapter 11 Defense Exhibit number 7
5 which the defendant testified he hired Dennis Meyer
6 Q  Your testimony is you hired Dennis Meyer to represent the
7 creditors in the Chapter 11 bankruptcy case?
8 A. Correct.
9 Q. Is that correct?
10 A. Yes, it's correct.
11 Q. And you had communications wit Mr. Meyer during the
12 Chapter 11 bankruptcy?
13 A. Yes, I did.
14 Q. You talked about the strategies and the pleadings that
15 Mr. Meyer was going to file on behalf of the creditors?
16 A. I don't remember the conversations but that's certainly
17 reasonable. I assume, I did.
18 Q. He told you the strategy that he was going to apply to the
19 Chapter 11 bankruptcy --
20 A. I'm sure that he did.
21 Q. Now, turn to page 2 of that document, Mr. Zitter.
22 A. Yes.
23 (Pause)
24 MR. WARE: Your Honor, at this time defense moves
25 Defendant Exhibit P into evidence

SOUTHERN DISTRICT REPORTERS, P.C
(212) 805-0300

78GAAWAR1    Zitter - Cross

MR. GOLDIN: No objection.
THE COURT: Admitted.
1 Q. Are you on page two, Mr. Zitter?
2 A. Yes, I am.
3 Q. Could you start reading where it says "copies"?

Page 5

6 A. I'm sorry?
7 Q. Where it says copy?
8 A. The first line?
9 Q. Yes, sir.
10 A. Copies of the order and judgment and the contempt order are
11 attached hereto as Exhibits A and B respectively. Once
12 obligations under a contract have been reduced to judgment
13 there is no executory contract for a debtor to assume or
14 reject.
15     I am not going to read the citations of the cases.
16 According, emergency motion of Group Management must
17 be denied because of as a matter of law there is no executory
18 contract for Group Management to reject. The response to file
19 the emergency motion to dismiss or in the alternative for
20 relief from the automatic stay and request for hearing and a
21 brief in support thereof which fully describe the facts,
22 circumstances and conduct of the debtor and its officers and
23 directors relating to the filing of both this case and the
24 debtors' emergency motion. Respondent's motion should be heard
25 prior to consideration of the debtor's rejection motion.

SOUTHERN DISTRICT REPORTERS, P.C
(212) 805-0300

78GAAWAR1    Zitter - Cross

MR. WARE: Okay. Move back up to the top. We are
going to publish page two to the jury.
1 Q. Now, starting on the second sentence, read that one more
2 time where it says "once", the sentence once starts.
3 A. Once the obligations under a contract have been reduced to
4 judgment there is no executory contractor for a debtor to
5 assume or reject.
6 Q. Stop right there  The executory contract they are talking
7 about are the notes and the subscription agreement that when
8 your clients loaned Group Management the one million point
9 dollar; isn't that correct?
10 A. The truth is I don't know because this refers to -- this is
11 an answer to a motion which you filed. So whatever you
12 referred to in this as executory contracts would be what
13 they're responding to. I don't have that in front of me but
14 you are probably right.
15 Q. A subscription agreement is an executory contract?
16 A. It can be.
17 Q. The conversion notes were executory contracts?
18 A. It depends if they been performed or not.
19 Q. Let's look at Government Exhibit number one which was
20 introduced yesterday. Convertible notes?
21 A. Yes, number one.
22 Q. Government Exhibit number 1.
23 A. I have two, three and four in front of me  I'm looking at

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

78GAAWAR1    Zitter - Cross

two.
1 Q. Two. That's fine.
2 A. Okay.
3 Q. That has the convertible note from Amro International?
4 A. That is correct, the convertible note, correct.
5 Q. Is that an executory contract?
6 MR. GOLDIN: Objection.
7 THE COURT: Sustained.
8 Q. Do you know if it is, Mr. Zitter?
9 A. Sorry.

Page 6

8/27/2012

11   MR. GOLDIN: Objection.
12   THE COURT: Sustained.
13   Q. Mr. Zitter, what is your knowledge of and preparation of
14   Government Exhibit number two?
15   A. My knowledge of the preparation of Exhibit No. two? I have
16   no knowledge. I did not participate in the preparation.
17   Q. Did you file a lawsuit before Judge Sand pursuant to
18   Government Exhibit number two?
19   A. I don't know what you mean. I filed a lawsuit in front of
20   Judge Sand and part of the reason we filed it is because you
21   didn't deliver the -- Group Management didn't deliver the stock
22   which had it to deliver pursuant to the conversion rights in
23   the --
24   Q. The conversion note, meaning, Government Exhibit number
25   two?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

404

7BGAAWAR1            Zitter - Cross
1   A. Yes
2   Q. Your lawsuit before Judge Sand was based upon Group
3   Management's default on Government Exhibits one, two, three and
4   four, the convertible notes; is that correct?
5   A. That is correct.
6   Q. And Government Exhibit number five, do you have that?
7   A. Tell me what it is, please. These are not in order.
8   MS. DOUVAS: Your Honor, may I approach?
9   THE COURT: Yes.
10   A. I have number five in front of me.
11   Q. What is Government Exhibit number five?
12   A. That appears to be the subscription agreement pursuant to
13   which my four clients purchased the convertible notice.
14   Q. Isn't that -- Government Exhibit number five is the
15   subscription agreement which you reference in your lawsuit
16   before Judge Sand?
17   A. I'm sure I did, yes.
18   Q. Government Exhibits one, two, three and four and number
19   five were attached to your complaint on behalf of the creditors
20   against Group Management?
21   A. I don't have a specific recollection, but I am sure they
22   were.
23   Q. So these two contracts at the time you filed your lawsuit
24   were executory contracts because you claim the obligations had
25   not been performed; isn't that correct?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

405

7BGAAWAR1            Zitter - Cross
1   MR. GOLDIN: Objection.
2   THE COURT: Sustained.
3   Q. Had these obligations of those contracts been performed at
4   that time, yes or no, had the obligations of --
5   A. Group Management --
6   Q. Let me finish the question. Had the obligations contained
7   within Government Exhibits one, two, three, four and five been
8   performed at the time you filed the civil case against the
9   plaintiffs?
10   A. Let's separate --
11   MR. GOLDIN: Objection; "against the plaintiffs".
12   Q. Excuse me. Against the defendants Group Management?
13   A. Could we separate one, two, three and four separately from
14   five?
15   Q. Okay. Before you answer, were there obligations contained

Page 7

16   in Government Exhibits one, two, three and four satisfied on
17   the date you filed your complaint before Judge Sand?
18   A. No. Group Management --
19   Q. Stop.
20   A. -- had not complied its obligation to deliver stock
21   pursuant to conversion notices when I file the lawsuit in front
22   of Judge Sand.
23   Q. They were executory contracts?
24   MR. GOLDIN: Objection.
25   THE COURT: Sustained.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

406

7BGAAWAR1            Zitter - Cross
1   Q. Do you know what an executory contract is?
2   MR. GOLDIN: Objection.
3   THE COURT: Sustained.
4   Q. Let's look at Government Exhibit No. 5 which is the
5   subscription agreement.
6   A. Yes.
7   Q. The date you filed your case on behalf of the plaintiffs
8   had the obligations contained within Government Exhibit No. 5
9   been performed?
10   MR. GOLDIN: Asked and answered.
11   A. What was your answer, Mr. Zitter?
12   THE COURT: No. No. Another question, please.
13   MR. WARE: Your Honor, I don't know what Mr. Zitter's
14   answer was, was it yes or no?
15   THE COURT: Another question, please.
16   MR. WARE: Could the witness say what his answer was?
17   THE COURT: Another question, please.
18   Q. Mr. Zitter what was your answer?
19   MR. GOLDIN: Objection.
20   THE COURT: Sustained.
21   Q. Was your answer no or yes, Mr. Zitter?
22   MR. GOLDIN: Objection.
23   THE COURT: Sustained.
24   Q. Mr. Zitter, if the obligations -- I am assuming your answer

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

407

7BGAAWAR1            Zitter - Cross
1   was "no"?
2   MR. GOLDIN: Objection.
3   Q. Obligations had been performed; is that correct?
4   MR. GOLDIN: Objection.
5   THE COURT: Overruled.
6   A. In truth, I don't know whether all of the obligation --
7   Q. You were the lawyer who was handling the lawsuit. Who
8   would know? You filed the lawsuit. You represented Alpha
9   Capital and the plaintiffs in the case before Judge Sand.
10   There were no other attorneys but you on that case.
11   MR. GOLDIN: Objection; compound.
12   THE COURT: Yes. Sustained.
13   Q. Were there any other lawyers other than you representing
14   the plaintiffs in the case before Judge Sand?
15   A. No.
16   Q. So you were the only lawyer in that case; isn't that
17   correct?
18   A. Correct.
19   Q. So you would be responsible for knowing whether or not the
20   obligations were satisfied; isn't that correct?

Page 8

21   A. Correct.
22   Q. So, when Group Management filed the Chapter 11 case in
23   Georgia the obligation that you filed your lawsuit before Judge
24   Sand had not been performed; isn't that correct?
25   A. We're mixing times up. I filed the lawsuit before you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

408

7BGAAWAR1            Zitter - Cross
1   filed.
2   Q. Okay. I withdraw that question. Let's go back to November
3   25, 2002.
4   A. Okay.
5   Q. Do you recall that?
6   A. Yes. That is the date of Judge Sand's order granting
7   summary judgment.
8   Q. Government Exhibit number 7. Do you have Government
9   Exhibit number 7?
10   A. Is that the order or is that the decision?
11   Q. The order and judgment, Government Exhibit number 7.
12   A. Yes, I have it.
13   Q. Take a look at it.
14   A. I have it, yes.
15   Q. On November 25, 2002, had the obligation in Government
16   Exhibit Nos. one, two, three, four and five been satisfied by
17   the defendant Group Management Corporation, yes or no?
18   A. I can't answer that yes or no, okay
19   Q. How would you answer it?
20   A. Because the documents have multiple obligations. Some may
21   be performed and some may not have been performed. So, yes, do
22   that in a general universal way.
23   Q. Had the money owed to your clients Amru Capital,
24   Stonestreet, Markham and Alpha Capital, had that obligation
25   been satisfied, the money owed?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

409

7BGAAWAR1            Zitter - Cross
1   A. On November 25, 2002?
2   Q. Yes.
3   A. Absolutely not   Judge Sand gave us a judgment for the
4   money.
5   Q. So, on that date Government Exhibits one, two, three and
6   four were executory contracts; isn't that correct?
7   MR. GOLDIN: Objection.
8   THE COURT: Sustained.
9   Q. The money obligations?
10   THE COURT: Sustained.
11   Q. Government Exhibit number 5 on November, which is the
12   subscription agreement?
13   A. Yes, I have it.
14   Q. On November 25, 2002 -- you have number five?
15   A. Yes, I do.
16   Q. Is the subscription agreement?
17   A. Yes, it is.
18   Q. That governed all four of the convertible notes; is that
19   correct?
20   A. I'd rather say it is the agreement pursuant to which my
21   client's purchased the convertible notes.
22   Q. Which were Government Exhibits one, two, three and four.
23   A. Right.

Page 9

8/27/2012

### Point - 8

District Judge Sweet's appointed stand-by trial counsel (James H. Roth, Esq.) and appointed stand-by sentencing counsel (Lisa Scolari, Esq.) both had actual conflicts of interest in representing Ware and violated Ware's Sixth Amendment right to conflict-free counsel, appointed or retained.

### STANDARD OF REVIEW

Whether a defendant's representation violates the Sixth Amendment right to effectice assistance of counsel is a mixed question of law and fact that is reviewed de novo. U.S. v. Schwarz, 283 F. 3d 76, 90-91 (2d Cir. 2002).

### A.

### ARGUMENT

### I.

Introduction:

Ware retained the law firm of Garland, Samuel & Loeb, P.C to represent him at pre-trial, and trial in U.S. v. Ware, 04-CR-1224(RWS). During the course of the representation Ware requested that GSL-ATL file numerous motions which included a motion to dismiss the indictment for lack of subject-matter jurisdiction, and a motion to dismiss where the plaintiffs in 02-CV-2219 were statutory underwriters.

However, GSL-ATL refused to file any motions on Ware's behalf, and refused to conduct any pre-trial discovery, and refused to contact any witnesses, stating, "it is best to go ahead and plead guilty. We can get you a good plea. We have talked to AUSA Goldin, and he will accept a plea to a misdemeanor, but you will have to give up your law license."

Ware refused to accept GSL-ATL ridiculous suggestion as a trial strategy, and indicated his displeasure in the ineffective representation, and requested a return of his retainer.

Rather than return Ware's retainer, Edward Garland, Esq. hired, without Ware's knowledge or consent, David Levitt, Esq. to allegedly represent Ware.

Ware informed Garland that he was not familiar with Levitt, and "just wanted a return of the retainer." Garland refused to return Ware's retainer and suggested that levitt practiced in New York before, and "knew the people up there."

