Submitted by Counsel:

*Ulysses J. Ware*

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
12/12/2012 05:22:22 P.M. printed





**PRIORITY**
FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 9 2012

JAMES N. HATTEN, CLERK
By:
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| ULYSSES THOMAS WARE,<br>PETITIONER,<br><br>VS.<br><br>WARDEN DARLEEN DREW,<br>BUREAU OF PRISONS,<br>ATLANTA PRISON CAMP.<br>RESPONDENTS. | :<br>:<br>:<br>:<br>: CASE #: 12-CV-_____<br>: **1:12-CV-4397**<br>:<br>:<br>:<br>: |

EMERGENCY PETITION FOR IMMEDIATE RELEASE
28 USC §2241: PETITION FOR A WRIT OF HABEAS CORPUS
ACTUAL AND FACTUAL INNOCENCE OF ALL CHARGES

Appendix III to 12/12/2012 Declaration of Material Fact

**II**

12/13/2012

 1 ┃ UNITED STATES DISTRICT COURT
   ┃ SOUTHERN DISTRICT OF NEW YORK
 2 ┃ ------------------------------x

 3 ┃ UNITED STATES OF AMERICA,

 4 ┃                 v.                         05 CR 1115 (WHP)

 5 ┃ ULYSSES THOMAS WARE, aka
   ┃ "Thomas Ware",
 6 ┃
   ┃                       Defendant.
 7 ┃
   ┃ ------------------------------x
 8 ┃
   ┃                                            New York, N.Y.
 9 ┃                                            January 5, 2007
   ┃                                            12:15 p.m.
10 ┃
11 ┃ Before:

12 ┃                   HON. WILLIAM H. PAULEY III,

13 ┃                                            District Judge

14 ┃
   ┃                          APPEARANCES
15 ┃
   ┃ MICHAEL J. GARCIA
16 ┃      United States Attorney for the
   ┃      Southern District of New York
17 ┃ ALEXANDER H. SOUTHWELL
   ┃ STEVEN D. FELDMAN
18 ┃      Assistant United States Attorney

19 ┃ ULYSSES THOMAS WARE, Pro Se

20 ┃ GARY BECKER
   ┃      CJA Standby Attorney for Defendant Ware
21 ┃
   ┃ SPECIAL AGENT DAVID MAKOL, FBI
22 ┃
23 ┃
24 ┃
25 ┃

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

8/16/2012

1            (In open court)

2            THE DEPUTY CLERK:  Matter on for hearing, United

3    States of America against Ulysses Thomas Ware.  Would counsel

4    for the government please state his appearance for the record.

5            MR. SOUTHWELL:  Alexander Southwell for the

6    government.  With me is Special Agent David Makol for the FBI.

7    AUSA Feldman is stuck in magistrate court and may be joining us

8    in a minute.

9            THE COURT:  Good afternoon, Mr. Southwell.

10           MR. WARE:  Mr. Ware.

11           THE COURT:  Good afternoon, Mr. Ware.

12           MR. BECKER:  Gary Becker, standby counsel for

13    Mr. Ware.  Good afternoon, your Honor.

14           THE COURT:  Good afternoon, Mr. Becker.

15           I've had an opportunity to review Mr. Ware's motion

16    papers.  I've also received and reviewed the government's

17    response, and I have reviewed a reply paper submitted by

18    Mr. Ware.  At this time, the Court is prepared to hear from the

19    parties concerning this matter.

20           Mr. Ware, do you wish to be heard?

21           MR. WARE:  Yes, sir your Honor.  Should I step to the

22    podium?

23           THE COURT:  That might be best.  That way we'll all be

24    able to clearly hear you.

25           MR. WARE:  Your Honor, I'll make a brief opening

1   statement, and I'll get right into the meat of the matter, if
2   you don't mind. Is that permissible?

3        THE COURT: Go ahead. Yes.

4        MR. WARE: Yes, sir, your Honor. I filed this motion
5   to suppress in response to the current case brought by the
6   government. The current case originated from a civil
7   proceeding in the District of Nevada filed on or about July 14,
8   2003 by Jeffrey Norris, who at that time was the lead counsel
9   at that time for the SEC.

10       In the course of that proceeding, there was some
11  contact by the SEC by detective -- excuse me, Special Agent
12  David Makol of the FBI. Pursuant to that contact, Mr. Norris,
13  according to the affidavit of October 3, 2005, said that he
14  freely shared public information initially and subsequently
15  nonpublic information with the FBI.

