Submitted by Counsel:

*Ulysses T. Ware* (signature)

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
12/12/2012 05:22:22 P.M. printed



FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 9 2012

JAMES N. HATTEN, CLERK
By:                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ULYSSES THOMAS WARE,<br>PETITIONER, | : |
| | : |
| VS. | : CASE #: 12-CV-_____ |
| | : |
| WARDEN DARLEEN DREW,<br>BUREAU OF PRISONS,<br>ATLANTA PRISON CAMP.<br>RESPONDENTS. | : **1: 12-CV-4397** |

EMERGENCY PETITION FOR IMMEDIATE RELEASE
28 USC §2241: PETITION FOR A WRIT OF HABEAS CORPUS
ACTUAL AND FACTUAL INNOCENCE OF ALL CHARGES

# 1.

12/12/2012 Memorandum of Law in Support of Claims Regarding:

U.S.v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115").

**I2**

I.

A.

In U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115"), the United States Attorney (SDNY), (the ("USAO"), knowingly, deliberately, willfully, and intentionally, in colluding, conspiring, and racketeering with the Securities and Exchange Commission, (the "SEC"), and its lawyers (Spencer C. Barasch, Jeffrey B. Norris, John C. Martin, Robert C. Hannan, Stephen Korotash, Stephen Webster, Rebecca R. Fairchild, and others), (the "SEC Lawyers"), suppressed, concealed, destroyed, and subverted material Brady (exculpatory) and Gilgio (impeachment) evidence possessed by the SEC Lawyers resulting from the SEC's investigation in SEC v. Small Cap Research Group, Inc., 03-0831-KJD-RJJ (D. NV), ("0831"), (the "SEC Brady Email") and (the "SEC Judicial Admissions").

(i) The SEC Brady Email: Fraudulent Rule 11 Sanctions.

The SEC and USAO conspired, colluded, and racketeered to suppress, and did in fact suppress the SEC Brady Email evidence between SEC lawyer Jeffrey B. Norris and Jeremy Jones (the codefendant in 1115). (see 08/16/2012 Statement of Facts).

The SEC and USAO suppressed the SEC Brady Email evidence to cover up the crimes committed in 0831 by the SEC and USAO: The USAO covertly conducted the SEC's 0831 civil litigation during the 0831 proceedings, and assisted the SEC to have bogus and fraudulent Rule 11 sanctions imposed on Ulysses Thomas Ware (a defendant in 0831), i.e., fabricated evidence the SEC and USAO manufactured using a null and void ab initio order (Dkt. #80:02-CV-2219 (LBS)(SDNY), ("2219")) entered on 12/22/2003, (the "USAO's Fabricated Rule 11 Evidence"). (Cf. Ex. at 1).

In a suppressed email dated August 16, 2004 at 10:21 AM SEC lawyer Norris, while the SEC civil 0831 proceedings were pending, contacted the USAO's AUSA Alexander H. Southwell (a criminal investigator) seeking assistance from the USAO to "fix Rule 11 sanctions against Ware in the [SEC's civil] Nevada District Court [proceedings]." (emphasis added). Ex. at Id.

Twenty minutes later, AUSA Southwell responded to Norris' request, and the USAO

(1)

assisted the SEC, and became involved in the SEC's civil 0831 proceedings, transforming the civil proceedings (irrevocably) into a **criminal** proceedings: The SEC's jurisdiction over the subject matter of the 0831 proceedings was immediately terminated on August 16, 2004 at 9:44 AM. (Ex. at 1-2).

### B.

(i) SEC's Subject Matter Jurisdiction Terminated.

On 08/16/2004 as a result of the USAO's involvement and assistance to the SEC with respect to the civil 0831 SEC proceedings, the SEC's statutory subject matter jurisdiction (15 USC §77t(b) and §78u(d)) to conduct the civil 0831 was terminated requiring the SEC to immediately notify the 0831 District Judge (District Judge Kent J. Dawson), and the 0831 defendants and their counsel (Mr. Ware), that 0831 was now a criminal investigation being conducted by the USAO (SDNY), that was not done.

Rather, instead of notifying the 0831 defendants and their attorney (Mr. Ware) that 0831 was now a criminal investigation, according to Norris' suppressed email dated 08/30/2004 Norris boasted to AUSA Southwell as follows:

> [Alexander] thanks for the information. I was able to use it [illegally] in a [fraudulent and frivolous] brief to fix Rule 11 sanctions against Ware. As you can see, he is still misbehaving in Nevada. I now have additional [frivolous and fraudulent] motions for default pending on a couple of different grounds. What's happening in New York? (emphasis added). (Ex. at 1).

Previously via email from his (AUSA Southwell's) official DOJ email account (an official email) sent to Norris' official SEC email account, on 08/16/2004 AUSA Southwell assisted and became involved in 0831 -- which converted 0831 into a criminal investigation -- by providing the SEC during the pendency of the 0831 proceedings the reference to the fabricated bogus and fraudulent 12/22/2003 order entered by the 2219 court. (Cf. Ex. at 1: "Cas is Alpha Capital v. Group Management, 02 Civ. 2219 (LBS) and the order of referral is dated 12/22/2003. I will fax you a copy.").

The 12/22/2003 order was null and void ab initio as a result of Group Management on 12/03/2003 filing for Chap. 7 in Atlanta, GA, which 11 USC §§362(a), 365(c)(2), and

510(b), when read in pari materia, annulled and voided the 12/22/2003 fabricated order, prohibiting its use in any way by the USAO and the SEC, i.e., the fabricated "Rule 11 sanctions" referenced and boasted to by SEC lawyer Norris in his 08/30/2004 email (Ex. at Id.), accordingly were null and void ab initio.

(ii) All proceedings taken in 0831 after 08/16/2004 are null and void.

As a direct result of the criminal investigator (the USAO) assisting the SEC on 08/16/2004 by supplying the SEC with the null and void reference to the fabricated 12/22/2003 order (Dkt. #80:2219), an order which itself was null and void ab initio (see 11 USC §§362(a), 365(c)(2) (all contracts to issue the securities of Group Managment ("GPMT") terminated), and §510(b) (all claims resulting from damages with respect to the issuance of securities subordinated to unsecured claims)), the 0831 district court's subject matter jurisdiction terminated. (Ex. at Id.).

The 0831 district court lacking jurisdiction after 08/16/2004 over the subject matter of the transformed criminal 0831 proceedings -- the 0831 district court lacked the authority to extend the subject matter jurisdiction and statutory mandate (15 USC §77t(b) and Id. §78u(d)) -- only Congress can extend the jurisdiction of the SEC, all orders and judgments entered in the 0831 proceedings are null and void (see Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1995) (all courts lack authority to enter any orders where the court lacks jurisdiction over the subject matter of the proceedings, the orders or judgments are "advisory" null and void without vitality, a nullity)).

Therefore, accordingly all matters in the 0831 proceedings were null and void after the USAO assisted the SEC on 08/16/2004 terminating the 0831 proceedings for lack of subject matter jurisdiction. Steel Co., 523 U.S. at 94.

However, not withstanding the indisputable fact (the SEC's judicial admissions in the 0831 complaint -- ¶¶30, 31, and 33), Jeffrey B. Norris, or an unknown person, nevertheless pled the SEC out of court on 07/14/2003: The SEC judicially admitted and conceded that the contents of 0831 defendant Investment Technology, Inc. ("INZS") were (a) predictions, (b) projections, and (c) did not affect the stock price of INZS. (Ex. at 17-18).

SUPPRESSION OF SEC BRADY EMAIL TO 1115 DEFENDANT JEREMY JONES.

The SEC and the UASO intentionally and deliberately suppressed Brady and Giglio evidence required to have been disclosed to Mr. Ware in time to make effective use at trial in 1115 all favorable evidence in the possession of the SEC or USAO, i.e., the SEC's Brady Email. Brady v. Maryland, 373 U.S. 83, 87 (1963).

SEC lawyer Jeffrey B. Norris, on behalf of the SEC, sent an email from his official SEC email account to 1115 defendant Jeremy Jones during the 0831 proceedings.

The SEC Brady Email was sent to Jones to obtain Jones' cooperations with the USAO in the imminent criminal prosecution of Mr. Ware for refusing to assist District Judge Leonard B. Sand (the 2219 judge) and the 2219 plaintiffs extort the 2219 defendant (GPMT) of +$18 million in free-trading securities and +$500 million in market capitalization. (see Statement of Indisputable Facts).

The USAO, the SEC, and District Judge Sand, colluded, conspired, and racketeered to criminally prosecute Mr. Ware (GPMT's securities counsel) because Mr. Ware refused to violate federal law and SEC national policy (SEC Release 33-7190 and SEC IR 5121) and issue fraudulent and bogus Rule 144(k) (2003) legal opinions to the 2219 plaintiffs (admitted 15 USC §77b(a)(11, 12) statutory underwriters and dealers, respectively; affiliates, and statutory insiders of GPMT, ineligible for any exemptions from Section 5 of the 1933 Act). (see Id.).

