Submitted by Counsel:

*Ulysses T. Ware*

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
12/12/2012 05:22:22 P.M. printed



PRIORITY
FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 19 2012

JAMES N. HATTEN, CLERK
By:                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ULYSSES THOMAS WARE,<br>    PETITIONER,<br><br><br>    VS.<br><br><br>WARDEN DARLEEN DREW,<br>BUREAU OF PRISONS,<br>ATLANTA PRISON CAMP.<br>    RESPONDENTS. | :<br>:<br>:<br>:<br>:<br>: CASE #: 12-CV-_____<br>: **1:12-CV-4397**<br>:<br>:<br>:<br>:<br>: |

EMERGENCY PETITION FOR IMMEDIATE RELEASE
28 USC §2241: PETITION FOR A WRIT OF HABEAS CORPUS
ACTUAL AND FACTUAL INNOCENCE OF ALL CHARGES

12/12/2012 Memorandum of Law in Support of Claims Regarding:

U.S.v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115").

Exhibits Pages 1 – 35 in Support of 1115 Memorandum of Law **#1.**

**13**

12/13/2012

SEC lawyer Norris emails between he and AUSA Alexander H. Southwell who on
stated in open court the emails did not exist (cf. Ex. at 5).

P. 1

## Draper, Julia D.

| | |
|---|---|
| **From:** | Norris, Jeffrey B. |
| **Sent:** | Monday, August 30, 2004 9:25 AM |
| **To:** | 'Alexander.Southwell@usdoj.gov' |
| **Cc:** | Draper, Julia D. |
| **Subject:** | RE: Ware |

Thanks for the information. I was able to use it in a brief to fix Rule 11 sanctions against Ware. As you can see, he is still misbehaving in Nevada. I now have additional motions for default pending on a couple of different grounds. What's happening in New York?



Rule11Response.do
c

-----Original Message-----
From: Alexander.Southwell@usdoj.gov
[mailto:Alexander.Southwell@usdoj.gov]
Sent: Monday, August 16, 2004 9:44 AM
To: 'NorrisJ@SEC.GOV'
Subject: RE: Ware

Cas is Alpha Capital v. Group Management, 02 Civ. 2219 (LBS) and the order of referral is dated 12/22/03. I will fax you a copy.

Alex

-----Original Message-----
From: NorrisJ@SEC.GOV [mailto:NorrisJ@SEC.GOV]
Sent: Monday, August 16, 2004 10:21 AM
To: Southwell, Alexander
Subject: RE: Ware

Alexander:

Can you provide me with the name and/or case number of the matter in which the District Judge has requested a prosecution of Ware for criminal contempt? I would like to cite the case or even attach the order in my petition to fix the Rule 11 sanctions against Ware in the Nevada District Court. Thanks.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth District Office
801 Cherry St., Unit 18
Fort Worth, TX 76102
Tel: (817) 978-6452
Fax: (817) 978-4927

-----Original Message-----
From: Alexander.Southwell@usdoj.gov
[mailto:Alexander.Southwell@usdoj.gov]
Sent: Thursday, August 12, 2004 2:53 PM
To: 'norrisj@sec.gov'

6/11

10

1

EXHIBIT #4

P. 2

## Draper, Julia D.

| | |
|---|---|
| From: | Norris, Jeffrey B. |
| Sent: | Wednesday, October 06, 2004 1:18 PM |
| To: | Alexander.Southwell@usdoj.gov |
| Cc: | Draper, Julia D.; Korotash, Stephen J. |
| Subject: | RE: Thomas Ware |

Alexander:

Who raised the 100 mile limit argument? That is a specious argument with no legal basis. I have won that issue with a number of district courts where a person held in contempt was trying to avoid extradition. Based on orders from courts in the Northern District of Texas, I have had the Marshals arrest people in California, Washington, Wisconsin, Nevada and probably other jurisdictions that I can't remember. Several of these people have been incarcerated in Texas for more than a year. One person arrest in Washington state for civil contempt is still in prison in Texas after more than 2 years.

Read Federal Rule of Civil Procedure 4.1. It states that an order of civil commitment for a person held in contempt **"may be served and enforced in any district."** It goes on to state that **other** orders in contempt proceedings are subject to the 100 mile limit.

Whoever argued this matter didn't do his or her homework. Someone needs to file a motion for reconsideration and have him arrested again!

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth Office
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102
Phone: (817) 978-6452
Fax: (817) 978-4927
E-mail: norrisj@sec.gov

-----Original Message-----
From: Alexander.Southwell@usdoj.gov [mailto:Alexander.Southwell@usdoj.gov]
Sent: Wednesday, October 06, 2004 1:04 PM
To: 'NorrisJ@SEC.GOV'
Subject: RE: Thomas Ware

He likely means when he was arrested on the civl contempt order. He was arrested in Atlanta and released the same day, which was somewhere around the beginning of September. As it turned out, a warrant on a civil contempt order cannot extend beyond 100 miles from the courthouse or in the same state, so he was improperly arrested (which he pointed out to Judge Sand, the wily guy that he is). So we are working on a criminal contempt charge which (confidentially) should happen within a week or two.

Alex

-----Original Message-----
From: NorrisJ@SEC.GOV [mailto:NorrisJ@SEC.GOV]
Sent: Wednesday, October 06, 2004 12:57 PM
To: Southwell, Alexander
Subject: Thomas Ware

Alexander:

**3501 - 72**

Have there been any developments in the contempt prosecution of Thomas Ware since the beginning of September? I got a cryptic e-mail from

1

*Norris was aware of the Grand Jury investigation 8/15/2012*

1

Note that Norris suggested "September 1, 2004" as the date to depose Webster, the day the SEC and USAO conspired and colluded to have Mr. Ware illegally arrested in Atlanta, GA. (Cf. Ex. at 2 for AUSA Southwell's email to Norris, email which supposedly did not exist.

I was not aware that your sense of irony was so finely honed. Unlike yours (as set forth in the Court's July 29 Order), my papers will be supported by pertinent legal authority, and will not consist of meritless speculation or unsubstantiated conclusions. Please be advised that I have not agreed to accept any legal process beyond that which the law requires. Accordingly, you will have to determine whether your mailing of a notice and subpoena are legally binding. This is my last communication on the subject matter of Mr. Webster's deposition until such time as you receive the motions I have promised.

*Jeffrey B. Norris*
*Trial Counsel*
*United States Securities and Exchange Commission*
*Fort Worth District Office*
*801 Cherry St., Unit 18*
*Fort Worth, TX 76102*
*Tel: (817) 978-6452*
*Fax: (817) 978-4927*

-----Original Message-----
**From:** Thomas Ware [mailto:rgwinc@mindspring.com]
**Sent:** Tuesday, August 17, 2004 2:59 PM
**To:** Norris, Jeffrey B.
**Subject:** Re: Deposition of Steve Webster

I guess in your frivolous motion that you will file, you will not be able to certify that you reviewed the relevant case law as indicated by your last email. I will forward the notice to your attention along with the notice to produce and the Subpoena.

Rosenfeld, Goldman & Ware, Inc.
Thomas Ware
101 Marietta St.
Suite 1070
Atlanta, GA 30303
(404) 522-1202 phone
(404) 522-1447 fax

----- Original Message -----
**From:** Norris, Jeffrey B.
**To:** 'Thomas Ware'
**Cc:** Korotash, Stephen J. ; Webster, Stephen ; Draper, Julia D.
**Sent:** Tuesday, August 17, 2004 3:54 PM
**Subject:** RE: Deposition of Steve Webster

Mr. Ware:

If you are inclined to further undermine your credibility with the Court and incur further sanctions, then, to quote the Duke of Wellington, "publish and be d----ed." I remind you that the Court stated in the July 29 Order that you are perilously close to having a default sanction entered against you. I assure you that if you notice Mr. Webster's deposition—an act that can only be done in bad faith—my Motion for Protective Order will be accompanied by a motion renewing the Commission's request that the Court enter a default judgment against you and Rosenfeld, Goldman and Ware. I will not give you dates on which the Commission will make Mr. Webster available because, as I stated, I can envision no issue upon which he can offer relevant testimony. Your silence confirms my conclusion. I ask only that, should you make the mistake of attempting to schedule Mr. Webster's deposition, you schedule it no earlier than September 1, 2004.

