Submitted by Counsel:

*Ulysses O. Ware*

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
12/12/2012 05:22:22 P.M. printed



FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 9 2012

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ULYSSES THOMAS WARE, | : |
| PETITIONER, | : |
| | : |
| | : |
| VS. | : CASE #: 12-CV- |
| | : **1:12-CV-4397** |
| | : |
| WARDEN DARLEEN DREW, | : |
| BUREAU OF PRISONS, | : |
| ATLANTA PRISON CAMP. | : |
| RESPONDENTS. | : |

EMERGENCY PETITION FOR IMMEDIATE RELEASE
28 USC §2241: PETITION FOR A WRIT OF HABEAS CORPUS
ACTUAL AND FACTUAL INNOCENCE OF ALL CHARGES

#2
12/12/2012 Memorandum of Law in Support of Claims Regarding:

U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1124"); and

U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115").

———————

Brady, Giglio, and Disclosure Fraud Committed by:

District Judge William H. Pauley, III, the SEC, and the USAO (SDNY).

**14**

MEMORANDUM OF LAW
04/12/2012
BRADY AND GIGLIO FRAUD BY USAO, SEC, AND DISTRICT JUDGE WILLIAM H. PAULEY, III.

## I.
## BRADY FRAUD

**A.**

1.     In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court announced the
principles of law in regard to a criminal defendant's right to exculpatory evidence
in the possession of the government, and decided that the criminal defendant had
a due process right to all material exculpatory evidence in the possession of the
**government**. Id. at 87.

Brady imposed a continuing duty on the government (and its investigatory agents
the FBI, the SEC, the DEA, etc.) to turn over to the prosecution all favorable
evidence to the prosecution. Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir. 2003)
(prosecutor's Brady duty continues after trial, and extends to a Rule 33 motion
for a new trial); Smith v. Roberts, 115 F.3d 818, 820 (10th Cir. 1997) (Brady duty
is an ongoing duty and extends to evidence discovered after trial, even during
appeal); Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987) (government's duty to
disclose  favorable evidence is a continuing duty).

2.     The Court in Kyles v. Whitley, 514 U.S. 419, 435 (1995) announced the standard
for Brady evidence materiality, and decided that for evidence to be Brady exculpatory
evidence there must be a "reasonable probability" of a different result such that
the evidence  if admitted would have placed the government's case in a different
light, i.e., did the defendant receive a fair trial in light of the suppressed
evidence; Youngblood v. West Virginia, 547 U.S. 867, 870 (2006) (same).

3.     In Giglio v. United States, 405 U.S. 150, 154 (1972) the Court decided that
a deal made by one lawyer for the government was binding on the entire government,
and the prosecution's office was imputed, and constructively possessed all the
knowledge of any lawyer in the prosecutor's office. Cf. Kyles, 514 U.S. at 437

(1)                                    12/13/2012

where the Court explained regarding the duties of the individual prosecutor:

> "This in turns means that the individual prosecutor has
> a duty to learn of any favorable evidence known to the
> others acting on the government's behalf in the case,
> including the police. But whether the prosecutor [USAO-
> SDNY] succeeds or fails in meeting this obligation (whether,
> that is, a failure to disclose is in good faith or bad
> faith, ..., the prosecution's responsibility for failing
> to disclose known favorable evidence rising to a material
> level of importance is inescapable." (emphasis added).

Thus, Kyles rejected any contention that a prosecutor is not responsible for knowing all evidence collected in a case, by an agent for the government.

Thus, the Brady duty being a continuous duty of the government, and the USAO, SEC, and FBI, are part of the government, the prosecutor is charged with knowing all favorable evidence collected by the investigative agencies of the government who assisted the prosecutor (USAO-SDNY) to build his case in U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224), and U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115").

That is U.S. Attorney Michael J. Garica, and all the lawyers in the USAO-SDNY have and had constructive possession, and knowledge of the favorable evidence collected by the SEC in its civil litigation, SEC v. Small Cap Research, Inc., et al., 03-0831-KJD-RJJ (D. NV), ("0831"), i.e., the SEC's judicial admissions contained in the 0831 complaint (Dkt. #1 at ¶¶30, 31, and 33).

**THE USAO, SEC LAWYERS', AND DISTRICT JUDGE PAULEY'S BRADY FRAUD.**

II.

A.

1.     The SEC lawyers in 0831 had on or before 07/14/2003, decided there was no securities fraud with respect to Investment Technology, Inc., ("INZS"), and stated the same in its 0831 complaint (Dkt. 1 at ¶¶ 30, 31, and 33), judicial admissions made by the United States, favorable and exculpatory to Mr. Ware, and Jeremy Jones, concluding the press releases of INZS had no affect on its stock price, and accordingly, the press releases were not actionable, civilly or criminally.

The SEC's judicial admissions in its 0831 complaint, on behalf of the United States, the real party in interest, precluded the United States from any further

prosecution of Mr. Ware for securities fraud, i.e., Brady and Giglio evidence, imputed to the USAO-SDNY.

In Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001) the Second Circuit reversed the conviction and sentence of the defendant finding the prosecution had withheld material exculpatory (Brady) evidence, and prevented the defense from making effective use of the exculpatory evidence at trial. Id at 100.

In reversing the conviction and sentence in Leka, Id. at 104, the Court noted that the testimony of a police officer (Garcia's) testimony, conflicted with the testimony of other witnesses to the crime, and concluded that had the suppressed evidence been turned over earlier in the process -- enabling the defense to make effective use at trial -- there was a "reasonable probability" the outcome would have been different, i.e., the defendant did not receive a fair trial, and his due process rights were violated by the government.

In Leka, Id. at 100, the Court noted, following Kyles, supra, that the individual prosecutor is presumed to know all information in his file, and there was not "good faith" or "bad faith" exception to Brady disclosure.

The Ninth Circuit in Tennison v. City & County of San Fran., 570 F.3d 1978 (9th Cir. 2008) with respect to a 42 USC §1983 claim of due process violation for the intentional suppression of Brady evidence, ruled there was no absolute or qualified immunity for the investigating agency's employees (in this case the FBI and SEC), and they would be civilly liable for the Due Process violation of suppression of the Brady evidence, including the supervisors (Barasch, Webster, Fairchild, Korotash, etc.) Id. at 1088-89.

2.     In Tennison, Id. at 1087, the Court extended the Brady duty to disclose to the investigating agency, citing Youngblood, 547 U.S. at 869-70, quoting Kyles, 514 U.S. at 438, commenting "exculpatory evidence cannot be kept out of the hands of the defense [(Mr. Ware)] just because the prosecutor does not have it, when an investing agency [(the SEC)] does, citing U.S. v. Blanco, 392 F.3d 382, 388

12/13/2012

(9th Cir. 2004).