Ware meet with Levitt and shared confidential trial strategies, and tactics regarding a defense of 04-CR-1224(RWS). Levitt made detailed notes of the confidential information Ware conveyed regarding the correct trial strategies including moving for a Kastigar hearing once the government provided discovery.

After more than 30 days of review, Levitt informed Ware that the case was hopeless, and the "best thing to do was plead guilty and accept the deal Garland had worked out."

Ware refused the suggestion to plead guilty and again requested a return of his retainer from Garland, who again adamantly refused, stating: "we got you a good deal, you better take it. You can't go against Judge Sand and his people up there."

Ware fired GSL-ATL and entered his appearance pro se and proceeded to trial. On or about April 17, 2007 (#23) Ware entered his notice of appearance with the district court, and filed discovery motions.

On or about October 22, 2007 District Judge Robert W. Sweet releaved Nancy Ennis, Esq. and **hand picked** James H. Roth, Esq., a **real estate lawyer,** as Ware's stand-by **trial** counsel (#38): Sweet had his man in place to transmit Ware's confidential **trial** strategies to the prosecution and directly to him (Sweet).

Ware was immediately suspicious of Roth, and requested Roth present his credentials. Roth refused to supply his CV, and refused to state whether or not he had ever represented any of the plaintiffs in any matter.

Ware performed a background check on Levitt, Roth, and Michael F. Bachner, Esq. Ware's retained counsel in 05-CR-1115(WHP) who was referred ("steered to Ware") by Edward Garland, Esq., and Ware had to terminate for refusing to file the Kordel pleadings in 1115(WHP).

A background check revealed that Levitt, Bachner, and Isabella Kirschner, Esq., all work together at the New York Federal Defender's Office, and all regularly accepted CJA cases as a majority of their legal practice. Kirschner, some how was appointed to represent Ware at the arrainment in 05-CR-1115(WHP) once Garland refused to accompany Ware to the arrainment.

Thus somehow, two of the lawyers Garland provided for Ware: Bachner and Levitt refused to effectively represent Ware, and had to be terminated for refusing to file potentially dispositive pleadings (Kordel, and Kastigar) of relevant trial issue; and three of the lawyers that represented Ware worked together at the Federal Public Defenders Office.

A statistical impossibility that each of the lawyers were "independently" assigned to Ware without prior knowledge of the others involvement.

Thus, the overriding question: Is Edward T.M. Garland a government agent steering clients to selected lawyers with government affiliations for "favors" on significant cases?

In 05-CR-1115(WHP) Ware terminated Bachner after Bachner refused to file the Kordel pleadings (##31, 32, and 40). Bachner stated to Ware: "I cannot oppose the USAO and the SEC, they would punish me if I did that." In 1115(WHP) District Judge Pauley 'hand-picked' Gary G. Becker, Esq., as appointed stand-by trial counsel, and refused to allow Ware to hire his own stand-by counsel.

Becker sat at the defense counsel table throughout trial in 1115(WHP) and stopped the trial during the **direct** examination of the government's last witness (Maria Font), to suggest that Ware wanted a mistrial, to relieve the government of moving for the mistrial and double jeopardy attaching.

There was no "manifest necessity" to stop 1115(WHP) during the direct examination of Font: Becker in prearranged fashion stopped the trial to prevent Ware from moving for a directed verdict of acquittal after Font completed her testimony.

Roth sat at the defense counsel's table throughout the trial and had access to Ware's confidential trial strategies. Roth had informed Ware that he would serve a subpoena on District Judge Sand, but once Ware cornered Roth regarding the subpoena, Roth stated, "I don't think it's wise to do that." Roth refused to serve the subpoena on Sand.

During trial Roth repeatedly questioned Ware on who his witnesses were going to be and that he would review any questions Ware proposed to ask witnesses on cross-examination and direct-examnination. Ware provide Roth with detailed summary of his proposed cross-examination of Rabinowitz and Zitter which Ware believes Roth provided the same to the prosecution and to Sweet, thus the numerous objections to Ware's questions of Zitter regarding whether or not GX 1-4, 5 were executory contracts, and Rabinowitz on GX-5, ¶2(m), Tr. 227-30.

It is Ware's position in this issue that he was unrepresented at "critical" stages of the criminal justice process, and when he was represented, his counsel whether appointed or retained labored under an "actual" conflict of interest, and their economic self-interest, caused a "divergence of interests" between Ware's expected duty of trust and loyalty, and their personal, and professional obligations: the counsel were for Sixth Amendment purposes not conflict free, and Ware's rights were substantially adversely affected.

## II.

## ANALYSIS

### I.

A defendant's Sixth Amendment right to effective assistance includes the right to representation by conflict-free counsel. U.S v. Schwarz, 283 F.3d 76, 90 (2d Cir. 2002). Wood v. Georgia, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is correlative right to representation that is free from conflicts of interest.")

Generally a defendant is required to show prejudice, however, when counsel had an actual conflict of interest the prejudice requirement is presumed. Strickland v. Washington, 466 U.S. 668, 692 (1984).

A defendant need only establish, if counsel had an actual conflict of interest, the actual conflict of interest adversely affected his counsel's performance. Cuyler v.Sullivan, 446 U.S. 335, 348 (1980).

(i)     "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interest diverge with respect to a material factual or legal issue or a course of action." Schwarz, 283 F.3d at 90 citing Winkler v. Keane, 7 F. 3d 304, 307 (2d Cir. 1993) (internal quotation marks omitted.)

To prevail on the conflict of interest claim Ware must show that the actual conflict of interest of his counsels resulted in a "lapse in representation" resulting from the conflict. Id at 92, (citations omitted.).

(ii) To prove a lapse in representation:

> "[A] defendant must demonstrate that some plausible alternative
> defense strategy or tactic might have been pursued, and that the
> alternative defense was inherently in conflict with or not
> undertaken due to the attorney's other loyalties or interests
> [including self-interests]." Id. at 92 (quotation omitted).

Ware is not required to show that the lapse in representation by his
appointed or retained counsels "affected the outcome of the trial" or that,
but for the conflict, counsels' conduct of the trial would have been different.

The foregone strategy or tactic is not even subject to a requirement of
reasonableness. Id. at 92.

This Court in Schwarz, 283 F.3d at 92 in regard to the requirement of
reasonableness: "the test is a strict one because a defendant has a right to
an attorney who can make strategic and tactical choices free from any conflict
of [self-] interest. An attorney who is prevented from pursuing a strategy
or tactic because of the canons of ethics is hardly an objective judge of
whether that strategy or tactic is sound trial practice."

In Winkler, 7 F. 3d at 309 this Court adopted the test for plausible
alternative strategies announced by the court in U.S. v. Gambino, 864 F. 2d 1064,
1071 (3d Cir. 1988) accord U.S. v. Fahey , 769 F. 2d 829, 836 (1st. Cir. 1985),
i.e., the "sufficient substance" test, i.e., did the foregone strategies or
tactics, "possess sufficient substance to be viable alternatives," even if the
strategies or tactics are likely to be unsuccessful.

A lapse in representation can be demonstrated not only by what the attorney
does, "but by what he refrains from doing." Gambino, 864 F. 2d at 1070.

(iii) In U.S. v. Iorizzo, 786 F. 2d 52, 57-58 (2d Cir. 1986) this Court reversed
a trial court's ruling there was not an actual conflict of interest involving
an example of "foregone strategies and tactics" by defense counsel due to
self-interest in his "reputation and employment". Id. at 58.

This Court reasoned that defense counsel's decision to "forgo inquiry was
thus made solely to protect the interests of defense counsel." (emphasis mine).
"Supreme Court decisions require us to **reverse** the convictions in such circumstances."
Id.

Implicit in this Court's reasoning is that a defense counsel's loyalty is to the client and not to his "'personal or economic self-interests', and [i]n those circumstances, [Ware's appointed and retained] counsel breach[ed] the[ir] duty of loyalty [to Ware to pursue all plausible alternatives]." Id. at 58., accordingly the case was reversed.

## II.

Ware's retained counsel, Garland and Levitt both failed to undertake any defense strategies in Ware's defense. Not one motion was filed nor was a proposed trial strategy suggested other than Levitt's statement: "the best thing to do was to plead guilty and accept the deal Garland had worked out."

Ware summarily rejected Garland' conflicted strategy which was proposed in violation of Garland's duty of loyalty to Ware to pursue the plausible alternative strategy of a defense based on the 15 U.S.C. §77b(a)(11) and (12) status of the plaintiffs in 02-CV-2219(LBS) which the plaintiffs admitted in their complaint (#1) at ¶¶10-20, and District Judge Sand also admitted at (#50) the O&M at pages 2-5, the law of the case.

(i)  The above strategies are not only, · "plausible alternative strategies and tactics" but the evidence overwhelmingly supported a defense based on this strategy.  But for Garland's extreme "self-interest" he refrained from pursuing 'plausible alternative strategies and tactics solely to protect 'his reputation and employment'."

Conflict-free counsel, counsel who was not concerned with whether or not Judge Sand was implicted in the RICO scam run in the 02-CV-2219(LBS) litigation, would have pursued all strategies and tactics linking Judge Sand to the Badian Gang and the fugitive Thomas Badian, convicted felon (Edward Grushko, Esq.), and the defense of IVG/GPMT by the law firm of Prokauser & Rose, LLP's lawyer, Thomas V. Sjoblom, Esq., who it appears labored under a conflict of interest in representing IVG/GPMT in 2219(LBS) due to per se and actual conflict of interest, i.e., actually involvement with Judge Sand in the criminal activities of Thomas Badian, Kenneth A. Zitter, Esq., and Edward Grushko, Esq.

Garland's self-interest as a government agent might have come out at trial had Garland's counsel been unbiased (protection of his economic self-interest of referrals based on his status as a government agent posing as a criminal defense lawyer) to Ware to seek a defense of Judge Sand criminal involvement with the plaintiffs.and take the issue to a jury.

Garland was conflicted, actual conflict where his current and future employment as a government agent depended entirely on his "throwing" certain cases to the government in return for the government "throwing" certain cases to Garland to enhance his reputation as a competent criminal defense lawyer.

Thus, Garland's self-interests solely determined the plausible alternative defense strategies and tactics suggested to Ware in 04-CR-1224(RWS): Garland was ineffective for the purposes of the Sixth Amendment, and Ware was unrepresented at "critical" stages of the criminal justice process, where Garland's and Ware's interests diverged on a legal or factual issue and a course of action: seek a trial by jury.

Garland could not advance a defense where he would implicate a senior District Court Judge in a criminal conspiracy, and maintain his covert undercover status in the good graces of the United States Department of Justice, i.e., Garland's livelihood depended on him advising Ware to accept the guilty plea.

(ii)  This Court in U.S. v. Fulton, 5 F. 3d 605, 610-11 (2d Cir. 1993) ruled a per se conflict of interest exist where the defense counsel is implicated in the same or similar criminal activity as the client. Id. at 609-10, citing U.S. v. Cancilla, 725 F.2d 867, 870 (2d Cir. 1984) (counsel implicated in crimes defendant was charged with had a per se conflict of interest).

This Court reasoned Id. at 870, "What could be more of a conflict [for a defense lawyer] than a concern of getting oneself into trouble with criminal law enforcement authorities [(USAO and the SEC)]." This Court went on to reason, Id. at 870, "a vigorous defense [by Garland, Arora, or Levitt might blow Garland's cover] might cause the court or government to inquire into [the defense lawyer's background--the same as the USAO did to Ware for vigorously defending IVG/GPMT] and learn of Garland's [and Bachner's and Sjoblom's] criminal activity."

Thus, in this case in 2219(LBS) Sjoblom and Prokauser & Rose, LLP had an actual conflict of interest (economic self-interest) and failed to effectively represent IVG/GPMT in the proceedings in 2219(LBS) and perpetrated a fraud on the court; and Garland's actual conflict of interest of self-interest to preserve his covert status as an undercover government agent posing as a criminal defense lawyer: an actual conflict of interest which Ware was unaware and did not waive.

Accordingly, this Court must vacate and remand to the district court to hold a Curcio hearing where Garland, Arora, and Levitt must come forth and give sworn testimony of their involvement in 04-CR-1224(RWS) as defense counsel.

Garland referred Ware to another covert government agent, Michael F. Bachner, Esq., in U.S. v. Ware, 05-CR-1115(WHP) who Ware retained for presentation at trial in 1115(WHP).

Bachner betrayed Ware's confidential information and conveyed confidential trial strategies and tactics to U.S. Attorney Michael J. Garcia and AUSA Alexander H. Southwell, and AUSA Nicholas S. Goldin, causing the indictment to be superceded in 1115(WHP) as a result of Ware confiding in Bachner, that "the CEO for INZS will testified for me that there were no false or fraudulent information in any press release of INZS."

Bachner, an **undercover government agent** transmitted Ware's confidential trial strategies to the USAO for current and future consideration in Bachner's cases before the USAO-SDNY and the SEC, i.e., Bachner' economic self-interest overrode his duty of loyalty and trust to Ware, and Ware's and Bachner's interested diverged on a factual and legal issue as well as a course of action (filing the Kordel pleadings alleging the criminal misconduct of the USAO-SDNY and the SEC in the Las Vegas Litig.), Schwarz, 283 F.3d at 96:

> "Fulton's rationale with respect to when an attorney's [Bachner's and Garland's] self-interest renders a conflict unwaivable ... was in conflict not only with [their] ethical obligations to [Ware] but also with [their] own substantial self-interest in the [economics of operating as an undercover agent posing as a criminal defense lawyer.]"