16       A short time after that a request, actually on
17  August 17, 2004, Alexander Southwell, the district United
18  States attorney in the Southern District of New York, faxed to
19  Jeffrey Norris an access to files requesting access to all
20  public and nonpublic information contained in Mr. Norris's SEC
21  administrative and civil file. According to Mr. Norris's
22  affidavit he readily provided the SEC, FBI and U.S. Attorney's
23  office with all the information that he had in his file.

24       I think, your Honor, one of the primary issues in this
25  particular matter is at what point did Special Agent Makol of

4

1    the FBI actually contact Mr. Norris. Again, the government has

2    not actually supplied the date for that in any of its papers.

3    And that's very important for two reasons. According to the

4    authority that I've cited in my moving papers is that once a

5    civil action is initiated and a subsequent criminal action is

6    initiated for the same conduct -- this is at least my position

7    -- is that the government must notify the defendant in the

8    civil and the criminal action of its initiation or pending

9    criminal charges. And I can state for the record, your Honor,

10   that was never done.

11         THE COURT: Didn't the civil proceedings in Nevada

12   begin long before July 14, 2003?

13         MR. WARE: Your Honor, that was the civil

14   investigative portion of that. It started approximately April

15   of 2002, the investigative portion of that action. It

16   subsequently went towards a civil action actually being filed

17   in U.S. District Court at the conclusion of the investigative

18   portion of that.

19         THE COURT: Didn't you and others give depositions in

20   June and July of 2002?

21         MR. WARE: Yes, depositions were given to the SEC in

22   June of about 2002, correct.

23         THE COURT: According to the government, the criminal

24   investigation here in the Southern District commenced with a

25   referral to their office; that is, the U.S. Attorney's office

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1    for the Southern District, in December of 2003. Isn't that

2    true?

3             MR. WARE: Well, according to the government's papers,

4    at least what my understanding of what the government said, a

5    referral came in from Judge Sand's office to their office on or

6    about December '03, correct.

7             THE COURT: So what is the factual basis for your

8    assertion that the United States Attorney's office for the

9    Southern District of New York was using the SEC civil

10   investigation in 2002 in contemplation of a criminal proceeding

11   in this district?

12            MR. WARE: Well, your Honor, I think we have to

13   bifurcate the actions of the SEC in two distinct phases.

14   Number one, you had civil investigative phase which started on

15   or about April 2002 and ended on or about December 2003 with

16   the Wells notice. That was basically the official last chance

17   to make a determination whether or not this is going forward or

18   whether or not it will be terminated.

19            From that point on, which, again, is about the same

20   time as the referral came into the United States Attorney's

21   office on or about December 2003. On or about July 2003,

22   that's when the civil action after it was made from the civil

23   investigation, additional -- an enforcement proceeding will be

24   initiated evidenced by the filing of a civil complaint in the

25   District of Nevada by Jeffrey Norris.

1    THE COURT: That civil enforcement action in the

2    District of Nevada was filed before the referral from Judge

3    Sand in this district. Correct?

4    MR. WARE: Yes, sir. From that point, the Federal

5    Rules of Civil Procedure attached to the case, which means

6    that -- of course you know what the Federal Rules of Civil

7    Procedure that govern discovery, production of documents, etc.

8    So from that point on, all depositions, discovery, etc., was

9    governed by the Federal Rules of Civil Procedure.

10    Now, once Mr. Southwell became involved in the case --

11    the official referral came into his office, according to the

12    government's papers, December of 03. Agent Makol contacted

13    Mr. Norris sometime after the filing of the civil complaint in

14    July of 2003. Now, exactly what date that is, that's a

15    disputed issue. The government has never said what date Agent

16    Makol actually contacted Mr. Norris. So from that date

17    forward, the contact by Mr. Norris, by FBI Agent Makol, at that

18    point, my moving papers assert that the government had an

19    obligation and responsibility to not only notify the defendants

20    in that civil litigation but also the Court, because, again,

21    the Federal Rules of Civil Procedure give defendants in same

22    conduct actions certain rights to seek protective orders,

23    number one, under the Federal Rules of Civil Procedure 26(c).