Moreover, the 2219 plaintiffs were also fiduciaries of GPMT as a result of admitting to being statutory underwriters of GPMT, i.e., the 2219 plaintiffs' duty of loyalty to GPMT prohibited the initiation of the 2219 suit against GPMT, therefore, again voiding the 12/22/2003 (Dkt. #80:2219) order referenced by AUSA Southwell in the 08/16/2004 email to SEC lawyer Norris to have fraudulent "Rule 11 sanctions" "fixed" on Mr. Ware (GPMT's securities counsel). Cf. Dabney v. Chase National Bank, 196 F.2d 668, 671 (2d Cir. 1952) ("If it did conflict [the 2219 plaintiffs' purported loan to GPMT], the power [of the 2219 plaintiffs to collect] should have yielded to the[ir] **duty of loyalty** [as a result of their underwriter status]." (emphasis added). (Ex. at 1).

The Second Circuit in Frigitemp Corp. v. Financial Dynamics Fund, 524 F.2d 275, 279 (2d Cir. 1975) explained with regard to the obligations of an underwriter:

> An underwriter [according to the 2219 plaintiffs' judicially admission at ¶¶10-21 in the 2219 complaint] who manages a public distribution of a corporation's [GPMT's] shares [GPMT's convertible notes] is a **fiduciary of the corporation's shareholders** and may not profit from the corporate information gained in its capacity as an underwriter. citing Shapiro v. Merrill Lynch, et al., 353 F. Supp. 264 (SDNY) aff'd 495 F.2d 228 (2d Cir. 1974) (emphasis added); cf. also Dirks v. SEC, 463 U.S. 646, 655 n.14 (1983) (attorneys, and agents of the underwriters are also fiduciaries).

Therefore, it is indisputable (judicially admitted by the 2219 plaintiffs at ¶¶10-21 in the 2219 complaint) that the 2219 plaintiffs were 15 USC §77b(a)(11) statutory underwriters of GPMT, and therefore, the 2219 plaintiffs and their agents were fiduciaries of GPMT each owing GPMT "and its shareholders" a duty of loyalty, Dabney, 196 F.2d at 671, which "duty of loyalty" superseded the 2219 plaintiffs' "power to collect" from GPMT any purported $1.1 million illegal loan (an illegal debt as defined at 18 USC §1961(6)(B) -- carrying an usurious rate of interest in violation of 18 USC §§371, 891-94, 1341-43, 1956-57, and 1961-64, (the "Racketeering Offenses").

The breach of the fiduciary duty of loyalty owed to GPMT by the 2219 plaintiffs and their agents damaged GPMT and its "shareholders" and agent (Mr. Ware who was criminally prosecuted in U.S. v. Ware, 05-Cr-1115 and U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), (the "Vendetta Prosecutions") because Mr. Ware refused to extort his own client (GPMT) and issue the fraudulent and bogus Rule 144(k) legal opinions to the 2219 plaintiffs to enable a criminally illegal (cf. 15 USC §§77x, 78j(b), and 78ff, and 18 USC §371: SEC v. Spectrum, Ltd., 489 F.2d 535, 541 (2d Cir. 1975) (attorney would be liable as aiding and abetting, and possibly as an underwriter for issuing legal opinion which enabled an unregistered public distribution of securities)) in violation of federal law and SEC national policy (SEC Release 33-7190 and SEC IR 5121), 'public offering.'

The collusion, criminally aided and abetted the breach of GPMT's fiduciary duty of loyalty by to wit: the SEC, the USAO, District Judge Sand (2219 judge), District Judge Sweet (1224 judge), District Judge William H. Pauley, III (the 1115 judge), District

(5)

Judge Kent J. Dawson and Magistrate Judge Robert J. Johnston (0831 judges), Bankruptcy

Judge Margaret H. Murphy (NDGA GPMT's Chap. 11 judge 03-93031-MHM (NDGA), M. Regina

Thomas (Clerk Bankr. Court (NDGA): refused to file Rule 60(b)(4, 6) and Rule 60(d)(3)

pleadings in 03-93031 to vacate orders and judgments in 93031; Bankr. Judge Joyce

Bihary (Chief Judge Bankr. Court (NDGA) refused to direct M. Regina Thomas to certify

the official records in 93031 (obstruction of justice cf. Bankr. Rule 5003 and 5005),

and others known and unknown, an illegal association-in-fact as defined at 18 USC

§1961(4), conducting a "pattern of rackteering activities" as defined at 18 USC

§1961(5), while committing the Racketeering Offenses, caused GPMT and its agents damages.

**D.**

THE EXCULPATORY AND IMPEACHMENT CONTENT OF THE SEC BRADY EMAIL TO JEREMY JONES.

**1.**

SEC lawyer Norris during the 0831 Las Vegas SEC civil proceedings, seeking to gain

Jeremy Jones' assistance in the USAO's imminent criminal prosecution of GPMT's

securities counsel (Mr. Ware) for refusing to violate SEC national policy and issue

the fraudulent Rule 144(k) legal opinions to the 2219 plaintiffs (See Ex. at 2, AUSA

Southwell's 10/06/2004 email to SEC lawyer Norris confiding in Norris· regarding Mr.

Ware illegal arrest arranged by the SEC and USAO on 09/01/2004 in Atlanta, GA to

prevent Mr. Ware from deposing SEC lawyer Stephen Webster (cf. Ex. at 3: Norris' email

date 08/17/2004 suggested the very same date "September 1, 2004" as the date Mr. Ware

was illegally arrested in Atlanta, GA on orders of the USAO, the SEC, and District

Judge Sand)):

> He [Mr. Ware] means when he was [illegally] arrested
> on civl contempt order [12/22/2003 null and void order
> (Dkt. #80:2219)]. [Mr. Ware] was [illegally] arrested
> in Atlanta and released the same day [because he refused
> to issue the fraudulent Rule 144(k) legal opinions to
> the 2219 statutory underwriter plaintiffs], which was
> somewhere around the beginning of September [1, 2004].
> As it turns out, a warrant on a civil contempt order
> [the null and void 12/22/2003 order] cannot entend
> beyond 100 miles from the courthouse or in the same
> state, so [Mr. Ware] was **improperly arrested** (which he
> pointed out to Judge Sand, the wily guy that he is).
> So [don't worry] we [Judge Sand, U.S. Attorney David

Kelly, and AUSA Nicholas S. Goldin] are working on a [bogus and fraudulent criminal contempt charge [against Mr. Ware because he refused to assist us in extorting his client (GPMT) of +$18 million in free-trading securities] which (confidentially) should happen within a week or two [see U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), three counts of criminal contempt for not issuing the fraudulent Rule 144(k) legal opinions to the 2219 plaintiffs]. (emphasis added).

SEC lawyer Norris, while collusing, conspiring, and racketeering with the USAO since on or before 08/16/2004, contacted Jones stating to Jones the following:

Mr. Jones you were not added to the [frivolous and fraudulent] Las Vegas litigation because the SEC believed your sworn deposition testimony that you and the other employees of Mr. Ware [Carlton Epps, Myron Williams, Rick Sadler, and Charles H. Jackson] were not involved in any conspiracy with Mr. Ware. I am sure Mr. Ware will contact you seeking your assistance. Please keep your contact information current with us in the event we need to talk to you again. (emphasis added) (the "SEC Brady Email").

The SEC Brady Email was deliberately and intentionally criminally suppressed (obstruction of justice) by the SEC and USAO colluding, conspiring, and racketeering to violate Mr. Ware's due process rights to (a) prevent Mr. Ware from presenting exculpatory evidence at trial in 1115 and 1224 which would have contradicted the Government's trial theory in 1115 (see count I, a conspiracy between Mr. Ware and Jeremy Jones), and the prejured trial testimony of Jones, and the employees (the "Gov' Stooges"), which the USAO knowingly procured at trial in 1115, which the SEC Brady Email would have impeached the perjured trial testimony of the Gov't Stooges that they were involved in a conspiracy with Mr. Ware, when the SEC had already concluded there was no conspiracy on or before the 0831 complaint was filed on 07/14/2003.

The USAO needed to fabricate the existence of a conspiracy to enable it at trial to ultilize FRE 801(d)(2)(e), and have District Judge Pauley admit the fabricated hearsay lies and perjury (which the USAO knew was perjury because the USAO had access to the SEC Brady Email, which the USAO knew contradicted its trial theory of a conspiracy between Mr. Ware and the Gov't Stooges).