*Jeffrey B. Norris*

8/18/2004

8/15/2012

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 33
DATE FILED: 1-8-07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA                    :        05 Cr. 1115 (WHP)

            -against-                       :        ORDER

ULYSSES THOMAS WARE,                        :

                        Defendants.         :
-----------------------------------------------------X

WILLIAM H. PAULEY III, District Judge:

            By letter applications dated December 1, 2006 and December 19, 2006, Ulysses

Thomas Ware ("Defendant" or "Ware") sought an adjournment of the January 16, 2007 trial date

and a suppression hearing. This Court denied those applications in separate orders on December

11, 2006 and December 22, 2006 respectively.

            On November 28, 2006, the Government filed an in limine motion, seeking to

preclude Defendant from offering at trial any evidence of collusion between the Securities and

Exchange Commission ("SEC") and the United States Attorney's Office ("USAO") ("November

28 motion"). On December 28, 2006, the Government filed another in limine motion, seeking to

preclude Defendant from cross-examining certain Government witness regarding collateral

matters ("December 28 motion"). On January 2, 2007, Defendant filed a motion, seeking (a) an

adjournment of the January 16, 2007 trial date; (b) a suppression hearing concerning all

documents and information obtained from the SEC; (c) a log prepared by the SEC and the USAO

of all documents, telephone calls and email correspondence between the two; and (d) other

related relief ("January 2 motion"). Finally, by letter dated January 8, 2007, Defendant seeks

1

eight different orders requiring the Government to provide information, emails and logs to

Defendant immediately. The relief sought on January 8, 2007 largely overlaps with relief

requested in Defendant's January 2 motion or at argument on January 5, 2007. In turn,

Defendant's January 2 application essentially reiterates his earlier requests for relief on

December 1, 2006 and December 19, 2006.

### A.    Defendant's January 2 Motion

Defendant's January 2 motion revolves around alleged improper collusion·

between the SEC and the USAO. At the January 5, 2007 hearing, Ware clarified his argument:

> Any documentation, communication subsequent to December 3, 2003 during the
> ongoing civil litigation in Nevada is subject to suppression because notice was not
> given by the SEC nor Mr. Southwell's office that an imminent criminal
> investigation was ongoing pertaining to the same conduct as was ongoing in the
> civil litigation. That information is subject to suppression, your Honor, because
> notice was not given to the civil litigants in the civil action in Nevada.

(Transcript of Oral Argument, dated Jan. 5, 2007 ("Oral Arg. Tr.") pg. 29.)

Assistant United States Attorney ("AUSA") Alexander Southwell responded "that

this case did not come about as a referral from the SEC, and to [his] knowledge, Mr. Norris [trial

counsel for the SEC] never contacted the [USAO's] office or the FBI about this case prior to

when the FBI contacted Mr. Norris sometime after December 2003." (Oral Arg. Tr. pg. 30.) As

for Ware's assertions of collusion between the USAO and the SEC, AUSA Southwell

represented that none of the correspondence between those agencies concerned "what should

happen in the civil litigation, [what] depositions should be taken or anything of that ilk. It was

all in the nature primarily of Mr. Norris reporting on what had happened in the proceeding,

mostly public events and providing documents." (Oral Arg. Tr. pgs. 29-30.) There is nothing in

2

the record to support Ware's arguments that the USAO exerted any control whatsoever over the SEC's civil investigation or enforcement action. Finally, there is no authority for Ware's proposition that the Government was required to give him notice that a criminal investigation or proceeding was imminent. (Oral Arg. Tr. pg. 30.)

This Court finds that Defendant has offered only conclusory allegations and speculation of collusion between the USAO and the SEC. While Defendant argues that those agencies were in contact "shortly after" July 2003, he mischaracterizes the Jeffrey Norris affidavit dated October 3, 2006. The Government represents that the SEC civil investigation started in June or July of 2002 while the USAO's criminal investigation did not begin until after a referral from District Judge Sand in December 2003. (See Transcript of Hearing on May 19, 2006, pgs. 6-7.) Defendant does not refute the Government's time line. Even if there were a temporal overlap between the civil and criminal investigations, information sharing is not subject to suppression when the investigations are independently motivated. See United States v. Tevibo, 877 F. Supp 846 (SDNY 1995). Accordingly, Defendant has provided no factual basis for a suppression hearing.

B.      Defendant's January 8 Application

In his January 8 Application, Defendant's requests for orders requiring the Government to disclose communications between the SEC and the USAO are denied. For the reasons set forth above, Defendant's conspiracy theory is rejected because Defendant has failed to proffer any credible evidence supporting it.

C.      The Government's November 28 Motion

The lack of factual support for Ware's allegations also forms the basis for the

3

8/15/2012

Government's motion to preclude evidence of alleged collusion between the SEC and the USAO. For the reasons discussed above, this Court finds that Ware is precluded from alleging collusion between the agencies.

In its November 28 motion, the Government further moves to introduce evidence of Ware's obstructive conduct in the course of the SEC investigation. Specifically, the Government seeks to introduce the affidavit of Myron Williams submitted by Ware to the SEC. (See Transcript of January 3, 2007 at pgs. 10-11.) The Government argues that this evidence is directly admissible because it involves the same illegal activity alleged in this action. Although this evidence may be admissible on this basis, the Government must first demonstrate that the allegedly obstructive conduct was intended to prevent detection of the criminal fraud for which he was indicted.

The Government argues alternatively that the evidence is admissible as 404(b) evidence on the issues of knowledge and intent. If Ware raises lack of knowledge or intent as a defense, then such evidence is admissible. See United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1989) (providing a three part test to determine admissibility of "other crimes" under Rule 404(b)).

D.    The Government's December 28 Motion

The Government moves to preclude Defendant from cross-examining Government witness Jeremy Jones concerning 1997 and 1999 misdemeanor convictions for deposit account fraud, which is commonly known as the issuance of a bad check. The Government's argument under Rule 609 lacks merit. While the Government may claim during direct examination that Jones' criminal convictions resulted from an "unintentional oversight",

4

Jones' convictions concerning check fraud bear on his credibility. Accordingly, Defendant may question Jones about his 1997 and 1999 convictions.

The Government also seeks to preclude cross examination of Carlton Epps concerning a 1997 arrest for deposit account fraud and a 2002 misdemeanor conviction for driving with a suspended license. The 1997 arrest is not an appropriate basis for inquiry. The unfair prejudice outweighs any probative value. Moreover, the misdemeanor conviction for driving with a suspended license is irrelevant and is precluded under Rule 609.

Finally, the Government seeks to admit Certified Public Documents as self-authenticating under Rule 902(4) and as business records under Rule 803(6). If these documents are indeed certified public records or business records maintained in the normal course, they are admissible provided that they are relevant.

The balance of the parties' respective applications are denied. A final pre-trial conference is scheduled for January 12, 2007 at 2:00 p.m.

Dated: January 8, 2007
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

5

Approved:

ALEXANDER H. SOUTHWELL
Assistant United States Attorney

Before:   HONORABLE ANDREW J. PECK
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :    SEALED COMPLAINT

        - v. -                    :    Violation of
                                       18 U.S.C. §§ 2, 371
ULYSSES THOMAS WARE,              :    15 U.S.C. §§ 77q(a) & 77x
    a/k/a "Thomas Ware," and
JEREMY JONES,                     :    COUNTY OF OFFENSE:
                                       NEW YORK
                Defendants.       :

- - - - - - - - - - - -- - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

DAVID MAKOL, being duly sworn, deposes and says that he is a
Special Agent with the Federal Bureau of Investigation ("FBI"),
and charges as follows:

## COUNT ONE
### (Conspiracy to commit securities and wire fraud)

1.   From in or about January 2002 through in or about April
2002, in the Southern District of New York and elsewhere, ULYSSES
THOMAS WARE, a/k/a "Thomas Ware," and JEREMY JONES, the
defendants, and others known and unknown, unlawfully, willfully
and knowingly, did combine, conspire, confederate and agree
together and with others to commit offenses against the United
States, to wit, to commit: (a) securities fraud, in violation of
Title 15, United States Code, Sections 77q(a) and 77x; and (b)
wire fraud, in violation of Title 18, United States Code, Section
1343.