3.       SEC lawyer Norris, in his pleading and Declaration dated 10/04/2005 (Dkt. 95:0831), swore under oath at ¶5 stated:

> Eventually, the FBI (David Makol) and the United States Attorney's Office requested access to what was arguably non-public information gathered by the Commission's staff in the course of its **investigation.** (emphasis added).

4.       SEC lawyer Norris, at ¶6 of his Declaration admitted that after the USAO's access to the SEC's files was granted, "I freely shared with the FBI and the United States Attorney all information they requested concerning Mr. Ware and the Investment Technology stock manipulation", even though Mr. Norris signed the SEC's bogus and fraudulent complaint in ¶¶ 30, 31, and 33 judicially admitting there was no stock manipulation of INZS' stock. (emphasis added).

         Therefore, Norris admitted the SEC was an investigating agency on behalf of the United States, and Norris further admitted, that he "freely shared" false and fraudulent information with the USAO, in an effort to frame Mr. Ware.

         Thus, as an **investigating agency,** on behalf of the United States, along with the FBI, of Mr. Ware in regard to 0831, 1115, and 1224, the SEC had a duty and responsibility to turn over to the prosecutors in the USAO (AUSA Southwell, Goldin, and U.S. Attorney Garcia) all favorable evidence uncovered in 0831. Blanco, Id at 388; Leka, Id. at 100; Kyles, Id. at 438.

5.       As the SEC lawyer, actually signing the 0831 complaint, Norris' duty of disclosure was heighten, i.e., Norris was required to inform the USAO, the SEC had concluded there was no securities fraud with respect to INZS' press releases, and the SEC had also concluded there was not conspiracy between Mr. Ware, Jeremy Jones, or any of the USAO's trial witnesses (Carlton Epps, Myron Williams, Rick Sadler, or Charles H. Jackson).

         Barasch, as the Regional Director, whose name also appears on the SEC's 0831 complaint, also possessed Brady and Giglio evidence that there was not securities

(4)                                                                              **12/13/2012**

fraud, or a conspiracy involved in the INZS matter, and also was required to turn over the exculpatory evidence to the USAO. Cf. Blanco, Leka, and Kyles, supra.

**B.**

1.      SEC lawyers Barasch and Norris, knew or were reckless in not knowing on 07/14/2003, the filing date of the 0831 complaint, the SEC possessed evidence there was no securities fraud or conspiracy involving Mr. Ware, with respect to INZS, or Jeremy Jones, or any other person(s); (2) Barasch also knew, or was reckless in not knowing that the information provided to the full Commission to determine whether or not to authorize a securities fraud action against Mr. Ware was fraudulent and fabricated by the SEC, USAO, District Judge Sand, and others known and unknown to frame Mr. Ware for securities fraud.

2.      Barasch, Norris, Webster, Martin, Hannan, Fairchild, Korotash, and others known and unknown, all knew or were reckless in not knowning, that the SEC was prohibited from initiating any securities fraud action against Mr. Ware, due to the SEC's binding judicial admissions in its complaint (Dkt. #1 at ¶¶30, 31, and 33)-- which judicial admissions are res judicata.

        Judicial admissions made on behalf of the United States, which collaterally estopped the United States in all further actions from advancing any securities fraud regarding INZS, i.e., 1115 and 1224; and were also res judicata, and double jeopardy, which also prohibited the United States' USAO from prosecuting Mr. Ware in 1115 for securities fraud predicated on INZS' press releases, i.e., Brady and Giglio evidence, intentionally suppressed by District Judge Pauley's 01/08/2007 (Dkt. #35) Barasch Bribe Order, to violate Mr. Ware's Fifth and Sixth Amendment rights.

**MATERIALITY OF THE SEC LAWYERS' BRADY AND GIGLIO EVIDENCE.**

**C.**

1.      The SEC lawyers testimony, if admitted at trial in 1115 and 1224, would have

(5)                                                                **12/13/2012**

vitiated, and acquitted Mr. Ware of all charges in 1115 -- the securities fraud charge was precluded as a matter of law (the INZS press releases were not actionable, cf. ¶¶30, 31, and 33 of the 0831 complaint); and (2) the SEC's conclusion made on or before 07/14/2003 there was not conspiracy between Mr. Ware Jeremy Jones, would have impeached Jones' lies and perjury on behalf of the USAO, who also knew of the SEC's conclusions, because Norris' 10/04/2005 Declaration at ¶¶4 - 6, Norris swore that "I freely shared with the FBI and the [USAO] all information they requested concerning Mr. Ware and the [INZS] stock manipulation." (emphasis added).

Accordingly, applying the reasoning of the Supreme Court in Kyles, 514 U.S. at 438, the USAO is charged with knowing all the favorable evidence contained in the SEC's files (an investigating agency on behalf of the U.S.), cf. Norris Declaration, ¶¶5-6 (Dkt. #95:0831 at P. 8)); and applying Leka, 257 F.3d at 100, reasoning, the "individual prosecutor" is deemed to know all evidence in his file, the USAO knew in July 2003, or before, according to the SEC's 0831 complaint at ¶¶30, 31, and 33, there was no securities fraud with respect to INZS press releases; and the USAO further knew (as a result of Norris' emails to Jeremy Jones) Jones or any of the USAO's trial witnesses who testified against Mr. Ware, pursuant to a fraudulent, in violation of public policy, plea and cooperation contract (void by fraud and in fraud in the inducement) were not involved in any conspiracy -- the SEC lawyers' trial testimony would have been favorable and exculpatory on behalf of Mr. Ware.

**THE PLAN AND SCHEME TO CONSPIRE TO FRAME MR. WARE.**

**D.**

1.      The USAO and the SEC realizing that if Mr. Ware were to depose SEC lawyer Steven Webster, (cf. Mr. Ware's Ex. #6 to Dkt. 107 in 0831, for the 08/17/2004 emails between Mr. Ware and Norris regarding deposing Webster (Assoc. Reg. Dir. of Enforcement)), Mr. Ware would gain access to the Brady and Giglio evidence contained in the SEC's files; and uncover the illegal collusion and conspiracy ongoing between the USAO and SEC in 0831.

Thus, the USAO-SDNY, the SEC, District Judge Leonard B. Sand (SDNY), and District Judge Thomas W. Thrash, Jr. (ND GA), conspired, and did in fact set in motion the plan and scheme to kidnap Mr. Ware in Atlanta, GA on 09/01/2004, by the U.S. Marshals.