Thus, this Court ruled that "[Bachner's and Garland's] conflict so permeated the defense that no meaningful waiver could be obtained."

(iv)  Therefore, because Garland and Bachner were functioning as a single entity: a law firm composed of undercover government agents (SAUSAs Attorneys at Law), both Bachner's and Garland's representation of Ware in 1115(WHP) and 1224(RWS) was an unwaivable actual conflict of interest.

(iii) Unwaivable where Garland and Bachner represented both Ware and the AUSA in the same case without disclosing the dual representation to Ware, an actual conflict of interest, Fulton, 5 F.3d at 613, and refused to present a "particular defense", Williams v. Meachum, 948 F. 2d 863, 867 (2d Cir. 1991) (defense counsel was conflicted from presenting a particular defense which could have aided the defendant) due to representation of the plaintiff and defendant in the same case, without informing Ware of such. Ware did not knowingly and intelligently waive the actual conflict between Garland interests and Ware's interests, remand for a Curcio hearing is required.

## III.

Are Kenneth A. Zitter, Esq., Edward Grushko, Esq., and Barbara R. Mittman, Esq. Operating as undercover government agents extorting small publicly traded companies?

### A.

A series of foolish and questionable orders have been entered in this case regarding Ware's Motion to Dismiss the Indictment and the Arrest of Numerous Persons. This Court, in three risable orders ruled the "law of the case doctrine" prohibited the Court from dismissing the indictment and issuing a mandate to a U.S. Magistrate Judge for the arrest of the persons named in Ware's motion.

Hence, the ultimate question is: Is the United States Court of Appeals for the Second Circuit involved in a criminal conspiracy to extort small publicly traded companies using criminals (Edward Grushko, Esq.--convicted felon for conspiracy to commit securities fraud in Las Vegas 1991, the same district as District Judge Kent J. Dawson, and the venue of the fraudulent SEC Las Vegas Litig. where Ware was immunized by the SEC and USAO-SDNY and then presented the immunized testimony and evidence to a grand jury securing an indictment in 05-CR-1115(WHP)); Thomas Badian, (currently a fugitive from indictment from the SDNY for conspiracy to commit securities fraud); Michael F. Bachner, Esq. (sued by his client Donald Adamson in Donald Adamson v. Michael F. Bachner, (SDNY) for fraud, collusion, breach of fiduciary duty in representing him before the SEC and NASD); Nathan Landenberg, Esq. (Ari Rabinowitz testified the money for the RICO scam flowed through Landenberg's escrow account, Tr. 218-19).

Therefore, taking Bachner's, bizarre reasons for not filing Ware's Kordel pleadings in 1115(WHP): "If I did that the USAO and the SEC would punish me," with Garland's equally bizarre conduct attempting to have Ware plead guilty to conduct that is not criminal, claiming: "You [Ware] can't go against Judge Sand and his people up there.": Comparing the lawyers' comments with District Judge Pauley's risable comments in (#35) the Barasch Bribe Order in 1115(WHP): "there is no authority for Mr. Ware's proposition that the government was required to give him notice of the imminent criminal proceeding in the SDNY ... ." (paraphrased), a disinterested unbiased observer would ask the question: What is the connection between these criminals, and why would District Judge Sand have Ware arrested for not issuing fraudulent Rule 144(k) legal opinions to §2(a)(11), (12) statutory underwriters and dealers? A reasonable person would want to know the answer.

## IV.

Ware filed in 1224(RWS) (##84, 95) regarding the bizzare conduct and behavior of appointed sentencing counsel, Lisa Scolari, Esq. apparently acting on behalf of District Judge Robert W. Sweet.

Ware detailed that Scolari visited him on or about December 18, 2008 pledging her assistance with Ware at sentencing regarding §3553(a) factors, and moreover, pledging her assistance in providing Ware with certain documents needed for the    sentencing hearing.

After receiving no reply to the December 18, 2008 letter, Ware again contacted Scolari inquiring whether or not she intended to assist Ware at the sentencing hearing, and if so, please immediately contact Ware.

Scolari, unexplained, did not reply to either letter of Ware. On January 27, 2009 Scolari approached Ware in the attorney's visiting room at the district court before the sentencing scheduled for 4:30 p.m. that day.

Scolari stated that District Judge Sweet had a proposal for Ware stating: "If you agree to plead mental insanity, Judge Sweet said, 'he won't sentence you so harshly, but if you don't, he will sentence you to the maximum.' "

Scolari suggested that Ware had instances of mental illness in his family, and a psychiatric evaluation would be helpful.

Moreover, Scolari stated that Judge Sweet had said, " 'you had to be mentally ill to think that you were not going to issue the legal opinions [to Judge Sand's clients, the plaintiffs in 02-CV-2219(LBS)] and get away with it.' "

Ware declined Scolari's invitation to plead mental insanity, and at the 4:30 p.m. sentencing hearing Sweet sentenced Ware to 97 months and a fine of $12,500 for not issuing fraudulent Rule 144(k) legal opinions to statutory underwriters and dealers, a criminal offense, Spectrum, supra, 489 F.2d at 540-41 (attorney liable as aider and abettors for issuing improper legal opinion).

Scolari breached her duty of loyalty and trust to Ware by not advocating on Ware's behalf, and acting on divided loyalties: loyalty to Ware and to Sweet acting on behlaf of the criminal conspiracy.

Scolari's actions and refraining from action, i.e., a course of action, caused her interests and Ware's interests to diverge, and Ware's was without conflict-free stand-by counsel at sentencing. Scolari actually got up and walked out the sentencing hearing leaving Ware unrepresented by any stand-by counsel. Sweet refused to stop the sentencing hearing, and continued on his mission to violate Ware's civil rights.

# B.

## CONCLUSION

Ware has argued and proved by overwhelming evidence, his retained and appointed counsel labored under an actual conflict of interest at "critical" stages of the criminal justice process.

Garland, a covert government agent posing as an attorney, refused to mount any defense on Ware's behalf, instead pressured Ware to plead guilty in violation of the Court's ruling in Hall v. U.S., 371 F. 3d 969, 974 (7th Cir. 2004)("a defendant can establish ineffective assistance of counsel by showing that his attorney pressured him to plead guilty because of the attorney's conflict of interest." citing Daniels v. U.S., 54 F. 3d 290, 295 (7th Cir. 1995).

Both Garland and Levitt who Garland contracted to represent Ware, without Ware's knowledge or consent, also pressured Ware to plead guilty to conduct which is in no way possible criminal conduct.

Looking no further than this Court's holding in Spectrum, supra, 489 F. 2d at 540-41, this Court made plain that an attorney issuing a fraudulent legal opinion would be liable for "aiding and abetting" and possibly as an underwriter.

Ware's interests diverged from Garland's interest to maintain his undercover status, and prevented Garland and Levitt from undertaking all plausible strategies and tactics in Ware's behalf, causing a "lapse in the representation which adversely affected Garland's and Levitt's performance."

(ii) Ware did not waive conflict-free counsel, and the conflict of Garland's self-interest to maintain his undercover status as a government agent was a nonwaivable actual conflict of interests.

Ware certainly did not "knowingly" and intelligently" waive Garland's conflict as a government agent, because it was only after trial after an intensive background search of Garland, Bachner, Levitt, Sweet, Pauley, Sand, Dawson, and Arora, did the latent undercover government agent status of Garland become known.

Scolari, acting in collusion with Sweet, breached her duty of loyalty and trust to Ware, and her and Ware's interests diverged, causing a lapse in the representation: Ware was unable to access the documents requested from Scolari, and Ware's interests were adversely affected by Scolari's actual conflict of interest.

## REQUEST FOR RELIEF.

Ware request   that this Court vacate and set aside the conviction and sentence, where Ware's retained and appointed counsels had   actual conflicts of interest and promoted their economic self-interest ahead of Ware's duty of loyalty and duty of trust;

(ii)   or remand to the district court with instructions to vacate the judgment of conviction and sentence and hold a Curcio hearing forthwith, i.e., and grant Ware bail on his personal recognizance.

## U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:05-cr-01115-WHP-1

Case title: USA v. Ware et al
Magistrate judge case number: 1:05-mj-01630-UA

Date Filed: 10/26/2005
Date Terminated: 10/30/2007

Assigned to: Judge William H. Pauley, III

Appeals court case number: '07-1520-cr' 'U.S.C.A. 2nd Circuit'

### Defendant (1)

**Ulysses Thomas Ware**
*TERMINATED: 10/30/2007*
*also known as*
"Thomas Ware,"
*TERMINATED: 10/30/2007*

represented by **Isabelle A. Kirshner**
Clayman & Rosenberg
305 Madison Avenue, Suite 1301
New York, NY 10165
(212)-922-1080
Fax: (212)-949-8255
Email: kirshner@clayro.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Michael Fred Bachner**
Bachner & Associates, P.C.
26 Broadway
Suite 2310
New York, NY 10004
(212) 344-7778
Fax: (212) 344-7774
Email: mb@bhlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Thomas Ware**
6050 Peachtree Parkway
Suite 240-234
Norcross, GA 30092
678-362-0226
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**8/28/2012**

## Pending Counts

18:371.F CONSPIRACY TO
DEFRAUD THE UNITED STATES
(1s)

15:78J.F MANIPULATIVE AND
DECEPTIVE DEVICES
(2s)

### Disposition

Imprisonment for a total term of 60
Months on Count 1 and 97 months on
count 2 to run concurrently. Supervised
release for a term of 3 Years on both
counts.

Imprisonment for a total term of 60
Months on Count 1 and 97 months on
count 2 to run concurrently. Supervised
release for a term of 3 Years on both
counts.

## Highest Offense Level (Opening)

Felony

## Terminated Counts

CONSPIRACY TO DEFRAUD THE
UNITED STATES (CONSPIRACY TO
COMMIT SE CURITIES AND WIRE
FRAUD)
(1)

MANIPULATIVE AND DECEPTIVE
DEVICES(15USC78j(b) AND 78ff:
SECURITIES FRAUD)
(2)

### Disposition

Underlying indictments and counts are
dismissed on the motion of the US

Underlying indictments and counts are
dismissed on the motion of the US

## Highest Offense Level (Terminated)

Felony

## Complaints

18:371:CONSPIRACY TO COMMIT
SECURITIES AND WIRE FRAUD;,
15:77q(a) & 77x: SECURITIES
FRAUD.

### Disposition

## Plaintiff

USA

represented by **Alexander H. Southwell**
U.S. Attorney's Office, SDNY (St
Andw's)
One St. Andrew's Plaza
New York, NY 10007
212-637-2200
Fax: 212-637-2429

Email: ASouthwell@gibsondunn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven David Feldman**
U.S. Attorney's Office, SDNY (St Andw's)
One St. Andrew's Plaza
New York, NY 10007
2126372200
Fax: 212-637-2390
Email: sfeldman@herrick.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/20/2005 | ❏ 1 | COMPLAINT as to Ulysses Thomas Ware (1), Jeremy Jones (2) in violation of 18 U.S.C. 2, 371 and 15 U.S.C. 77q(a) & 77x. (Signed by Judge Andrew J. Peck ) (gq, ) [1:05-mj-01630-UA] (Entered: 09/27/2005) |
| 09/26/2005 | ❏ | Arrest of Ulysses Thomas Ware. (gq, ) [1:05-mj-01630-UA] (Entered: 09/27/2005) |
| 09/26/2005 | ❏ | Attorney update in case as to Ulysses Thomas Ware. Attorney Isabelle A. Kirshner for Ulysses Thomas Ware added. (gq, ) [1:05-mj-01630-UA] (Entered: 09/27/2005) |
| 09/26/2005 | ❏ | Minute Entry for proceedings held before Judge Henry B. Pitman :Initial Appearance as to Ulysses Thomas Ware held on 9/26/2005. Deft appears with CJA atty Isabelle Kirshner (for Rule 5 only). AUSA Alexander Southwell present for the gov't. Agreed bail package: $100,000 PRB. 1 FRP. Mother's home. Travel restricted to SDNY, EDNY, Georgia & intermediate District. Surrender travel documents (& no new applications). Regular pretrial supervision. Deft to be released upon following conditions: When he signs bond. Remaining conditions to be met by 9/30/05. Preliminary Examination set for 10/26/2005 10:00 AM before Judge Unassigned. (gq, ) [1:05-mj-01630-UA] (Entered: 09/27/2005) |
| 09/26/2005 | ❏ 4 | PRB APPEARANCE Bond Entered as to Ulysses Thomas Ware in amount of $!00,000. Co-signed by one financially responsible person. Secured by mother's home. Travel restricted to SDNY, EDNY, Georgia & intermediate district. Surrender travel documents (& no new applications). Regular pretrial supervision. Deft to be released upon following conditions: When he signs bond. Remaining conditions to be met by 9/30/2005. (gq, ) [1:05-mj-01630-UA] (Entered: 09/27/2005) |
| 09/26/2005 | ❏ 5 | ADVICE OF PENALTIES AND SANCTIONS as to Ulysses Thomas Ware. (gq, ) [1:05-mj-01630-UA] (Entered: 09/27/2005) |
| 09/26/2005 | ❏ 6 | Arrest Warrant Returned Executed on 9/26/05 as to Ulysses Thomas |