24    Now, it's virtually impossible to seek a protective order if

25    you don't know you need protection from something or it's

1    virtually impossible to take the Fifth Amendment to remain

2    silent unless you know there is something you need to take the

3    Fifth Amendment to remain silent of.

4           So, I assert and my papers assert that from that

5    moment when FBI Agent Makol contacted Jeffrey Norris,

6    Mr. Norris was aware at that point there was a contemplated

7    criminal action against myself and some of the civil litigants

8    in that case, and Mr. Norris was obligated at that point to

9    notify not only the civil litigants but also the Court so that

10   the rights of the civil litigants could be protected.

11          THE COURT: All right. Accepting -- that is,

12   accepting your argument as true for the moment, what was it

13   that was produced after July of 2003 that you're seeking to

14   suppress?

15          MR. WARE: Okay, your Honor, pursuant to Mr. Norris's

16   subpoenas, notices to produce, other procedures under the

17   Federal Rules of Civil Procedure, a lot of documents. Exactly

18   what, I don't know exactly what. Also, I made a request on

19   Mr. Southwell to provide a log of all documents that were

20   produced by the SEC. Of course, he refused to do that.

21          THE COURT: Just hold on for one second. You say that

22   you don't know what material it is that you're seeking to

23   suppress?

24          MR. WARE: Well, your Honor --

25          THE COURT: Let's see if we can draw some lines so

1   that I can understand whether you agree with me that there is

2   certain material that is not the subject of any motion to

3   suppress by you in this case.

4           MR. WARE:  Sure.

5           THE COURT:  Are you seeking to suppress your

6   deposition?

7           MR. WARE:  No, sir, your Honor.  I think Mr. Southwell

8   has indicated he will not use that.  I will seek to suppress

9   all information --

10          THE COURT:  But even if he weren't going to use it,

11  would you agree that that material would not be subject to

12  suppression based on the argument advanced in your motion?

13          MR. WARE:  Your Honor, I would like to cite one case

14  that Mr. Southwell also cited in his case, the case of U.S. v.

15  Fields, which is a Second Circuit case.

16          THE COURT:  Just hold on one second.

17          Mr. Feldman, you're in the case.  You can come up and

18  sit in the well.

19          MR. FELDMAN:  Thank you, your Honor.

20          MR. BECKER:  Your Honor, may I confer with Mr. Ware

21  for one moment?

22          THE COURT:  Surely.

23          MR. BECKER:  Thank you, your Honor.

24          (Pause)

25          MR. WARE:  Your Honor, the case I was referring to,

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

8/16/2012

1  the case of *U.S. v. Fields*, 592 F.2d 638 (2d Cir. 1978) case
2  that Mr. Southwell had cited in his opposition to the motion to
3  suppress, and that is, again, a Second Circuit case where in
4  that case there was basically almost a similar fact pattern.
5  There was initial SEC investigation and an SEC civil action was
6  filed.  There was a settlement concluded in the civil action, a
7  subsequent referral to the U.S. Justice Department and a
8  subsequent indictment.

9        Now, in that particular case, the SEC -- there they
10  were very careful to follow the procedures when they were aware
11  that once the civil action attached, the Federal Rules of Civil
12  Procedure attach.  None of the file was transferred to the
13  criminal authorities until the conclusion of the entire SEC
14  action, meaning the investigative phase which was over once the
15  civil action was filed, but none of the file was sent over to
16  criminal authorities, none of it, investigative or civil action
17  file until the conclusion, a settlement was reached in the
18  civil action.

19        That's what I'm saying here.  My particular case is
20  that once the civil action in Nevada was filed in July 2003,
21  from that point forward, according to the holding in Fields,
22  was that all that information could have been subject to a
23  protective order, number one, but to be subject to a protective
24  order you have to know that you have to protect something which
25  would indicate the government had an obligation to inform the

SOUTHERN DISTRICT REPORTERS, P.C.              (212) 805-0300

8/16/2012

1   Court as well as the civil litigants in the case in Nevada.

2        Now, again, following Fields, the investigative

3   portion of that file was also held by the civil authorities

4   until such time as the overall civil action was concluded,

5   which would include my deposition or anything that the SEC also

6   obtained in 2002.

7        So, if you apply Fields to this case, none of the

8   SEC's civil files could be transmitted to the criminal

9   authorities until some type of settlement, judgment or

10  something in the civil action took place

11       THE COURT:  But Fields, among other things, involved a

12  referral by the SEC, didn't it?