(7)

Had the SEC Brady Email been "disclosed" prior to trial or disclosed at all while the USAO's case in chief was open, Mr. Ware (acting as pro se counsel because his retained counsel government agent SAUSA Michael F. Bachner, Esq., (who violated his fiduciary duty of loyalty to Mr. Ware and conveyed Mr. Ware's confidences to the USAO) was terminated for refusing to file a motion to suppress the illegal evidence the USAO obtained in the Las Vegas 0831 proceedings) would have impeached all the Gov't Stooges trial testimony with the indisputable conclusions of seasoned SEC investigators (Barasch, Martin, Hannan, Korotash, and Webster), and Norris (a self-proclaimed "senior trial lawyer" of the SEC).

The USAO knowingly and deliberately, and intentionally procured the known perjured testimony of the Gov't Stooges to fabricate the existence of a conspiracy between Mr. Ware and Jones as a pretext to give Judge Pauley (who was in on the plan and scheme concocted by government lawyers officers of the court who owed the court a duty of candor) cover to admit the fabricated conspiracy perjurious testimony of the Gov't Stooges,        i.e., a fraud on the court committed by government lawyers -- a "reckless disregard for the truth", cf. Demjanjuk v. Petrovsky, 10 F.3d 338, 352-55 (6th Cir. 1993) where the Sixth Circuit explained with respect to willful and intentional withholding of Brady evidence:

> Thus, we hold that the [government's] attorneys acted with reckless disregard for the truth and for the government's obligation to take no steps [Mr. Ware's illegal arrest on 09/01/2004 in Atlanta, GA (cf. Ex. at 2) to prevent Mr. Ware from deposing SEC lawyer Stephen Webster (an officer of the court) who possessed both Brady and Giglio evidence, and evidence of the crimes committed by the SEC, the USAO, and District Judge Dawson] that prevent an adversary [Mr. Ware] from presenting his case[s] [1115 and 1224] fully and fairly.
> This was **fraud on the court** [by government lawyers (officers of the court owing the Court a duty of candor)] by recklessly ... fail[ing] to observe their [Brady] obligation to produce exculpatory material [the SEC Brady Email] requested by [Mr. Ware]. (emphasis added). Id. at 354.

There is no rational debate: The USAO(SDNY)' deliberate and intentional suppression of the SEC Brady Email was "a fraud on the court" by government officers

lawyers officers of the court, who each owed a personal "continuing duty" of candor (quoting Fasari v. Steinberg, 419 U.S. 379, 391 (1975) (Burger, C.J.) (concurring), i.e., the SEC lawyers and the USAO lawyer still owe a "duty of candor" to the 0831, 1115, and 1224 courts to disclose the Brady and Giglio evidence which was deliberately and intentionally suppressed during the 1115 and 1224 trials -- the Department of Justice and the SEC have both conducted a continuing "fraud on the court" by not being completely candid and forthcoming ("setting the record straight" (quoting U.S. v. Kojayan, 8 F.3d 1315, 1318-24 (9th Cir. 1993))) and notifying all courts that its lawyers committed a fraud on the particular courts.

**2.**

Rather than exercising its "continuing duty" of candor, neither the SEC nor the DOJ have ever notified any court of the "fraud on the court" committed by its lawyers in 0831, 1224, and 1115 proceedings, the Vendetta Proceedings.

The USAO knowing that the Gov't Stooges' trial testimony was fabricated and perjury designed to concoct a nonexistent conspiracy between Mr. Ware and Jeremy Jones (to enable the USAO to admit fabricated hearsay pursuant to FRE 801(d)(2)(E)), clearly violated the "reasonable likelihood" materiality standard of Mooney v. Holohan, 294 U.S. 103 (1935) and Napue v. Illinois, 360 U.S. 264 (1959), requiring the conviction in both 1224 and 1115 to be reversed and vacated.

In Mooney, Id. at 112 the Court explained with respect to a due process claim alleging a prosecutor used perjured testimony at trial:

> [I]f [the Government] has contrived a conviction through the pretense of a trial [in 1115 and 1224] which in truth is but used as a means of depriving a defendant [Mr. Ware] of liberty through a **deliberate deception** of court and jury by the presentation of testimony known to be perjured ... [s]uch a contrivance by [the Government] to procure the conviction and imprisonment" is a violation of due process, "within the purview of the [Fifth] Amendment." (emphasis added).

Later in Napue, 360 U.S. at 269, following Mooney, Id. at 112, the Court observed, "First, it is established that a conviction obtained through use of false evidence [the USAO and SEC Stooges perjured testimony in 1115], known to be such by [AUSA Alexander

(9)

H. Southwell, AUSA Steven D. Feldman, and U.S. Attorneys David Kelly, Michael J. Garcia, and Preet Bharara, (the "Prosecutors"), must fall under the [Fifth] Amendment ... and the same results obtains when the [Government], although not soliciting false evidence, allows it to go uncorrected when its appears." (emphasis added).

In United States v. Agurs, 427 U.S. 97 (1976) the Court announced the materiality burden the defendant must meet, "a reasonable likelihood that the false testimony could have affected the judgment of the jury." (see also Napue, 360 U.S. at 271) (same).

The Second Circuit in United States v. Wallach, 935 F.2d 445, 456 (2d cir. 1991) noted "the question is" with regard to the Prosecutors knowing use of perjured testimony is "whether the jury's verdict 'might' be altered" by the absence of the perjured testimony, (quoting Sanders v. Sullivan, 863 F.2d 218, 225 (2d Cir. 1988); and "if it is established that the government knowingly permitted the introduction of false testimony [the Gov't Stooges 1115 trial testimony that they were involved in a conspiracy, when they all testified before the SEC they knew nothing about a conspiracy, and if they "had known they would not have joined"] **reversal** is vitually **automatic.**" Shih Wei Su v. Filion, 335 F.3d 119, 127 (2d Cir. 2003). (emphasis added). (Ex. at 16).

II.

THE GOV'T STOOGES' PERJURED TESTIMONY WAS KNOWINGLY PRESENTED BY THE PROSECUTORS.

The perjured trial testimony of the Gov't Stooges in 1115 was introduced by AUSAs Southwell and Feldman, with the approval of U.S. Attorney Michael J. Garcia, colluding, conspiring, and racketeering with the SEC, and District Judge William H. Pauley, III.

District Judge Pauley was in on the scheme to frame Mr. Ware by the "deliberate deception of the jury", Mooney, Id. at 112, by the introduction of the fabricated perjured testimony there was a conspiracy, and the Gov't Stooges participated in the conspiracy, which contradicted each of the Gov't Stooges' SEC deposition testimony (cf. SEC Brady Email sent by SEC lawyer Norris to 1115 codefendant Jeremy Jones). (Ex. at Id.).

The USAO is charged with knowledge of all evidence gathered by investigators assisting the USAO conduct the 1115 and 1224 investigations (the SEC and the FBI (S.A David Makol)). Kyles v. Whitley, 514 U.S. 419, 437 (1995)(all Prosecutors deemed to

have knowledge and know of all evidence gathered in their case, even gathered by the police (the SEC and the FBI) in 0831, i.e., the SEC Brady Email (exculpatory and impeachment evidence). (see Ex. at 4-8, USAO admit to colluding with SEC during 0831).

Therefore, the indisputable fact is that the SEC knew of the SEC Brady Email, thus, the USAO is deemed to have known of the SEC Brady Email; accordingly, the USAO presentment of the perjured testimony of the Gov't Stooges, fabricated to concoct a conspiracy to enable the introduction (via FRE 801(d)(2)(E)) fabricated and perjured hearsay evidence. (Id.).

Furthermore, the SEC certainly knew of their judicial admissions pled in the 0831 complaint at ¶¶30, 31, and 33, judicial admissions which pled the United States (the real party in interest) out of court in 0831: The SEC's Judicial Admission pled that the contents of INZS' press releases were: (a) predictions, (b) projections, and (c) did not have any affect on INZS' stock price, i.e., the contents of INZS press releases were not "statement of material **fact**", but rather nonactionable statements of optimism.

**B.**

The SEC's judicial admissions pled in the 0831 complaint that the contents of INZS' press releases were not "statements of material fact", but rather nonactionable statements of optimism was binding on the real party in interest (the United States) and its privies in 1115 and 1224 (i.e., FBI agent David Makol was prohibited from testifying before the grand jury that the contents of INZS' press releases were material). (Ex. at 17-18).

Therefore, the Prosecutors and the USAO lacking the ability to allege or plead the "materiality" of the INZS press releases, the USAO lacked probable cause (lacked an offense), and thus, lacked authority (28 USC §547(1)), and the 1115 district court lacked jurisdiction over the subject matter (18 USC §3231) to accept any evidence offered by the Prosecutors in 1115, i.e., 1115 was moot as of 07/14/2003 (upon the SEC filing the 0831 complaint pleading the United States out of court), and res judicata, collateral estoppel, and double jeopardy attached to Mr. Ware precluding any further prosecution regarding INZS.