2.   It was a part and an object of the conspiracy that
ULYSSES THOMAS WARE, a/k/a "Thomas Ware," and JEREMY JONES, the
defendants, and others known and unknown, unlawfully, willfully
and knowingly, in the offer and sale of securities issued by
Investment Technology, Inc., by the means and instruments of
transportation and communication in interstate commerce and by
the use of the mails, directly and indirectly, would and did:
(a) employ devices, schemes and artifices to defraud; (b) obtain

money and property by means of making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, transactions, practices and courses of business which operated and would operate as a fraud and deceit upon purchasers of securities issued by Investment Technology, Inc., in violation of Title 15, United States Code, Sections 77q(a) and 77x.

3. It was further a part and an object of the conspiracy that ULYSSES THOMAS WARE, a/k/a "Thomas Ware," and JEREMY JONES, the defendants, and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## OVERT ACTS

4. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about February 4, 2002, ULYSSES THOMAS WARE, a/k/a "Thomas Ware," and JEREMY JONES, the defendants, were involved in the preparation and issuance of a press release concerning Investment Technology, Inc. which contained material misrepresentations and omissions.

b. On or about February 4, 2002, WARE sold approximately 85,000 shares of INZS, the proceeds of which were wired to a bank account of WARE's.

c. On or about February 5, 2002, WARE and JONES were involved in the preparation and issuance of a press release concerning Investment Technology, Inc. which contained material misrepresentations and omissions.

(Title 18, United States Code, Section 371.)

-2-

## COUNT TWO
### (Securities fraud)

5. From in or about January 2002 through in or about April 2002, ULYSSES THOMAS WARE, a/k/a "Thomas Ware," and JEREMY JONES, the defendants, unlawfully, willfully and knowingly, in the offer and sale of securities, by the means and instruments of transportation and communication in interstate commerce and by the use of the mails, directly and indirectly, did: (a) employ devices, schemes and artifices to defraud; (b) obtain money and property by means of making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, transactions, practices and courses of business which operated and would operate as a fraud and deceit upon purchasers of and investors in Investment Technology, Inc. securities.

(Title 15, United States Code, Sections 77q(a) and 77x; Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

6. I am a Special Agent with the Federal Bureau of Investigation and have been so employed for about the last two and a half years. I am assigned to the a squad which investigates, among other things, securities fraud. I have participated in the investigation of this matter, and I am familiar with the information contained in this Complaint based on my own personal participation in the investigation, my review of documents, and conversations I have had with other law enforcement agents and other individuals. Because this Complaint is submitted for the limited purpose of establishing probable cause, I have not included herein the details of every aspect of the investigation. Where actions, conversation and statements of others are related herein, they are related in substance and in part, except where otherwise indicated.

### Background on Relevant Parties and Entities

7. I have learned from a review of various documents filed with the United States Securities and Exchange Commission ("SEC") that Investment Technology, Inc. ("INZS") was formed as a Nevada Corporation on or about July 2, 1999. Stock in INZS was traded

-3-

on the Over-the-Counter Bulletin Board ("OTCBB")[1] under the ticker symbol INZS. INZS has its principal place of business in Las Vegas, Nevada and it purports to be in the online gaming business. I have also learned that there are entities or individuals based in Manhattan that purchased or sold INZS stock between in or about January 2002 and in or about April 2002, from a review of trading data for INZS obtained from the SEC and a telephone interview of one such individual.

8.    I have learned from a review of various documents that ULYSSES THOMAS WARE, a/k/a "Thomas Ware," the defendant, is a resident of Georgia and is an attorney licensed in the state of Georgia where he runs a purported law firm called Rosenfeld, Goldman & Ware, Inc. (the "Ware Firm") located in Atlanta, Georgia. As set forth more fully below, at various times relevant to this Complaint, WARE offered to perform legal, investment banking, and promotional services for INZS, for which he was compensated with INZS securities freely tradeable pursuant to an S-8 registration.[2]

9.    I have learned from a review of various documents that JEREMY JONES, the defendant, is a resident of Georgia who worked

---

[1]    The OTC Bulletin Board is a regulated quotation service that displays real-time quotes, last-sale prices, and volume information for certain over-the-counter securities. An over-the-counter (or OTC) equity security generally is any equity that is not listed or traded on a national securities exchange, such as NASDAQ.

[2]    Pursuant to the Securities Act of 1933 (the "1933 Act") and its implementing regulations, an issuer such as INZS is authorized to offer securities registered on Form S-8 to, among others, consultants or advisors who provide bona fide services to the issuer. See 17 C.F.R. §§230.405; 239.16b.  Form S-8 is an abbreviated registration statement which contains brief disclosures about the type, amount, and price of the shares being offered.  By registering stock on Form S-8, an issuer need not comply with the more onerous registration requirements established by the 1933 Act and its implementing regulations.  See, e.g., 15 U.S.C. §77g (information required in registration statement).  As the SEC rules make clear, however, issuers may only offer so-called "S-8 stock" to compensate advisors and consultants for bona fide services which are not provided in connection with efforts to raise capital or promote or maintain a market for the issuer's securities.  See 17 C.F.R. §230.405.  Stock offered to consultants or advisors through registration on Form S-8 is freely tradeable.

-4-

for WARE from approximately August 2001 through approximately
July 2002, assisting WARE in finding customers for the legal and
investment banking work purportedly provided by the Ware Firm.

## The Investigation

10.  As set forth more fully below, there is probable cause
to believe that ULYSSES THOMAS WARE, a/k/a "Thomas Ware," and
JEREMY JONES, the defendants, engaged in a scheme to artificially
inflate the market price of and market demand for INZS stock in
early 2002. Specifically, there is probable cause to believe
that in order to fraudulently induce investors to purchase INZS
stock, WARE and JONES caused press releases containing materially
false and misleading information concerning INZS to be posted on
the Internet in or about January and February 2002. After
artificially pumping up the price and volume of the INZS stock
through use of these fraudulent press releases, WARE then sold
INZS stock at a substantial profit from in or about January 2002
through in or about April 2002.

11.  I learned from reviewing various court filings and from
speaking with a staff member of the SEC that on or about July 14,
2003, the SEC brought a civil enforcement action in federal court
in Nevada against INZS, the Ware Firm, ULYSSES THOMAS WARE, a/k/a
"Thomas Ware," the defendant, the Chief Executive Officer of INZS
(the "INZS CEO"), and two purported securities research firms
associated with WARE called Small Cap Research Group, Inc. and
Centennial Advisors, L.L.C. See SEC v. Investment Technology,
Inc., et al., No. CV-S-03-0831-KJD-RJJ (D. Nev.) (the "SEC
Action"). The SEC's complaint in the SEC Action alleged that,
inter alia, WARE and others falsely promoted INZS in press
releases and "analyst reports" as a leader in on-line gambling,
even though its casino Web site never received wagers or
generated revenues. On or about October 22, 2004, a judge of the
United States District Court for the District of Nevada entered a
final judgment by default against all defendants as a sanction
for repeated misconduct by WARE.

12.  I have reviewed the deposition of JEREMY JONES, the
defendant, taken on July 26, 2002 in the SEC Action, and the
exhibits to that deposition, from which I learned:

a.  JONES worked at the Ware Firm from in or about
August 2001 through in or about July 2002. As part of his
responsibilities and on behalf of ULYSSES THOMAS WARE, a/k/a
"Thomas Ware," the defendant, JONES would call various small
publicly-traded companies offering legal and investment banking
services. Interested companies would compensate WARE for these

-5-

7AQ6WARS

1  days, I will make that application in writing.