2.      On 08/17/2004 at 11:09 AM Mr. Ware contacted Mr. Norris to schedule a deposition of SEC Reg. Dir. of Enforcement (Steve Webster) regarding matters in 0831.

The SEC lawyers realizing that the collusion and conspiracy between the SEC and USAO could be uncovered if Webster is deposed by Mr. Ware, set in motion an execrable plan and scheme to kidnap Mr. Ware, to violate federal law (18 USC §§2, 4, 201, 241, 242, 371, 891-94, 1201-02, 1510, 1621-23, 1961-64, (the "SEC Racketeering Offenses").

On the same day (08/17/2004), either Norris, Webster, Barasch, or other SEC lawyers acting in concert, and conspiring to violate federal law contacted AUSA Alexander H. Southwell, and/or U.S. Attorney Michael J. Garcia, to solicit the assistance of the USAO to fabricate a false and fraudulent 'request to access' the SEC's investigatory files of the 0831 matter.

3.      On 08/17/2004, within 31 minutes of Mr. Ware contacting SEC lawyer Norris (Ex. #1) to depose SEC lawyer Webster, at 11:40 AM AUSA Southwell on behalf of U.S. Attorney David Kelly, faxed a fabricated and counterfeit cover letter requesting access to the SEC's 0831 files, to appear as if the USAO had not colluded or had prior access to the SEC's files, which is a violation of federal laws prior to access being granted.

AUSA Steven R. Peikin (SDNY) signed the counterfeit and fraudulent request for file access letter submitted to the SEC, to cover up the fact the SEC and USAO were in fact colluding and conspiring to illegally gather evidence using the 0831 matter as a pretext, under the cloak and cover of the Federal R. Civ. Proc., in violation of the Due Process Clause, and U.S. v. Kordel, 397 U.S. 1, 12-13 (1970). (cf. Dkt. #95:0831 at P. 10-14, attached hereto as EX. #2).

E.

**MR. WARE ILLEGAL ARREST ON SEPT. 1, 2004 ON COUNTERFEIT ORDERS OF JUDGE SAND.**

1.  Exhibit #3, attached, is the email dated 08/17/2005 03:54 PM between Mr. Ware and Norris in regard to Webster's depostion. Note that Norris requested that Mr. Ware "schedule it [Webster's deposition] no earlier than September 1, 2004." (emphasis added).

    The September 1, 2004 date is relevant, because on September 1, 2004, the U.S. Marshals burst into Mr. Ware's office, armed, in Atlanta, GA, without a warrant or any probable cause, and illegally arrested Mr. Ware on counterfeit orders (the 12/22/2003 (Dkt. #80) and June 22, 2004 (Dkt. #83)) orders of Judge Sand entered in 02-CV-2219 (LBS)(SDNY), ("2219"), orders the USAO, the SEC, Judge Sand, Judge Thomas W. Thrash, Jr., and the U.S. Marshals all knew or were reckless in not knowing, were null and void ab initio pursuant to 11 USC §§362(a) and 365(c)(2), resulting from GPMT's 12/03/2003 Chap. 7 bankruptcy filing in Atlanta, GA (cf. GX-252 and GX-253 in 1224).

2.  SEC lawyers Norris, Barasch, Webster, the USAO, Judge Sand, and Judge Thrash, chose September 1, 2004 as the date for Webster's deposition knowing that Mr. Ware was to be illegally arrested, illegally detained by Judge Thrash, as part of the racketeering operations in effect, to · deny Mr. Ware access to the Brady and Giglio evidence in the possession of the SEC's lawyers regarding 0831, and the criminal analogue 1115.

    Judge Thrash, in service to the continuing criminal enterprise, (the association-in-fact, the "CCE"), arranged with Judge Sand to impose an unconstitutional bail in the amount of $250,000 (violated the Eighth Amendment), where the orders of arrest were in fact null and void ab initio, cf. 11 USC §362(a), and §365(c)(2). Cf. Ex. #4 attached hereto.

3.  On 08/26/2005 (Dkt. 43), the SEC moved for entry on default in 0831, while knowing that the SEC had on 07/14/2003 (Dkt. #1 at ¶¶30, 31, and 33) pled itself

out of court by the binding judicial admissions contained in its own frivolous and fraudulent 0831 complaint (Dkt. #1).

The SEC moved for the default, despite admitting there was no securities fraud regarding INZS, and admitting the press releases of INZS were not material, and accordingly, not actionable civilly or criminally; and (2) to prevent Mr. Ware from deposing any SEC lawyer possessing the Brady (exculpatory) and Giglio (impeachment) evidence regarding the imminent charges to be brought in New York by the USAO-SDNY (1224 (on 11/17/2004) and 1115 (on 09/20/2005 via fraudulent complaint of FBI Agent David Makol (cf. Dkt. #123:0831) based on the fraudulent 0831 complaint).

**F.**

## SEC AND USAO COMMINGLE 0831 WITH CRIMINAL INVESTIGATION OF 1224 AND 1115.

1.      On 08/16/2004 SEC lawyer contacted AUSA Southwell (SDNY) for assistance in the 0831 civil matter regarding the USAO supplying the SEC with information which could be used in the 0831 civil proceedings requesting as follows:

> [Alexander] [c]an you provide me [Jeffrey B. Norris] with the name and/or case number of the matter in which [] District Judge [Sand fabricated the 12/22/2003 order (Dkt. #80) and the June 22, 2004 order (Dkt. #80) and] has requested [as a pretext to initiate the New York criminal cases against Mr. Ware] a [fraudulent] prosecution of Ware for criminal contempt? I would like to cite the case or even attach the [counterfeit] order [Dkt. #80 and 83 in 2219] in my [frivolous] petition to fix [bogus] Rule 11 sanctions against Ware in the Nevada District Court [before Judge Dawson who is colluding with us]. Thanks. Cf. Ex. #5 attached hereto.

2.      On 08/16/2004 at 10:21 AM, AUSA Southwell, investigating Mr. Ware criminally, according to the 08/17/2004 bogus file access request (Dkt. #95:0831 at P. 11-12), and according to AUSA Southwell's lying on 01/05/2007 (Dkt. #44:1115) at the bogus conference arranged by the SEC, the USAO, Barasch, and Judge Pauley, to suppress the SEC lawyers Brady and Giglio evidence which would have exonerated Mr. Ware, officially **assisted** the SEC in 0831 take adverse action against Mr. Ware, i.e., on 08/16/2004 0831 was transformed into a criminal matter beyond the

(9)

statutory mandate (15 USC §§77t(b) and 78u(d)) of the SEC in federal district court.