| | | Ware. (vb, ) [1:05-mj-01630-UA] (Entered: 10/26/2005) |
|---|---|---|
| 10/26/2005 | ❶ 7 | INDICTMENT FILED as to Ulysses Thomas Ware (1) count(s) 1, 2, Jeremy Jones (2) count(s) 1, 2. (jm, ) (Entered: 10/26/2005) |
| 10/26/2005 | ❶ | Case Designated ECF as to Ulysses Thomas Ware, Jeremy Jones.(jm, ) (Entered: 10/26/2005) |
| 11/01/2005 | ❶ | Minute Entry for proceedings held before Judge William H. Pauley III:Arraignment as to Ulysses Thomas Ware (1) Count 1,2 held on 11/1/2005. Deft present w/atty Lawrence Ruggerio. CJA on duty. AUSA Alexander Southwell present. Court Reporter present. Deft arraigned on the indictment and pled not guilty. Next conference 11/3/2005 at 10:45 a.m. SPT excluded from 11/1/2005 to 11/3/2005. Bail continued. (jp, ) (Entered: 11/21/2005) |
| 11/01/2005 | ❶ | Minute Entry for proceedings held before Judge William H. Pauley III: Plea entered by Ulysses Thomas Ware (1) Count 1,2 Not Guilty. (jp, ) (Entered: 11/21/2005) |
| 11/03/2005 | ❶ 9 | NOTICE OF ATTORNEY APPEARANCE: Michael Fred Bachner appearing for Ulysses Thomas Ware. (bw, ) (Entered: 11/04/2005) |
| 11/03/2005 | ❶ | Minute Entry for proceedings held before Judge William H. Pauley III:Pretrial Conference as to Ulysses Thomas Ware, Jeremy Jones held on 11/3/2005. Deft Ware present w/atty Michael Bachner. Deft Jones not present. Deft Jones' atty Marlon Kirton present. AUSA Alexander Southwell present. Court Reporter present. Government requests a warrant be issued for deft Jones. Next conference 1/6/2006 at 12:30 p.m. for deft Ware. As to deft Ware, SPT excluded from 11/3/2005 to 1/6/2006. Bail continued. (jp, ) (Entered: 11/21/2005) |
| 11/03/2005 | ❶ | Set/Reset Hearings as to Ulysses Thomas Ware: Pretrial Conference set for 1/6/2006 12:30 PM before Judge William H. Pauley III..(jp, ) (Entered: 11/21/2005) |
| 01/06/2006 | ❶ | Minute Entry for proceedings held before Judge William H. Pauley III:Pretrial Conference as to Ulysses Thomas Ware, Jeremy Jones held on 1/6/2006 Deft. Ware pres. w/atty Michael Bachner & Deft. Jones pres. w/atty Marlon Kirton & AUSA Alexander Southwell. Motion due 4/7/06, Reply 5/8/06. Next conf. 5/19/06 @ 2:15 PM. Jury selection set for 9/18/06 @ 10 AM. SPT excluded from 1/6/06 to 9/18/06 under 18:3161(h)(8)(A), bail cont'd. (Court Reporter Carol Stanley) (pr, ) (Entered: 01/09/2006) |
| 01/06/2006 | ❶ | Set/Reset Hearings as to Ulysses Thomas Ware, Jeremy Jones: Jury Selection set for 9/18/2006 10:00AM before Judge William H. Pauley III. Next Pretrial Conference set for 5/19/2006 02:15 PM before Judge William H. Pauley III..(pr, ) (Entered: 01/09/2006) |
| 01/06/2006 | ❶ | Set/Reset Deadlines as to Ulysses Thomas Ware, Jeremy Jones: Motions due by 4/7/2006. Replies due by 5/8/2006..(pr, ) (Entered: 01/09/2006) |
| 04/18/2006 | ❶ | ***REJECTION OF ATTEMPTED PAPER FILING IN ECF CASE. |

| | | |
|---|---|---|
| | | been made. (Signed by Judge Leonard B. Sand on 6/22/04) (ml, ) Modified on 7/2/2004 (kg, ). (Entered: 06/25/2004) |
| 07/08/2004 | | Mailed notice of Right to Appeal to Attorney(s) of Record: Jay E. Kagan, Kenneth A. Zitter. (snu, ) (Entered: 07/08/2004) |
| 07/22/2004 | 84 | NOTICE OF APPEAL from 83 Judgment. Document filed by Group Management Corp. Filing fee $ 255.00, receipt number E 515904. Copies of Notice of Appeal mailed to Attorney(s) of Record: David Hassan, Michael Finkelstein, Alpha Capital Aktiengesellschaft, Ultra Finanz. (tp, ) (Entered: 08/04/2004) |
| 08/04/2004 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 84 Notice of Appeal. (tp, ) (Entered: 08/04/2004) |
| 08/04/2004 | | Transmission of Notice of Appeal to the District Judge re: 84 Notice of Appeal. (tp, ) (Entered: 08/04/2004) |
| 09/10/2004 | 85 | ORDER; that the Court hereby schedule a hearing with respect to the civil contempt order dated 6/22/04 for Wednesday, 9/22 @10:00 a.m. in room 15A; pursuant to the terms of bail granted by Judge Thrash, Thomas Ware is directed to appear at such time, putting all other matters aside. (Signed by Judge Leonard B. Sand on 9/9/04); COPIES FAXED BY CHAMBERS. (pl, ) Modified on 9/15/2004 (kg, ). (Entered: 09/13/2004) |
| 09/15/2004 Cf. ¶¶63–66, and Appx. II. | 86 | MANDATE of USCA (Certified Copy) as to 73 Notice of Appeal filed by Group Management Corp. USCA Case Number 03-7973. Ordered that the appeal is DISMISSED. Roseann B. MacKechnie, Clerk USCA. Certified: 9/10/04. (tp, ) (Entered: 09/16/2004) |
| 09/15/2004 | 87 | ORDER; the hearing scheduled for 9/22/2004 is cancelled; the parties are directed to apprise the Court of their positions on the issue of jurisdiction in written submissions by 9/27/2004. (Signed by Judge Leonard B. Sand on 9/15/2004) (jp, ) (Entered: 09/17/2004) |
| 09/16/2004 | | Transmission of USCA Mandate/Order to the District Judge re: 86 USCA Mandate. (tp, ) (Entered: 09/16/2004) |
| 09/28/2004 | 88 | ORDER, the Court's 6/22/04 order is vacated in part to the extent that it authorized the arrest of Thomas Ware outside the State of NY and more than 100 miles from the US Courthouse at 500 Pearl St., NY NY. The renewed request by plntfs' attorney to be appointed as a special prosecutor to prosecute Mr. Ware on a charge of criminal contempt is denied. The Court's designation of the US Attorney for the SDNY for that purpose remains in effect. (Signed by Judge Leonard B. Sand on 9/28/04) copies sent by chambers.(cd, ) (Entered: 09/29/2004) |
| 03/10/2005 | 89 | MEMO ENDORSEMENT that insofar as Ware's application seeks protection against further arrest in the civil proceeding, he is protected.....to the extent that Ware seeks other relief, his application is denied. (Signed by Judge Leonard B. Sand on 3/10/05) copies sent by chambers(cd, ) (Entered: 03/14/2005) |

See Id. at 121-137, infra for transcripts of 09/01/2004 and 09/09/2004 conferences. CF. ¶¶63–66, and Appx. II with Dkt. #86 above, clear fraud by the Seccond Circuit.

| 58. | 9-1-04<br>Age: 44 | Contempt of Court | Atlanta, Georgia | 10/15/04:<br>Dismissed pursuant<br>to order of Judge<br>Leonard B. Sand |

[Mr. Ware's illegal arrest on 09/01/2004 based on null and void orders.]

→(59)    According to Ware's prior federal presentence report, Sr. USPO Atonya M. Craft of the
Northern District of Georgia, advised that on September 1, 2004, the defendant was
arrested in the Northern District of Georgia in response to an order issued by the
Honorable Leonard B. Sand, U.S. District Judge, Southern District of New York, in 02
(Dkt. #80) CV 2219 (LBS). On December 22, 2003, Judge Sand ordered the defendants in this civil
matter (which included the defendant) to deliver Silver Screen Studios, Inc. common
stock to honor all of the conversion requests for Group Management Corp. or Silver
Screen Studios, Inc. stock duly submitted by the plaintiffs. On June 21, 2004, Judge Sand
(null and void) issued a warrant for the defendant's arrest for contempt of court, for failure to obey the
December 22, 2003, order. This arrest order indicated that the defendant was to be
arrested by the U.S. Marshals Service and detained until the defendant purged himself of
contempt by delivering the above-referenced common stock. On July 1, 2004, the
defendant was arrested by the U.S. Marshals Service in the Northern District of Georgia.
[kidnapping]    He appeared before the Honorable Thomas W. Thrash, Jr., in that district, refused to
purge himself of contempt and offered no acceptable reason to prevent enforcement of the
contempt order. On September 2, 2004, the Honorable Thomas W. Thrash, Jr., ordered
[See SEC Rel.    the defendant to remain in the custody of the U.S. Marshals Service until he purged
33-7190, and    himself of contempt or was ordered released by either Judge Thrash or Judge Sand. The
SEC IR 5121]    defendant's request for bond was granted, and he was released on September 3, 2004,
after posting $150,000 in cash and a $100,000 bond, cosigned by two other individuals.

→(60)    On September 28, 2004, the Honorable Leonard B. Sand vacated the June 21, 2004, order
in part to the extent that it authorized the arrest of the defendant outside of the state of
[See Id. at 119 New York and more than 100 miles from the U.S. Courthouse located at 500 Pearl Street,
infra].    New York, New York. The order remained in effect insofar as it could be served on the
defendant in the state of New York or within 100 miles of the U.S. Courthouse located at
500 Pearl Street, New York, New York.

→(61.)    On October 7, 2004, the defendant moved to vacate and release the bail of $250,000 set
on September 2, 2004. On October 15, 2004, the defendant's motion was granted by the
Honorable Thomas W. Thrash, Jr.; $150,000 was refunded to the defendant, and the
corporate surety bond was discharged.

Judge Thrash was in on the scam ... a Harvard Law graduate
the same as Zitter, Meir, and Polk-Failla (Cf. Ex.
at 94) ... Judge Thrash was    assigned as "duty
judge" for the month of Sept. 2004, the same month
and date SEC lawyer Norris (Ex. at 31) ("September

**CONFIDENTIAL**

1, 2004") requested that Mr. Ware depose Webster on 08/17/2004 via email ... the SEC and
USAO had already arranged for Mr. Ware's illegal detentions by Judge Thrash, Zitter, and
Meir, members of the CCE.