13       MR. WARE:  After the conclusion of the civil case,

14  your Honor.  I'll show you exactly where it says it here.  It

15  says on page 6 in my printing:  These contacts with Assistant

16  United States Attorney Sorkin continued to October and

17  November.  During this period Tucker and Perlmutter urged the

18  United States Attorney's office to investigate the TDA matter,

19  but they made it clear they wanted to conclude a settlement in

20  the civil action before making a criminal reference.

21       That's very important because the Federal Rules of

22  Civil Procedure govern that entire space, your Honor.  So once

23  the Federal Rules of Civil Procedure attach, which is, of

24  course, at the initiation of the civil action, then all that

25  information that's been transmitted to the SEC is subject to a

1  protective order, and it's also subject to notice by the

2  criminal authorities to the Court and the civil litigants that

3  a pending imminent criminal action is contemplated.

4          THE COURT: But in this case wasn't there an entirely

5  independent referral by Judge Sand to the U.S. attorney for the

6  Southern District?

7          MR. WARE: Independent as far as the actual -- I guess

8  it came in from Judge Sand. I don't know if that's the only

9  inference they have. The government never addressed that issue

10  in its papers, if that was the only instance of any type of

11  referral activity. But even if it was, they are still governed

12  by the Federal Rules of Civil Procedure, your Honor, whether or

13  not it came from Judge Sand or whether or not it came from the

14  SEC itself. I don't think the subject of the source of the

15  referral governs whether or not the information obtained during

16  the investigative phase is subject to the Federal Rules of

17  Civil Procedure.

18          Regardless of where the referral comes from, the

19  Federal Rules of Civil Procedure attach at that point as long

20  as the civil action is ongoing until there's a concrete

21  conclusion, then the government is obligated to a notice.

22  Otherwise, due process then is totally on notice, your Honor.

23  If you don't have any notice, you can't have any due process.

24  You have to have notice to know you need a protective order.

25  You have to have notice to know that you need to remain silent

1  from something. So, without notice, you can't assert your

2  right. So I think it would be virtually impossible to say or

3  to assert that the Federal Rules of Civil Procedure do not

4  attach regardless of where the referral comes from. That

5  wouldn't be logical.

6         THE COURT: Let me return to the question I posed

7  earlier, specifically what documents or information is it that

8  you're seeking to suppress?

9         MR. WARE: Your Honor, I don't have a laundry list of

10 everything I was given. I would seek to suppress according to

11 Fields every document the SEC obtained and gave to the U.S.

12 Attorney's office. Now, again, I would ask the Court to have

13 the U.S. Attorney's office delineate every document they

14 received from the SEC from the beginning to the end. I don't

15 know what that is.

16         THE COURT: Hasn't the U.S. Attorney's office already

17 advised you that they've produced to you in discovery every

18 document that they received from the SEC?

19         MR. WARE: No, sir, they have not. I specifically

20 asked Mr. Southwell if he would give a log of all documents,

21 exhibits, e-mails, summaries of statements of SEC action, but

22 he adamantly refused. If need be, I can supply the Court with

23 a copy of that letter to Mr. Southwell, but, no, sir, that had

24 never taken place.

25         Also, your Honor, a very important issue is exactly

1   what date Agent Makol contacted Mr. Norris. The government has
2   never supplied one affidavit in any of its files detailing
3   exactly what date. Was it before July 2003? Or was it after
4   July 2003? If it was before July 2003, again, the same
5   procedures take place at that time, which, again, the
6   government has been silent on that issue, your Honor.

7          THE COURT: The government says in its memorandum of
8   law in opposition to your motion at page 3, the bottom of the
9   first full paragraph, and I quote: "In the course of
10  communications with the SEC, the government obtained the
11  depositions taken by the SEC as well as the documents obtained
12  by the SEC in the course of that action and investigation (all
13  of which have been turned over to the defense in discovery in
14  this matter)."

15         MR. WARE: One second, your Honor. Excuse me.

16         THE COURT: It's on Page 3.

17         MR. WARE: Okay.

18         THE COURT: The bottom of the first full paragraph.
19  In light of that, how can you assert to me that the government
20  has not turned over the documents that it received from the
21  SEC?

22         MR. WARE: Let me make sure I'm reading what you said.
23  You said the SEC approved -- could you point that out to me?

24         THE COURT: I'm reading the next sentence. "In the
25  course of communications with the SEC, the government obtained

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

8/16/2012

1   the depositions taken by the SEC as well as the documents

2   obtained by the SEC in the course of that action and

3   investigation (all of which have been turned over to the

4   defense in discovery in this matter)."