## III.

### A.
THE SEC, THE USAO, THE GOV'T STOOGES, AND DISTRICT JUDGE PAULEY θPERATED
AN ILLEGAL ASSOCIATION-IN-FACT TO INTRODUCE PERJURED TESTIMONY AT TRIAL
IN 1115 TO VIOLATE MR.WARE's DUE PROCESS RIGHTS AND FEDERAL LAWS.

District Judge William H. Pauley, III, the USAO, the SEC, and the Gov't Stooges,
collectively, (the "Racketeers") formed an illegal association-in-fact, as defined at
18 USC §1961(4), for the knowing and deliberate introduction of false evidence and
perjured testimony at trial in 1115 (both at the Jan. 2007 and April 2007 trials), (the
"CCE"), performing the RICO predicate pattern (as defined at 18 USC §1961(5)) through
the instrumentalities of interstate commerce to adversely affect the business interests
of Mr. Ware, the defendant in 1115 (GPMT), and its shareholders, and the public capital
markets.

The CCE introduced the false evidence and perjured trial testimony and grand jury
testimony of FBI special agent David Makol, to viciously and savagely violate Mr.
Ware's due process rights, to willfully commit a fraud on the court (by officers of
the court), to willfully violate federal laws, and to commit the following
racketeering offenses: 18 USC §§2, 201, 241, 242, 371, 891-94, 1201-02, 1341, 1343,
1346, 1503, 1505, 1510, 1621-23, 1956-57, 1961-64; 15 USC §§77x, 78j(b), 78ff, and Rule
10b-5, (the "Racketeering Offenses"), using the federal courts of the United States,
the Department of Justice and its employees and officials, and the Gov't Stooges.

### B.

The trial jury and the grand jury credited the perjured and fabricated testimony
of the CCE, which if the perjured testimony of the Gov't Stooges at  trial, and the
perjured testimony of FBI S.A. David Makol was eliminated there is no  other testimony
establishing a conspiracy between Mr. Ware and any person -- because there was no
conspiracy as confirmed by the 0831 SEC lawyers whom did not add the Gov't Stooges to
the 0831 complaint.

Makol, in his fraudulent affidavit swore that he had interviewed the 0831 SEC
lawyers, and well as the 0831 complaint (see Makol's dated 09/20/2005 filed in U.S.

(12)

Ware, 05-MAG-1630 (magistrate court SDNY) see aff'd ¶¶10-12, where Makol lied and committed perjury by the filing of a false affidavit in violation of 18 USC §1622-23.

**C.**

In paragraph 11 of the fraudulent Makol affidavit Makol swore: "I learned from reviewing various court filings and from speaking with a staff member [SEC lawyer Jeffrey B. Norris (an officer of the court who has subsequently admitted that he did not actually signed the 0831 complaint (see Dkt. ## 167-168 in 0831)] of the SEC that on or about July 14, 2003, the SEC brought a civil enforcement action in federal court in Nevada against INZS, the Ware Firm, ULYSSES THOMAS WARE ... No. Cv-S-03-0831-KJD-RJJ (D. Nev) ...." (Ex. at 13).

Makol lied and committed perjury in ¶10 of the fraudulent affidavit when he knowingly and deliberately to commit a fraud on the court, while knowing or should have known that 0831 complaint pled the SEC and the United States out of court in 0831 as a matter of law (see ¶¶30, 31, and 33 of the 0831 complaint). (Id.).

Makol lied and committed perjury at ¶10 of the fraudulent affidavit while knowing that probable cause was precluded from being found where the SEC's judicial admissions pled in ¶¶30, 31, and 33, prohibited the finding of any probable cause, where the SEC judicially admitted that the contents of INZS' press releases were not "statements of material facts" but rather statements of optimism, i.e., not material as a matter of law and fact, and accordingly not criminally or civilly actionable. (see infra, page 18), Id.

Thus, lacking materiality -- Makol lied and committed perjury in swearing to -- Makol knew or should have known that 0831, as a matter of law, was moot, which was res judicata and collateral estoppel on the very lies Makol was swearing    to a federal judge to obtain fraudulent arrest warrants for Mr. Ware.

Makol's fraudulent 09/20/2005 insidious    affidavit caused the magistrate Andrew J. Peck (also part of the plan and scheme to illegally prosecute and arrest Mr. Ware as part of the Vendetta Prosecutions) to issue fraudulent arrest warrants, where all probable cause was absent. Why? Because the SEC on 07/14/2003 pled the United States out of court in 0831, which in turn pled the USAO out of court in 1115. (Id. at 9-13).

(13)

USAO, FBI, SEC, AND DISTRICT JUDGE PAULEY AS PART OF THE CCE KNEW OF THE PERJURED TESTIMONY

According to the holding in Kyles, 514 U.S. at 437, the USAO's Prosecutors
(Southwell, Feldman, Goldin, Garcia, Kelly, Fish, Douvas, Polk-Failla, Paul, Wilson,
and the Office of the Solicitor General, (the "OSG")) all are charged with knowledge
of the contents of the SEC's 0831 complaint's judicial admissions, the contents of the
SEC Brady Email, the emails between Southwell and Norris during the pendency of 0831
which transformed 0831 into a criminal proceeding outside the statutory mandate of the
SEC –– annulling and voiding all orders and judgments in 0831.

Kyles, supra, further charges the DOJ Prosecutors, and investigators with a duty
to disclose all favorable evidence gathered to Mr. Ware in time for effective use at
trial. Ostensibly "effective use at trial" implies actually during the trial (1115).

In the case of the SEC Brady Email, the USAO and SEC have never disclosed the
Brady and Giglio evidence to Mr. Ware –– Mr. Ware retained a private investigator (at
great costs) who was able to locate the SEC Brady Email and other favorable evidence
the USAO, the SEC, and District Judge Pauley suppressed in 1115 to violate Mr. Ware's
due process rights, and to violate federal laws. (Ex. at 4-8, Barasch Bribe Order).

Furthermore, Mr. Ware filed with the 1115 court on 10/07/2010 a Rule 33 motion
for a new trial based on the newly discovered evidence (the SEC Brady Email, and other
emails uncovered between the SEC and USAO).

As of today 08/13/2012 District Judge William H. Pauley, III (who accepted a bribe
from SEC lawyer Spencer C. Barasch) which was evidence discovered after trial in 1115,
District Judge Pauley has refused all attempts to file, docket, and enter a ruling on
the Rule 33 motion, a Rule 6(e) motion seeking to obtain the fraudulent grand jury
testimony of FBI S.A. David Makol (who submitted a fraudulent and false affidavit on
or about 09/20/2005 to procure fraudulent arrest warrants against Mr. Ware while
knowing that probable cause did not and could not have existed based on the
indisputable judicial admissions pled by the SEC in its 0831 complaint at ¶¶30, 31,
and 33). (Ex. at 9-13; Ex. at 33-35, Rule 33 motion never filed or docketed in 1115).

**B.**

The SEC's, USAO's, the Gov't Stooges, and District Judge Pauley's "deliberate deception" of the jury by the introduction of known false and fabricated evidence and perjured testimony of the Gov't Stooges created a "reasonable likelihood" the jury's conviction was affected by the perjured testimony.

First, with respect to a conspiracy, at either of the 1115 trials, the Prosecutors only offered the perjured testimony of the Gov't Stooges to purportedly establish a conspiracy. However, the trial record is bare of any express and explicit FRE 102 ruling by Judge Pauley actually finding a conspiracy, and actually charging the 1115 jury the Government actually established a conspiracy before allowing the admission of the fabricated hearsay evidence offered by AUSA Southwell and Feldman, with the consent of U.S. Attorney Michael J. Garcia, while knowing the SEC (a) in the 0831 complaint (did not included any of the Gov't Stooges), and (b) in the SEC Brady Email (informed Jones he was not added to the 0831 complaint because the SEC "believed his SEC deposition testimony.")

(i) Conspicuously, FBI S.A. David Makol did not testify for the prosecution at trial in 1115, yet testified before the grand jury, and submitted the bogus affidavit (see Ex. at 9-13) to obtain fraudulent arrest warrants on or about 09/20/2005.

(ii) The USAO called no one from the SEC to testify that there was securities fraud because the USAO knew there was no securities fraud and the SEC pled the United States out of court on 07/14/2003 by filing the the judicial admissions in the 0831 complaint at ¶¶30, 31, and 32. (Ex. at 17-18).

(iii) The USAO did not call any forensic accountant to testify that the effect the INZS press releases had on INZS' stock price, because in ¶33 of the 0831 complaint the SEC conceded the INZS press releases had no affect on the stock's price -- the press releases were not material. (Ex. at 18).

Therefore, taking i-iii above, and the indisputable fact that the SEC via the SEC Brady Email cleared Jones of any conspiracy charge, there is a "reasonable likelihood" the jury's verdict was affected by the perjured testimony -- five government witnesses

(15)

committed perjury -- a "deliberate deception of the jury" -- and the Prosecutors committed perjury in their opening and closing statements to the jury; and the trial judge (Judge Pauley) committed perjury when charging the jury, i.e., the jury was deliberately deceived, and there is a "reasonable likelihood" but for the pervasive perjury which "went directly to the guilt of" Mr. Ware, Mooney, 294 U.S. at 112, testimony the Prosecutors knew "was actually false" caused a grave miscarriage of justice, and the conviction and sentence must be reversed and vacated.