2      THE COURT:  Have a seat.

3      Mr. Feldman, does the government wish to be heard?

4      MR. FELDMAN:  Two matters.

5      One, we included in our initial sentencing submission

6  a draft forfeiture order.  I have now changed that to today's

7  date.  I am handing up a copy for the Court's consideration.

8  It is in all respects the same as the one included in our

9  submission, but now this conforms with today's date and we

10  request that your Honor sign that.

11      Secondly, the government would move to dismiss --

12      Your Honor, the date I am talking about is on page two

13  where it says at the top where it says the defendant was

14  sentenced on October 26, 2007.  That is where we change the

15  date.

16      THE COURT:  Fine.

17      MR. FELDMAN:  We move to dismiss the underlying

18  indictment at this time.

19      Finally, we do oppose the defendant's request for

20  release pending appeal or voluntary surrender.  We request that

21  the Court detain Mr. Ware at this time.  Mr. ware, as your

22  Honor knows from our submissions; our view he has been involved

23  with a variety of fraud.  He has been less than truthful with

24  this Court.  Among other things that we pointed out was a

25  supplemental submission regarding Mr. Ware's finances that

8/15/2012

7AQ6WARS

1    is an ability to follow Court orders and directions in that

2    way, he should be detained.

3           THE COURT: First, with respect to the government's

4    application to dismiss outstanding counts in this indictment,

5    the government's application is granted.

6           Second, with respect to Mr. Ware's application to

7    remain on bail pending his appeal, that application is denied.

8           With respect to Mr. Ware's application for voluntary

9    surrender, this Court is going to grant that application.

10   Mr. Ware has known for a long time what the range of penalties

11   were in this case. He has appeared on every single occasion

12   that this Court has required his attendance here. And in the

13   end he has complied with orders that the Court has imposed on

14   him. To the extent that the government believes that Mr. Ware

15   has been untruthful in post-conviction concerning his financial

16   condition, I imagine that the government can charge him with

17   crimes if the government desires to do that. The defendant has

18   another criminal trial starting in this district in a short

19   period of time.

20          Mr. Ware, when is that trial scheduled to commence?

21          MR. WARE: November 13th.

22          THE COURT: Clearly given the defendant's attendance

23   here on each and every occasion when he has been required to

24   appear and the fact that he now needs to defend himself in

25   another criminal proceeding, I am going to fix a date for his

8/15/2012

U.S. v. Ware

Gov't Brief (07-5222-cv) - 11/7/2008

No conspiracy →

No conspiracy

Jones - perjured Test.
Epps - all info was true and correct.
— No test. on knowingly entering a conspiracy.

---

challenge is meritless, because questions of witness credibility are solely within the province of the jury and not grounds for disputing the sufficiency of the evidence. *See, e.g., United States v. James,* 239 F.3d 120, 124 (2d Cir. 2000). Accordingly, in assessing the sufficiency of the evidence, this Court must credit the testimony of cooperating witnesses. *United States v. Glenn,* 312 F.3d 58, 64 (2d Cir. 2002).

Ware contends that there was no evidence that he conspired with anyone to artificially inflate the stocks in question. Of course, proof of a conspiracy was required only for Count One, and not the substantive securities fraud charge in Count Two. But, in any event, two of Ware's former employees — Epps and Jones — testified about actively helping Ware pump up the price and volume of the two stocks with press releases and internet postings that contained baseless statements. Epps and Jones testified that they included false statements in the press releases simply because they sounded good. This proof was more than sufficient to establish Ware's involvement in a conspiracy. *See, e.g., United States v. Jackson,* 335 F.3d 170, 180 (2d Cir. 2003) (deference to conspiracy verdicts especially important because a conspiracy by its very nature is a secretive operation).

Ware misses the point in focusing on snippets of testimony from Epps and Jones suggesting that they did not knowingly conspire to manipulate these stocks. The relevant inquiry for Count One is whether there was sufficient factual support to permit a reasonable jury to conclude that Ware agreed with at least one other person to commit securities fraud or wire fraud, not whether Ware

36

---

and anyone else ever formally entered a pact to do what the evidence shows — and the participants themselves say — they in fact did together. *See United States v. Samaria,* 239 F.3d 228, 234 (2d Cir. 2001) ("A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct."); *United States v. Gordon,* 987 F.2d at 906 ("In order to prove a conspiracy, the government 'need not present evidence of an explicit agreement; proof of a tacit understanding will suffice.'") (quoting *United States v. Skowronski,* 968 F.2d 242, 247 (2d Cir. 1992)). The testimony of either Jones (who pleaded guilty to conspiring to manipulate the market of these stocks) or Epps was sufficient to support the jury finding that Ware conspired with at least one other person to drive up the volume and price of Investment Technology and Service Systems stock.

Ware also disputes logical inferences that the jury reasonably could have drawn from the evidence and instead urges competing inferences that he believes are consistent with his innocence, even though a court reviewing a sufficiency claim must assume the jury drew all reasonable inferences consistent with guilt. Because none of Ware's sufficiency arguments overcomes the heavy burden for overturning a jury's verdict, the Court should affirm the conviction.

37

the market place concerning the track record and prospects of Investment Technology and its on-line casino operation. Through April 22, 2002, when the Commission issued a trading suspension of Investment Technology stock, Defendants jointly issued over 20 press releases or "analyst reports" under the names RGW, Small Cap and Centennial. The press releases and reports were prepared by, or under the direction of Ware, and approved in advance by Vidmar. The releases and reports were distributed over the business wires and several were posted on a financial website prepared by Ware.

30. The information disseminated into the market place by Defendants was rife with blatant misrepresentations and omissions. The releases and analysts reports, for example, referred to Investment Technology as "a leader in the on-line gaming industry" and touted the company's "experienced management", its "innovative marketing and costs structure," its "established customer base," and its "traffic growth." A February 7, 2002 release by Ware and Centennial Advisers made the outlandish claim that on February 3, 2003 alone, the day of the Super Bowl, Investment Technology accepted over 100,000 wagers, totaling more than $4 million. The releases and reports recommended that readers should purchase Investment Technology stock, stating repeatedly that the stock was undervalued and projecting that the price of Investment Technology shares, then trading at prices ranging from $.017 to $.04, would quickly accelerate to a price of $.40 per share and could realistically be expected to attain a price of $5.00 per share.

*SEC v. Investment Technology, Inc., et al.*
**COMPLAINT**

13

8/15/2012

31.     In reality, these glowing descriptions and rosy predictions had no basis in fact.  Far from being the leader in the on-line casino business, the Investment Technology website did not generate a single cent of revenue for Investment Technology.  Indeed, during the approximately three-month blitz of reports and press releases touting the company's casino operation and stock, not a single wager was placed on the on-line casino's website.  Moreover, no wager has ever been made on the website at any time.

32.     The reports produced by Ware, RGW, Small Cap Research, and Centennial presented their recommendations of Investment Technology and its stock in terms that led readers to believe the recommendations were objective and disinterested.  None of the reports disclosed that Ware and/or RGW had received 7.5 million Investment Technology shares for their capital-raising and promotional efforts.

33.     For the two months prior to the casino promotion, Investment Technology stock had an average daily volume of 194,000 shares.  During the three-month campaign, the average daily volume increased to 757,000 shares traded, with volume in excess of 2 or 3 million on several days.  The misleading and fraudulent promotional campaign did not have the intended effect of increasing the company's stock price; however, because of the demand generated by the dissemination of positive, but false, information about Investment Technology, Vidmar and Ware, as set forth below, were able to sell collectively approximately 8.8 million shares of Investment Technology stock without causing a complete collapse of the stock's price.