3.     AUSA Southwell assisted the SEC in a civil matter and supplied Norris with the 2219 court's fraudulent 12/22/2003 order (Dkt. #80) while knowing, or recklessly not knowing that GPMT's Chap. 7 filed on 12/03/2003 in Atlanta, GA (which Judge had notice of), rendered the 12/22/2003 order null and void ab initio, cf. 11 USC §§ 362(a) (all orders null and void entered after the automatic stays was invoked on 12/03/2003 in Atlanta, GA), and §365(c)(2) (all contracts to issue the securities of the debtor GPMT are terminated as of 12/03/2003).

4.     On 08/30/2004, two days before Mr. Ware's planned illegal arrest, based on the bogus and null and void ab initio 12/22/2003 2219 court's order (Dkt. #80), SEC lawyer Norris emailed AUSA Southwell (Ex. #5 attached) from his official SEC email account, to AUSA Southwell's official DOJ email account, as follows, where Norris boasted of having District Judge Dawson imposed fraudulent Rule 11 sanctions on Mr. Ware for opposing the SEC's frivolous 0831 complaint which pled the SEC out of court, cf. ¶¶30, 31, and 33 of the 0831 complaint:

> Thank for the information [Alexander]. I was able to use it [the null and void ab initio 12/22/2003 (Dkt. #80) order] in a [frivolous] brief to fix [fraudulent] Rule 11 sanctions against Ware [.]" (emphasis added).

5.     SEC lawyer Norris, unwittingly, admitted to in fact using null and void ab initio orders of the 2219 court, fabricated by District Judge Sand to provide the USAO with a pretext to get involved in the 0831 civil proceeding,     to     gather evidence for the imminent New York vendetta prosecutions (1224 and 1115) to frame Mr. Ware for not issuing fraudulent Rule 144(k) (2003) legal opinions to the 2219 plaintiffs (judicially admitted Section 2(a)(11) statutory underwriters, and illegally operating an unregistered (15 USC §78o(a)) broker-dealer (cf. Ari Rabinowitz' testimony at trial in 1224 at Tr. 204-06).

On 08/16/2004 upon the **assistance** of the SEC by AUSA Southwell (who was conducting a criminal investigation of Mr. Ware), the 0831 proceedings became

(10)

a criminal proceeding invoking the Fed. Rules of Crim. Proc., invoking the 0831 defendants' Fifth Amendment right to remain silent, and not self-incriminate themselves, and the Sixth Amendment right to counsel, and terminated the District Court's subject matter jurisdiction to conduct criminal proceeding predicated on an civil complaint (Dkt. #1) filed by the SEC.

## III.

### MR. WARE'S KIDNAPPING ON SEPTEMBER 1, 2004.

#### A.

1.      On 09/01/2004, in Atlanta, GA, the SEC, USAO, District Judge Sand, District Judge Thrash, all conspired and racketeered to kidnap Mr. Ware, and did in fact, operating through the U.S. Marshals, violated Mr. Ware's Fourth Amendment right to be free from an illegal search and seizure, and free from illegal invasion of his business office without a warrant.

Mr. Ware was arrested for the sole and exclusive reason to prevent Mr. Ware access to evidence which would have enabled Mr. Ware to defeat the imminent bogus charges to be brought by the USAO-SDNY, on behalf of the CCE's main participants (District Judge Sand, Pauley, Sweet, and Circuit Judges Kearse, and Hall).

2.      The CCE enlisted the assistance of District Judge Thomas W. Thrash, Jr., who acting in furtherance of the CCE, rather than confirm whether or not GPMT had in fact filed for Chap. 7 protection of 12/03/2003 in the U.S. Bankruptcy Court, located in the same building as Judge Thrash's Chambers, imposed a malicious exorbitant bail amount of $250,000 in a veil attempt to keep Mr. Ware illegally incarcerated, and silent against the operations of the CCE to extort GPMT of more than +18 million in free-trading shares, and more than +$500 million in market capitalization.

3.      On 08/17/2004 when Mr. Ware requested to depose SEC lawyer Webster, who has possession of material Brady and Giglio evidence, all subsequent actions by the SEC, USAO, and judges participants in the CCE, were designed to suppress, and prevent Mr. Ware access to the exculpatory and impeachment evidence, in violation

(11)                                                    12/13/2012

the Due Process Clause. Moreover, Mr. Ware did not receive a fair trial where the government and the trial judges (Pauley and Sweet) deliberately colluded with the USAO to prevent Mr. Ware's access to exculpatory and impeachment evidence in the possession of the USAO, and government trial witnesses (Norris in 1224).

## IV.

### NORRIS' FRAUDULENT TESTIMONY IN 1224.

#### A.

1.    On or about November 21-22, 2007, SEC lawyer, with the permission of his supervisors, testified under oath on behalf of the USAO in 1224, a bogus 18 USC §401(3) prosecution, claiming Mr. Ware disobeyed three orders of the 2219 court to issue fraudulent Rule 144(k) (2003), legal opinions opining the 2219 plaintiffs were not Section 2(a)(11) statutory underwriters, when in fact. (1) the plaintiffs' counsel (Kenneth A. Zitter, Esq.) pled and thus judicially admitted the 2219 plaintiffs were in fact statutory underwriters; and (2) District Judge Sand did in fact in his Memorandum Order and Opinion (Dkt. #50), reported at Alpha Capital AG., et al. v. IVG Corp., et al, 2002 U.S. Dist. LX 22803 (SDNY 11/25/2002), adopted as the law of the case, the 2219 plaintiffs' judicial admissions, and adopted ¶10.1(iv) of the 2219 plaintiffs' subscription agreement into his law of the case.

2.    However, Norris and his supervisors knew or were reckless in not knowing that SEC Release 33-7190 (1995) prohibited the 2219 plaintiffs from any statutory exemption (15 USC §77d), to conduct a distribution of GPMT's restricted securities.

3.    Norris, his supervisors, the USAO, District Judge Sweet, and Circuit Judges Hall, Katzmann, Parker, Pooler, Raggi, and District Judge Barbara S. Jones, knew or all acted in a reckless disregard for the truth -- a fraud on the court -- and all exhibited a "deep-seated favoritism which made fair judgment impossible," knew that SEC Release 33-7190 (1995) was both Brady and Giglio evidence which was not disclosed to Mr. Ware in time for effective use at trial, on appeals, or post

(12)                                                    **12/13/2012**

appeal in 1224.