**Page 121**

```
 1            IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF GEORGIA
                    ATLANTA DIVISION              P. 121
 3   ALPHA CAPITAL
     AKTIENGESELLSCHAFT, ET AL.,   )   N.D. GA. CASE NO.
 4                                 )   1:04-MJ-1203
                                   )
 5              PLAINTIFFS,        )   S. DIST. N.Y. CASE NO.
                                   )   02-CIV-2219-LBS
 6                                 )
           VS.                     )   ATLANTA, GEORGIA
 7                                 )   SEPTEMBER  1, 2004
                                   )   3:30 P.M.
 8   GROUP MANAGEMENT CORP.,       )
     ET AL.,                       )
 9                                 )
              DEFENDANTS.          )
10   _____)
11
12                 TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE THOMAS W. THRASH, JR.
13               UNITED STATES DISTRICT JUDGE.
14
15   APPEARANCES OF COUNSEL:
16   FOR THE DEFENDANT:        THOMAS WARE, PRO SE
17
18
19
20
21
     OFFICIAL COURT REPORTER:            DARLA J. COULTER
22                                       2188 U.S. COURTHOUSE
                                         75 SPRING STREET, SW
23                                       ATLANTA, GEORGIA 30303
                                         (404) 215-1558
24
25   TRANSCRIPT RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED BY COMPUTER
```

**Page 122**

```
 1            (IN ATLANTA, FULTON COUNTY, GEORGIA, WEDNESDAY,
 2   SEPTEMBER 1ST, 2004, 3:30 P.M., IN OPEN COURT.)   P. 122
 3        THE COURT:   THIS IS THE CASE OF ALPHA CAPITAL VERSUS
 4   GROUP MANAGEMENT CORPORATION, FORMERLY KNOWN AS IVG,
 5   CORPORATION, FORMERLY KNOWN AS INTERNET VENTURE GROUP, INC.;
 6   THOMAS WARE, LEN CHURN AND HARRY CORKER, DEFENDANTS.  U.S.
 7   DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK CASE
 8   NUMBER 02-CIV-2219-LBS; NORTHERN DISTRICT OF GEORGIA CASE
 9   NUMBER 04-MJ-1203.  AND I'M HEARING THIS MATTER AS DUTY JUDGE
10   FOR THE MONTH OF SEPTEMBER.
11        I HAVE A COPY OF AN ORDER ISSUED BY U.S. DISTRICT
12   JUDGE LEONARD SAND ON JUNE 21, 2004, ORDERING THE MARSHALS
13   SERVICE TO ARREST THOMAS WARE AND TO HAVE HIM COMMITTED TO THE
14   CUSTODY OF THE U.S. MARSHAL IN THE DISTRICT TO WHICH HE'S
15   ARRESTED UNTIL HE PERJURES HIMSELF OF CIVIL CONTEMPT.
16        SIR, ARE YOU THE THOMAS WARE THAT'S NAMED IN THIS
17   ORDER?
18        THE DEFENDANT:   YES, I THINK SO.
19        THE COURT:   ALL RIGHT.  I HAVE SOME QUESTIONS I WANT
20   TO ASK YOU.  IS THERE ANYTHING YOU WANT TO SAY BEFORE I START
21   ASKING YOU QUESTIONS?
22        THE DEFENDANT:   YOUR HONOR, COULD I GET A PENCIL AND
23   A PIECE OF PAPER TO TAKE SOME NOTES?
24        THE COURT:   SURE.
25        THE DEFENDANT:   MAY I STAND AT THE PLATFORM?
```

DARLA J. COULTER, RPR, CRR

**Page 3**

```
 1        THE COURT:   YES, SIR.
 2        THE DEFENDANT:   I'D JUST LIKE TO SAY, YOUR HONOR,  P. 123
 3   I'M FAMILIAR WITH THE CASE YOU JUST SPOKE ABOUT.  THE CASE IS
 4   UNDER CURRENT APPEAL TO THE SECOND CIRCUIT COURT OF APPEALS.
 5        GROUP MANAGEMENT, THAT'S IDENTIFIED, FILED CHAPTER 7
 6   BANKRUPTCY DECEMBER 2003.  I DON'T KNOW THE EXACT DATE, BUT
 7   THAT CASE HAS SINCE BEEN CLOSED AND -- SINCE IT WAS A
 8   CORPORATION, IT WAS DISCHARGED OR NOT GRANTED, BUT THE CASE IS
 9   CLOSED.  I SPOKE TO THE TRUSTEE, MISS OSHIER, PROBABLY ABOUT A
10   MONTH AGO.  SHE SAID THERE WAS NO FURTHER ACTION ON THE GROUP
11   MANAGEMENT CHAPTER 7 FILE.
12        THE COURT:   WELL, DO YOU HAVE A LAWYER THAT
13   REPRESENTS YOU IN THIS CASE?
14        THE DEFENDANT:   NOT AT THE MOMENT, NO, SIR.
15        THE COURT:   WHAT IS YOUR INTENTION WITH REGARD TO
16   COMPLYING WITH JUDGE SAND'S ORDER?
17        THE DEFENDANT:   WELL, THAT WAS WHY GROUP
18   MANAGEMENT -- THEY DIDN'T HAVE THE MONEY, SO THAT'S WHY THEY
19   FILED CHAPTER 7 BANKRUPTCY, YOUR HONOR.
20        THE COURT:   WHAT IS YOUR INTENTION WITH REGARD TO
21   COMPLYING WITH THE ORDER THAT YOU DELIVER COMMON STOCK FOR
22   SILVER SCREEN STUDIOS TO HONOR ALL OF THE CONVERSION REQUESTS
23   FOR GROUP MANAGEMENT CORPORATION OR SILVER SCREEN STUDIO STOCK
24   DULY SUBMITTED BY THE PLAINTIFFS?
25        THE DEFENDANT:   I'M NOT AN OFFICER OR DIRECTOR OF
```

DARLA J. COULTER, RPR, CRR

**Page 4**

```
 1   SILVER SCREEN, YOUR HONOR.  I JUST HANDLE OUTSIDE SECURITIES
 2   WORK FOR SILVER SCREEN STUDIO, AS I DID FOR GROUP MANAGEMENT  P. 124
 3   CORPORATION.  I WAS THE OUTSIDE SECURITIES COUNSEL FOR GROUP
 4   MANAGEMENT.
 5        AGAIN, THEY DIDN'T HAVE ANY MONEY, WHICH CAN BE
 6   VERIFIED AT THE CLERK'S OFFICE UPSTAIRS BY THE BANKRUPTCY
 7   CLERKS OF THE CHAPTER 7 FILING.
 8        I HAVE NO AUTHORITY OR ABILITY TO ENFORCE ANYONE TO
 9   ISSUE ANY SHARES, YOUR HONOR.
10        THE CASE -- EXCUSE ME.  NOT TO CUT YOU OFF, BUT THE
11   CASE IS UNDER APPEAL AT THE SECOND CIRCUIT COURT OF APPEALS.
12        THE COURT:   WHAT DO YOU MEAN THE CASE?
13        THE DEFENDANT:   THAT ORDER.
14        THE COURT:   HAVE YOU FILED A MOTION TO STAY THE
15   ORDER WITH THE SECOND CIRCUIT?
16        THE DEFENDANT:   NO.  JUST THE NOTICE OF APPEAL HAS
17   BEEN FILED.
18        THE COURT:   YOU FILED A MOTION WITH JUDGE SAND TO
19   STAY THE ORDER PENDING APPEAL?
20        THE DEFENDANT:   NO, SIR.
21        THE COURT:   WELL, MR. WARE, UNLESS YOU CAN PROVIDE
22   ME WITH SOME COMPELLING REASON, I DON'T THINK I'VE GOT ANY
23   CHOICE BUT TO ORDER THE MARSHALS TO TAKE YOU INTO CUSTODY UNTIL
24   YOU COMPLY WITH JUDGE SAND'S ORDER.
25        THE DEFENDANT:   WELL, LIKE I SAY, IT WAS GROUP
```

DARLA J. COULTER, RPR, CRR

```
1    MANAGEMENT -- WHICH CAN BE VERIFIED BY THE BANKRUPTCY CLERK'S
2    OFFICE -- HAS FILED CHAPTER 7    I WAS JUST THE OUTSIDE LAWYER    P.125
3    FOR GROUP MANAGEMENT.  THEY HAD NO MONEY, NO ASSETS.  THEY WERE
4    A DEFUNCT CORPORATION, WHICH, AGAIN, THEY FILED A CHAPTER 7 IN
5    DECEMBER OF 2003.
6         SILVER SCREEN STUDIOS -- WHICH I DO THE SAME FOR
7    THEM.  I'M THE OUTSIDE SECURITIES COUNSEL FOR SILVER SCREEN
8    STUDIOS.  I'M NOT AN OFFICER.  I'M NOT A DIRECTOR.  I'M NOT A
9    BOARD MEMBER.  I JUST HANDLE THE LEGAL WORK.  I HAVE NO
10   AUTHORITY OR ABILITY TO FORCE SILVER SCREEN STUDIOS TO HONOR --
11   THE DEBT WAS WIPED OUT IN THE CHAPTER 7 CASE.  AGAIN, I
12   CONFIRMED THAT WITH MISS OSHIER, WHO'S THE CHAPTER 7 TRUSTEE.
13   SHE CONFIRMED THAT THERE'S NO FURTHER ACTION ON THE GROUP
14   MANAGEMENT'S CASE, SO THERE IS NO DEBT THAT HAS TO BE
15   SATISFIED, YOUR HONOR.
16        THE COURT:  WELL, I'VE ATTEMPTED TO GET IN TOUCH
17   WITH JUDGE SAND'S CHAMBERS, AND --
18        THE DEFENDANT:  EXCUSE ME, NOT TO CUT YOU OFF AGAIN.
19        THE COURT:  WELL, DON'T CUT ME OFF THEN.
20        HE'S NOT AVAILABLE.  HE'S OUT OF THE COUNTRY AND
21   WON'T BE BACK UNTIL NEXT WEEK.
22        AND AGAIN, MR. WARE, UNLESS YOU CAN GIVE ME SOME
23   PERSUASIVE REASON WHY NOT TO ORDER THE MARSHALS TO COMPLY WITH
24   JUDGE SAND'S ORDERS, THAT'S WHAT I'M GOING TO DO.
25        THE DEFENDANT:  I UNDERSTAND YOUR PREDICAMENT,
```

DARLA J. COULTER, RPR, CRR

---

```
1    YOUR HONOR.
2         AGAIN I'M TRYING TO ARTICULATE IT THE BEST WAY I CAN,    P.126
3    IS THAT THE DEBT THAT'S REFERENCED IN THAT ORDER THAT YOU HAVE
4    IS NO LONGER A VALID OR EXISTING DEBT.
5         THE DEBT, AGAIN, WHICH CAN BE VERIFIED IN THE CLERK'S
6    OFFICE ON THE -- YEAH, I THINK 13TH FLOOR, GROUP MANAGEMENT
7    FILED A CHAPTER 7 BANKRUPTCY, AND THAT DEBT IS NO LONGER A DEBT
8    ANY FURTHER.  I WAS NOT INVOLVED IN THAT CASE WHATSOEVER.  I
9    WAS JUST OUTSIDE SECURITIES COUNSEL FOR GROUP MANAGEMENT,
10   YOUR HONOR.
11        THE COURT:  WELL, ACCORDING TO THE ORDER I HAVE, YOU
12   ARE NAMED AS A DEFENDANT IN THE CASE.
13        THE DEFENDANT:  RIGHT, BUT ONLY AS THE OUTSIDE
14   SECURITIES COUNSEL.  THAT'S MY ONLY POSITION WITH GROUP
15   MANAGEMENT.  AND THE SAME WITH SILVER SCREEN STUDIOS.  SILVER
16   SCREEN HAS NO AFFILIATION WITH GROUP MANAGEMENT.  GROUP
17   MANAGEMENT IS -- AGAIN, IT FILED CHAPTER 7 IN DECEMBER OF 2003.
18   THAT CAN BE CONFIRMED WITH THE CHAPTER 13 -- WITH THE CHAPTER 7
19   TRUSTEE, MISS OSHIER.  SHE CONFIRMED WITH ME THERE'S NO LONGER
20   DEBTS EXISTING AND OUTSTANDING FOR GROUP MANAGEMENT.  THERE'S
21   NOTHING TO BE COLLECTED BECAUSE THERE'S NO FURTHER DEBTS,
22   YOUR HONOR.
23        THAT ORDER IS CURRENTLY BEING APPEALED TO THE SECOND
24   CIRCUIT COURT OF APPEALS.
25        THE COURT:  ALL RIGHT.  I'LL ORDER THE MARSHALS TO
```

DARLA J. COULTER, RPR, CRR

---

```
1    TAKE MR. WARE INTO CUSTODY PURSUANT TO JUDGE SAND'S ORDER AND
2    HOLD HIM IN CUSTODY UNTIL HE PURGES HIMSELF OF THE CIVIL    127
3    CONTEMPT ORDER OF JUDGE SAND.  AND I'LL ORDER THE MARSHAL TO
4    PRODUCE HIM HERE, THIS COURTROOM, FOR A HEARING NEXT THURSDAY,
5    WHICH IS SEPTEMBER THE 9TH; THURSDAY, SEPTEMBER THE 9TH, AT
6    9:30.  AND I HOPE THAT BY THEN, I WILL HAVE BEEN ABLE TO
7    COMMUNICATE WITH JUDGE SAND AND GET SOME BETTER IDEA OF WHAT TO
8    DO WITH YOU, MR. WARE, BUT --
9         THE DEFENDANT:  CAN I ASK YOU A QUESTION,
10   YOUR HONOR?
11        IS THERE A POSSIBILITY OF BOND OR MAKING ANY KIND
12   OF -- TOWARDS RELEASE UNTIL THAT TIME?
13        THE COURT:  ARE YOU A MEMBER OF THE GEORGIA BAR?
14        THE DEFENDANT:  YES, SIR.  I PROMISE I'LL BE HERE
15   NEXT THURSDAY MORNING.  I'LL SURRENDER WHATEVER YOU WANT ME TO
16   SURRENDER.  I MEAN, I'LL BE RIGHT HERE WITH ALL THE
17   DOCUMENTATION TO PRESENT TO THE COURT.
18        THE COURT:  ALL RIGHT.  I'LL AUTHORIZE MR. WARE'S
19   RELEASE UPON THE POSTING OF A 250,000 CORPORATE SECURITY BOND
20   SECURING HIS APPEARANCE AS REQUIRED IN THIS MATTER AND AS
21   DIRECTED BY THIS COURT OR U.S. DISTRICT JUDGE LEONARD B. SAND
22   OF THE SOUTHERN DISTRICT OF NEW YORK.
23        AND MR. WARE, WHETHER YOU ARE RELEASED ON BOND OR
24   NOT, I ORDER YOU TO APPEAR IN THIS COURTROOM 9:30 A.M. NEXT
25   THURSDAY, SEPTEMBER THE 9TH.
```