5        MR. WARE: Your Honor, I can state right now that

6   e-mails, SEC summaries, I don't have them. If you summon Mr.

7   Bachner, then he can make that statement to the Court. They

8   weren't in the documents that Mr. Bachner sent to my office,

9   any SEC summaries, any SEC reviews, any SEC matters. That was

10  not sent to me. I don't have it. If Mr. Southwell can say he

11  did that, then -- again, that's why I asked for a log earlier

12  in this action, your Honor, of every document Mr. Southwell

13  said he sent to the defense so that we wouldn't have this

14  issue. He adamantly refused to supply the log of -- I asked

15  for telephone calls. I asked for e-mail correspondence. I

16  asked for SEC summaries. I asked for any FBI transmissions to

17  the SEC, any SEC transmissions to the FBI. Mr. Southwell

18  adamantly refused to supply that information to me, personally

19  to me.

20       So if he's done it, he can say he's done it, but I

21  don't have it if he's done it. I know there is no log that

22  I've been supplied with. Not only what he actually received

23  from the SEC, he never would supply a log for that either, your

24  Honor. I asked him specifically for that via letter, and he

25  adamantly refused to do it. If you give me one moment, your

1    Honor, I will give you his letter replying to that.

2        THE COURT:  No.  Anything further that you want to

3    argue to me in connection with this application?

4        MR. WARE:  Well, yes, sir, your Honor.  Again, I just

5    want to address some of Mr. Southwell's authority in his

6    opposition.  Again, he cites the case of Fields, which Fields I

7    think is directly on point of what I'm arguing for here that

8    particular case was a Second Circuit case --

9        THE COURT:  I thought that Fields in part commended

10   interagency cooperation.

11       MR. WARE:  They did, absolutely.  But there's a

12   procedure that you must follow, your Honor.  The procedure is

13   governed by the Federal Rules of Civil Procedure, and they're

14   governed by the Federal Rules of Criminal Procedure.  You can't

15   have interagencies violating the civil rules.  The Court said

16   -- excuse me one second.  But they make it clear that they

17   wanted to conclude, which means in, a settlement in a civil

18   action before making a criminal reference.  Why would that be,

19   your Honor if they could just send it over any time?  They

20   wanted to have a conclusion because, number one, the Federal

21   Rules of Civil Procedure gives defendants certain

22   constitutional rights, constitutional rights not to incriminate

23   yourself.

24       Let me give you an illustration, your Honor.  In a

25   civil action, a defendant is being investigated criminally as

SOUTHERN DISTRICT REPORTERS, P.C.            (212) 805-0300

8/16/2012

1   well as civilly. A civil complaint is filed. Now, the
2   defendant has two choices: He can answer the complaint and
3   expose his defenses to the criminal authorities because it's
4   based on the same conduct or he can seek a stay in the civil
5   matter so that the criminal authorities can conclude their
6   matters. Otherwise there would be a fundamental due process
7   issue. Again, if the deposition of that same civil litigant
8   was trying to -- was attempting to be deposed, he has two
9   options. He can give a deposition, which, of course, could be
10  used in a civil and a criminal process, or he can seek a stay.
11  But, again, you have to know you need to seek a stay from
12  something, which means due process --

13          THE COURT: Isn't there a third alternative? He can
14  give his deposition, and he can assert the Fifth Amendment in
15  answer to certain questions.

16          MR. WARE: He can do that.

17          THE COURT: And if he does that in a civil proceeding,
18  the finder of fact is entitled to draw an inference.

19          MR. WARE: A negative inference.

20          THE COURT: A negative inference from the assertion of
21  the Fifth Amendment. Right?

22          MR. WARE: Absolutely, but there is a Supreme Court
23  case directly on point that says why should a defendant be
24  punished by doing what the law allows. I'll cite that for you,
25  your Honor. It's a case of -- it's a Supreme Court case United

 1 | States v. Goodwin, 457 U.S. 368 (1982). At page 372 the Court
 2 | said, to punish a person because he has done what the law
 3 | plainly allows him to do is a due process violation of the most
 4 | basic sort. The Court went on to say at page 373: As a
 5 | result, in certain cases in which actions detrimental to the
 6 | defendant have been taken after the exercise of a legal right
 7 | to remain silent, the Court has found it necessary to assume an
 8 | improper vindictive motive. So, your Honor that, governs that.