Moreover, the Prosecutors "knowingly permitted the introduction of false testimony [by the Gov't Stooges at trial, and FBI S.A. Makol at the grand jury] reversal is automatic." Shih Wei Su, 335 F.3d at 127 (emphasis added).

C.

In fact Judge Pauley, Jones' lawyer (Marlon Kirton), AUSA Southwell, AUSA Feldman, and U.S. Attorney Michael J. Garcia, (the "Circle") all knew that the Prosecutors planned to solicit and offer the perjured testimony of the Gov't Stooges at trial in 1115; and all knew that the Prosecutors intended for Jones to lie with respect to his plea agreement.

In a similar case, Shih Wei Su, 335 F.3d at 123, in which the convictions and sentences were reversed because the prosecution knowingly permitted a government witness to lie regarding his plea agreement with the government, the Second Circuit noted, Id. at 123 "A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury." citing Giglio, 405 U.S. at 154; and further noted, Id. at 129, citing Agurs, 427 U.S. at 103, "that convictions ... must be reversed unless the [Government's trial] evidence was so overwhelming that there is not "reasonable likelihood that the false testimony could have affected the judgment of the jury." (emphasis added).

Therefore, the test to be applied to the lying and perjured testimony the Prosecutors knowingly solicited and presented to the jury is because the perjury was knowingly presented by the Prosecutors "reversal is virtually automatic", however, assuming arguendo (schizophrenicly) that the Prosecutors did not know the Gov't

(16)

Stooges would lie on the witness at trial, however, once the Gov't Stooges actually testified on the witness stand, the Prosecutors had a duty to correct the perjured testimony, and this was not done, also a Mooney and Napue violation.

Similar to the factual situation in Shih Wei Su, supra, Gov't Stooge No. 1, Jeremy Jones (a purported codefendant in 1115), i.e., Mr. Ware allegedly conspired with (cf. Count-I of 1115 indictment), allegedly, pretrial, entered a Rule 11 plea of guilty to counts I, and II of the 1115 indictment, however, there are no records of any transcript of Jones' alleged guilty plea.

Second, Jones allegedly pled guilty to securities fraud with respect to INZS' press releases, which was a legal and factual impossibility. Why? Because the SEC on 07/14/2003 (see the 0831 complaint at ¶¶30, 31, and 33, the SEC Judicial Admissions), the SEC pled the United States (the real party in interest) out of court in 0831, and accordingly pled the United States out of court in 1115, i.e., the government's factual element of proof (materiality) was res judicata and collateral estoppel against the United States in 1115 -- as a matter of law Jones could not enter a guilty plea where the United States lacked an **offense**. (see Ex. at 17-18).

Third, Jones allegedly pled guilty to conspiring with Mr. Ware with regard to INZS press releases (to artificially inflate INZS stock price), cf. ¶33 of the 0831 complaint where the 0831 SEC lawyers judicially admitted on or before 07/14/2003 that the contents of INZS' press releases had no affect on the stock's price, ergo, INZS' press releases were not material, which was binding on the United States in 1115, precluding any finding of guilt for conspiracy. (0831 ¶33, Ex. at 18).

Fourth, Jones allegedly pled guilty to conspiracy, notwithstanding the palpably indisputable fact that the SEC lawyers on or around 07/14/2003 concluded that none of the Gov't Stooges were involved in any conspiracy with Mr. Ware, and informed Jones of that fact in the SEC Brady Email, which the Department of Justice' Prosecutors are charged with having knowledge of that fact. Kyles, 514 U.S. at 437. (see Ex. at 16 for (Pages 36-37 of 07-5222-Cr Brief) government admissions that both Jones and Epps testified "that they did not knowingly conspire [with Mr. Ware the same as the SEC

(17)

lawyers concluded in the SEC Brady Email sent to Gov't Stooge Jeremy Jones] to manipulate these stocks." (emphasis added).

In fact the Prosecutors "manipulated" (as a puppet master) the Gov't Stooges (in particular Jeremy Jones) who allegedly pled guilty to the 1115 indictment (which there are no records of the plea transcripts which is certainly Jencks Act evidence which has never been disclosed because it does not exist) which as a matter of law did not charge an indictable offense, ergo, Jones nor Mr. Ware, nor the Gov't Stooges could be guilty of any offense.

The Prosecutors, the SEC, and District Judge Pauley "manipulated" the 1115 proceedings to cover up the crimes committed by the SEC and USAO during the 0831 SEC Las Vegas litigation, and to cover up the **bribery** of District Judge Pauley by the SEC and the USAO for the entry of (Dkt. #35) on 01/08/2007, (see Ex. at 4-8), suppressing the Brady and Giglio evidence (the SEC Brady Email and the SEC's admissions with respect to the contents of INZS' press releases (not statements of fact, but rather statements of optimism, which are not actionable (does not constitute an offense against the securities laws)). Cf. Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2003) ("expressions of puffery and corporate optimism **do not** give rise to securities violations [do not constitute an offense]." (emphasis added); San Leandro Emer. Med. Gp., et al. v. Philip Morris Comp., Inc., 75 F.3d 801, 811 (2d Cir. 1996) ("Misguided optimism is not a cause of action [not an offense], and does not support an inference of fraud and there is no duty to update vague statements of optimism or expressions of opinion, (see Ex. at 17-18 for SEC's admissions that INZS' press releases were not actionable); ... "or if the original statements are not material." In re IBM Corp. Sec. Litig., 163 F.3d 102, 110 (2d Cir. 1998) citing Hillson Partners Ltd. P'ship v. Adage, Inc., 42 F.3d 204, 219 (4th Cir. 1994) ("The statement at issue here were predictions, neither material under the federal securities laws ... to allege a claim for fraud [,i.e., does not state an offense."). See ¶¶30, 31, and 33 (Ex. at 17-18).

FBI S.A. Makol's 09/20/2005 affidavit (Ex. at 9-13) repeatedly lied and committed

(18)

perjury in ¶6 of his fraudulent affidavit where Makol lied stating that the allegations in the affidavit "establish[ed] probable cause". To establish "probable cause" the government, as a threshold issue, needed to establish an offense, which if Makol had any intelligence and academic credentials in securities laws, he either knew or should have known (Makol at ¶11 stated he had access to the SEC's 0831 complaint), the SEC pled the United States out of court in 0831.

Had Makol understood the contents of the 0831 SEC complaint and their necessary implications, Makol either knew or should have known that once the SEC on 07/14/2003 filed the 0831 complaint in the Las Vegas District Court, that was game, set, match, check mate for the SEC, the USAO, and the United States with respect to any securities fraud concerning INZS. (see Ex. at 17-18 for SEC's judicial admissions in 0831).

And because Makol and the Department of Justice (the USAO) are privies of the United States, including the FBI (a privy of the DOJ), the SEC's judicial admissions made in the 0831 complaint at ¶¶30, 31, and 33 (see Ex. at 17-18) bound Makol, and and prohibited Makol from submitting the fraudulent affidavit on 09/20/2005 to magistrate Peck seeking bogus and fraudulent arrest warrants for Mr. Ware, i.e., res judicata and collateral estoppel was binding on the United States and its privies, all courts, and there were no exceptions. Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 396-400 (1981). (emphasis added).

Precisely why the Prosecutors did not call Makol as trial witness, yet Makol testified fraudulently before the grand jury (18 USC §1622-23), and knowingly committed perjury with the assistance of AUSAs Alexander H. Southwell, Nicholas S. Goldin, and U.S. Attorney Michael J. Garcia, who arranged the plan and scheme colluding and conspiring with Spencer C. Barasch (of the SEC), District Judge Pauley, Mr. Ware's government agent lawyer "SAUSA" Michael F. Bachner, Esq. (an officer of the court), Gary G. Becker, Marlin Kirton (Jeremy Jones' lawyer who allegedly allowed Jones to plead guilty to an indictment which did not charge an offense, however, there are no records of Jones ever pleading guilty, cf. Ex. at 16 (page 37)).

(19)

The USAO Prosecutors are charged by Kyles, supra, with knowledge of all evidence collected by the SEC and FBI; and are therefore charged with knowing that the SEC pled the United States out of court on 07/14/2003 (see Ex. at 17-18, SEC's judicial admissions).