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket Nos. 07-5222-cr(L), 07-5670-cr(CON)

---

UNITED STATES OF AMERICA,

*Appellee-Cross-Appellant,*

-v.-

ULYSSES THOMAS WARE, also know as Thomas Ware,

*Defendant-Appellant-Cross-Appellee,*

JEREMY JONES,

*Defendant.*

---

## BRIEF FOR THE UNITED STATES OF AMERICA

---

### Preliminary Statement

Ulysses Thomas Ware appeals from a judgment of conviction entered on November 1, 2007, in the United States District Court for the Southern District of New York following a nine-day trial before the Honorable

William H. Pauley III, United States District Judge, and a jury.*

Indictment S1 05 Cr. 1115 (WHP) (the "Indictment") was filed on September 14, 2006, in two counts. Count One charged Ware and Jeremy Jones with conspiring to commit securities fraud and wire fraud, in violation of Title 18, United States Code, Section 371. Count Two charged Ware and Jones with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

Ware's first trial began on January 15, 2007. Ware, a securities attorney, represented himself *pro se* with the assistance of standby counsel appointed under the Criminal Justice Act. On January 23, 2007, Judge Pauley declared a mistrial at Ware's request after one of the Government's witnesses fell critically ill during a weekend recess in the course of his testimony.

Ware's retrial began on April 16, 2007, with Ware again representing himself with the assistance of standby counsel. On April 30, 2007, the jury found Ware guilty on both counts.

On October 26, 2007, Judge Pauley sentenced Ware to a term of 97 months' imprisonment, to be followed by

DOJ Avt. II, § 3 political
decision terminating 1115
on 11/07/2008.

* The Government filed a notice of appeal but is not pursuing a cross-appeal.

United States Bankruptcy Court
Northern District of Georgia
1290 United States Courthouse
75 Spring Street, S. W.
Atlanta, Georgia 30303-3367

Chambers of
Margaret H. Murphy
Judge

*(404) 215-1008*

December 28, 2011

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P O Box 150160
Atlanta, GA 30315

Re:     Alpha Capital, AG Atlanta, GA Litigation

Dear Mr. Ware:

Your letter dated December 10, 2011 was referred to me. The local rules, BLR 9003-2 provides:

Communications to a Bankruptcy Judge regarding a request for an order or other relief (including a request for an extension of time) or matters that are or may be in dispute, or communications of facts or legal issues regarding a particular case, proceeding, or matter pending before that Bankruptcy Judge, shall be by written motion, pleading, or other paper, and not by letter. Ordinarily, a letter seeking such action will not be treated as a motion, will not be considered by the Bankruptcy Court, and will not be filed with the Bankruptcy Clerk. Parties and their counsel shall not provide the Bankruptcy Court with copies of correspondence among themselves relating to matters that are or may be in dispute.

Your letter will not be shown to Judge Murphy and will not be made a part of Debtor's file. If you wish to communicate with the court concerning the above-referenced case, you should do so by means of an appropriate motion or application which complies with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia.

Very truly yours,

Pat Sinback
Law clerk to
Judge Margaret H. Murphy

cc:    State Bar of Georgia, Office of General Counsel
       Supreme Court of Georgia, State Disciplinary Board
       Dennis S. Meir

8/4/2012                                                    8/15/2012

*United States Bankruptcy Court*
*Northern District of Georgia*
*1290 United States Courthouse*
*75 Spring Street, S.W.*
*Atlanta, Georgia 30303-3367*

*Chambers of*
*Margaret H. Murphy*
*Judge*

*(404) 215-1008*

January 11, 2012

Mr. Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P. O. Box 150160
Atlanta, GA 30315

Dear Mr. Ware:

The copies of pleadings you mailed to Judge Murphy on or about December 21, 2011, were referred to me. The pleadings do not appear to relate to any active bankruptcy case before Judge Murphy and your purpose in sending copies of the pleadings is unclear.

The pleadings will not be shown to Judge Murphy and will not be made a part of any bankruptcy case file. If you wish to communicate with the court concerning the above-referenced case, you should do so by means of an appropriate motion or application that complies with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia.

Very truly yours,

Pat Sinback
Law clerk to
Judge Margaret H. Murphy

# United States Bankruptcy Court
## Northern District of Georgia
1340 U.S. COURTHOUSE
75 SPRING STREET S.W.
ATLANTA, GEORGIA 30303

**M. REGINA THOMAS**
CLERK OF COURT

July 25, 2012

Mr. Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

RE:     Documents received by United States Bankruptcy Court

Dear Mr. Ware:

This Court has received papers mailed by you, or on your behalf, that do not relate to any active bankruptcy case filed in the Bankruptcy Court for the Northern District of Georgia. The case to which you make reference in your letter, Group Management Corp. 03-93031, was dismissed on May 21, 2003 and closed on June 3, 2003.

No action can be taken with respect to the papers sent to the Court as they do not commence a case over which this Court would have jurisdiction.

Sincerely,

M. Regina Thomas
Clerk of Court

MRT/bm

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

August 8, 2012

M. Regina Thomas
Office of the Bankruptcy Clerk
U.S. Courthouse
Rm 1340
75 Spring St., SW
Atlanta, GA 30303

### LAST AND FINAL INQUIRY - TIME OF THE ESSENCE

RE: In re Group Management Corp., 03-93031-MHM (NDGA), ("93031")
    Certified Docket Sheet request
    07/12/2012 Emergency Motion
    07/30/2012 Emergency Motion

Dear Ms. Thomas:

This letter of inquiry is in regard to the above referenced matters. In particular I am writing in regard to obtaining a certified docket (cf. Bankr. Rule 5006), and requesting that your office respond as to the costs required to obtain the certified copy of the 93031 docket reflecting all pleadings submitted to the Court for filing and docketing as required by Bankr. Rule 5005(a).

Please inform of the necessary costs and procedures necessary to obtain the certified copy of the 93031 docket -- the certified copy is needed in another proceeding, where time is of the essence.

Second, I am inquiring in regard to the 07/13/2012 and 07/30/2012 Emergency Motions submitted to the Court for filing and emergency processing. As of today (08/08/2012) I have not received confirmation from your office, or the Office of the Chief Judge that the pleadings have in fact been docketed and filed into the records of the Court.

Accordingly, I am requesting that your office and the Office of the Chief Judge return immediately to my attention on or before close of business on 08/12/202 all unfiled and undocketed pleading submitted to the Court by Ulysses Thomas Ware with respect to 93031. Please return all unfiled and undocketed pleadings to the address above.

Unless I receive on or before 08/013/2012 either confirmation that all pleadings submitted to the Court with respect to 93031 have been filed and docketed, or the returned pleadings, then I will presume that the Office of the Clerk does not intend to comply with federal law, and intends to obstruct justice, and I will seek the necessary relief, and sanctions in the appropriate court.

. Sincerely,

Ulysses Thomas Ware

cc: Chief Judge Joyce Bihary
    U.S. Dept. of Justice (Criminal Division)

8/15/2012

---

FROM: 56218019
TO:
SUBJECT: Bihary: Material Witness Designation
DATE: 08/12/2012 09:36:14 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE GROUP MANAGEMENT CORP.,
  DEBTOR,

ULYSSES THOMAS WARE,
  INTERESTED PARTY, PETITIONER

V.
                                  CASE # 03-93031-MHM

MARGARET H. MURPHY, ET AL.
  RESPONDENTS,
  UNINDICTED CO-CONSPIRATORS.

 DESIGNATION OF MATERIAL WITNESS STATUS FOR CHIEF JUDGE JOYCE BIHARY IN OBSTRUCTING JUSTICE in 93031

    The Petitioner Ulysses Thomas Ware, hereby designates Chief Judge Joyce (U.S.Bankr. Court (NDGA)) as a material witness with respect to the filing of the Emergency Motion (07/12/2012) and Emergency Motion (07/30/2012) filed in the U.S. Bankr. Court (NDGA), in 93031; and (2) with respect to the proceedings in 93031, and Ware v. Hatten, et al., 12-CV-1671 (MHS)(GGB), (NDGA), ("1671"), and all related proceedings; and hereby names Judge Bihary as a respondent in her personal and individual capacity for the willful and flagrant violation of federal laws and rules of  bankruptcy procedure.