The SEC supervisors which approved Norris' perjurious testimony, and approved Norris' suppression of SEC Release 33-7190, are liable for Norris' violations of Mr. Ware's Due Process rights, and lack qualified immunity for the civil monetary damages awards which will be imposed in the Bivens actions to be filed against Norris, and his supervisors for sponsoring the perjurious testimony in 1224; and for the facilitating, and condoning, or turning a blind eye for fear of what they might have seen, cf. Tennison, 570 F.3d at 1988-89.

Norris, the SEC lawyers, the SEC supervisors, the USAO (acting in the absence of all subject matter jurisdiction in both 1115 and 1224) lack absolute or qualified immunity for the deliberate concealment and suppression of the SEC lawyers Brady and Giglio evidence.

The Eighth Circuit in Amrine v. Brooks, 522 F.3d 823 (8th Cir. 2008), regarding a "reckless investigation" conducted where Amrine (a state prisoner) alleged he was investigated without probable cause, and arrested without probable cause in violation of the Fourth Amendment, commented it was a substantive violation of due process for government officials to conduct a reckless investigation (the same as the SEC's pretext 0831 investigation to assist the USAO gather evidence for the New York criminal prosecutions), where the government officials had the opportunity for deliberation, prior to conducting the investigation, Id. at 833, time to consider their actions.

The Court noted that Mr. Ware had a liberty interest to receive a fair criminal proceeding, in accordance with Brady's principles. Moreover, once the 0831 proceedings became criminal proceedings on 08/16/2004, upon AUSA Souhtwell assisting the SEC by providing the fraudulent 12/22/2003 order, (Dkt. 80), to help Norris "fix Rule 11 sanctions against [Mr.] Ware", substantive due process required that the SEC and District Court accord Mr. Ware due process commensurate with a criminal proceeding, which was not done by the SEC or District Judge Dawson.

(13)                                                          12/13/2012

In fact District Judge Dawson, during the SEC-USAO April 29, 2005 (Dkt. #80) Show Cause Hearing to hold Mr. Ware in contempt of court for not assisting the SEC to collect evidence which would be transferred to the USAO for use in the imminent criminal cases (1224 and 1115), District Judge Dawson, rather than conducting the proceedings in accordance with criminal due process, and assuring Mr. Ware's right to remain silent, announced from the bench in a hysterical fashion:"I intend to vindicate the authority of the Judiciary" to loot GPMT, and to violate Mr. Ware's civil rights, i.e., a "deep-seated favoritism which made fair judgment impossible", which Mr. Ware contends is a fraud on the court, by the court itself, when practiced in a deliberate and reckless manner. Cf. Liteky v. United States, 510 U.S. 540, 555 (1994).

District Judge Dawson's extrajudicial bias was sourced from his covert collusion and conspiring with the SEC and USAO to frame Mr. Ware, where a competent judge, competent in securities laws, would have immediately recognized in the SEC's 0831 complaint at ¶¶30, 31, and 33, that the SEC pled itself out of court, and entered a judgment against the SEC, and set the matter down for a Rule 11 sanctioning proceedings, and awarded attorneys fees and costs to the defendants from having to defend a frivolous lawsuit.

Rather, instead, District Judge Dawson, acting in furtherance of the CCE, colluding and conspiring with the SEC and USAO, actually entered Rule 11 sanctions against Mr. Ware (Dkt. 57) in one of the most comical orders entered in a federal district court.

Imagine the hilarious fact that the defendants' counsel is sanctioned by the judge, in moving to dismiss a complaint that pled the SEC plaintiff out of court, rather than the judge sanctioning the SEC for filing a frivolous complaint, shear lunacy, by a biased and racially prejudiced judge who was and is completely incompetent in the area of securities law -- a treat to the public and the "orderly administration of justice." (emphasis added).

(14)

Furthermore, as a result of the SEC pleading itself out of court in its frivolous complaint (Dkt. #1 at ¶¶30, 31, and 33), via the binding judicial admissions pled in the frivolous complaint, the district court lacked all subject matter jurisdiction to conduct the 0831 proceedings; and moreover, once the FBI (SA David Makol contacted Norris "sometime after [Norris] filed [the 0831] Complaint", cf. Norris' Declaration at ¶4 (Dkt. #95 at P. 7)),      the 0831 proceedings were commingled and transformed into a criminal proceeding, District Judge Dawson was acting in his personal capacity, acting in the absence of all subject matter jurisdiction, and is subject to civil monetary damages, i.e., a Bivens action, Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (judge liable when acting in the absence of all jurisdiction over the proceedings).

The Ninth Circuit in Crowe v. County of San Diego, 608 F.3d 406 (9th Cir. 2010) explained in regard to a §1983 action, a Fifth Amendment self-incrimination violation is actionable where the claimant's Fifth Amendment is violated.

Applying Crowe's logic to the facts of 0831, after the FBI and USAO's assistance converted the proceedings into a criminal proceeding, on April 29, 2005, as soon as District Judge Dawson, and the SEC and the USAO acting through Norris, their agent, at the Show Cause Contempt Hearing (Dkt. #80), "a §1983 cause of action for violation of the Fifth Amendment's Self-incrimination Clause arose as ... coercive means to compel a statement" were employed in the absence of all subject matter jurisdiction. Id. at 431.

Lacking a criminal complaint, or an indictment, or an **offense** against the laws of the United States, 18 USC §3231, prohibited the District Court from conducting the April 29, 2005 SEC-USAO Contempt Hearing, seeking to have Mr. Ware self-incriminate himself in violation of the Fifth Amendment, under pain of contempt of court, i.e., a criminal proceeding.

4.      Norris testified in 1224 falsely and committed perjury when Norris lied under oath during his testimony that Mr. Ware, somehow, committed "bad acts" by moving to dismiss the SEC's frivolous complaint which Norris himself pled the SEC out

(15)                                                    **12/13/2012**

court, and then turned around and testified that it was Mr. Ware's fault he is incompetent in "among other things" securities laws, along with District Judge Dawson.

5.      The USAO knowingly, and intentionally solicited Norris' perjury to prejudice the jury in 1224, while knowing and having access to the SEC's Brady and Giglio evidence in the possession of the SEC for more than four years, still were so incompetent they all failed to comprehend the federal securities law, in particular, 15 USC §77b(a)(11, 12) read in pari materia with ¶10.1(iv) of the 2219 plaintiffs' Subscription Agreement (government trial exhibit GX-5 in 1224).