DARLA J. COULTER, RPR, CRR

---

```
1         THE DEFENDANT:  I'LL BE RIGHT HERE, SIR.
2         THE COURT:  AND IF THE DEPUTY MARSHALS WILL PARK   28
3    MR. WARE TO THE DUTY MAGISTRATE JUDGE, I THINK THEY'LL HAVE THE
4    PAPERWORK THAT WILL BE NEEDED TO BE EXECUTED AT MY DIRECTION TO
5    ALLOW HIS RELEASE ON A $250,000 CORPORATE SECURITY BOND.
6         THE DEFENDANT:  CAN I ASK ONE QUESTION?
7         I'M NOT FAMILIAR WITH THAT.  HOW DOES THAT WORK?
8         THE COURT:  YOU ARE GOING TO HAVE TO GET A BONDING
9    COMPANY TO POST A $250,000 BOND ASSURING THAT YOU'RE GOING TO
10   APPEAR IN COURT WHEN YOU'RE REQUIRED TO DO SO.
11        THE DEFENDANT:  IS THERE ANY POSSIBILITY THE COURT
12   COULD REDUCE THAT?
13        THE COURT:  NO, SIR, I DON'T BELIEVE SO.  I THINK
14   THAT'S THE LEAST AMOUNT OF A BOND I CAN -- I SHOULD ALLOW IN
15   THIS CASE.
16        THE DEFENDANT.  I CAN ASSURE THE COURT I WILL BE
17   HERE.  I HAVE NO INTENT OF RUNNING OR HIDING, BUT I DON'T HAVE
18   250,000.
19        THE COURT:  YOU WON'T HAVE TO POST THE WHOLE
20   $250,000.  THEY'LL CHARGE YOU A PREMIUM THAT'S A PERCENTAGE OF
21   THAT.
22        ALL RIGHT.  ANYTHING ELSE, MR. WARE?
23        THE DEFENDANT:  NO, SIR, YOUR HONOR.  THANK YOU VERY
24   MUCH, YOUR HONOR.
25        THE COURT:  ALL RIGHT.  ANY QUESTION ABOUT THOSE
```

DARLA J. COULTER, RPR, CRR

1  DIRECTIONS, GENTLEMEN?

2  THE DEFENDANT:   CAN I SPEAK TO MY SECRETARY? P. 129

3       THE COURT:   THAT'S UP TO THE MARSHALS, MR. WARE.

4  THEY ARE IN CHARGE OF YOUR SAFETY AND CUSTODY, MR. WARE.

5                            - - -

DARLA J. COULTER, RPR, CRR

---

1                    C E R T I F I C A T E

2  UNITED STATE OF AMERICA                        P. 130

3  NORTHERN DISTRICT OF GEORGIA

4       I, DARLA J. COULTER, OFFICIAL COURT REPORTER OF THE

5  UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

6  GEORGIA, DO HEREBY CERTIFY THAT THE FOREGOING 10 PAGES

7  CONSTITUTE A TRUE COMPLETE TRANSCRIPT OF PROCEEDINGS HAD BEFORE

8  THE SAID COURT, HELD IN THE CITY OF ATLANTA, GEORGIA, IN THE

9  MATTER THEREIN STATED.

10      IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS

11  THE 6TH DAY OF OCTOBER, 2004.

14                    _____
                      DARLA J. COULTER, RPR, CRR
15                    OFFICIAL COURT REPORTER
                      NORTHERN DISTRICT OF GEORGIA

DARLA J. COULTER, RPR, CRR

---

1            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA      P. 131
2                    ATLANTA DIVISION

3  ALPHA CAPITAL
   AKTIENGESELLSCHAFT, ET AL.,    )    N.D. GA. CASE NO.
4                                 )    1:04-MJ-1203
                                  )
5             PLAINTIFFS,         )    S. DIST. N.Y. CASE NO.
                                  )    02-CTV-2219-LBS
6                                 )
       VS.                        )    ATLANTA, GEORGIA
7                                 )    SEPTEMBER 9, 2004
                                  )    9:30 A.M.
8  GROUP MANAGEMENT CORP.,        )
   ET AL.,                        )
9                                 )
             DEFENDANTS.          )
10 _____)

11

12                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE THOMAS W. THRASH, JR.
13              UNITED STATES DISTRICT JUDGE.

14

15 APPEARANCES OF COUNSEL:

16 FOR THE PLAINTIFF:           KEN ZITTER, ESQ. (VIA TELEPHONE)

17 FOR THE DEFENDANT:           THOMAS WARE, PRO SE

21
   OFFICIAL COURT REPORTER:            DARLA J. COULTER
22                                     2186 U.S. COURTHOUSE
                                       75 SPRING STREET, SW
23                                     ATLANTA, GEORGIA 30303
                                       (404) 215-1558
24

25 TRANSCRIPT RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
   PRODUCED BY COMPUTER

---

1       (IN ATLANTA, FULTON COUNTY, GEORGIA, THURSDAY,

2  SEPTEMBER 9TH, 2004, 9:30 A.M., IN OPEN COURT.)    P. 132

3       THE COURT:   THIS IS THE CASE OF ALPHA CAPITAL VERSUS

4  GROUP MANAGEMENT CORPORATION, SOUTHERN DISTRICT OF NEW YORK

5  CASE NUMBER 02-CTV-2219; NORTHERN DISTRICT OF GEORGIA CASE

6  NUMBER 04-MJ-1203.

7       MR. WARE, ARE YOU REPRESENTED BY COUNSEL IN THIS

8  MATTER?

9       THE WITNESS:   NOT AT THE MOMENT, YOUR HONOR.   I

10 CONTACTED -- DO YOU WANT ME TO STEP UP?

11      THE COURT:   YES.

12      THE DEFENDANT:   YESTERDAY AFTERNOON, YOUR HONOR,

13 REQUESTING A CONTINUANCE IN ORDER TO RETAIN COUNSEL AND PREPARE

14 A DEFENSE.

15      THE COURT:   ALL RIGHT.   MR. ZITTER, ARE YOU

16 APPEARING IN THE MATTER BY TELEPHONE?

17      MR. ZITTER:   YES, I AM, YOUR HONOR.

18      THE COURT:   THIS IS A HEARING REGARDING THE ORDER OF

19 JUDGE SAND ORDERING MR. WARE TO BE TAKEN INTO CUSTODY FOR CIVIL

20 CONTEMPT.   I SCHEDULED THIS HEARING HOPING THAT I WOULD HAVE

21 RECEIVED SOME DIRECTION FROM JUDGE SAND, AND I HAVE TALKED TO

22 JUDGE SAND BRIEFLY YESTERDAY AND TODAY.   HE INDICATED TO ME

23 THAT HE DID NOT CONSIDER THIS TO BE A MATTER WHERE TIME WAS OF

24 THE ESSENCE, SO I AM INCLINED TO ALLOW MR. WARE TO REMAIN ON

25 BOND WHILE HE SEEKS A STAY OF JUDGE SAND'S ORDER IN THE SECOND

DARLA J. COULTER, RPR, CRR

```
1   CIRCUIT, BUT I'LL BE GLAD TO HEAR FROM YOU, MR. ZITTER, IF YOU
2   HAVE SOME REQUEST THAT THE CASE TAKE SOME DIFFERENT DIRECTION.   P. 133
3            MR. ZITTER:   WELL, HAS MR. WARE, IN FACT, POSTED
4   BOND, YOUR HONOR?
5            THE COURT:   WE'RE HAVING A HARD TIME HEARING YOU,
6   MR. ZITTER.
7            MR. ZITTER:   I'M SORRY.  HAS MR  WARE, IN FACT,
8   POSTED BOND?
9            THE COURT:   MY UNDERSTANDING IS THAT AFTER I SET A
10  $250,000 BOND, THAT HE POSTED A $100,000 CORPORATE SURETY BOND,
11  PLUS DEPOSITED A CASHIER'S CHECK IN THE AMOUNT OF $150,000 IN
12  THE REGISTRY OF THE COURT.
13           MR. ZITTER:   OKAY.  YOUR HONOR, THIS IS NOT A MATTER
14  OF PERSONAL ANIMUS ON OUR PART.  NOTHING WOULD MAKE US HAPPIER
15  THAN IF MR. WARE WOULD SIMPLY DELIVER THE STOCK; AND, FRANKLY,
16  I HAVE NO COMPREHENSION OF WHY, GIVEN ALL THE CIRCUMSTANCES, HE
17  WON'T DO THAT.  BUT I HAVE NO PERSONAL OBJECTION ON BEHALF OF
18  MYSELF AND MY CLIENT TO CONTINUING THE BOND IF MR. WARE PREFERS
19  TO LITIGATE THE MATTER AS OPPOSED TO SIMPLY GIVING US THE
20  STOCK.
21           THE COURT:   DO YOU WANT TO SAY ANYTHING IN RESPONSE
22  TO THAT, MR. WARE?
23           THE DEFENDANT:   YES, YOUR HONOR.  I'D LIKE TO
24  CONTINUE AGAIN TO -- WITH THE SECOND CIRCUIT COURT OF APPEALS
25  APPEALING THE ORDER AND SEEKING THE STAY AND ASK THE COURT TO
```

```
1   CONTINUE MY BOND BECAUSE, AS I SAID LAST WEEK AND ALSO IN MY
2   PAPERS, YOUR HONOR, I'M JUST OUTSIDE SECURITIES COUNSEL FOR   P. 134
3   SILVER SCREEN STUDIOS.  I'M NOT ON MANAGEMENT OR THE DIRECTORS.
4   IT WILL BE SILVER SCREENS' OBLIGATION OR GROUP MANAGEMENT'S
5   OBLIGATION, IF ANY, TO TURN OVER ANY STOCK TO MR. ZITTER.
6            THE COURT:   WELL, I HAVE NO INTEREST IN THIS CASE
7   WHATSOEVER.  I KNOW NOTHING ABOUT THE CASE OTHER THAN THE ORDER
8   OF JUDGE SAND THAT I READ AND THE PAPERS THAT MR. WARE FILED
9   YESTERDAY, AND IT'S MY OPINION THAT THIS MATTER NEEDS TO BE
10  RESOLVED IN THE SOUTHERN DISTRICT OF NEW YORK BEFORE JUDGE SAND
11  RATHER THAN BY ME.
12           SO WITH THAT BEING SAID, MR. WARE, I'M GOING TO
13  CONTINUE YOU ON YOUR BOND WITH TWO ADDITIONAL CONDITIONS:
14           ONE, IS THAT YOU FILE A MOTION WITH THE SECOND
15  CIRCUIT TO STAY JUDGE SAND'S ORDER OF CRIMINAL CONTEMPT WITHIN
16  10 DAYS OF TODAY.
17           THE DEFENDANT:   YOUR HONOR, CAN I SAY, WAS IT CIVIL
18  OR CRIMINAL?  IT'S CIVIL CONTEMPT, ISN'T IT?
19           THE COURT:   DID I SAY CRIMINAL?
20           MR. ZITTER:   IT'S CIVIL CONTEMPT.
21           THE COURT:   YOU FILE YOUR MOTION WITHIN 10 DAYS.
22           SECOND, THAT YOU APPEAR BEFORE JUDGE SAND AT ANY TIME
23  THAT HE DIRECTS.
24           AND WITH THOSE TWO ADDITIONAL CONDITIONS, I'LL
25  CONTINUE YOU ON YOUR BOND THAT YOU POSTED IN RESPONSE TO MY
```

```
1   ORDER AT THE LAST HEARING.
2            DO YOU WANT TO SAY ANYTHING ELSE, MR. ZITTER?  P. 135
3            MR. ZITTER:   NO.  DID MR. WARE AGREE TO THOSE
4   CONDITIONS, YOUR HONOR?
5            THE COURT:   IT DOESN'T MATTER WHETHER HE AGREES TO
6   THEM OR NOT.  IF HE DOESN'T, I'M GOING TO REVOKE HIS BOND.
7            THE DEFENDANT:   I AGREE.
8            MR. ZITTER:   MY INTENTION, YOUR HONOR, WILL BE TO
9   CALL JUDGE SAND'S CHAMBERS AFTER THIS HEARING IS FINISHED AND
10  ARRANGE A DATE FOR MR. WARE TO APPEAR BEFORE JUDGE SAND BECAUSE
11  I AGREE WITH YOUR HONOR, THIS IS REALLY A MATTER FOR JUDGE SAND
12  TO RESOLVE.
13           THE COURT:   WELL, I THINK THAT'S THE APPROPRIATE
14  THING TO DO, MR. ZITTER, AND I WOULD APPRECIATE IT IF YOU WILL
15  DO THAT.
16           MR. ZITTER:   I WILL, YOUR HONOR.
17           THE COURT:   ALL RIGHT.  THAT CONCLUDES THE HEARING.
18  THANK YOU VERY MUCH.
19           MR. ZITTER:   OKAY.  THANK YOU, YOUR HONOR.
20           THE COURT:   COURT'S IN RECESS UNTIL 9:45 ON THE
21  CORRY THOMPSON TRIAL.
22           THANK YOU, GENTLEMEN.
23                   - - -
24
25
```

```
1                    C E R T I F I C A T E
2   UNITED STATE OF AMERICA                              P. 136
3   NORTHERN DISTRICT OF GEORGIA
4            I, DARLA J. COULTER, OFFICIAL COURT REPORTER OF THE
5   UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
6   GEORGIA, DO HEREBY CERTIFY THAT THE FOREGOING 5 PAGES
7   CONSTITUTE A TRUE COMPLETE TRANSCRIPT OF PROCEEDINGS HAD BEFORE
8   THE SAID COURT, HELD IN THE CITY OF ATLANTA, GEORGIA, IN THE
9   MATTER THEREIN STATED.
10           IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS
11  THE 6TH DAY OF OCTOBER, 2004.
12
13
14
15                         DARLA J. COULTER, RPR, CRR
                           OFFICIAL COURT REPORTER
16                         NORTHERN DISTRICT OF GEORGIA
17
18
19
20
21
22
23
24
25
```

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

February 13, 2012

James N. Hatten
District Court Executive
Clerk of the District Court (N.D. GA)
75 Spring St., SW
Atlanta, GA 30303

RE:  Admission Status of Kenneth A. Zitter, Esq.