 9 | THE COURT: But that's where a civil investigation and
10 | a criminal investigation are concurrent. Isn't that true?

11 | MR. WARE: Not necessarily true, your Honor. Well, I
12 | mean, why would it only apply in that particular --

13 | THE COURT: Why does it apply here where the civil
14 | investigation was under way long before any thought of a
15 | criminal investigation even entered the mind of the U.S.
16 | attorney for the Southern District?

17 | MR. WARE: Your Honor, one portion of it. Your Honor,
18 | I think we have to bifurcate the SEC action. There was an
19 | investigative phase which concluded with the Wells notice.
20 | Subsequent to the Wells notice, there is an enforcement
21 | proceeding initiated by the filing of a civil complaint; two
22 | distinctive phases of civil actions by the SEC.

23 | Once the civil action is filed, the Federal Rules of
24 | Civil Procedure kick in. They don't apply prior to the filing
25 | of the civil complaint. So, therefore, you have two

1  distinctive and bifurcated SEC actions.

2       THE COURT:  But even the filing of the civil action

3  was before the referral from Judge Sand by at least six months.

4  Right?

5       MR. WARE:  Well, that's what the government papers

6  say, but, again, we do not know when Agent Makol contacted

7  Mr. Norris.  We don't know that date.  Nor do we know if

8  Mr. Norris contacted anyone either, your Honor.  We don't know

9  that information.  The government has not presented any

10 affidavits to any of that information.  Did Mr. Norris contact

11 Mr. Southwell's office?  We don't know that.  That's an issue,

12 because if he did, of course, his investigation could have been

13 governed by the communications with Mr. Southwell's office.

14      Now, what happened in Mr. Southwell's office going

15 out, according to Mr. Southwell, the referral came into his

16 office, December 3, 2003 from Judge Sand.  In.  Now, what went

17 out?  He's silent on that point, your Honor.  I think that's an

18 issue that would have to be determined.  Exactly what was the

19 communication between his office and the SEC and when did that

20 occur?

21      But even when it occurred, again, let's step back and

22 apply Fields to it.  Fields says that as long as any type of

23 SEC civil action is ongoing, via be it the investigative phase

24 or the enforcement phase, the SEC in that particular case made

25 it clear they wanted to conclude a settlement because at that

| 1 | point the Federal Rules of Civil Procedure expire, so to speak. |
|---|---|
| 2 | They wanted to make sure there was no commingling. They didn't |
| 3 | turn over any of the file until -- excuse me one second, your |
| 4 | Honor -- one issue that was patently different in that case, |
| 5 | the defendants waived their Fifth Amendment rights in Fields |
| 6 | there. There was no waiver in the civil litigation because the |
| 7 | defendants in Fields were aware of pending or possible criminal |
| 8 | actions. So, again, due process -- notice is the foundation of |
| 9 | due process. There was no notice given to any of the civil |
| 10 | litigants in the civil action in Nevada. I can state |
| 11 | unequivocal to that. |
| 12 | THE COURT: All right. Let me hear from your |
| 13 | adversary. All right? Thank you, Mr. Ware. |
| 14 | MR. SOUTHWELL: Your Honor, briefly in -- |
| 15 | THE COURT: Why don't you take the podium. |
| 16 | MR. SOUTHWELL: Yes. Thank you, your Honor. |
| 17 | I think that, your Honor, we have laid out the facts |
| 18 | in our response and all the prior papers here. Let me just |
| 19 | respond to a few things that Mr. Ware has asserted, and I think |
| 20 | at core there is no legal support for what Mr. Ware seeks here. |
| 21 | Moreover, there's no factual support for that. There is no |
| 22 | authority for this proposition that there is a duty to inform |
| 23 | people that they're under criminal investigation. The law |
| 24 | simply is not that. None of the cases cited by Mr. Ware say |
| 25 | that. The statements he refers to from the Fields case are |

7AQ6WARS

1    Trading was suspended for two weeks beginning April 22, 2002.

2    When it resumed two weeks later, the stocks traded at a much

3    lower price.  It had tanked.

4              What we did in our loss analysis for restitution and

5    loss purposes was look at the average price of INZS stock for

6    the one-month period after the market tanked.  So not just the

7    particular one day when maybe it tanked and then went back up a

8    little.  We took an average so that we didn't just put on

9    Mr. Ware that particular one-day period.  We used that

10   one-month average as a credit against any losses that the

11   victims actually suffered.  So we tried to credit them for a

12   residual value in the stock.