Accordingly, Eric H. Holder, Jr., Lanni Breuer, and Donald B. Verilli, (the "High Ranking DOJ Officials"), pursuant to 18 USC §3742(b), and 28 CFR §0.20(a, b) are charged with soliciting and presenting known false and perjured testimony, and fabricated evidence to the 1115 court, the Second Circuit in 07-5222-Cr (see Ex. at 16: USAO appeal brief in 07-5222-Cr), the 04-CR-1224 (RWS)(SDNY), ("1224") court where the USAO's Prosecutors solicited SEC lawyer Norris' perjured testimony, and knowingly presented Norris' perjured testimony to the 1224 court's jury, and to the 09-0851-Cr Second Circuit's panel on 08/12/2010 in a fraudulent appeals brief filed by U.S. Attorney Preet Bharara, and chief of appeals AUSA Katherine Polk-Failla, to commit a fraud on the court, and in furtherance of the CCE's objectives to continue to violate Mr. Ware's civil due process rights, and to continue to kidnap Mr. Ware in violation of 18 USC §§2, 201, 241, 242, 371, 1201-02, 1341, 1343, 1503, 1505, 1510, 1621-23, 1956-57, and 1961-64, (the "DOJ Racketeering Offenses"), while conducting a "pattern of racketeering activities" as defined at 18 USC §1961(5).

## V.

The High Ranking DOJ Officials committed a fraud on the Supreme Court of the United States (as officers of the court owing the court a duty of candor) failed to notify the Court in Ware v. United States, 10-6449 (2010) that 1115 was moot on 11/07/2008 upon the Office of the Solicitor General, (the "OSG") notifying the Second Circuit in United States v. Ware, 07-5670-Cr (XAP), the United States was agreeing with Mr. Ware's contentions and arguments, and making an Article II, §3 prosecutorial political decision, and concluding it was not in the interest of the United States to challenge the insufficient of evidence ruling of the 1115 District Court (S. Tr. 30-31, 73-76, 77, 79) that the United States' trial proof was insufficient "concerning among other things the efficiency of the market." (emphasis added). Cf. Nixon v. United States, 418 U.S. 683, 693-94 (1974) (court lacked subject matter jurisdiction

-- pursuant to 'separation of powers' doctrine to review prosecutorial decisions, the Executive Branch's discretion is absolute, and does not constitute a reviewable or justiciable Article III "case" or "controversy"); Baker v. Carr, 369 U.S. 186, 217 (1962)(same). (See Ex. at 20, Executive Branch's Art. II, §3 political decision).

Therefore, as soon as on 11/07/2008 when the United States Attorney (SDNY), Michael J. Garcia, with the tacit, and implicit permission of the High Ranking DOJ Officials filed the Government's appeal brief in 07-5222-Cr, where at page 2*, (Ex. at 19) U.S. Attorney Garcia, acting on behalf of the Department of Justice, who was acting on behalf of the Executive Branch, notified the Second Circuit, (Ex. at 20):

> The Government filed a notice of appeal [on 12/17/2007 at Dkt. #103 in U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115")] but [is agreeing with Mr. Ware's arguments and contentions that the United States trial proof was in fact insufficient 'concerning among other things the efficiency of the market', and it is not in the interests of the United States to ...] prusu[e] a cross-appeal [in U.S. v. Ware, 07-5670-Cr (XAP), and we notify the Second Circuit to reversed and vacate the conviction in 1115, and remand to the 1115 District Court with a mandate to enter a dismissal with prejudice on the 1115 indicment, and mark this case closed], (emphasis added),

the subject matter jurisdiction, and authority (28 USC §§46 (a-d)) terminated for lack of an Article III live "case" or "controversy" with respect to the United States' trial proof in 1115, i.e., the Second Circuit's bogus and fraudulent judgment (Dkt. #113:1115), (Ex. at 32 entered on 08/18/2009 in 07-5222-Cr is null and void ab initio; and the judgment entered in 07-5670-Cr (XAP) is the "law of the case" with respect to all issues in 1115, invoking res judicata, collateral estoppel, and double jeopardy, and mooting 1115.

The Department of Justice, the USAO, the Second Circuit, District Judge Pauley, and the Prosecutors, have all knowingly and deliberately committed a "deliberate deception", Mooney, 294 U.S. at 112, on the court to present fabricated evidence, and perjured testimony to the courts with respect to 1115, where the above named persons all know that 1115 was mooted on 11/7/2008, at the latest.

The "deliberate deception" by the Department of Justice is part of an insidious

(21)

plan and scheme (committed by officers of the court, and the courts themselves) to cover up the bankruptcy frauds committed by Margaret H. Murphy, Joyce Bihary, M. Regina Thomas with respect to In re Group Management Corp., 03-93031-MHM (NDGA), ("93031"), where Bankr. Judge Murphy (acting in her individual and personal capacity) colluded, conspired, and racketeered with officers of the court Dennis S. Meir, John W. Mills, III, Edward T. M. Garland, James Morewitz, Kenneth A. Zitter, Edward Grushko, Barbara R. Mittman, Ari Rabinowitz, and the plaintiffs in 02-CV-2219 (LBS)(SDNY), ("2219") to extort the debtor (GPMT) of more than +$18 million in free-trading securities, and +$500 million in market capitalization.

The "deliberate deception" was designed by officers of the court to enable Kilpatrick, Townsend, & Stockton, LLP, Proskauser & Rose, LLP, Andrews & Kruth, LLP, Garland, Samuel, and Loeb, P.C., to escape criminal liability for aiding, abetting, and colluding to violate and breach the fiduciary duty of loyalty, care, trust, and duty to disclose owed to GPMT by the above named entities and indivuduals.

**B.**

To aid and abet, and directly participate in the "deliberate deception" and fraud on the court, M. Regina Thomas (Clerk Bankr. Court – NDGA) has refused to file or docket pleadings submitted to the bankruptcy court on 07/12/2012, 07/30/2012, and thereafter, in collusion with Chief Judge Joyce Bihary, and Judge Margaret H. Murphy to cover up the fraud committed by Murphy on May 21, 2003 by the entry of the fraudulent order (Dkt. #28), entered to aid, abet, and directly participate in the CCE's breach of the fuduciary duties owed to GPMT by the CCE members names above, including Murphy, KTS, Meir, Zitter, Mills, and others known and unknown to extort GPMT and its shareholders while using the federal courts, and the instrumentalities of interstate commerce. Dabner v. Chase National Bank, 196 F.2d 668, 671 (2d Cir. 1952) (Fiduciary's duty of loyalty supersedes all other duties owed to the beneficiary (GPMT) by the 2219 plaintiffs, their agents, and co-conspirators). Cf. Ex. at 21-29.

Murphy, KTS, Meir, Mills, Zitter, Morwwitz, collectively (the "Bankruptcy Conspirators") designed an execrable plan and scheme, executed by officers of the

court during the 93031 proceedings to extort GPMT and its shareholders of +$18 million in free-trading securities, and +$500 million in market capitalization, when Meir, Mills, Zitter, and Morewitz, in colluding and conspiring with Murphy knowingly filed a false and perjurious motion to dismiss or convert 93031 from a Chap. 11 reorganization to a Chap. 7 liquidation, or dismiss with prejudice (Dkt. #13:93031), which Meir on behalf of the Bankruptcy Conspirators, then filed his knowingly false and fraudulent motion (Dkt. #16).

The Bankruptcy Coconspirators all knew or should have known the contents of the fraudulent Dkt. ##13, and 16 violated Supreme Court precedent, cf. Pepper v. Litton, 308 U.S. 295, 305-06, 312 (1939) (the mere fact a claim has been reduced to judgment does not prevent an inquiry into it lawfulness, and a determination whether or not the judgment was part and parcel of "a fraudulent plan and scheme"); see also Margolis v. Nazareth Fairgrounds & Farmers Mkt., 249 F.2d 221, 223-24 (2d Cir. 1957) (broad equity powers of a bankruptcy court empowered it to look behind a previous judgment to determine the essential nature of the liability and to disregard such a judgment if obtained by collusion [between Thomas V. Sjoblom, Esq., Proskauser & Rose, LLP, the 2219 plaintiffs, the 2219 judge (Leonard B. Sand), Thomas W. Thrash, Jr. Linda T. Walker, Edward D. Grushko, Barbara R. Mittman, Dennis, S. Meir, John W. Mills, III, KTS, and others known and unknown].

During the 93031 proceedings Murphy colluded with Meir, Mills, KTS, Morewitz, and the Bankruptcy Coconspirators, while knowing the Pepper, Id. at 306-06, 11 USC §365(c)(2), and §510(b) governed the proceedings; yet Murphy as part of the plan and scheme to extort GPMT, while colluding and conspiring with the Bankruptcy Conspirators, designed and conducted the 93031 proceedings to enable the 2219 plaintiffs to extort GPMT of +4.1 million shares of free-trading securities (valued at +$25 million).