    Judge Bihary is in possession of evidence material to the issues and contentions at play in 93031, and has personally obstructed justice and violated federal laws in not filing pleadings submitted to the Court (cf. Bankr. Rule 5005(a)), in 93031 to aid, abet, and directly participate in the ongoing criminal conspiracy to commit a fraud on the court to cover up the crimes committed by Margaret H. Murphy and the respondents named in the 07/12/2012 Emergency Motion.

    Judge Bihary acting in her individual and personal capacity has committed a Hazel Atlas-Glass fraud on the court by an officer of the court to defile the judicial process, and corrupt the judicial machinery to prevent the Petitioner from having is claims adjudicated in a fair and impartial manner by the Court.

SUBMITTED BY COUNSEL:

_ULYSSES/THOMAS WARE_
ULYSSES/THOMAS WARE
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
08/12/2012

CERTIFICATE OF SERVICE:

  I Ulysses Thomas Ware have this 13th day of August, 2012 deposited into the U.S. Mail at the Atlanta Prison Camp a true and correct copy of this pleadings addressed to the Office of the Bankr. Clerk, 75 Spring St., SW, Atlanta, GA 30303 for filing in 93031.

8/15/2012

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315



July 12, 2012

Office of the Clerk
U.S. Bankruptcy Clerk
U.S. Courthouse
75 Spring St., SW, 13th Flr.
Atlanta, GA 30303

RE: In re Group Management Corp., 03-93031-MHM (ND GA), ("93031")
    Emergency Motion pursuant to Bankr. Rule 9024: Fed. R. Civ. Proc. 60(b)(4, 6), and
    Rule 60(d)(3).

Dear Clerk:

      The petitioner, Ulysses Thomas Ware, is submitting the enclosed pleadings for filing
pursuant to the emergency procedures of the Court where the petitioner is currently
suffering irreparable harm, and will continue to suffer irreparable harm unless this
matter is processed according to the Rules of the Court.

      Enclosed for filing and docketing are the following documents:

1.    A Declaration of Service (P. 0.1).

2.    Sworn Statement of Indisputable Material which there is no opposition (P. A - 9).

3.    Appendix to Sworn Statement of Material Facts  (P. 1 - 40).

4.    Memorandum of Points and Authorities of Law (P. A - 104).

      At page V of the Opening Statement is a disqualification of Margaret H. Murphy
designation as a material witness in this proceeding, and pursuant to 28 USC
§455(b)(5)(iv) she is statutorily disqualified from any judicial participation in this
matter.

      Therefore, please assign this matter to another bankruptcy judge who does not have
an interest in this proceeding.

      The respondents or their legal representative have been served, see P. 0.1 enclosed,
additionally pursuant to Bankr. Rule 9036 the petitioner is requesting that all parties
file all pleadings via the PACER system and electronic notification be implemented due
to the numerous respondents.

      Please date stamp the enclosed duplicate copy of this letter and return in the SASE
enclosed.

      If there are any questions please contact the undersigned at the above address.

Sincerely,

Ulysses Thomas Ware
enclosures

7/12/2012

MEMORANDUM OF POINTS AND AUTHORITIES OF LAW IN SUPPORT OF EMERGENCY MOTION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE GROUP MANAGEMENT CORP., DEBTOR, 03-93031-MHM (ND GA)

PETITIONER: ULYSSES THOMAS WARE (PARTY IN INTEREST).

RESPONDENTS - UNINDICTED COCONSPIRATORS:

Alpha Capital, AG, Stonestreet, LP, Markham Holdings, Ltd., Amro International, SA, Kenneth A. Zitter, Ari Rabinowitz, Nathan Ladenburg, Edward D. Grushko, Barbara R. Mittman, Dennis S. Meir, John W. Mills, III, Kilpartick, Townsend, & Stockton, LLP, Edward T. M. Garland, Manny Arora, David Levitt, Don Samuel, Garland, Samuel & Loeb, P.C., William P. Smith, III, William A. Myers, Johnathn Hewitt, Jenny Mittleman, Carmen Rojas-Rafter, Christina A. Petrig, Connie P. Henry, Dan O'Sullivan, George H. Carley, Carol Hunstein, Margaret H. Murphy, Thomas W. Thrash, Jr., Linda T. Walker, Orinda D. Evans, Julie E. Carnes, Marvin H. Shoob, Garrilyn G. Brill, James N. Hatten, Alexander H. Southwell, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Preet Bharara, Michael J. Garcia, David Kelly, Katherine Polk-Failla, Kent J. Dawson, Robert J. Johnston, James Morewitz, Jeffrey B. Norris, Spencer C. Barasch, Robert C. Hannan, John C. Martin, Rebecca R. Fairchild, Stephen Korotash, Stephen Webster, Michael Post, Robert W. Sweet, Leonard B. Sand, William H. Pauley, III, Barbara S. Jones, Ruby Krajick, Amalya L. Kearse, Robert D. Sack, Peter W. Hall, Robert A. Katzmann, B.D. Parker, Reena Raggi, Rosemary S. Pooler, Dennis G. Jacobs, Gail McKenzie, U.S. Marshals (ND GA), James Olas, U.S. Marshal (#2) LNU, U.S. Marshal (#3) LNU, U.S. Marshal (#4) LNU, Thomas J. McCarthy, Andrews & Kruth, LLP, Thomas V. Sjblom, Prokauser & Rose, LLP, Grushko & Mittman, P.C. (NYC), Steven D. Feldman, David Makol, Eric H. Holder, Jr., the United States of America, and others known and unknown,

COLLECTIVELY, THE RACKETEERS, in their individual and personal capacity.

EMERGENCY MOTION FOR FRAUD ON THE COURT PROCEEDINGS.

The petitioner moves the Court pursuant to Bankr. Rule 9024 and Fed. Rule of Civ. Proc. Rule 60(b)(4, 6) and Rule 60(d)(3) to set this matter down under the emergency procedures of the Court and direct and order the respondents to file a response in opposition, if any, on or before close of business on July 25, 2012 in writing by filing any and all pleadings with the Office of the Bankruptcy Clerk at 75 Spring St., Atlanta, GA 30303, or via the PACER system, and filing a paper copy of the same on the petitioner at the Atlanta Prison Camp, P.O. Box 150160, Atlanta, GA 30315 (Reg. No. 56218-019).

Submitted by Counsel:

Ulysses Thomas Ware, (Reg. No. 56218-019), pro se
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
07/12/2012 10:04:22 AM printed

**PRIORITY**

Via Certified Mail #: 7003 1680 0005 1206 0748

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

July 30, 2012

The Honorable Joyce Bihary
Chief Judge
U.S. Bankruptcy Court
For the Northern District of Georgia
U.S. Courthouse
75 Spring St., SW
Atlanta, GA 30303

RE: In re Group Management Corp, 03-93031-MHM (NDGA), ("93031")
    July 12, 2012 Emergency Motion, July 25, 2012 Letter, and 07/30/2012 Emergency
    Motion.

Dear Judge Bihary:

    This letter is in regard to the above pleadings, and the July 25, 2012 letter of
Clerk M. Regina Thomas, included in the 07/30/2012 Emergency Motion as Ex. #1.

1.      First, I am requesting that the enclosed pleading be processed according to the
        emergency procedures of the Court, where time is of the essence, and the petitioner
        Mr. Ware is currently suffering irreparable harm, and will continue to suffer
        irreparable harm unless the requested relief is granted on an emergency basis as set
        forth in the 07/30/2012 Emergency Motion.

2.      Second, Judge Bihary (as an officer of the court) you have a duty of candor and
        a fiduciary duty to the orderly administration of justice in the Court to process
        all pleadings submitted to the Court in a timely and orderly manner, which M. Regina
        Thomas did not do with respect to the 07/12/2012 Emergency Motion, thus
        necessitating the 07/30/2012 Emergency Motion.