6.      The Subscription Agreement, (GX-5), was rendered null and void on 12/03/2003 once GPMT filed for Chap. 7 bankruptcy in Atlanta, GA (cf. GX-252, GX-253), pursuant to 11 USC §365(c)(2); and furthermore, 15 USC §78cc(b) voided the rights of the 2219 plaintiffs ---- contractual rights in the Subscription Agreement, and the convertible debenture notes (GX 1-4), given that a government witness actually testified to the criminal violations of the federal securities law under cross-examination (Tr. 204-06) when Rabinowitz testified that Alpha Capital, AG was an unregistered broker-dealer operating in violation of 15 USC 78o(a), a criminal offense, while conducting illegal underwriter activities in "a good few hundred" companies. (emphasis added).

7.      Any competent SEC senior trial lawyer, other than Norris, would have at least understood exactly what the defendant was charged with before showing up to testify for the USAO, i.e., Norris is prohibited from taking a position in conflict with the policies of the SEC, e.g., SEC Release 33-7190 (1995) requires all Section 2(a)(11) statutory underwriters to register all distribution of restricted securities, contrary to Norris foolish embarrassing testimony on behalf of the SEC in 1224, which by the way was perjury, and obstruction of justice.

        Thus, a conundrum is posited: Exactly whose interests were Norris representing while testifying for the USAO in 1224?

(16)                                                          12/13/2012

NORRIS' TESTIMONY WAS IN CONTRADICTION TO SEC NATIONAL POLICY.

1.        Norris' testimony under oath, during 1224, in the bogus criminal contempt prosecution of Mr. Ware, for not issuing fraudulent Rule 144(k) (2003), legal opinions to the 2219 plaintiffs, was actually in accordance with SEC policies and procedures, SEC Release 33-7190 (All Section 2(a)(11) statutory underwriters are required to register all distribution pursuant to Section 5 of the 1933 Act); and SEC v. Spectrum, Ltd., 489 F.2d 535, 541-42 (2d Cir. 1973)).

The Second Circuit in Spectrum, Id. at 541-42 announced the standard of review of a professional's conduct for assisting in a violation of the securities laws, and decided a negligence standard was appropriate to gage the offending conduct. Id. at 541.

The Spectrum court was particularly sensitive to the role of the legal profession in regard to compliance with the securities laws; commenting, Id. at 542: "The legal profession plays a unique and pivotal role in the effective implementation of the securities laws." (emphasis added).

The Second Circuit has been consistent in its rulings regarding the standard of conduct in SEC enforcement actions, pertaining to lawyers' legal opinions.

In SEC v. Coven, 581 F.2d 1020 (2d Cir. 1978), an attorney (Coven), was retained by a company to draft the documents for a small best efforts public offering, Id. at 1026, subject to an all-or-none partial offering for the first 3.0 million shares. Id. at 1022.

The underwriters hired by the company failed to abide by the terms of the escrow agreement drafted by Coven. Id.  After a dispute with the escrow agent regarding the actual number of shares sold, Coven drafted a letter to the escrow agent asserting that the minimum escrow conditions had been satisfied, and the escrow agent was permitted to disperse the escrow fund. Id. at 1023.

12/13/2012

The Court in reaching its decision commented, Id. at 1025, "In assessing [the lawyer's] responsibility for the [] improper activities [associated with the underwriting the judge] applied a standard derived from SEC v. Spectrum."

The Court explained, Id. at 1028, noting Spectrum, Id. at 541-42, standard of negligence conduct, "if [the lawyer] acted with a reckless disregard for the truth [regarding whether the 2219 plaintiffs were in fact Section 2(a)(11) statutory underwriters] ... his conduct would violate §10(b) of the 1934 Act."

The Court further noted that Coven's conduct regarding the escrow agreement allowing the sales to be approved based on his opinion letter to the escrow agent, "'operated as a fraud' upon the public" which when applied to the 2219 plaintiffs' requests on Mr. Ware to draft fraudulent Rule 144(k) legal opinions opining they were not in fact Section 2(a)(11) statutory underwriters, as admitted in their own 2219 complaint, (Dkt. #1 at ¶¶ 10-21), clearly violated SEC Release 33-7190 (1995), unequivocally prohibited any issuance of Rule 144(k) legal opinions to the 2219 plaintiffs.

Had Mr. Ware issued the fraudulent Rule 144(k) legal opinions in violation of SEC Release 33-7190 (1995), his conduct would have "'operated as a fraud' upon the public", and violated §10(b) of the 1934 Act: A "reckless disregard" for the truth of the 2219 plaintiffs' own judicial admissions pled in the 2219 complaint (Dkt. #1 at ¶¶10-21). Cf. other SEC enforcement action cases, SEC v. Universal Major Indus. Corp., 546 F.2d 1044, 1045-46 (2d Cir. 1976) (attorney wrote 118 legal opinion letters opining registration was not required for sale of restricted securities, attorney held liable for aiding and abetting unregistered distribution of stock); SEC v. Management Dynamics, Inc., 515 F.2d 801, 811 (2 d Cir. 1975) (explaining Spectrum's holding, "Schiffman -- the attorney in Spectrum -- could easily have concluded that his opinion letter which he issued was likely to be used to sell unregistered securities [.]").

There is really no rational debate that Norris' testimony on behalf of the SEC, for the USAO, in 1224 clearly was in contradiction to the SEC's enforcement

12/13/2012

policies, and the binding authority of the Second Circuit's decisions, binding on the District Court, the USAO, and as prior opinions, binding on the 09-0851-Cr and 11-2151-Cr panels.

2.    Norris' testimony was elicited by the USAO to commit a fraud on the jury, by presenting testimony of a SEC lawyer (a foolish one), but nevertheless, a SEC lawyer with tarnished patina of 'law enforcement', and that Mr. Ware had in the 0831 Las Vegas litigation violated the law, and had a history of law violations.

Had the USAO, the SEC, and the trial judge (Sweet) had half a brain, or, in the case of District Judge Sweet, stayed awake during the trial (Judge Sweet is, or at least appears to be, very close to 100 years in age), slept through most of the 1224 trial; and Judge Sweet also has a hearing impediment (he had on a hearing aid during the trial, and constantly had to be alerted to objections by the lawyers).

However, in any event, Norris' testimony was fraud committed by the SEC and USAO: The SEC suppressed the Brady and Giglio evidence of SEC Release 33-7190 (1995) -- evidence clearly material to whether or not the 2219 orders were in fact "lawful" orders; and clearly material on the issue whether or not  Mr. Ware "willfully" violated the 2219 orders, i.e., had a reasonable good faith reason for  not issuing the Rule 144(k) legal opinions when federal law, and opinions of  the Second Circuit ruled Mr. Ware's conduct would violate the federal securities laws.