Mr. Hatten:

It was recent brought to my attention by a private investigator involved in the District Court proceeding (05-MJ-116) and (04-MJ-1203) that 2219 plaintiffs' counsel Kenneth A. Zitter, Esq., was not admitted to the Court when he appeared in the Court on September 9, 2004 via teleconference before District Judge Thomas W. Thrash, Jr., cf. September 9, 2004 transcript.

Mr. Hatten as you are aware that it is a violation of the Local Rules of the Court LR 83 to appear in the Court without first being admitted to practice before the Court.

Therefore, I am requesting that you as the District Court Executive confirm or deny with supporing evidence whether or not Kenneth A. Zitter, Esq. was admitted to practice in the District Court (N.D. GA) on September 9, 2004?

And if not, was Mr. Zitter's violation of the Local Rules of the District Court a sanctionable event?

If you would please inform Mr. Ware of the results of your search on or before February 22, 2012, as this informtion is needed in regard to another pending matter in another court, all matters can be expedited in regard to this violation of the Court's Rules.

Sincerely,

Ulysses Thomas Ware

cc: Chief Judge Julie E. Carnes

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

P. 138

January 25, 2012
Via certified mail# 7003 1680 0005 1205 9704

United States District Court          7003 1680 0005 1205 9704
Northern District of Georgia
James N. Hatten, District Court Executive - Clerk of the Court
2211 United States Courthouse
75 Spring St., SW
Atlanta, GA 30303-3361

RE: U.S. v. Ware, 1:05-MJ-116 (LTW), ("116") proceedings; (2) September 1, 2004,
District Judge Thomas W. Thrash, Jr., (N.D. GA) and related proceedings in Atlanta.
GA at 75 Spring St., Atlanta, GA 30303.

Mr. Hatten:

I am replying to your letters dated January 12, 2012 and January 19, 2012 attached
at Ex. #1. First, thank you and your surrogate for responding, however, there is
a fundamental lack of understanding occurring by yourself and the personnel within
your office in regard to the previous requests to obtain certified copies of documents
in proceeding which occurred within the district courts and magistrate courts of the
Northern District of Georgia, ("N.D. GA"), rather than what you perceive as occurring
in the Southern District of New York, (the "SDNY").

Accordingly, I will address what I believe is the erroneous presumptions being
applied by you and your office to obstruct justice in violation of 18 USC §§2, 4,
241, 242, 371, 1201-02 (kidnapping), 1343 (mail and wire fraud), 1505, 1510 (obstruction
of justice), 1621-23 (perjury), 1956-57 (money laundering), and 1961-64 (racketeering),
(the "RICO Offenses"), operating as an assuciation-in-fact for using the means of
the Office of the District Clerk and the Federal Courts of the N.D. GA to cover up
the illegal proceedings occurring in the Court on September 1, 2004, on or about
September 16 - 28, 2007, (the "Judge Thrash Proceedings"); and (2) on February 3,
2005 in U.S. v. Ware, 1:05-MJ-116 (LTW), ("116") and again on February 11, 2005,
(the "Judge Walker Illegal Proceedings").

## I.
## THE JUDGE THRASH PROCEEDINGS

1.  The question is posited to the Office of the District Clerk: Exactly
why would Mr. Ware request copies of documents and transcripts of proceedings
which occurred in courts of the N.D. GA on September 1, 2004 and on/or about
September 20, 2004 before District Judge Thrash (N.D. GA) at 75 Spring St.,
SW, Atlanta, GA 30303, the Judge Thrash Proceedings, (cf. Ex. #2, Dkt. 85,

(1)

139

09-10-2004: "[P]ursuant to the terms of bail granted by Judge Thrash") from    P. 139
"the U.S. District Court, [SDNY]", when you stated in your letter dated
January 12, 2012 (Ex. #1 at P. 1): "The Federal Courts are not linked,
therefore, we cannot access another court's documents. Please mail your copy
request to the appropriate court[?]" (emphasis added).

2.      Thus, conversely, "another court[]", the District Court (SDNY), "cannot
access" documents of proceedings occurring in the District Court (N.D. GA)
to wit: (1) The September 1, 2004 illegal arrest and detention of Mr. Ware,
in Atlanta, GA based on a null and void Atlanta, GA bankruptcy court order
entered after December 3, 2003, and related proceedings occurring before
District Judge Thomas W. Thrash (N.D. GA) whom conducted the illegal Judge Thrash
Proceedings lacking all subject matter jurisdiction (conducted in his personal
capacity for which he has civil monetary liability): Cf. Ex. #2, P.1, Dkt.
#85, "pursuant to the [exorbitant bail [of $250,000] granted by Judge Thrash"
after illegally detaining Mr. Ware in violation of state and federal law,
while acting in collusion with District Judge Leonard B. Sand (SDNY).

3.      Thus, Mr. Hatten, ostensibly, you and your surrogates are either
unabashedly confused or incompetent, or both, where you clearly contradicted
yourself: If "[t]he Federal Courts are not linked" then how can the District
Clerk in the SONY access documents filed in the Atlanta, GA (N.D. GA) courts, a
conumdrum, as you wrote in the January 12, 2012 letter, cf. Ex. #1, P.1?

The apparent confusion regarding accessing the documents of the illegal
September 1, 2004 arrest where in fact Judge Thrash did enter a bail order
of $250,000 which was filed in the office of the clerk, and bail was posted
by Mr. Ware, and the bail amount was subsequently returned by check written
on the account of the District Clerk on Bank of America in the amount of
$185,000.00, which there is a record of the transaction at Bank of America,
which will be subpoenaed in regard to the obvious fraud being conducted by
yourself, your surrogates, and District Judge Thrash, as well as your records
will be subpoenaed which either you will lie under oath, and commit another
federal criminal offense, or you will produce the requested documents in
certified format, which then you have lied in the previous letters to obstruct
justice — Mr. Hatten you have placed yourself in a tricky situation.

It is palpable, even the crook District Court Sand, conceded at      Ex.
#2, P. 1, Dkt. #85 (09/10/2004) that Judge Thrash set bail pursuant to a bail

(2)

140

order filed in the District Court (N.D. GA) where bail was posted on September    P. 140
3, 2004 in the amount of $250,000.00 and Mr. Ware was released from the
illegal detainment at the hands of Judge Thrash acting without any subject
matter jurisdiction over the September 1, 2004 and related proceedings —
acting in his personal capacity where he has civil liability along with the
U.S. Marshals in the amount of $250,000,000.00 (USD).

Which cannot be contested due to the fact that District Judge Sand
entered an order on 09/28/2004 (cf. Ex. #2, P. 1, Dkt. #88) which was not
appealed by the 02-CV-2219 (LBS)(SDNY), ("2219") plaintiffs, conceding that
Judge Thrash lacked all subject matter jurisdiction on September 1, 2004 and
later dates to conduct any proceedings in regard to the bogus and fraudulent
December 22, 2003 2219 court's order (Dkt. #80:2219) entered after December
3, 2003 while GPMT was under the protection 11 USC §§362(a) and 365(c)(2)
orders of the Atlanta, GA bankruptcy court.

Accordingly, had Judge Thrash heeded the requests of Mr. Ware at the
illegal September 1, 2004 illegal detainment proceeding and paused for one
second and called the bankruptcy clerk's office in the same building at 75
Spring St., SW, Atlanta, GA on the thirteenth floor, he would have been able
to confirm that the bogus and fraudulent arrest orders of the 2219 New York
court were null and void ab initio, and entered in violation of federal law,
and ordered Mr. Ware immediately released.

However, rather, Judge Thrash would not hear Mr. Ware's requests, and
instead called Judge Sand's Chambers, and announced in open court, "I called
Judge Sand's office, and he is out of the country" and then upon request of
of Mr. Ware to be immediately released, denied that request, and then imposed
the illegal bail of $250,000.00 as ransom to force Mr. Ware to capitulate and
succumb to the extortion of the Judge Sand and the 2219 plaintiffs and issue
fraudulent Rule 144(k) (2004) legal opinions to the 2219 plaintiffs (admitted
15 USC 77b(a)(11) 'statutory underwriters' cf. 2219 complaint at ¶¶10-21) to
enable the 2219 plaintiffs to conduct an illegal public offering of
$18,000,000 of unregistered GPMT's restricted securities.

What is even more perplexing in regard to this case is that District
Judge Sand had twice, first on November 25, 2002 (Dkt. ##50, 54:2219), and
August 13, 2003 (Dkt. #65:2219) found as the 'law of the case' that the 2219
plaintiffs were ineligible for Rule 144(k) (2004), which was not appealed by
the 2219 plaintiffs, that in fact the 2219 plaintiffs were 'statutory
underwriters' ineligible for any Rule 144(k) or §4 of the 1933 Act statutory
exemptions from Section 5 of the 1933 registration requirements.

(3)

141

Thus, acting in his personal capacity in collusion and conspiring with    P. 141
the 2219 plaintiffs, and District Judge Sand, Judge Thrash aided, abetted,
and directly participated in the illegal extortion of GPMT of more than
$18,000,000 of unregistered securities, caused GPMT's shareholders more than
$500,000,000.00 in loss market capitalization value, and caused damage to
the capital markets of unspecified damages, caused and injured Mr. Ware's
business interests in the amount of $250,000,000.00, and caused pain and
suffering and emotional distress to Mr. Ware and his family in the amount of
$250,000,000.00.

4.      Mr. Hatten, it is palpable to everyone except yourself and Judge Thrash,
that both you and Judge Thrash will certainly be sued in a civil capacity for
racketeering to obstruct justice, and conspiring to do the same, and most
likely criminally indicted for obstruction of justice for attempting to
prevent Mr. Ware, a party to the September 1, 2004 and related proceedings,
access to public records required to be maintained by the Office of the
District Clerk pursuant to Fed. R. Civ. Proc. 79, and federal rules and
regulations.

## II.
## MAGISTRATE JUDGE LINDA T. WALKER'S ILLEGAL PROCEEDINGS.

1.      Mr. Hatten, exactly why would Mr. Ware request copies of transcripts
and documents of the proceedings which occurred in U.S. v. Ware, 1:05-MJ-116
(LTW), (N.D. GA), ("116") on February 3, 2005 and again on February 11, 2005,
(cf. Ex. #2, P. 2-10), in the magistrate court in Atlanta, GA under the
authority of the District Court, N.D. GA, from the District Court, (SDNY),
when you yourself stated in your January 12, 2012 letter (Ex. #1, P.1), "The
Federal Court are not linked, we cannot access another court's documents [and
another court cannot access our documents]?" (emphasis added).

2.      On February 3, 2005, (Ex. #2, P. 2-10) in U.S. v. Ware, 1:05-MJ-116
(LTW), ("116"), the U.S. Marshals (N.D. GA) acting on the bogus, fraudulent
and counterfeit 11-17-2004 arrest warrant (Ex. #2, P. 2) illegally entered Mr.
Ware's business office located at 2002 Perimeter Summit Blvd., Suite 1275,
Atlanta, GA 30319, and illegally arrested, searched, detained, and kidnapped
Mr. Ware based in total, again, on the same null and void ab initio December
22, 2003 order (Dkt. #80:2219) entered after GPMT filed for protection under
Chap. 7 (11 USC §§362(a) and 365(c)(2)) on December 3, 2003 in Atlanta, GA.

(4)

3.    The same marshals who illegally arrested Mr. Ware on September 1, 2004 in Atlanta, GA on the same bogus, fraudulent, and counterfeit 2219 **P_out42_in** order again illegally arrested Mr. Ware while acting in collusion and conspiring with Judge Sand and the 2219 plaintiffs attempting to conduct an illegal 'public offering' of GPMT's restricted securities to evade the onerous registration requirements of Section 5 of the 1933 Act.