13             With SVSY it is a little more complicated.  The market

14   was never informed of Mr. Ware's fraud.  They may not know

15   about it to this day other than our attempts to give out victim

16   letters.  So what we did with SVSY is analyse what did people

17   buy when it was inflated and then we took the average price

18   from an eleven-month period.  So that is approximately 11

19   months.  That is the average price from when Mr. Ware's scheme

20   stopped until the company changed names into 50 to 1 stock

21   split.  So we thought that was a natural period to break and a

22   natural period to analyze.  We determined what the average

23   stock price was for that whole period.

24             So once the company was no longer being pumped up with

25   miss information, what did the stock trade at?  And we credited

7AQ6WARS

1    class of investors that but for the inflated price or press

2    releases they wouldn't have bought the shares.

3        Secondly, of course, loss causation, which *Dura* I

4    think now makes very clear, which is that plaintiff in a

5    securities fraud action may not establish essential element of

6    the claim loss causation merely by alleging and proving that at

7    the time he approaches the stock its price had been

8    artificially inflated due to false statements by the defendant.

9        The government in its most recent brief that I

10   commented on seemed to be making that very argument. They

11   wrote at page 11, "The government submits that all purchases of

12   INZS and SVSY stock during the time period that Ware

13   perpetrated his fraud are victims entitled to restitution

14   because they purchased the stock while the market was

15   artificially manipulated by Ware." That is just not enough.

16       Your Honor, certainly with respect to SVSY where the

17   government has stated today there was no revelation of the

18   truth, there was no event that they can point to that caused in

19   their view the loss, there certainly is no basis to say that

20   the government has proved that Mr. Ware proximately caused the

21   loss, which is what the Court would have to find.

22       Finally, your Honor, this will be the last thing I

23   say, in *Dura Pharmaceuticals* they specifically address the

24   question of whether or not a plaintiff can prove loss and

25   recover in a securities fraud action when he buys at one price

8/16/2012

7ac6wars

1    point.

2        THE COURT: We are just focusing on the presentence

3    report.

4        MR. WARE: Yes, sir.

5        Those are my objections, your Honor.

6        THE COURT: Now, do you wish to be heard with respect

7    to the sentencing submissions?

8        MR. WARE: Yes, sir.

9        THE COURT: I will hear you.

10       MR. WARE: Mr. Feldman submitted a sentencing

11   submission to the government, your Honor, dated August 14,

12   2007.

13       THE COURT: Mr. Ware, we are going to take a short

14   break for the benefit of the Court and the court reporter. We

15   will reconvene in 10 minutes.

16       (Recess)

17       THE COURT: Before Mr. Ware proceeds with his

18   argument, I would like to make an inquiry of the government.

19       Mr. Ware has requested a Fatico hearing. Let me put

20   it to the government this way: Does the government want to

21   proceed with sentencing and put aside restitution, or does the

22   government want to press for restitution? If the government

23   wants to press for restitution then I think we should have a

24   Fatico hearing concerning among other things the efficiency of

25   the market. Because at the end of the day, Mr. Feldman, I

8/16/2012

7ac6wars

1  fraud-on-the-market analysis to prove causation. We have that

2  causation. In addition, as to those particular 250 victims who

3  we haven't interviewed each one of them, they are in fact

4  victims and we explained that because of this concept that the

5  causation to the degree it applies can be substituted by the

6  idea that Mr. Ware had generally caused this market to be

7  inflated.

8       If what you are looking for is that this wasn't a

9  thinly traded market, that kind of evidence that Mr. Ware has

10  just pointed out today, we are not going to find it.

11       THE COURT: If the government is advancing a fraud on

12  the market theory, then the government should be able to prove

13  the elements of a fraud on the market theory. That is what a

14  hearing would be about.

15       MR. FELDMAN: Your Honor, if that is your holding and

16  your Honor's version is that a fraud-on-the-market theory

17  means, among other things, that these were not thinly traded

18  stocks, I know we are not going to be able to meet that burden.

19  These were thinly traded stocks. That is why Mr. Ware's press

20  releases were able to have the effect that they did.

21       So if that is your Honor's holding, I respectfully

22  object to it. I know I cannot meet it and we should move

23  forward with sentencing.

24       THE COURT: Have you looked at Mr. Ware's Fifth

25  Circuit case?