Murphy and the Bankruptcy Conspirators knew that the 2219 plaintiffs and their agents were fiduciaries of the debtor, GPMT, and thus prohibited from impeding GPMT's Chap. 11 reorganization, Dabney, 196 F.2d at 671; and Murphy further knew that Pepper, 308 U.S. at 306, permitted GPMT to collaterally attacked the fraudulent 2219 court's

(23)

judgment which was procured by "collusion" a "part of a fraudulent plan and scheme"
orchestrated by Thomas V. Sjoblom, Esq., Proskauser & Rose, LLP, District Judge
Leonard B. Sand, Kenneth A. Zitter, Esq., Edward D. Grushko, Esq., Barbara R.
Mittman, Esq., Dennis S. Meir, Esq., John W. Mills, III, Esq., KTS, to commit a fraud
on the 2219 court, and the 93031 court, i.e., Meir, Mills, Murphy, and Morewitz, all
knew that 11 USC §365(c)(2) terminated all "contracts to issue the securities" of
GPMT; and further knew that 11 USC §510(b) subordinated the claims of the 2219
plaintiffs to claims of the unsecured creditors.

Judge Murphy has a history of bankruptcy fraud, cf. <u>Bryan v. Margaret H. Murphy</u>
<u>and Thomas W. Thrash, Jr.</u>, 02-CV-2492-BBM (NDGA), reported at 243 F. Supp. 2d 1375
(NDGA 2003), where she was alleged to have again permitted fraud to occur in her court
where attorneys were alleged to have committed a fraud on the court, which was
allegedly reported to Murphy, yet Murphy, the same as in this case (Mr. Ware reported
to Judge Murphy, on two occasions (see Ex. at 21, 22: 12/28/2011, and 1/11/2012,
respectively) did nothing; cf. with <u>Bryan</u>, 243 F. Supp. 2d at 1377:

> Specifically, Bryan [the debtor] alleges that his
> bankruptcy attorneys lied about a $30,000.00 fee he paid
> them, in order to ensure that the funds were excluded
> from Bryan's bankruptcy estate. After discovering his
> attorneys **fraud**, Bryan allegedly <u>reported the issue to</u>
> <u>Murphy</u>. Although Bryan made Murphy aware of his
> attorneys [fraud], she [the same as in 93031, a pattern
> of racketeering activities -- obstruction of justice]
> <u>did not investigate the issue</u>. (emphasis added).

Clearly in <u>Bryan</u> and in 93031 Murphy was required to report the fraud (18 USC
§3057) to the Department of Justice to launch an investigation into the conduct of
the lawyers in <u>Bryan</u>, and the lawyers (Meir, Mills, KTS, Morewitz, Zitter, Grushko,
Mittman, Sjoblom, Proskauser & Rose, LLP, the 2219 plaintiffs' agent **fugitive** Thomas
Badian, and others), as indicated at Ex. at 21-22, Murphy, through her law clerk (Pat
Sinback) commented, "<u>Your letter will not be shown to Judge Murphy and will not be</u>
<u>made a part of Debtor's file[]</u>" (emphasis added), (Id. at 21), with respect to 93031.

Again on 1/11/2012 Mr. Ware attempted to inform Judge Murphy of the bankruptcy
fraud which occurred in 93031. And again Murphy had her law clerk (Pat Sinback),

(24)

obstruct justice, again stating, "The pleadings will not be shown to Judge Murphy [she turned a blind eye and a deaf ear to the known fraud, by willful blindness to the fraud committed by herself and the Bankruptcy Coconspirators] and will not be made a part of any bankruptcy case file." (emphasis added).

Judge Murphy and her law clerk's conduct was clearly obstruction of justice (18 USC §§1503, 1505, 1510), misprison of a felony (18 USC §4), and conspiracy to obstruct justice (18 USC §371) to defraud the United States from prosecuting herself, and the Bankruptcy Conspirators in extorting GPMT and its shareholders of +$18 million in free-trading securities, +$500 million in market capitalization, +$5.0 billion in damages, and +$5.0 billion in damages to Mr. Ware, and his business interests.

Because Judge Murphy and her law cleck, colluding and conspiring, to violate federal laws, named above, their conduct constitutes a "pattern of racketeering activities" as defined at 18 USC §1961(5); and taking the fraud and obstruction of justice with respect to the Bryan case, there is a clear pattern of criminal conduct occurring with respect to matters in the United States bankruptcy court between Judge Murphy, select lawyers, and her law clerk -- an illegal association-in-fact as defined at 18 USC §1961(4). Bryan, 243 F. Supp. 2d at 1377 for another Murphy fraud.

C.

On or about 07/12/2012 and 07/30/2012 in the city of Atlanta, GA M. Regina Thomas (Clerk Bankr. Court (NDGA)), and Joyce Bihary (Chief Judge Bankr. Court (NDGA)) both joined the illegal association-in-fact, and both have colluded, conspired, and racketeered to obstruct justice in violation of federal law (Bankr. Rules 5005(a), 5003) and both have refused to file or docket pleadings submitted to the Court by Mr. Ware (See Ex. at 23-25: letters requesting that the pleadings submitted either be filed or returned to Mr. Ware), and Ex. at 27 (caption page of 07/12/2012 Rule 60(d)(3) pleadings; and Ex. at 29 (07/30/2012 caption page of M. Regina Thomas' fraud).

The Bankruptcy Coconspirators are currently conducting the racketeering activities through the association-in-fact, a continuing criminal enterprise, (the

(25)

"CCE"), using the Office of the Bankruptcy Clerk, the Office of the Chief Judge (Bankr. Ct), and the U.S. Mail (mail fraud) to transmit fraudulent letters, and judicial documents knowingly containing a "deliberate deception" "perjury" "conspiracy" "obstruction of justice" "misprison of a felony" "securities fraud" "bribery" "extortion" "collection of an illegal usurious debt", and other rackteering activities.

## VIOLATION OF DUTY OF CANDOR

The Bankruptcy Conconspirators (a majority) are officers of the court owing a "continuing duty" of candor (quoting Fasari, 419 U.S. at 391) to the court to set the record straight with regard to the 93031 and 2219 proceedings. However, where the bankruptcy judge colluded with the Bankruptcy Conspirators, her conduct is clearly obstruction of justice in colluding with the Clerk and Chief Judge to prevent Mr. Ware's pleadings from being filed and docketed, and adjudicated by the Court (in violation of federal laws); and to prevent the official records from being certified (see Ex. at 24: M. Regina Thomas has refused all First Amendment right of access, and violated Bankr. Rule 5003 in refusing to certify the 93031 docket sheet, to obstruct justice). Cf. Ex. at 21-29, the Bankr. Court has refused all filings.

## CONCLUSION

Mr. Ware has shown by overwhelming evidence, which is indisputed, that an ongoing CCE is in operations in the federal court with regard to the 0831, 1115, 1224, 93031, 09-0851-Cr, 11-2151-Cr, 11-4181-Cv, 03-7973-Cv (2d. Cir.) proceedings.

The respondents to the 07/12/2012 Rule 60(d)(3) pleadings (Ex. at 27) are directly responsible for damages to GPMT, its shareholders, Elorian Landers, Becky Landers, Ulysses Thomas Ware, Silver Screen Studio Group, Inc., Global One Investment Holdings, Inc., estimated at +$5.0 billion for damages to their business and personal interest committed by the Racketeering activities of the respondents named in the 07/12/2012 Rule 60(d)(3) pleadings, subjecting their personal assets to an encumbrance pending resolution of this matter, and an assessment of damages.

Ostensibly, Judge Margaret H. Murphy is oblivious to the Code of Conduct for Federal Judges, Canon 3(B)(3) which requires a federal judge to report all instances of criminal or misconduct to the appropriate agency for investigation: Murphy has refused attempts to investigate the 93031 proceedings where the 2219 plaintiffs' lawyer (Kenneth A. Zitter, Esq.) testified under oath in the 04-Cr-1224 trial that in fact the 2219 plaintiffs were 15 USC §77b(a)(11) statutory underwriters of GPMT; and furthermore, 2219 plaintiff Stonestreet, L.P. did in fact judicially admit on or about 08/13/2003 to beneficially "own more than 9.9% of [GPMT's] stock" (quoting District Judge Leonard B. Sand in his final order not appealed by Stonestreet, L.P. or the other 2219 plaintiffs). Cf. Dkt. #65 in 2219, or see Appx. at 18-19 attached to 07/13/2012 motion.

Moreover, 2219 plaintiffs' agent (Ari Rabinowitz) testified under oath on or about 11/19/2007 (Tr. 204-06) that Alpha Capital, AG and the 2219 plaintiffs were in fact in operations of an unregistered broker-dealer during the 93031 proceedings, a criminal violation of 15 USC §78o(a), 78j(b), 77x, and 78ff, requiring Murphy (as a judicial officer of the court) to immediately, **sua sponte**, conduct a Hazel Atlas-Glass Co. v. Hartford Empire Co. proceeding to "root out the fraud on the court" (quoting Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580 (1946)).

Obviously Murphy refused to and has failed to up hold the law after Mr. Ware, twice, informed Murphy of the fraud on the court committed by officers of the court with respect to the 93031 proceedings (see Ex. at 21, 22).