3.      Judge Bihary, as Chief Judge of the Court, pursuant to Bankr. Rule 5005(a), the
        enclosed pleadings are being submitted to your attention, due to the fact that M.
        Regina Thomas (Clerk), is names as a respondent, and thus has a conflict of interest
        regarding this matter.

4.      The petitioner Mr. Ware has requested a relief date of 08/07/2012, and for the
        enclosed pleadings to the processed on an emergency basis.

    If there are any question please contact the undersigned on or before close of
business on 08/02/2012, else I will assume that the pleadings will be timely processed
on an emergency basis.

Sincerely,

*Ulysses Thomas Ware*

Ulysses Thomas Ware, pro se
enclosures: 07/30/2012 Emergency Motion, Sup. Appx. 1.0, Exhibit #1.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE GROUP MANAGEMENT CORP., | : |
|     DEBTOR, | : |
| | : CASE #: 03-93031-MHM |
| | : |
| ULYSSES THOMAS WARE, (INTERESTED PARTY) | : EMERGENCY MOTION TO SHOW CAUSE |
|     PETITIONER, | : |
| | : RENEWAL OF 07/13/2012 EMERGENCY MOTION FOR |
| AND | FILING. |
| MARGARET H. MURPHEY, ET AL. | : |
|     RESPONDENTS, | : |
|     CO-CONSPIRATORS. | : |

**EMERGENCY MOTION TO SHOW CAUSE BY M. REGINA THOMAS**
**RETURNABLE ON OR BEFORE CLOSE OF BUSINESS ON 08/07/2012**
**WHY M. REGINA THOMAS SHALL NOT BE REFERRED FOR CRIMINAL PROSECUTION**
**FOR WILLFUL VIOLATION OF THE FINAL ORDER OF THE UNITED STATES DISTRICT COURT**
**(SDNY) ENTERED ON 12/20/2007 AT DKT. #90 DISMISSING 02-CV-2219 WITHOUT PREJUDICE**
**RENDERING ALL ORDERS ENTERED IN 03-93031 ANNULLED AND VOIDED.**

**NATURE OF THE EMERGENCY:** By letter dated July 25, 2012, (Ex. at 1) M. Regina Thomas (Clerk of the Bankruptcy Court) stated: "No action can be taken [with respect to the 07/13/2012 Emergency Motion filed pursuant to Rule 9024, Rule 60(b)(4, 6), and Rule 60(d)(3) of the Fed. R. Civ. Proc.] with respect to the papers sent to the Court as they do not commence a case over which this Court would have jurisdiction." (emphasis added).

**REQUESTED RETURN DATE:** 08/07/2012

**STATEMENT OF IRREPARABLE HARM:** The petitioner is currently suffering irreparable harm due to the illegal actions of M. Regina Thomas, and will continue to suffer irreparable harm unless the relief requested is granted on an emergency basis.
The petitioner is suffering irreparable harm at the rate of $100,000.00 per day due to M. Regina Thomas collusion, conspiring, and racketeering to obstruct justice with the respondents to the Emergency Motion from 07/13/2012 and continuing until the Emergency Motion is filed, docketed, and processed under the emergency procedures of the Court.

**REQUESTED RELIEF:** For the Court to enter an order referring M. Regina Thomas to the U.S. Dept. of Justice for criminal prosecution for obstruction of justice in a deliberate and intentional malicious breach of her duty of candor, and fiduciary duty to the public as Clerk of the Court; and to enter an order filing, and docketing the Emergency Motion, nunc pro tunc, 07/13/2012, providing any respondent seven (7) days to respond, else a default will be taken, and enter an order awarding the petitioner $100.000.00 per day in damages from 07/13/2012 until the order is entered; and enter an order referring Dennis Meir to the State Bar.

Submitted By: _Ulysses Thomas Ware_

Ulysses Thomas Ware (petitioner), pro se
P.O. Box 150160, Atlanta Prison Camp, Atlanta, GA 30315 (07/30/2012)

1          THE COURT:  But you have not done so yet?

2          MR. GORDON:  That is correct, Your Honor.  Also expect to

3   show that the -- that there are assets of the corporation and we

4   expect the evidence will show that there are ongoing business

5   concerns including taking the corporation public and helping to

6   capitalize corporations, among others.  We also expect the

7   evidence to show that the --

8          THE COURT:  Wait a minute.  What are the ongoing business

9   concerns?

10         MR. GORDON:  Ongoing business concerns, Your Honor,

11  taking corporations who happen to be clients of Group Management

12  Corp., public, and also helping to capitalize corporate clients as

13  well as advising corporate clients on public trading issues.

14         We also expect the evidence to show that the respondents

15  by shortselling the stock of the corporation, the debtor

16  corporation, that they were driving down the stock prices which in

17  turn crippled Group Management's ability to do business and

18  scaring away present and potential clients.

19         We expect the evidence to show also, Your Honor, that the

20  subscription agreement is an executory contract, and that just

21  because it is a -- there are material bilateral monetary and

22  non-monetary obligations remaining to be formed.

23         And, lastly, we expect the evidence to show that pursuant

24  to Section 365(a) of Title 11 in the United States Bankruptcy Code

25  that trustee or debtor in possession may assume or reject any

8/15/2012

1    executory contract, and that in -- under Section 365(c)(2) of the
2    Bankruptcy Code deals with special class of contracts, more
3    specifically issuance of securities of the debtor, and that they
4    are -- the trustee or debtor in possession may not assume the
5    executory contract or issuance of securities, and therefore, once
6    we put up the evidence and present the case and statutory law, we
7    will prove that there is an executory contract which not only may
8    be rejected by the debtor in possession, but should be or is
9    required to be rejected by the debtor in possession under 365(a)
10   and (c).

11            THE COURT:  Now, what provision of the Code includes the
12   issuance of securities as to executory contracts?

13            MR. GORDON:  Section 365(c)(2), Your Honor.

14            THE COURT:  And you're arguing what under (c)(2)?

15            MR. GORDON:  That the trustee or debtor in possession, as
16   in this case, may not assume executory contract when it has to do
17   with the issuance of securities of the debtor; in other words, in
18   this case the -- under the subscription agreement, which is
19   Debtor's Exhibit 1, the debtor in possession may not issue
20   securities to the respondents per the notice of conversion
21   request.

22            THE COURT:  All right.  Thank you.

23            MR. GORDON:  Thank you.

24            MR. MEIR:  Your Honor, Dennis Meir, on behalf of four
25   creditors of this debtor, each of whom is a foreign investment

**MANDATE**

**FABRICATED JUDGMENT**

## UNITED STATES COURT OF APPEALS
### FOR THE
### SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 18ᵗʰ day of August, two thousand and nine.

PRESENT:    Amalya L. Kearse,
            Robert D. Sack,
            Peter W. Hall,
                _Circuit Judges._



United States of America,

        Appellee-Cross-Appellant,

                                            **JUDGMENT**
    v.                                      Docket Number: 07-5222-cr (L)
                                                        07-5670-cr

Ulysses Thomas Ware, also known as Thomas Ware,

        Defendant-Appellant-Cross-Appellee,

Jeremy Jones,

        Defendant.

The appeal in the above-captioned case from a judgment of United States District Court for the Southern District of New York having been submitted on the district court record and the parties' briefs. On consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the judgment of the District Court is AFFIRMED and the matter is REMANDED for additional proceedings in connection with sentencing in accordance with the opinion of this Court.