3.    However, the 2219 orders were of no moment, since government witness Kenneth A. Zitter, Esq., pled the 2219 plaintiffs out of court by the judicial admissions pled at ¶¶10-21 of the 2219 complaint; (2) the 2219 district court lacked a "case" or "controversy" after March 20, 2002 (the filing date of the 2219 complaint); (3) lacking a "case" or "controversy" the 2219 court lacked all subject matter jurisdiction to issue any order in 2219 on the merits, i.e., the 2219 orders were not "lawful" orders within the scope of 18 USC §401(3) -- not an **offense**.

(19)                                                    **12/13/2012**

4.        On 08/12/2010 Preet Bharara (U.S. Attorney (SDNY)), and his chief of
appeals, AUSA Katherine Polk-Failla, (a purported summa cum laude graduate of
William & Mary, and a cum laude graduate of Harvard Law School), agreed with Mr.
Ware's contentions and arguments, and conceded the 2219 court's orders Mr. Ware
was alleged to have "willfully" violated, in fact were not "lawful" orders, (2)
the 1224 indictment did not charge an **offense** against the laws of the United
States; and (3) the 1224 court was thus, not authorized to entered a conviction
or sentence (18 USC §3231 prohibited it) in 1224; and accordingly, the 1224
conviction and sentence is null and void ab initio.

## THE BILLION DOLLAR CONUMDRUM:

If the USAO on 08/12/2010 conceded the statements in ¶4 above, then why is Mr.
Ware still in federal prison after 08/12/2010? Why? Because of the fraud and
corruption of Preet Bharara, and his handlers on the Senate Judiciary Committee
(Senator Charles Schumer) and his cronies at the Department of Justice, who know
that if Bharara is implicated in a fraud by prosecuting fraudulent indictments,
and appeals, the flood gates will be opened by other defendants who have also
been fraudulently convicted and sentenced where they refused to give in to
extortion by the District Judges, Circuit Judges, the USAO, and private lawyers
in New York, who are involved in the largest Ponzi scam of all time -- will make
Madoff look like a Boy Scout, that is why Mr. Ware is still in federal prison
where the Executive Branch has conceded the case via an Article II, §3 political
decision, which the Judiciary is powerless to review or adjudicate!

## CONCLUSION

The District Court, the SEC, and the USAO clearly violated the Court's
05/19/2006 (Dkt. #17, discovery order) requiring the USAO to disclose all Brady,
and Giglio, and Jencks Act evidence, "the Thursday before trial ...." (emphasis
added).

(20)

EXHIBIT #1

P. 22

Page 4 of 4

Cc: <u>Korotash, Stephen J.</u> ; <u>Barasch, Spencer C.</u> ; <u>Webster, Stephen</u> ; <u>Draper, Julia D.</u>
Sent: Tuesday, August 17, 2004 12:18 PM
Subject: RE: Deposition of Steve Webster

Mr. Ware:

As you are aware, Steve Webster is an Assistant Director at the Commission's Fort Worth District Office. I am completely at a loss to understand your desire to take his deposition. I do not believe that Mr. Webster's testimony could possibly be relevant to any matter at issue in this lawsuit, even when relevance is defined in its broadest sense. Do you believe that Mr. Webster was a percipient witness to any of the conduct that the Commission has alleged? Moreover, Mr. Webster's communications with the Commission staff are protected from disclosure by various privileges, including attorney-client, law enforcement and investigative privileges and by the work product doctrine.

Please identify the relevant issues upon which you believe Mr. Webster could testify.

*Jeffrey B. Norris*
*Trial Counsel*
*United States Securities and Exchange Commission*
*Fort Worth District Office*
*801 Cherry St., Unit 18*
*Fort Worth, TX 76102*
*Tel: (817) 978-6452*
*Fax: (817) 978-4927*

-----Original Message-----
**From:** THOMAS Ware [mailto:rgwinc@mindspring.com]
**Sent:** Tuesday, August 17, 2004 11:09 AM
**To:** Norris, Jeffrey B.
**Subject:** Fw: Deposition of Steve Webster

—— Original Message ——
**From:** <u>Thomas Ware</u>
**To:** <u>Norris, Jeffrey B.</u>
**Sent:** Monday, August 16, 2004 2:51 PM
**Subject:** Deposition of Steve Webster

Please identify when Steve Webster will be available for deposition.

Rosenfeld, Goldman & Ware, Inc.
Thomas Ware
101 Marietta St.
Suite 1070
Atlanta, GA 30303
(404) 522-1202 phone
(404) 522-1447 fax

Case 2:03-cv-00831-KJD -RJJ  Document 95-2809400  Filed 10/04/05  Page 10 of 17

09/29/05   15:52   ☎2ι_   8 9614          DIR REG OFC O. _ -                    ☑005

AUG-17-2004  11:40                                                             P.01



### FACSIMILE COVER SHEET

U.S. ATTORNEY'S OFFICE, SDNY
ONE ST. ANDREW'S PLAZA
NEW YORK, NY 10007

*********************************************************************************

From:      Alexander H. Southwell
           Assistant United States Attorney

Office Phone No.:   (212) 637-2417

Fax Number:         (212) 637-2452

No. pages (including cover sheet): __

Date sent:   August 17, 2004

*********************************************************************************

"FOR OFFICIAL USE ONLY" U.S. ATTORNEY FACSIMILE COMMUNICATION

The information contained in this facsimile message, and any and all accompanying
documents, constitute "FOR OFFICIAL USE ONLY" information. This information is the
property of the U.S. Attorney's Office. If you are not the intended recipient of this
information, any disclosure, copying, distribution, or the taking of any action in reliance on
this information is strictly prohibited. If you received this information in error, please notify
us immediately by telephone at the above number and destroy the information.

*********************************************************************************

To:              Jeffrey B. Norris, SEC Ft. Worth District Office

Office Phone No.:   (817) 978-6452

Fax Number:        (817) 978-4927

Re:              Thomas Ware

Remarks:         Please see attached.

EXHIBIT 27 /2012

EXHIBIT #4

P. 24

**Draper, Julia D.**

| | |
|---|---|
| `rom: | Norris, Jeffrey B. |
| _~ent: | Wednesday, October 06, 2004 1:18 PM |
| To: | Alexander.Southwell@usdoj.gov |
| Cc: | Draper, Julia D.; Korotash, Stephen J. |
| Subject: | RE: Thomas Ware |

Alexander:

Who raised the 100 mile limit argument? That is a specious argument with no legal basis.
I have won that issue with a number of district courts where a person held in contempt was
trying to avoid extradition. Based on orders from courts in the Northern District of
Texas, I have had the Marshals arrest people in California, Washington, Wisconsin, Nevada
and probably other jurisdictions that I can't remember. Several of these people have been
incarcerated in Texas for more than a year. One person arrest in Washington state for
civil contempt is still in prison in Texas after more than 2 years.