4.    At approximately 1:00 p.m. on February 3, 2005, after being illegally arrested, searched, detained, and kidnapped by the marshals, Mr. Ware was forcefully taken, against his will in handcuffs and shackles, before Magistrate Judge Linda T. Walker at 75 Spring St.,SW, Atlanta, GA, Richard B. Russell Courthouse in U.S. v. Ware, 1:05-MJ-116 (N.D. GA).

During the proceedings in 116 on February 3, 2005 Mr. Ware attempted to explain to Judge Walker that the same bogus, fraudulent, and counterfeit 2219 court order was on September 28, 2004 ruled null and void by District Judge Sand in 2219 (cf. Ex. #2, P.1, Dkt. #88: 09/28/2004), i.e., the 2219 court's orders were void, according to Judge Sand, "to the extent it authorized the _arrest_ of Thomas Ware outside the State of NY and more than 100 miles from the US Courthouse at 500 Pearl St., NY, NY." (emphasis added).

5.    During the February 3, 2005 proceedings, Judge Walker appeared to be under the influence of some form of substance — she appeared irrational and completely lacking in all sensible decision making capacity.

During the February 3, 2005 proceedings in Atlanta, GA before Judge Walker, AUSA Gail McKenzie, motioned the court to detain Mr. Ware, when Mr. Ware would not consent to waive the proceedings, and when Mr. Ware challenged his illegal detainment, arrest, and conditions being imposed upon him based in total on null and void orders of the 2219 court — which could have been verified by contacting Judge Thomas W. Thrash and E. Clayton Scofield in regard to the same September 1, 2004 illegal proceedings; or contacting the clerk of the U.S. Bankruptcy Court in the same building at 75 Spring St., SW, Atlanta, GA 30303.

Instead, Judge Walker, appearing to be under the influence of some substance, shouted from the bench! "You have a history of this sort of _stuff_, you are being detained until further notice." (emphasis added).

Judge Walker adamantly, irrationally, refused to conduct any inquiry into the legality of the bogus arrest warrant based in total on null and void orders, ruled null and void by the same Judge (Sand) whom issued the bogus

(5)

your legal duties as proscribed by Rule 79 of the Fed. R. Civ. Proc., and rules and regulations issued by the Office of the Administrator of the U.S. Courts **P. 144** transparent attempt to cover up the frauds committed by Judge Walker, Judge Thrash, the U.S. Marshal, Judge Sand, the 2219 plaintiffs, Chief Judge Carnes, Judge Evans, and others known and unknown to extort GPMT of more than $18,000,000.00 in free-trading securities, and more than $500,000,000.00 in market capitalization.

Mr. Hatten, your official and personal conduct has seriously adversely affected the orderly administration of justice in the courts of the N.D. GA, and you have directly participated in an ongoing association-in-fact, i.e., a continuing criminal enterprise, (the "CCE") organized by Article III judicial officers of the court, and former and current employees and officials of the Department of Justice, and the Securities and Exchange Commission, (the "SEC") — you and your surrogates have primary liability for the criminal acts committed by your office to cover up the crimes of Judge Walker, Thrash, Carnes, Evans, Murphy, and Sand to extort GPMT and its shareholders.

Mr. Hatten, this matter has reached a critical juncture, due primarily to the delatory tactics of the Office of the District Clerk, Judge Walker, Thrash, and Carnes: Unless you in the official capacity of the District Court Executive, expressly deny with explanation all factual allegations contained herein, then in all future proceedings in regard to this matter, it shall be reported that the Office of the District Court Executive had no objections to the contents of this memorandum and attachment Exhibits #1 and #2.

Mr. Hatten, unless I receive a written substantive response on or before February 3, 2012, then I will presume that you will not make any response and that you have no opposition to a writ of mandamus issuing on the Office of the District Clerk to compel the certification of the records in the Judge Thrash and Judge Walker, and the October 30, 2008 Order to Suspend proceedings.

Sincerely,

_Wayne J. Ware_
Ulysses Thomas Ware

cc:  Linda T. Walker (w/o enclosures).
     Thomas W. Thrash, Jr. (w/o enclosures).
     Julie E. Carnes (w/o enclosures).
     Eric H. Holder, Jr. (Attorney General of the United States)
enclosures: Ex. ## 1, and 2.          (7)

September 1, 2004 arrest orders because Mr. Ware refused to criminally violate the federal securities and criminal statutes and issue fraudulent Rule **P. 143** (2004) legal opinions to the 2219 plaintiffs to facilitate an unregistered 'public offering' of Mr. Ware's client, the publicly-traded company, Group Management Corp., ("GPMT").

6.    Had Judge Walker, rationally, paused and accessed the September 1, 2004 file in possession  of Judge Thomas W. Thrash, Jr., and the U.S. Marshals, located in the same building at 75 Spring St., SW, Atlanta, GA, Judge Walker would have concluded, the Magistrate Court lacked subject matter jurisdiction to arrest, and detain Mr. Ware based on the null and void December 22, 2003 (Dkt. #80:2219) order, entered while GPMT was under the protection of the U.S. Bankruptcy Court sitting in Atlanta, GA.

Had Judge Walker been competent, she would have realized the palpable fact that 28 USC §1294(1) prohibited the 2219 New York district court and Second Circuit Court of Appeals from any review of matters occurring in GPMT's Atlanta, GA Chap. 7 proceedings, and when read in pari materia with the United States Supreme Court precedent, Celotex Corp. v. Edwards, 514 U.S. 300, 313-14 (1995), Judge Walker and AUSA Gail McKenzie would have immediately known the New York indictment was _counterfeit_ and _fraudulent_, and immediately ordered Mr. Ware released from custody.

Had Judge Walker been competent or not under the influence of some substance or both, properly conducting herself in a rational manner, rather than a hysterical unprincipled person, this matter would have been concluded in 2005.

Yet seven years later, the same persons are again attempting to conduct another fraud on the courts, the public, and Mr. Ware, to cover up the crimes committed by prosecutors and judicial officers of the court in the illegal arrest, detainment, and kidnapping of Mr. Ware on September 1, 2004, and again on February 3, 2005 in Atlanta, GA.

7.    Mr. Hatten, the record is indisputable in regard to the sequence of events which occurred on September 1, 2004 and again on February 3, 2005 in Atlanta, GA in the federal courts of the N.D. GA, cf. Ex. ## 1, and 2 attached to this memorandum.

Mr. Hatten, time is out for the game playing in regard to this matter; you have had ample opportunity, along with Judges Walker, and Thrash to produced the complex public records in regard to these matters, and you have refused to fulfill

(6)

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

March 1, 2012

James N. Hatten
Office of the District Clerk (N.D GA)
75 Spring St., SW
Atlanta, GA 30303

RE: Request for Access to Public Records.

Mr. Hatten:

Pursuant to Hartford-Courant v. Pellegrino, 380 F.3d 83, 91-96 (2d Cir. 2004) (J. Katzmann) Mr. Ware is requesting that the District Clerk's Office grant immediate access to the following "public records":

1. A copy of the transcript of the teleconference between Judge Thomas W. Thrash, Jr., SEC counsel Jeffrey B. Norris, and Mr. Ware in November 2005 in regard to a motion to quash a subpoena issued by the District Court (N.D. GA) on Citizens Trust Bank.

2. A certified copy of the October 30, 2008 Order to Suspend Mr. Ware from practice before the Courts of the Northern District of Georgia signed by District Judge Evans.

3. A copy of Local Rule 83 purportedly used by the District Court as authority to initiate the October 30, 2008 judicial proceeding regarding issuing the October 30, 2008 Order to Suspend.

4. A copy of complete file relied upon by the District Court as justification to issue the Order to Suspend.

5. A certified copy of the notice purportedly served on Mr. Ware in regard to the October 30, 2008 Order to Suspend at the MDC in Brooklyn, NY. containing Mr. Ware's signature, per Local Rule 83.

6. A copy of the motion Mr. Ware filed with District Judge Thomas W. Thrash, Jr. on September 8, 2004 in regard to Mr. Ware's illegal arrest on September 1, 2004 by the U.S. Marshals on fraudulent and null and void ab initio orders of the New York 2219 court (December 22, 2003 (Dkt. #80) and June 22, 2004 (Dkt. #83)).

7. A copy of all documents filed in U.S. v. Ware, 05-MC-116 (LTW) (2005).

8. A copy of the 02-CV-2219 (LBS)(SDNY) judgment filed in the Court by Kenneth A. Zitter, Esq. pursuant to 28 USC §1963, i.e., Dkt. #54 (November 25, 2002 judgment).

Mr. Hatten please itemized the cost to copy each of the requested documents and inform Mr. Ware at he above address on or before March 10, 2012.

(1)

Mr. Hatten, this is the third request that Mr. Ware has made to access the above listed public records required to be maintained by the district clerk's office, and made available to the public for review.

Mr. Hatten if there are any questions in regard to whether or not Mr. Ware has a First Amendment right of access to each of the above public records, then have your legal counsel access the cited precedent Hartford-Courant, supra, and I am sure your counsel will agree that the Office of the District has a legal duty to grant access to the requested public records, else a constitution violation has occurred.

Time is of the essence in regard to granting access to each of the requested document -- each is needed in another proceeding.

Sincerely,

Ulysses Thomas Ware

cc:    Judge Thomas Hogan (General Counsel Administrative Office for the U.S. Courts).

(2)

** TOTAL PAGE.03 **

AUSA N. GOLDIN
212 637 2334

(TR. 12 (Rev. 6/12)

WARRANT FOR ARREST

## United States District Court

| | |
|---|---|
| | DISTRICT |
| | SOUTHERN DISTRICT OF NEW YORK |

UNITED STATES OF AMERICA

v.

THOMAS WARE a/k/a "Ulysses Thomas Ware"

| DOCKET NO | MAGISTRATE'S CASE NO |
|---|---|
| 04CRIM. 1224 | |

NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED

THOMAS WARE a/k/a "Ulysses Thomas Ware"

WARRANT ISSUED ON THE BASIS OF: ☐ Order of Court
X Indictment  ☐ Information  ☐ Complaint

DISTRICT OF ARREST

TO:
ANY AUTHORIZED FEDERAL LAW ENFORCEMENT OFFICER

CITY

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person before the United States District Court to answer to the charge(s) listed below.

DESCRIPTION OF CHARGES

Criminal contempt

S. D. OF N.Y.

| IN VIOLATION OF | UNITED STATES CODE TITLE | SECTION |
|---|---|---|
| | 18 | 401(3) |

BAIL  OTHER CONDITIONS OF RELEASE

| ORDERED BY | SIGNATURE (FEDERAL JUDGE/U.S. MAGISTRATE) | DATE ORDERED |
|---|---|---|
| HON. ANDREW J. PECK | | 11-17-04 |

| CLERK OF COURT | (BY) DEPUTY CLERK | DATE ISSUED |
|---|---|---|
| J. MICHAEL McMAHON | | |

### RETURN

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE EXECUTED | | |

Note: The arresting officer is directed to serve the attached copy of the charge on the defendant at the time this warrant is executed.

965704

# United States District Court

_____ Northern _____ DISTRICT OF ___ Georgia /

UNITED STATES OF AMERICA

V.

## ORDER SETTING CONDITIONS
## OF RELEASE

_Ullysses Thomas Ware_
Defendant

Case Number:   1:05-MJ-116

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1) The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2) The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing of any change in address and telephone number.

(3) The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall next appear at (if blank, to be notified)_____

Place

_____ on _(to be Notified)_____

Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

( ✓ ) (4) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( ) (5) The defendant executes an unsecured bond binding the defendant to pay the United States the sum of

_____ dollars ($_____)

in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

AO 98 (Rev. 8/85) Appearance Bond

# United States District Court

*Northern* ———— DISTRICT OF ———— *Georgia*

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 1 1 2005

LUTHER D. THOMAS, Clerk
By:
Deputy Clerk

UNITED STATES OF AMERICA

V.

**APPEARANCE BOND**

*Ulysses Thomas Ware*
_____
Defendant

CASE NUMBER: *1:05-MJ-116*

~~Non-surety:~~ I, the undersigned defendant acknowledge that I and my . . .

Surety: We, the undersigned, jointly and severally acknowledge that we and our . . .

personal representatives, jointly and severally, are bound to pay to the United States of America the sum of $ _____ *30,000.00* _____ , and there has been deposited in the Registry of the Court the sum of $ _____ in cash or _____ (describe other security.)

The conditions of this bond are that the defendant _____ *Ulysses Thomas Ware* _____ .
(name)

is to appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of defendant's release as may be ordered or notified by this court or any other United States district court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such a matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which shall continue until such time as the undersigned are exonerated.

If the defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States district court having cognizance of the above entitled matter at the time of such breach and if the bond if forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States district court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other laws of the United States.

This bond is signed on _____ Date _____ at _____ Place _____ .

Defendant. _____ Address. *8325 Habersham Troon Cr.*
*Duluth, GA 30022*

Surety. X _____ Address. X *315 King St. 334/222-3628*

Surety. _____ Address *Andalusia, AL 36420*

*7097 G. Iskuay Court Villa Rica, Ga 30180*

Signed and acknowledged before me on _____ Date _____

_____
Judicial Officer/Clerk

Approved: _____
Judicial Officer