During the 1224 trial 2219 plaintiffs' lawyer (Zitter) testified that Dennis S. Meir, John W. Mills, and KTS created the "strategy" utilized in the 93031, where Meir, KTS, and Mills knew that the 2219 plaintiffs were in fact fiduciaries of GPMT prohibited from appearing in 93031: Prohibited from impeding GPMT's reorganization, and prohibited from appearing in 93031 where the 2219 plaintiffs lacked a "claim", i.e., Meir, Mills, KTS, and the 2219 plaintiffs committed bankruptcy fraud in 93031, which Murphy has known at the latest as of 12/28/2011, yet has stood by and obstructed justice.

(27)

## MURPHY'S CRIMES AND FRAUD ON THE COURT

Murphy during the 93031 proceeding knew that 11 USC §365(c)(2) terminated all contracts to issue the securities of the debtor (GPMT). Cf. 04/23/2003 hearing transcript Tr. at 31-32; see Ex. at 30-31:

The Court: Now, what provision of the Code included the issuance of securities of as to executory contracts?

Mr. Gordon: Section 365(c)(2), Your Honor.

The Court : And you're arguing what under (c)(2)?

Mr. Gordon: That the trustee or [DIP], as in this case [93031], may not assume executory contract when it has to do with the issuance of securities of the debtor; in other words, in this case the -- under the subscription agreement [GX-5 ¶10.1(iv)], which is Debtor's Exhibit 1, the [DIP (GPMT)] may not issue securities to the respondents [the 2219 plaintiffs] per notice of conversion request.

Based on the above indisputable factual record of the 93031 proceedings Murphy, and Meir both knew that by operation of law 11 USC §365(c)(2) terminated all contracts of GPMT to issue its securities to the 2219 plaintiffs, notwithstanding the palpable newly discovered evidence and judicial admissions made by the 2219 plaintiffs' representatives at trial in 1224 (Tr. 204-06) that Alpha was in operation of an illegal **unregistered** broker-dealer in violation of 15 USC §78o(a), therefore, 15 USC §78cc(b) prohibited the 2219 plaintiffs from enforcing the subscription agreement, the Notes, or any contract formed as part of the 02/02/2001 transactions, i.e., the 2219 plaintiffs lacked a lawful "claim" against GPMT to have standing to appear in 93031. Reg'n Prop. v .Fin & Real Estate Consult., 678 F.2d 552, 564 (5th Cir. 1982)(unregistered broker-dealer could not enforce executory contract to sell securities); see also Mills v. Electric Auto-Lite, 396 U.S. 375, 387 (1970) (party guilty of violating the 1934 Exchange Act prohibited from enforcing a contract against an unwilling innocent party [GPMT]).

(28)

Murphy, M. Regina Thomas (Clerk of the Bankr. Court), and Joyce Bihary (Chief Judge) all know that federal law requires that all pleadings submitted to the Court must be immediately filed and docketed. Bankr. Rule 5005(a). (see Ex. at 21-29).

The trio also know that Rule 60(d)(3) pleadings alleging a fraud on the court must also be immediately filed and docketed into the records of the Court; and where emergency action was requested, the Clerk's office is required to notice the respondents that an emergency matter is pending in the Court, and the consequences of nonresponse, which was not done with respect to Mr. Ware's 07/12/2012 and 07/30/2012 pleadings (see Ex. at 23), submitted in 93031.

Exactly what legitimate reason would the Clerk of the Bankr. Court have in violating federal law (Bankr. Rule 5005(a))? The palpable answer is no legitimate reason why the Clerk would not file and docket pleadings alleging a fraud was committed on the court other than she is involved in the cover up to obstruct justice.

Furthermore, what legitimate reason would the Clerk have in not certifying the official record in 93031, which federal law requires (Bankr. Rules 5003 and 5006)? Obviously there are not legitimate reasons why M. Regina Thomas has refused all requests to certify the 93031 record, and forward a copy of the same to Mr. Ware via the U.S. mail, other than Ms. Thomas knows that to certify a false record and send the same via the U.S. mail is mail fraud, a tacit admission that there are irregularities regarding the 93031 official record, irregularities that Ms. Thomas, Murphy, and Chief Judge Bihary are obstructing justice in a transparent risible attempt to cover up Murphy's, Meir, Mills, Morewitz, Zitter, the 2219 plaintiffs, KTS, District Judge Thrash, magistrate Linda T. Walker, the U.S. Marshals, District Judge Leonard B. Sand, Circuit Judge Hall, Pooler, Parker, Raggi, Kearse, Sack, Katzmann, Barbara S. Jones, Robert W. Sweet, William H. Pauley, III, and others known and unknown, crimes committed, before, during, and after the 93031 proceedings.

The actions of Ms. Thomas, Judge Bihary, and Murphy have truly been comical for conduct of officers of the court, in particular the Chief Judge who has now obstructed justice by refusing to file pleadings submitted to the Court.

Apparently Ms. Thomas, Murphy, and Chief Judge Bihary do not believe they will be criminally prosecuted and each will receive a life sentence for racketeering to obstruct justice. I will lay a heavy bet they will all receive a life sentence, including Thomas W. Thrash, Linda T. Walker, Leonard B. Sand, Robert W. Sweet, B.D. Parker, Reena Raggi, Rosemary S. Pooler, Robert A. Katzmann, Peter W. Hall, Robert D. Sack. Amalya L. Kearse, Barbara S. Jones, William H. Pauley, III, Dennis G. Jacobs, and others.

Chief Judge Bihary's conduct in respect to the 93031 pleadings being filed, and the certification of the record is governed by 28 USC §154(b). Which requires that Judge Bihary "shall ensure that the rules of the bankruptcy court [5003, 5005, and 5006, and 9024] and of the district court are observed and that the business of the bankruptcy court is handled **effectively** and **expediciously**." (emphasis added).

Judge Bihary has yet to follow federal law (Bankr. Rule 5005(a)) and file the 07/30/2012 pleading Mr. Ware submitted to the Court for filing, Cf. Ex. at 28-29.

That is, Judge Bihary has obstructed justice, violated federal law, and committed a fraud on the court by an officer of the court -- an insidious plan and scheme -- designed to adversely affect the judicial machinery to prevent Mr. Ware from having his claims adjudicated in a fair and impartial manner. Hazel Atlas-Glass, 322 U.S. at 242-46. **PROBABLE CAUSE TO ARREST**

Probable cause currently exist to believe that Judge Bihary, M. Regina Thomas, Margaret H. Murphy, have criminally violated federal law in obstructing justice in violating federal law (Bankr. 5005(a)) and not filing or docketing Mr. Ware's 07/12/2012 and 07/30/2012 pleadings (see Ex. at 26-29) submitted to the United States Bankruptcy Court for the Northern District of Georgia (Atlanta Division) in regard to 93031, and federal arrest warrants should immediately issue to arrest Murphy, Thomas, and Bihary in the district where located, and held without bail pending entry of a guilty plea for racketeering, and aiding and abetting, and direct participation in violation of 18 USC 241, 242, 371, 891-94, 1503, 1505, 1510, 1201-02, and other offenses.

(30)

Instructive of a bankruptcy court's obligation in regard to a Rule 60(d)(3) proceeding are the cases: In re Canty, 2010 Bankr. LX 1519 (N.D. Ala. 2010), and In re Woodruff, 2010 Bankr. LX 312 (M.D. Ala 2010), where both courts undertook a thorough and comprehensive analysis of the petitioners' Rule 60(d)(3) claims, unlike M. Regina Thomas' frivolous and fraudulent July 25, 2012 letter (see Ex. at 23) refusing to even file the 07/12/2012 Rule 60(d)(3) pleading.(See Ex. at 26-27).

Another instructive case is In re Old Carco, 423 B.R. 40, 51-58 (BC SDNY 2010)(a thorough analysis of Rule 60(d)(3) in the context of a bankruptcy proceeding).

Another interesting case which might spark a fire under the Bankruptcy Coconspirators is Turner v. Pleasant, 663 F.3d 770 (5th Cir. 2011)(discussed the impeachment of former District Judge G. Thomas Porteous, Jr. for judicial misconduct for fixing cases with 'select lawyers", cf. Bryan' claims against Murphy in Bryan v. Murphy and Thrash, 243 F. Supp. 2d 1375 (NDGA 2003), and compare to Mr. Ware's claims against Murphy, Thrash, Walker, Evans, and others in the 07/12/2012 and 07/30/2012 pleadings; Murphy and the gang have been **fixing and rigging** case for years.

The conduct of Murphy, Judge Bihary, Thrash, Walker, Evans, Carnes, Shoob, and Brill, clearly qualifies as misconduct subjecting the offenders to Article I impeachment, as well as a judicial misconduct complaint (28 USC §351), cf. Turner, Id. at 774.

(31)