                                    FOR THE COURT,
                                    Catherine O'Hagan Wolfe,
    A TRUE COPY                     Clerk
Catherine O'Hagan Wolfe, Clerk
                                    By: ⟨signature⟩
by ⟨signature⟩                      Judy Pismanont, Motions Staff Attorney
    DEPUTY CLERK

                                    _ ISSUED AS MANDATE: August 18, 2009

7/11/201█

| | | |
|---|---|---|
| | | Ware, dated May 17, 2010. Appendix To attached. [*** Received by Judge Pauley's Chambers on 5/21/2010 ***] (bw) (Entered: 05/26/2010) |
| 06/07/2010 | 144 | Letter by Ulysses Thomas Ware addressed to Judge Loretta A. Preska from Ulysses Thomas Ware dated 5/18/2010. This letter is in regard to a pleading mailed to the district's clerk's office on April 1, 2010 via certified mail # 7003 1680 0005 1205 1630 styled as: Plaintiff-Appellant Ulysses Thomas Ware's Independent Action Pursuant to Federal Rule of Civil Procedure 60(d)(3)... enclosed as Exhibit #1. (dnd) (Entered: 06/10/2010) |
| 06/07/2010 | 145 | Letter by Ulysses Thomas Ware addressed to J.Michael McMahon from Ulysses Thomas Ware dated 4/22/2010. This letter is in regard to 05-CR-1115 (WHP)and the current status of the numerous pleadings pending before the Court. District Judge Pauley was named as a respondent in a Rule 60 (d)(3)Fraud on the Court pleading regarding 1115(WHP) and thus he was disqualified to adjudicate the pending motions and as a matter of law (28 U.S.C. section 144, 455(a), (b)(1) to recuse himself from any further actions in 1115 (WHP)... (dnd) (Entered: 06/10/2010) |
| 06/10/2010 | 146 | Letter addressed to District Clerk Ruby J. Krajick from defendant Ulysses Thomas dated June 1, 2010 re: Letter of May 17, 2010 Returning Fraud on the Court Pleading. I am in receipt of your package dated May 17, 2010 returning, unfiled and docketed a pleading submitted to the district clerk's office for filing. You referenced "Rule 5 (d)(2)(B),(4)" as the authority, apparently, to deny filing and docketing the pleading. [*** Received by Judge Pauley's Chambers on 6/8/2010 ***] (bw) (Entered: 06/10/2010) |
| 06/24/2010 | 147 | Letter by Ulysses Thomas Ware addressed to Chief Judge Dennis G. Jacobs from Ulysses Thomas Ware dated 6/16/2010 re: This letter details the criminal conspiracy of the District Judges in the Alpha Litigation 02-CV-2219(LBS)(SDNY), Alpha Capital AG, et al. v. IVG Corp., et al. (ab) (Entered: 07/06/2010) |
| 07/21/2010 | 148 | Letter by Ulysses Thomas Ware addressed to Ms. Krajick from Ulysses Thomas Ware dated 7/14/2010 re: This letter is in regard to the matter referenced above, and a copy was forwarded to District Judge William H. Pauley, III as well as the Administrator of the US Court regarding irregularities in matters before the clerk's office, to wit, the adjudication of outstanding motions before the court. I am requesting that you, as the Clerk of the District Court, perform your duty and notify the Chief Judge, Loretta Preska, of the current procedural posture of this matter and propose a speedy resolution in compliance with federal law. (jw) (Entered: 07/26/2010) |
| 08/13/2010 | 149 | ORDER as to Ulysses Thomas Ware. By an opinion dated August 18, 2009, the Court of Appeals affirmed the conviction of Defendant Ulysses Thomas Ware ("Ware") and remanded the matter for further proceedings regarding his sentence. United States v. Ware, 577 F.3d 442 (2d Cir. 2009). Specifically, the Court of Appeals remanded the case to this Court "for either supplementation of the record with findings as to |

| | | why the criteria of United States Sentencing Guidelines § 3B1.1 are met, or if the Court concludes that those criteria are not met, for resentencing." Ware, 577 F.3d at 455. Thereafter, the Government and Ware filed memoranda concerning this issue. Indeed, this Court has received no fewer than twenty pro se letter applications and memoranda from Ware over the last ten months.... Thus, this Court concludes that the application of the four-level role enhancement under § 3B1.1 to Ware's offense level calculation was warranted and declines to disturb Ware's principal sentence of 97 months of imprisonment. Finally, since the remand, Ware has launched a barrage of post-judgment applications and motions. This Court has reviewed all of them. They are uniformly and completely without merit. Accordingly, his applications, inter alia, for bail, post-judgment relief, dismissal of the Indictment, vacatur of his conviction, and recusal of this Court are denied. As a former attorney, Ware is cautioned to refrain from burdening this Court with incessant and patently frivolous applications. The Clerk of this Court is directed to mark this case as closed. SO ORDERED. (Signed by Judge William H. Pauley, III on 8/12/2010) Copies Mailed By Chambers. (ja) (Entered: 08/13/2010) |
|---|---|---|
| 02/23/2011 | 🔿 150 | Letter by Ulysses Thomas Ware addressed to Judge William H. Pauley from Ulysses Thomas Ware dated 2/14/2011 re: The defendant writes to submit a corrected version of the 2/1/2011 Affirmation of Undisputed Material Facts which replaces the prior document. (ab) (Entered: 02/23/2011) |
| 02/23/2011 | 🔿 151 | Letter addressed to The Honorable Eric H. Holder, Jr., Attorney General, from defendant Ulysses Thomas, dated February 4, 2011 re: Official Notification of Criminal Offenses of Government Lawyers. (bw) (Entered: 02/24/2011) |
| 02/23/2011 | 🔿 152 | Jurisdictional Statement. Document filed by Ulysses Thomas Ware. (bw) (Entered: 02/24/2011) |
| 02/23/2011 | 🔿 153 | Letter addressed to Judge William H. Pauley, III from defendant Ulysses Thomas Ware, dated February 10, 2011 re: Motion to Dismiss the Indictment. [*** Received by Judge Pauley's Chambers on 2/15/2011 ***] (bw) (Entered: 02/24/2011) |
| 03/09/2011 | 🔿 154 | Letter addressed to District Clerk's Office (U.S. District Court, Southern District of New York) from defendant Ulysses Thomas Ware dated January 20, 2011 re: Please docket and file the enclosed pleadings (Ware's Supplement to his Rule 33 Motion for a New Trial... Affirmation, Memorandum of Law, and Appendix) in the above referenced case. District Judge Pauley was served with notice of this filing with the clerk's office. [*** Received by Judge Pauley's Chambers on 1/31/2011 ***] (bw) (Entered: 03/10/2011) |
| 03/09/2011 | 🔿 155 | Letter addressed to Office of the Solicitor General, Michael Dreeben, Principal Deputy Solicitor General, U.S. Department of Justice (950 Pennsylvania Ave., Washington, D.C. 20530) from defendant Ulysses Thomas Ware dated February 25, 2011 re: This letter is in regard to the |

---------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 05-Cr-1115 (WHP)(SDNY) Docket Report
DATE: 01/15/2012 01:40:06 PM

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

January 15, 2012

Loretta A. Preska
Chief Judge U.S. District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

### FOURTH ATTEMPT TO REQUEST CERTIFIED DOCKET REPORT

RE: U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115") Docket Report, and Docket items.

Chief Judge Preska:

This letter is Mr. Ware's fourth attempt after payment was made to the Office of the District Clerk to purchase a certified copy of the docket report in 1115. As of today, after more than four months, Mr. Ware has yet to receive the certified copy of the docket report.

Thus, the necessity of this letter if inquiry to determine what is the legal justification for the District Clerk to refuse to certify the record in 1115; and refusal to forward Mr. Ware a copy of the certified record after payment has been made.

Additionally, I am requesting that you in your official capacity determine why Mr. Ware's request has not been satisfied by the District Clerk, and furthermore, determine if in fact the conduct of the clerk is lawful, and not obstruction of justice.

2. I also wish to purchase a copy of Dkt. ## 28, 29, 30, 31, 32, 33, 40, 84, 88, 89, and 90 also in 1115. Please have a responsible person tally the costs to purchase the above documents and notify Mr. Ware of the costs via invoice at the above address.

Time is of the essence in regard to the above requests, as the certified copy of the docket report is needed in another matter, and the dilatory tactics have caused a delay in another proceeding.

Judge Preska, is you would please timely respond to this urgent request to obtain public records the clerk is required to provide to the public upon request.

Sincerely,

Ulysses Thomas Ware

cc: Ruby Krajick