Read Federal Rule of Civil Procedure 4.1. It states that an order of civil commitment for
a person held in contempt **"may be served and enforced in any district."** It goes on to
state that **other** orders in contempt proceedings are subject to the 100 mile limit.

Whoever argued this matter didn't do his or her homework. Someone needs to file a motion
for reconsideration and have him arrested again!

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth Office
Burnett Plaza, Suite 1900
01 Cherry St., Unit #18
Fort Worth, TX 76102
Phone: (817) 978-6452
Fax: (817) 978-4927
E-mail: norrisj@sec.gov

-----Original Message-----
From: Alexander.Southwell@usdoj.gov [mailto:Alexander.Southwell@usdoj.gov]
Sent: Wednesday, October 06, 2004 1:04 PM
To: 'NorrisJ@SEC.GOV'
Subject: RE: Thomas Ware

He likely means when he was arrested on the civl contempt order. He was arrested in
Atlanta and released the same day, which was somewhere around the beginning of September.
As it turned out, a warrant on a civil contempt order cannot extend beyond 100 miles from
the courthouse or in the same state, so he was improperly arrested (which he pointed out
to Judge Sand, the wily guy that he is). So we are working on a criminal contempt charge
which (confidentially) should happen within a week or two.

Alex

-----Original Message-----
From: NorrisJ@SEC.GOV [mailto:NorrisJ@SEC.GOV]
Sent: Wednesday, October 06, 2004 12:57 PM
To: Southwell, Alexander
Subject: Thomas Ware

Alexander:

**3501 - 72**

        Have there been any developments in the contempt prosecution of
Thomas Ware since the beginning of September? I got a cryptic e-mail from

1

1

Norris was aware of the Grand Jury 12/13/2012.

EXHIBIT #3

I was not aware that your sense of irony was so finely honed. Unlike yours (as set forth in the Court's July 29 Order), my papers will be supported by pertinent legal authority, and will not consist of meritless speculation or unsubstantiated conclusions. Please be advised that I have not agreed to accept any legal process beyond that which the law requires. Accordingly, you will have to determine whether your mailing of a notice and subpoena are legally binding. This is my last communication on the subject matter of Mr. Webster's deposition until such time as you receive the motions I have promised.

*Jeffrey B. Norris*
*Trial Counsel*
*United States Securities and Exchange Commission*
*Fort Worth District Office*
*801 Cherry St., Unit 18*
*Fort Worth, TX 76102*
*Tel: (817) 978-6452*
*Fax: (817) 978-4927*

———Original Message———
**From:** Thomas Ware [mailto:rgwinc@mindspring.com]
**Sent:** Tuesday, August 17, 2004 2:59 PM
**To:** Norris, Jeffrey B.
**Subject:** Re: Deposition of Steve Webster

I guess in your frivolous motion that you will file, you will not be able to certify that you reviewed the relevant case law as indicated by your last email. I will forward the notice to your attention along with the notice to produce and the Subpoena.

Rosenfeld, Goldman & Ware, Inc.
Thomas Ware
101 Marietta St.
Suite 1070
Atlanta, GA 30303
(404) 522-1202 phone
(404) 522-1447 fax

——— Original Message ———
**From:** Norris, Jeffrey B.
**To:** 'Thomas Ware'
**Cc:** Korotash, Stephen J. ; Webster, Stephen ; Draper, Julia D.
**Sent:** Tuesday, August 17, 2004 3:54 PM
**Subject:** RE: Deposition of Steve Webster

Mr. Ware:

If you are inclined to further undermine your credibility with the Court and incur further sanctions, then, to quote the Duke of Wellington, "publish and be d—ed." I remind you that the Court stated in the July 29 Order that you are perilously close to having a default sanction entered against you. I assure you that if you notice Mr. Webster's deposition–an act that can only be done in bad faith–my Motion for Protective Order will be accompanied by a motion renewing the Commission's request that the Court enter a default judgment against you and Rosenfeld, Goldman and Ware. I will not give you dates on which the Commission will make Mr. Webster available because, as I stated, I can envision no issue upon which he can offer relevant testimony. Your silence confirms my conclusion. I ask only that, should you make the mistake of attempting to schedule Mr. Webster's deposition, you schedule it no earlier than September 1, 2004.

*Jeffrey B. Norris*

12/13/2012

# Draper, Julia D.

| | |
|---|---|
| From: | Norris, Jeffrey B. |
| Sent: | Monday, August 30, 2004 9:25 AM |
| To: | 'Alexander.Southwell@usdoj.gov' |
| Cc: | Draper, Julia D. |
| Subject: | RE: Ware |

Thanks for the information. I was able to use it in a brief to fix Rule 11 sanctions against Ware. As you can see, he is still misbehaving in Nevada. I now have additional motions for default pending on a couple of different grounds. What's happening in New York?



Rule11Response.do
c

-----Original Message-----
From: Alexander.Southwell@usdoj.gov
[mailto:Alexander.Southwell@usdoj.gov]
Sent: Monday, August 16, 2004 9:44 AM
To: 'NorrisJ@SEC.GOV'
Subject: RE: Ware

Cas is Alpha Capital v. Group Management, 02 Civ. 2219 (LBS) and the order of referral is dated 12/22/03. I will fax you a copy.

Alex

-----Original Message-----
From: NorrisJ@SEC.GOV [mailto:NorrisJ@SEC.GOV]
Sent: Monday, August 16, 2004 10:21 AM
To: Southwell, Alexander
Subject: RE: Ware

Alexander:

Can you provide me with the name and/or case number of the matter in which the District Judge has requested a prosecution of Ware for criminal contempt? I would like to cite the case or even attach the order in my petition to fix the Rule 11 sanctions against Ware in the Nevada District Court. Thanks.

Jeffrey B. Norris
Trial Counsel
United States Securities and Exchange Commission
Fort Worth District Office
801 Cherry St., Unit 18
Fort Worth, TX 76102
Tel: (817) 978-6452
Fax: (817) 978-4927

-----Original Message-----
From: Alexander.Southwell@usdoj.gov
[mailto:Alexander.Southwell@usdoj.gov]
Sent: Thursday, August 12, 2004 2:53 PM
To: 'norrisj@sec.gov'

1

6/11      10

3501 - 60
21
12/13/2012