Submitted by Counsel:

*Ulysses J. Ware*

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
12/12/2012 05:22:22 P.M. printed

**PRIORITY**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 9 2012

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ULYSSES THOMAS WARE,<br>    PETITIONER, | : | |
| | : | |
| | : | |
| VS. | : | CASE #: 12-CV-_____ |
| | : | **1:12-CV-4397** |
| WARDEN DARLEEN DREW, | : | |
| BUREAU OF PRISONS, | : | |
| ATLANTA PRISON CAMP. | : | |
|     RESPONDENTS. | : | |

EMERGENCY PETITION FOR IMMEDIATE RELEASE
28 USC §2241: PETITION FOR A WRIT OF HABEAS CORPUS
ACTUAL AND FACTUAL INNOCENCE OF ALL CHARGES

#3
12/12/2012 Memorandum of Law in Support of Claims Regarding:

U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224"); and

U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115").

———

Pages i-v: Unconstitutional stock-price charts outlawed by Ferguson, infra.

U.S.v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115").

**15**

12/13/2012



Investment Technology, Inc. (INZS)
Closing Price and Daily Volume
January – February 2002

GOVERNMENT
EXHIBIT
92-A
SI 04 Cr. 1119 (WHP)

(i)

# SA-145



Investment Technology, Inc. (INZS)
Closing Price and Daily Volume
March 2002

GOVERNMENT
EXHIBIT
92-B
S1 05 Cr. 11
(iD)

(ii)

**SA-146**



Investment Technology, Inc. (INZS)
Closing Price and Daily Volume
April 2002

831% Increase

GOVERNMENT EXHIBIT
92-C

(iii)

# SA-147



Service Systems Int'l Ltd. (SVSY)
Closing Price and Daily Volume
December 2001

177.11% Increase

GOVERNMENT EXHIBIT
93-A
S1 05 Cr. 1115 (RWS)(D)

(iv)



Service Systems Int'l Ltd. (SVSY)
Closing Price and Daily Volume
January 2002

GOVERNMENT
EXHIBIT
93-B
S1 03 Cr. 1115 (WHP)(D)

(v)

## OPENING STATEMENT
### Regarding 1115

1.  Petitioner Ware, contends that the conviction and sentence in 1115 were rendered erroneous due to the Court's supervening decision in U.S. v. Ferguson, 653 F.3d 61 (2d Cir. 2011) where the Court held that "stock-price" charts admitted without expert testimony, were "overly prejudicial", Id. at 75, and violated the "substantive rights" of the AIG defendants, and therefore, the convictions and sentences were reversed and remanded for a new trial, Id. at 95.

  The petitioner contends that the government's "stock-price" chart evidence entered at trial through FBI analyst Maria Font (a nonexpert), (GX-92, GX-93 series), on the issue of materiality, notwithstanding the fact the government conceded, after trial (Oct. 12, 2007 S. Tr 35-36; October 26, 2007 S. Tr. 75-76), the markets were inefficient, were "overly prejudicial" "violated the substantive rights" of the petitioner, and "the district court abused its discretion by admitting the stock-price data." Id. at 68.

2.  Petitioner further contends that the Court's August 18, 2009 opinion reported at U.S. v. Ware, 577 F.3d 442 (2d Cir 2009), (the "Opinion") was: (1) entered while the Court lacked all subject matter jurisdiction over 1115 after the Executive Branch's Art. II, §3 political decision on November 7, 2008; (2) entered while the Court lacked a live "case" or "controversy" in 1115 after October 12, 2007 (cf. S. Tr. 31 L 8-25: District Judge Pauley acquitted Mr. Ware of all charges in 1115 by holding a Fatico hearing was required on the government's factual elements of trial proof on "concerning among other things the efficiency of the market.")

  District Judge Pauley's October 12, 2007 Fatico Decision was a holding the government's did not prove "beyond a reasonable doubt" the factual elements "among other things [materiality and] the efficiency of the market."

  District Judge Pauley's October 12, 2007 Fatico Decision (S. Tr. 31 L 19-

(1)

4/2/2012

25) "resolved" in Mr. Ware's favor factual elements of the government's burden of proof (materiality and market efficiency), cf. U.S. v. Lynch, 162 F.3d 732, 735 (2d Cir. 1998) (resolution in defendant's favor of a factual element of the prosecution's burden of proof is "functionally equivalent" to an acquittal, and even if in error, double jeopardy, and collateral estoppel attached), i.e., clear error by this Court in affirming the conviction in 1115, n-otwithstanding the palpable fact, the Fatico Decision, was an express trial court conclusion the government did not meet it burden of proof "beyond a reasonable doubt."

Accordingly, (1) materiality and (2) "the efficiency of the market" were jury issues not within the purview of the District Court to hear any evidence of the government, after trial, and therefore was clear error, a miscarriage of justice, fraud on the court, manifest injustice, and the petitioner was "factually innocent" due to the government's insufficient evidence "concerning among other things the efficiency of the market." (quoting District Judge Pauley, Oct. 12, 2007, S. Tr. 31 L 23-25). (emphasis added).

## II.

### Regarding 1224

1.    First, the petitioner contends that the government's indictment in 1224 failed to charge an offense against the laws of the United States as required by 28 USC §547(1) authorizing the U.S. Attorney to seek an indictment in 1224; and (2) lacking an offense, the 1224 district court, pursuant to 18 USC §3231 was not authorized to accept any evidence in 1224: Lacking any lawful evidence, and the 1224 district court lacking lawful authority to adjudicate 1224, the 1224 court lacked authority to enter a judgment of conviction or sentence in 1224, i.e., the decisions of this Court in 09-0851-Cr and 11-2151-Cr were clear error, fraud on the court, manifestly unjust, and a miscarriage of justice.

2.    Petitioner contends that former U.S. attorney David Kelly, Michael J.

Garcia, and current U.S. Attorney Preet Bharara, (the "US Attorneys), all committed a fraud on the court by prosecuting 1224 while knowing it is not an **offense** against the United States for a securities lawyer to not issue fraudulent and bogus 15 CFR §230.144(k), (Rule 144(k)), (2003), legal opinions to the plaintiffs in Alpha Capital, AG., et al., v. IVG Corp., a/k/a ("GPMT"), et al., 02-CV-2219 (LBS)(SDNY), ("2219"), judicially admitted (cf. Dkt. #1 at ¶¶10-21 in 2219) 15 USC §§77b(a)(11, 12), statutory underwriters and dealers (cf. Ari Rabinowitz's 1224 trial testimony Tr. 204-06)).

3.      Petitioner further contends that initiating plaintiff Alpha Capital, AG, ("Alpha") moved the 2219 court on or about 12/18/2007, ex parte, pursuant to Fed. R. Civ. Proc. 41(a)(2) to be voluntary dismissed from 2219; and in fact the 2219 court granted Alpha's Rule 41(a)(2) motion on 12/20/2007 (Dkt. #90), annulling and voiding all orders and judgments entered in 2219 and 03-7973-CV (2d Cir.) on Alpha's behalf.

Accordingly, the 09-0851-Cr and 11-2151-Cr appeal court lacked a live "case" or "controversy" regarding the 1224 indictment's allegations regarding the 2219 judgment (Dkt. #54), the 2219 memorandum opinion (Dkt. #50), the March 13, 2003 order (Dkt. #58), the August 13, 2003 order (Dkt. #65), the December 22, 2003 order (Dkt. #80, the June 22, 2004 order (Dkt. #83), and others, (the "Annulled Orders").

The 1224 indictment in counts I, II, and III, was predicated on the violation of the Annulled Orders which were annulled and voided, nunc pro tunc, March 20, 2002, rendering the 1224 null and void, ab initio, and the 1224 prosecution initiated lacking any probable cause, i.e., a fraud on the court, a miscarriage of justice, clear error, and Mr. Ware, the petitioner was factually innocent of the bogus and fraudulent charges brought by the USAO-SDNY as part of the continuing criminal enterprise, (the "CCE") run from within the USAO, and the federal courts in New York, Atlanta, GA, Las Vegas, NV and

(3)                                                    4/2/2012

elsewhere.

4.         Petitioner further contends that the Annulled Orders were not "lawful" orders entered by a court with competent subject matter jurisdiction over the 2219 proceedings, and therefore were not within the scope of 18 USC §401(3), i.e., the performance of the Annulled Orders required the criminal violation of the federal securities law (15 USC 77e(a, c), 77x, 78j(b), 78ff, and Rule 10b-5; and 18 USC 2, 371, 891-94, 1343, 1621-23, and 1961-64) -- there was no "lawful" method to comply with the Annulled Orders. CF. SEC Release 33-7190 (1995).

## III.

### SUMMARY OF THE ARGUMENT

1.         The petitioner argued and proved in March 27, 2012 and March 29, 2012 memorandums that the USAO, District Judges Pauley, Sweet, Dawson, and others; and Circuit Judges Kearse, Sack, Hall, Katzmann, District Judge Barbara S. Jones, "a Circuit Judge", and others known and unknown, all committed a fraud on the court, obstructed justice, planned and schemed to violate Mr. Ware's civil rights, committed perjury, bribery, conspired, racketeered, falsified court orders, judgments, and other documents, failed to file pleadings submitted to the court, failed to enter orders pursuant to Rule 55, conducted Executive Branch actions in violation of the separation of powers, violated their oath of office, and all committed treason against the United States' Constitution, and all deserve to receive life imprisonment or the death penalty for the racketeering criminal enterprise run from within the federal courts, and the within the Department of Justice, the Securities and Exchange Commission, and with private persons.

MEMORANDUM OF LAW
MARCH 27, 2012

I.

ANALYSIS OF U.S. v. WARE, 577 F.3d 442 (2d Cir. 2009)
Purportedly Written By Circuit Judge Amalya L. Kearse on
or About August 18, 2009 **after** the Executive Branch of the
United States on November 7, 2008 Abandoned 05-Cr-1115
(WHP)(SDNY), ("1115") for Insufficient Evidence.

1.        From the onset, Judge Kearse, immediately and without delay, displayed her
"deep-seated favoritism" and insidious brand of overt racism in §1 of the
frivolous ultra vires Opinion, entered while the United States Court of Appeals
for the Second Circuit, (the "Second Circuit") lacked all subject matter
jurisdiction **after** November 7, 2008. §1 is 577 F.3d at 445.

        On November 7, 2008, the United States Department of Justice, (the "DOJ")
the exclusive statutory delegee (28 USC §516) of the Executive Branch to conduct
all criminal litigation on behalf of the United States of America, (the "USA")
acting through the Office of the Solicitor General, (the "OSG"), and pursuant
to federal regulations (28 CFR §0.20 (a, b)) made an Article II, §3 of the
Constitution -- and in agreement with Mr. Ware's arguments and contentions --
made the exclusive discretionary prosecutorial political decision to abandon all
issues in 1115 for insufficient evidence, (the "Double Jeopardy Political
Decision").

        The DOJ acting through Michael J. Garcia (the U.S. Attorney (SDNY)) and
his deputy chief of appeals, AUSA Andrew L. Fish, notified the Second Circuit
in writing of the political decision mandate of the Executive Branch, and
informed the Second Circuit to take no further actions in regard to 1115, and
immediately reverse and vacate Mr. Ware's conviction and sentence, and dismiss
the indictment with prejudice.

        Michael J. Garcia, (the "USAO") knew on or before July 14, 2003 (the filing
date of the Securities and Exchange Commission's (the "SEC's") frivolous
complaint in SEC v. Small Cap Research, 03-0831-KJD-RJJ (D. NV), ("0831")), cf.
Dkt. #1 at ¶¶30, 31, and 33, which SEC counsel Jeffrey B. Norris in an affidavit
dated October 4, 2005 swore under oath he supplied a copy of the complaint to
the USAO's FBI investigator (FBI special agent David Makol), that there was not
civil or criminal securities fraud or conspiracy to commit securities fraud in
regard to Investment Technology, Inc., i.e., material **Brady** and **Giglio** evidence.

(1)

2.          U.S. Attorney Michael J. Garcia and the SEC's lawyers (Jeffrey B. Norris, Spencer C. Barasch, John C. Martin, and Robert Hannan), District Judge Kent J. Dawson (D. NV), District Judge William H. Pauley, III (1115 trial judge), and Circuit Judge Kearse, hereinafter, (the "Government Racketeers") initiated a execrable plan and scheme to frame Mr. Ware for securities fraud, because Mr. Ware refused to join in the continuing criminal enterprise run by the Government Racketeers to extort the defendant in Alpha Capital, AG, et al. v. IVG Corp., a/k/a Group Management Corp, ("GPMT"), 02-CV-2219 (LBS)(SDNY), ("2219") of +$18 million in free-trading securities, and +$500 million in market capitalization.

3.          Nevertheless, Judge Kearse, acting as part of the association-in-fact, a continuing criminal enterprise, (the "CCE"), as defined in 18 USC §1961(4, 5), performed her assigned racketeering activities as defined in Id. §1961(A), by conspiring, agreeing, confederating, and racketeering with Judges Robert D. Sack, and Peter W. Hall, and others known and unknown, (the Second Circuit Racketeers"), and the Government Racketeers by, after November 7, 2008, conducting a **'judicial prosecution'** of Mr. Ware in violation of federal law (28 USC §516), the Double Jeopardy Clause, and the 'separation of powers' doctrine, i.e., Article II, §3 of the Constitution:  service to the CCE to extort small publicly traded companies of more than $25 billion (USD) while conspiring with fugitive Thomas Badian, and **convicted felon** Edward D. Grushko, Esq.

4.          Judge Kearse wrote the August 18, 2009 Opinion while knowing that the Executive Branch had on November 7, 2008 notified the Second Circuit Racketeers to cease all actions in regard to 1115 and reverse the sentence and conviction of Mr. Ware for insufficent evidence, i.e., the United States    agreed    its trial proof on the factual elements of (a) market efficiency and (b) materiality was insufficient at trial of Mr. Ware in 1115, and conceded the issues and abandoned 1115 pursuant to its exclusive constitutional authority contained in Article II, §3 ("to take care for the faithful execution of the laws of the United States"). Cf. 78th Federalist written by Alexander Hamilton.

          Judge Kearse was hired by the Government Racketeers and others known and unknown to write the bogus and fraudulent August 18, 2009 Opinion **after** the Executive Branch and the DOJ had abandoned 1115 on November 7, 2008, and notified the Second Circuit Racketeers to reverse Mr. Ware's conviction and sentence for **insufficient evidence.**

          Judge Kearse did in fact accept the assignment on behalf of the CCE, and did in fact write the fraudulent and bogus Opinion located at 577 F.3d 442 (2d

(2)

4/2/2012

Cir. 2009) while conspiring and racketeering with the Second Circuit Racketeers, the Government Racketeers, and others persons and entities known and unknown as part of the CCE.

5.      Judge Kearse, the Government Racketeers, the SEC lawyers, and others known and unknown all knew the statements written in the Opinion by Judge Kearse were all false, fabricated, and manufactured to fraudulently convict Mr. Ware for not joining the CCE and extorting his client (GPMT, a publicly traded company) of +$18 million in free-trading securities by issuing the plaintiffs in 2219 fraudulent Rule 144(k) opinions opining the 2219 plaintiffs were not 15 USC §77b(a)(11, 12) statutory underwriters and dealers, respectively, of GPMT's securities.

Judge Kearse, and the members of the CCE all knew that the 2219 plaintiffs had on March 20, 2002 in the 2219 complaint (Dkt. #1 at ¶¶10-21) **judicially admitted** to in fact being statutory underwriters and dealers of GPMT's securities, and thus judicially admitted to being ineligible for Rule 144(k) or any statutory exemption from Section 5 of the 1933 Act.

Judge Kearse at all times after March 20, 2002 knew that the 2219 plaintiffs, **fugitive** Thomas Badian, **convicted felon** Edward D. Grushko, Barbara R. Mittman, District Judge Leonard B. Sand, District Judge Robert W. Sweet, U.S. Attorney David Kelly, and others known and unknown were in fact operating the CCE from within the U.S. Attorneys Office (SDNY) and the federal courts in New York, NY, Las Vegas, NV, Atlanta, GA, and elsewhere extorting publicly traded companies in violation of 18 USC §§2, 4, 201, 241, 242, 371, 891-94, 1201-02, 1343, 1346, 1505, 1510, 1621-23, 1956-57, 1961-64; 15 USC §§77e(a, c), 77x, 78o(a), 78j(b), 78ff, 17 CFR §240.10b-5, and other criminal statutes.

## II.

1.      Judge Kearse in desperation to appease the members of the CCE and secure her portion of the **"Loot"** (estimated at $25 billion (USD)) on or about August 18, 2009 in fact knowingly, willingly, and intentionally, with malice aforethought in intentional violation of 28 USC §46 (b, c) -- while lacking a "case" or "controversy" in regard to 1115 after the November 7, 2008 Article II, §3 Executive Branch prosecutorial Double Jeopardy Political Decision made by the OSG on behalf of President George W. Bush -- had the Second Circuit publicly publish the Opinion containing known lies (577 F.3d at 447-451) regarding the press releases of Investment Technology, Inc., ("INZS") and Service Systems International, Inc., ("SVSY").

(3)

2.          Judge Kearse, the Second Circuit Racketeers, the Government Racketeers, and others known and unknown all knew the statements written by Judge Kearse were false, fabricated, and manufactured, because the members of the CCE (the SEC lawyers) provided a copy of the SEC's 0831 complaint filed on July 14, 2003 admitting at ¶¶30, 31, and 33 there was not securities fraud in regard to INZS; and also the USAO knew as a result of possessing SEC counsel Norris' emails to 1115 codefendant Jeremy Jones, the SEC had already concluded (**Brady and Giglio** evidence) that Jones was not involved in any conspiracy with Mr. Ware.

          Judge Kearse and the Second Circuit Racketeers entered the August 18, 2009 Opinion as the opinion of a federal court knowing they lacked all subject matter jurisdiction to review President Bush's Article II, §3 prosecutorial political decision entered by President Bush's Attorney General's or Solicitor General on November 7, 2008 notifying the Second Circuit's Racketeers and the Government Racketeers to immediately terminate 1115, reverse and vacate the conviction and sentence of Mr. Ware, and dismiss the 1115 indictment with prejudice. Cf. P. 2* in the USA's response brief filed in U.S. v. Ware, 07-5222-CR (Ex. #1 attached).

          Judge Kearse, the Second Circuit Racketeers, the Government Racketeers, and others known and unknown all knew that the Second Circuit **after** President Bush's Attorney General or Solicitor General on November 7, 2008 decided to terminate 1115 for insufficient evidence (the Double Jeopardy Political Decision) lacked all lawful authority (28 USC §46 (a-d)) to review the unreviewable nonjusticiable November 7, 2008 Article II, §3 Double Jeopardy Political Decision made by the Executive Branch of the United States government pursuant to its enumerated exclusive constitutional prerogative.   CF. Baker v. Carr, 369 U.S. 186 (1962) (Article III courts of appeal lack all subject matter jurisdiction to review a political decision of the Executive Branch regarding criminal prosecutions); United States v. Nixon, 418 U.S. 683, 693-94 (1974) (Executive Branch's prosecutorial decisions are not reviewable by the federal courts (the Second Circuit Court of Appeals)).

## III.

1.          There is no doubt that Judge Kearse is a criminal, a fraud, and a racketeer, evident by the decision in a recent Second Circuit case, where Judge Kearse sat on the panel, U.S. v. Ferguson, 653 F.3d 61 (2d Cir. 2011).

          In the Ferguson case Judge Kearse was again faced with the exact same issues presented by Mr. Ware in his appeal: The introduction of government trial exhibits displaying in bar and line graph purported evidence of materiality, established that press releases **"caused"** the stock price to rise or to fall.

(4)

4/2/2012

2.       In Ferguson, the Second Circuit Racketeers consisting of Chief Judge Dennis G. Jacobs, Circuit Judge Kearse, and Circuit Judge Straub, decidedly reject, Id. at 75, the United States' contentions and arguments, and reversed and vacated the convictions and sentences of the AIG defendants (all Caucasians).

      Chief Judge Jacobs bent over backward to find a way out for the AIG defendants (who indoubtedly paid a king's ransom_ to the Second Circuit's Racketeers) finding that "the substantial rights" of the AIG defendants were violated by the district judge in admitting into evidence bar charts which were "functionally equivalent", to the line charts the district court rejected as "overly prejudicial", Id.

      Therefore, let's take a looksy at government trial exhibits (GX-92, and GX-93 series) allowed into evidence by a member of the CCE, District Judge William H. Pauley, III, entered throught government witness FBI analyst Maria Font, on direct examination by former AUSA Alexander H. Southwell in April 2007 at trial in 1115.

      First, the USAO's purported "stock-price" chart evidence allowed into evidence (GX-92 and GX-93 series) included both line and bar graphs purporting to show the rise and fall of INZS and SVSY's stock price, allegedly resulting from press releases prepared by Mr. Ware.

      Let's not forget the SEC had in or before July 2003, via FBI SA David Makol (cf. Norris' October 4, 2005 affidavit filed in 0831 at Dkt. #95) informed the USAO, the Second Circuit Racketeers, and the Government Racketeers, in the 0831 complaint at ¶¶30, 31, and 33, the INZS press releases had no affect on INZS' stock price: There was not securities fraud regarding INZS.

      Yet U.S. Attorney Michael J. Garcia, and AUSAs Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, and Andrew L. Fish, introduced into evidence in a federal court chart evidence known to be false, fabricated, and manufactured, while conspiring with FBI analyst Maria Font, in service to the CCE to frame Mr. Ware for not willfully violating the federal securities law and issuing fraudulent Rule 144(k) legal opinions to the 2219 plaintiffs to extort GPMT of +$18 million in free-trading securities and +$500 million in market capitalization, claiming there was securities fraud, but that issue was collaterally estopped by the SEC's judicial admissions made at ¶30, 31, and 33 in the SEC's 0831 complaint in July 14, 2003 (Dkt. #1).

      But get this, the USAO conceded on October 12, 2007 (S. Tr. 30-40) via one of if not the most incompetent federal prosecutor of all time, former AUSA Steven D. Feldman, the press releases of INZS and SVSY did not have any affect on their stock price because the market were not efficient which District Judge Pauley

(5)

4/2/2012

agreed in total that the USAO did not prove beyond a reasonable doubt at trial
the markets for INZS and SVSY were in fact efficient,(i.e., the INZS and SVSY
press releases were material), and ordered a Fatico hearing for October 26, 2007
"on among other things the efficiency of the market." (quoting District Judge
Pauley at S. Tr. 30-31 on October 12, 2007).

3.      Under normal circumstance -- where a CCE is not in operations -- the judge
finding the United States did not meet its burden of proof beyond a reasonable
doubt (required by the Due Process Clause of the Fifth Amendment, cf. In re Winship)
would have ended 1115 with a Rule 29(c) directed verdict of acquittal, but not
in 1115.

        Judge Pauley, rather than directing a Rule 29(c) verdict of not guilty based on the trial
judge's own findings the United States did not meet its burden of proof on market
efficiency and materiality, ordered set for  October 26, 2007 (S. Tr. 39-40) a
Fatico evidentiary hearing allowing the United States to come forth **after** trial
and offer evidence on **its trial burden of proof** (a) market efficiency and (b)
materiality, bordered on the insane, violated the Double Jeopardy Clause, and
violated Art. II, §3 of the Constitution -- a **'judicial prosecution'** on behalf
of the Second Circuit Racketeers; and violated 28 USC §516 where District Judge
Pauley and the Second Circuit Racketeers usurped the exclusive authority of
the DOJ as the exclusive agent of the USA to conduct criminal litigation in
federal courts.

4.      District Judge Pauley by, on October 12, 2007 (S. Tr. 30-31, 39-40),
ordering a Fatico evidentiary hearing on the United States factual trial elements
of proof, made a judicial finding (October 26, 2007 S. Tr. 73-76) that the United
States did not present evidence beyond a "reasonable doubt" at trial in 1115 on
"among other things efficiency of the market" (quoting District Judge Pauley,
October 12, 2006 at S. Tr. 30-31): "Functionally equivalent" to an acquittal,
U.S. v. Lynch, 162 F.3d 732, 735 (2d Cir. 1998),   else   why   have   a   Fatico
evidentiary hearing?

5.      District Judge William H. Pauley, III did without a shadow of any doubt,
on October 12, 2007 at 3:30 PM in New York, NY acquit Mr. Ware of all charges
in 1115, double jeopardy attached on October 12, 2007 at 3:30 PM, and 1115 was
dismissed with prejudice on October 12, 2007 by the ruling of the trial judge
on factual elements of the United States trial proof (market efficiency and
materiality), a ruling favorable to Mr. Ware. Lynch, Id. at 735.

        But now, Judge Pauley to cover up the criminality committed by the Second
Circuit Racketeers, the Government Racketeers, the SEC lawyers, and others known

(6)

4/2/2012

and unknown, including William P. Smith, III, Jonathan Hewett, District Judge Thomas W. Thrash, Jr., Magistrate Judge Linda T. Walker, District Judge Orinda D. Evans, District Judge Julie E. Carnes, James N. Hatten (district clerk N.D. GA), Justice George H. Carley (Supreme Court of Georgia), William A. Myers, Bankruptcy Judge Margaret H. Murphy, Dennis S. Meir, John W. Mills, III, Edward T. M. Garland, Manny Arora, Gary G. Becker, Michael F. Bachner, Marlin Kirton, Cathleen Tyler, Maria Font, David Makol, Jeremy Jones, Carlton Epps, Charles H. Jackson, Rick Sadler, Myron Williams, Michael McAulieff, and others, all conspired with the Second Circuit Racketeers in performing racketeering activities in furtherance of the CCE, did on August 12, 2012 (Dkt. #149:1115), lacking all subject matter jurisdiction in 1115 after October 12, 2007, or August 18, 2009, entered a fraudulent remand order purporting to find Mr. Ware guilty of a sentencing enhancment (cf. U.S. v. Ware, 415 Fed. Appx. 259, 261 (2d Cir. 2011 January 28, 2011) opinion).

6.      District Judge Pauley, and the Second Circuit Racketeers knew all subject matter jurisdiction was terminated over 1115 on October 12, 2007 once Judge Pauley (S. Tr. 30-31) ordered a Fatico evidentiary hearing on factual elements of the United States' trial proof by the trial judge: A finding the United States did not meet its trial burden of proof "beyond a reasonable doubt" and an acquittal of Mr. Ware of all charges in 1115; however, nevertheless, entered another fraudulent federal court order to cover up the crimes committed by the CCE in kidnapping Mr. Ware on November 26, 2007 on motion by Michael J. Garcia, and ordered by another member of the CCE, District Judge Robert W. Sweet, regarding the CCE's fraudulent prosecution in U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224") -- fraudulent indictment for not issuing fraudulent Rule 144(k) opinions.

        Thus, the billion dollar question must be posed: How was it possible the jury in 1115 allegedly found Mr. Ware guilty "beyond a reasonable doubt" on April 30, 2007, when on October 12, 2007, the trial judge (William H. Pauley, III) at S. Tr. 30-31, 39-40, found the United States' proof insufficient "on among other things the efficiency of the market"; and how was Mr. Ware found guilty beyond a reasonable doubt, when the Office of the Attorney General of the United States on November 7, 2008 agreed with Mr. Ware's contentions and arguments that the United States trial proof was insufficient on (a) market efficiency and (b) materiality, and informed the Second Circuit Racketeers the United States was terminating 1115, and to reverse and vacate Mr. Ware's conviction and sentence immediately?

7.      Obviously, Mr. Ware was not found guilty by the 1115 trial jury -- Judge Pauley, Michael J. Garcia, Alexander H. Southwell fabricated the October 30, 2007 judgment of conviction (Dkt. #96:1115), the "Kidnapping Judgment" in violation

(7)                                    4/2/2012

18 USC §§2, 4, 201, 241, 242, 371, 1201-02, 1343, 1346, 1621-23, 1956-56, and 1961-64, to have Mr. Ware kidnapped on November 26, 2007 by the U.S. Marshals in New York, NY to silence Mr. Ware's voice against the CCE; and to permit the CCE to continue to function, under the cloak of the Executive Branch's threat of criminal prosecution to anyone who challenged the CCE and refused to issue fraudulent Rule 144(k) legal opinions to the clients of Ari Rabinowitz, Kenneth A. Zitter, Esq. Edward D. Grushko, Esq., Barbara R. Mittman, (Grushko & Mittman, P.C. -- a purported law firm), and Ladenburg Thalmann & Co., Inc. (the New York City investment bank).

## IV.

1.          Once 1115 arrived in the Second Circuit, the Second Circuit Racketeers immediately went to work to violate all Mr. Ware constitutional rights: Circuit Judge Peter W. Hall denied a motion by Mr. Ware, while at the MDC BOP facility in Brooklyn, NY, for access to a typing ribbon, and access to the law library to prosecute Mr. Ware's direct appeal (07-5222-Cr) of the fraudulent October 30, 2007 (Dkt. #96) fraudulent judgment of conviction; and denied Mr. Ware bail on numerous applications while in the MDC pending appeal where District Judge Pauley had already acquitted Mr. Ware on October 12, 2007 of all charges in 1115 (S. Tr. 30-31).

Mr. Ware ended up having to submit the 07-5222-CR appeal written by hand on notebook paper due to being effectively denied access to the courts by the Second Circuit Racketeers to cover up the acquittal of Mr. Ware.

The Second Circuit Racketeers on November 5, 2010 entered a "leave to file" order, in a **criminal** proceeding to shut the doors to the Second Circuit the same as did the former governor of Alabama (George C. Wallace) did at the University of Alabama shouting "Segregation today, and segregation forever." (emphasis added).

However, the Second Circuit Racketeers did not pay attention to detail: The November 7, 2008 Article II, §3 Double Jeopardy Political Decision by the Department of Justice on behalf of President George W. Bush, stripped, butt naked, the Second Circuit of **all subject matter jurisdiction and authority** (28 USC §46 (a-d)) to enter any orders or judgments in 07-5222-Cr and 07-5670-Cr (XAP) -- "the Emperor has on no clothes."

Accordingly, since November 5, 2010 the Second Circuit has been in emergency mode trying every judicial trick in its arsenal (refusing to file pleadings submitted to the court, refusing to grant Mr. Ware bail, refusing to dismiss the 1115 indictment, refusing to recall the mandate in 07-5222-Cr (the August 18, 2009 Opinion, etc.).

(8)                                                    4/2/2012

2.        Emergency mode was required once the scam came out into the open, Circuit
Judge Peter W. Hall (the junior judge on the 07-5222, 07-5670-CR (XAP)), and the
former U.S. Attorney for the District of Vermont, has been the shearhead of the
frauds committed by the Second Circuit Racketeers.

In fact, after having a private investigation conducted of Circuit Judge
Peter W. Hall, it was discovered that in each and every case, 100% of the time,
whenever either Ari Rabinowitz, Kenneth A. Zitter, Esq., or LH Financial appears
before the Second Circuit, Circuit Judge Peter W. Hall always appears    on the
panel reviewing the case -- a statistical impossibility.

For example, Circuit Judge Hall appeared on the 07-5222-Cr appeal of the
fraudulent 1115 judgment; and Circuit Judge Hall shifted gears, and not missing a
beat, showed up in the appeal of 1224 (Ari Rabinowitz and Kenneth A. Zitter were
witnesses in 1224 for the USAO) to protect the interests of the CCE.

Now if you think the 1115 case was fraudulent, wait to you see the 1224
proceedings:    The    indictment    in    1224    did    not    even    charge    a    criminal
**offense** against the laws of the United States, which one would have thought the
former U.S. Attorney for the District of Vermont (Circuit Judge Hall) would have
certainly known it is actually against the law (15 USC §77x, 78ff) to issue
fraudulent Rule 144(k) legal opinions to the 2219 plaintiffs to aid and abet an
unregistered public offering of GPMT's restricted securities, especially when
Zitter pled the 2219 plaintiffs out of court (cf. ¶¶10-21 of the 2219 complaint
(Dkt. #1)), **judicially admitting,** the 2219 plaintiffs were in fact Section
2(a)(11) statutory underwriters; and Ari Rabinowitz testified under oath at trial
in 1224 (Tr. 204-06) Alpha Capital, AG was an unregistered dealer (a violation
of 15 USC §78o(a)) of GPMT's securities, which is a criminal offense, which
invoked 15 USC §78cc(b) and voided all the 2219 plaintiffs' interests in the
contracts at issue in 2219 and the criminal prosecution 1224 -- both 2219 and
1224 became moot as result of Rabinowitz's testimony in 1224 (Tr. 204-06).

Rabinowitz's 1224 trial testimony, and the 2219 complaint's judicial
admissions made by Kenneth A. Zitter, Esq. (one of the most incompetent lawyers
in the United States, along with District Judge Leonard B. Sand, one of if not
the most incompetent district judge in the United States, and David Kelly,
Michael J. Garcia, and Preet Bharara, three of the most incompetent federal
prosecutors of all time, an explosive mix of incompetence) mooted the 1224
indictment as a matter of law -- Mr. Ware was factually innocent of all charges
in 1224: It is not an **offense** against the laws of the United States for a
securities lawyer to not issue fraudulent 144(k) legal opinions to admitted
Section 2(a)(11, 12) statutory underwriters and dealers, respectively.

(9)

3.        Therefore, lacking an **offense** against the laws of the United States, very
serious consequences are imposed on Circuit Judge Hall, Circuit Judge Katzmann,
District Judge Barbara S. Jones (sitting as a member of the CCE), District Judge
Robert W. Sweet, David Kelly, Michael J. Garcia, Preet Bharara, and Thomas J.
McCarthy, (the "1224 Racketeers"), and others.

        Congress circumscribed the authority of a United States attorney by federal
statute in 28 USC §547(1). A United States attorney's authority is limited to
(a)prosecuting **offenses** against the laws of the United States, (b) which occurred
in his district (SDNY for the purpose of 1224, alleged).

        Furthermore, a federal district court's jurisdiction in a <u>criminal</u>
proceeding is also regulated by statute, 18 USC §3231, which also requires an
**offense** against the laws of the United States before the 1224 district court was
authorized to <u>accept</u> any evidence in 1224, and before the USAO was authorized
to seek an indictment, or present any evidence to a court in 1224.

4.        On August 12, 2010, Preet Bharara (the current U.S. Attorney (SDNY)), and
his chief of appeals AUSA Katherine Polk-Failla (purportedly a cum laude graduate
of Harvard Law School) conceded and admitted that the 1224 indictment did not
charge an **offense** against the laws of the United States, and further necessarily
agreed: (1) the USAO violated federal law in first <u>seeking</u> an indictment in 1224;
(2) the USAO violated federal law in <u>presenting</u> evidence in 1224; (3) the
District Judge Robert W. Sweet violated federal law by allowing the USAO to
present evidence in 1224; and (4) the 1224 district court was not authorized to
enter any <u>conviction</u> or <u>sentence</u> in regard to 1224, lacking an **offense** against
the laws of the United States.

        Which raises an interesting conundrum: If the SEC's lawyer Jeffrey B.
Norris testified on behalf of the SEC for the USAO in 1224, and the USAO has
conceded the 1224 indictment did not charge an **offense** against the laws of the
United States, did Norris' perjurious fraudulent testimony in 1224 impose
civil monetary liability on Norris' supervisors at the SEC in the amount of +$5.0
billion, jointly and severally with the Second Circuit, and Government Racketeers?

        The obvious answer is yes. Why? Because Norris and the SEC lawyers all
knew that SEC Release 33-7190 (1995) required the 2219 plaintiffs to <u>register</u>
<u>all distributions</u> of GPMT's securities pursuant to Section 5 of the 1933 Act;
and therefore, the SEC lawyers also knew that for a securities lawyer (Mr. Ware)
to not issue Rule 144(k) (2003) legal opinions to admitted Section 2(a)(11)
statutory underwriters and dealers (the 2219 plaintiffs) was not an **offense**
against the laws of the United States, and Norris was not authorized to present

(10)                                              4/2/2012

testimony in which neither the (a) the USAO was authorized to present Norris' testimony, nor (b) was the 1224 district court authorized to accept Norris' testimony, per 28 USC §547(1) and 18 USC §3231, respectively.

5.      On or about March 2, 2012 the Second Circuit Racketeers consisting of Circuit Judges Hall, Katzmann, District Judge Barbara S. Jones, and "a [single unindentified] Circuit Judge" did in fact enter an ultra vires order purporting to deny Mr. Ware's "leave to file" motion submitted in 11-2151-CR (2d Cir.), the appeal of 1224, claiming that "law of the case" prevented the Second Circuit criminals from reviewing 11-2151-Cr, and citing the inapposite cases of U.S. v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001), and U.S. v. Quintieri, 306 F.3d 1217, 1227 (2d Cir. 2002).

First, it is axiomatic that "law of the case" applies in later stages of the **same** case. Quintieri, Id. at 1230 citing the Second Circuit case of U.S. v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991) (same).

It is further axiomatic that a civil appeal (03-7973-CV (2d Cir.)) is a **different** "cause of action" than the criminal proceedings in 1224, i.e., not the **same** case, to which the Second Circuit Racketeers, reaching for straws, and desperately attempting to hang on by their fingernails, slowly are slipping below the waves into the abyss, attempted to convert the civil appeal in 03-7973-Cv into a criminal case to invoke collateral estoppel to not dismiss the 1224 indictment -- a futile attempt. Cf. Dkt.#146 filed in 0831, and U.S. v. Meza-Soria, 935 F.2d 166, 168-69 (9th Cir. 1991)(findings in a civil cause of action are not collateral estoppel in a subsequent criminal cause of action, i.e., the burden of proofs are not the same).

However, the ruling on March 2, 2012 that "law of the case" prevented the 11-2151-Cr panel from reviewing the issues in 11-2151-Cr, even assuming, arguendo, the panel possessed subject matter jurisdiction, necessarily also held that 2219 being the same case as 1224 (required for "law of the case" to apply) rendered 2219 a criminal case, else "law of the case" as a matter of law cannot apply. Christianson v. Colt Industries, 486 U.S. 800, 816 (1988).

Thus, the March 2, 2012 ruling of the Second Circuit Racketeers moved the Court into checkmate: If 2219 is the same case as 1224 -- as ruled by the March 2, 2012 order -- then Mr. Ware was criminally punished twice for the same offense (assuming, arguendo, the 1224 indictment charged an **offense**, which it did not as was conceded on August 12, 2010 by Preet Bharara and Katherine Polk-Failla), checkmate by Mr. Ware against the Second Circuit Racketeers!

(11)

6.        The Second Circuit Racketeers, unwittingly, entered the risible March 2, 2012 order in U.S. v. Ware, 11-2151-Cr, predicated on the Second Circuit Racketeers orders entered on July 21, 2009, September 11, 2009, and November 13, 2009, (the "Bogus Indictment Orders"), notably, the Second Circuit Racketeers in the November 13, 2009 order stated the foolish and risible conclusion in regard to Mr. Ware's April 2009 motion to dismiss the bogus 1224 indictment:

> "As stated in our July 21, 2009 order, the Appellant [Mr. Ware's] motion to dismiss his indictment [in a criminal case] was barred by the law of the case doctrine. Under that doctrine, "'a decision made at a previous state of litigation, which could have been challenged in the ensuing appeal [03-7973-CV] but was not, became the law of the case ... [and] the parties are deemed to have waived the right to challenge that decision." United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001). (emphasis added).

Later in the same risible order the Second Circuit Racketeers erroneously explained, as part of the plan and scheme to kidnap Mr. Ware:

> "However, because [Mr. Ware] could have -- but failed to [because GPMT was under the protection of 11 USC §362(a) which stayed all proceedings in this court] -- raise this challenge [in the civil appeal] to the [2219 plaintiffs' contractual] agreements [which 15 USC §78cc(b) prohibited the court from enforcing due to the admitted securities laws violations pled in the 2219 complaint at ¶¶10-21] in his [civil] appeal to this Court of the [2219] district court's judgment [Dkt. #54, which Alpha's 12/20/2007 Rule 41(a)(2) voluntary dismissal annulled and vacated] ... that judgment [Dkt. #54:2219] determined that the loan agreements [which §78cc(b) voided] were enforceable became the law of the case [in the civil proceeding], such that [Mr. Ware] is now [erroneously] precluded from challenging that [civil] decision" in this criminal proceeding. (emphasis added).

The above language was taken directly from the Second Circuit's November 13, 2009 bogus and counterfeit order: Undoubtedly, one of, if not the most comical order ever entered by a circuit court of appeals.

For example the Second Circuit Racketeers commented that Ben Zvi, Id. at 95 was the principle of law used to block dismissal of the 1224 indictment in a **criminal** proceeding where the standard of proof is "beyond a reasonable doubt" in a completely different 'cause of action' than the **civil** 03-7973-CV appellate proceeding.

Therefore, let's take another looksy at exactly what Ben Zvi said.

First, Ben Zvi, Id. at 92-93, was an appeal from an earlier decision of the Second Circuit, most importantly, an earlier appeal in Ben Zvi, rather than a different civil case, with a different standard of proof, attempting to collateral estop a

defendant in a criminal case, i.e., Ben Zvi, is clearly inapposite to the situation before the Second Circuit Racketeers in 09-0851-Cr.

Second, Ben Zvi, actually cited two cases, Id. at 96, (1) Suffolk v. Stone & Webster Eng'r Corp., 106 F.3d 1112, 1117 (2d Cir. 1997) (J. Kearse), and (2) U.S. v. Bell, 988 F.2d 247, 250 (1st Cir. 1993) for the proposition of law that "law of the case" only applied in the same case.

Of the two, Bell, supra, Id. at 250, is most instructive for the appropriate application of the doctrine explaining:

> "The black letter rule governing this point is that a legal decision made at one stage of a civil or criminal case, ... becomes the law of the case for future stages of the same litigation[.]" (emphasis added).

Thus, it is exceptionally clear the Second Circuit's dubious interpretation of the doctrine is unsupported in law or in fact, and was an ad hoc attempt to save the scam from coming unravelled by obviously dismissing the 1224 indictment and imposing civil liability on the Government Racketeers, District Judge Sweet, David Kelly, Michael J. Garcia, and others who participated in the CCE.

Common sense should have alerted the Second Circuit to the futility of its mischief, yet hubris and avarice, and an unabated institutional culture of racism, prejudice, gluttony, and criminality forged the catalyst for the Second Circuit to cross the judicial Rubicon, and forever, taint the reputation, credibility, and integrity of the Court, forever. Cf. U.S. v. Manton, 107 F.2d 834, 840-44 (2d Cir. 1939) (Senior Circuit Judge Manton convicted of conspiracy in accepting payoffs from lawyers to fix cases before the Second Circuit Court of Appeals).

I hereby challenge the Second Circuit Court of Appeals to present just one (1) case in the history of the United States where "law of the case" has been used to collaterally estop a defendant in a criminal case by a ruling in a civil proceeding, from challenging a ruling in the criminal case.

As a result of the necessary implications of the November 13, 2009 order, and the Bogus Indictment Orders, the Second Circuit now finds itself in a deplorable lamentable position: (1) on the one hand the Second Circuit Racketeers have pledged their unyielding support to the CCE, and the lure of lacre; yet on the other (2) the "cat is out the bag" so to speak regarding the plan and scheme to operate the CCE from within the federal courts and the federal prosecutors' offices.

I would lay a heavy bet, that as soon as one indictment is returned, there will be an all out dash to the prosecutors' offices to plea bargain, and tell everything on everyone involved: The ideal candidate for the first indictment,

4/2/2012

is yours truly, District Judge William H. Pauley, III, Circuit Judges Kearse, Hall, Sack, Katzmann, Barbara S. Jones, Leonard B. Sand, Robert W. Sweet, David Kelly, Michael J. Garcia, and Preet Bharara.

I guarantee that if Judge Pauley is indicted, the entire operations will be laid bare in his plea bargain to save himself from a life sentence, guaranteed!

## CONCLUSION

This memorandum of law has laid the CCE's operations out in plain view for the public and every person to see exactly the level of corruption currently in existence in the federal courts, and in the federal prosecutors' offices.

An incestuous relation governs the judiciary and the federal prosecutors' offices: former prosecutors become judges, and former judges become lawyer/ partners in a cesspool of cronyism and favoritism to obstruct the administration of justice.

Just one example of the cronyism is the office of the district clerk, purportedly run by Ruby Krajick (SDNY).

Apparently Krajick has never heard of the First Amendment right of access to public records, the same as James N. Hatten (district clerk N. D. GA – Atlanta) who both have adamantly refused the First Amendment right of access to Mr. Ware to access pleadings in matters before the courts in those districts.

However, there is a remedy for the recalcitrance, a 42 USC §1983 Bivens action seeking monetary damages for the willful violation of the First Amendment right of access to court records.

The Second Circuit Court of Appeals is a criminal enterprise masquerading as a federal appeals court; and is currently conducting racketeering activities as defined in 18 USC §1961(A) robbing unsuspecting litigants who do not have the millions necessary to buy a favorable "opinion" from Circuit Judges Jacobs, Hall, Pooler, Parker, Raggi, Wesley, Straub, Katzmann, Kearse, and other select district court judges who under Chief Judge Jacobs' appointment power sit as appellate judges raking in millions in extortion fees to render a favorable ruling after a trumped up prosecution by the United States Attorney, arranged and promoted to shake-down persons with the means to buy certain law firms in New York (Prokauser & Rose, LLP, the culprit in the 2219 litigation who purported to represent GPMT, however, Thomas V. Sjoblom intentionally dropped the ball) to earn a favor in a big case from the Second Circuit, e.g., cf. U.S. v. Ferguson, 653 F.3d 61 (2d Cir. 2011).

(14)

Second, District Judge William H. Pauley, III's October 12, 2007 (S. Tr. 30-31) ruling the United States' trial proof was insufficient on the factual elements of the United States' burden, (1) market efficiency and (2) materiality, and the ordering of the Fatico evidentiary hearing (S. Tr. 39-40) set for "October 26th at 3:00 [PM]", was an acquittal of Mr. Ware of all charges in 1115, double jeopardy attached on October 12, 2007 at 3:30 PM in New York, NY, terminating 1115 with prejudice.

In open court on October 12, 2007 at approximately 3:12 PM District Judge Pauley abruptly stopped the purported sentencing proceedings "for the benefit of the Court and the court reporter. We will reconvene in 10 minutes." (quoting District Judge Pauley Oct. 12, 2007 at S. Tr. 31 L 14-15).

Upon "reconven[ing]" District Judge Pauley made the following comments in open court S. Tr. 31 L 17-25:

Judge Pauley: Before Mr. Ware proceeds with his argument, I would like to make an inquiry of the government [AUSA Steven D. Feldman].

> Mr. Ware has requested a Fatico hearing. Let me put it to the government this way: Does the government want to proceed with sentencing and put aside restitution? If the government wants to press for restitution then I [District Judge William H. Pauley, III agree with Mr. Ware's contentions and arguments that the government's proof at trial was insufficient,] think we should have a Fatico [evidentiary] hearing concerning among others things the efficiency of the market." (emphasis added), (the "Fatico Decision").

The above ruling, the Fatico Decision, made by the trial judge (Pauley) on factual elements of the government's trial proof, favorable to Mr. Ware, was an acquittal of all charges in 1115. U.S. v. Lynch, 162 F.3d 732, 735 (2d Cir. 1993); a ruling the government's proof was not "beyond a reasonable doubt."

Judge Pauley's Fatico Decision was made after hearing the trial testimony of the government's only witness (FBI analyst Maria Font) on the issue of materiality (S. Tr. 51-58, 61), and the government's non-expert witness on the "overly prejudicial" stock-price "charts" (quoting Ferguson, 653 F.3d at 75) which prejudiced Mr. Ware's "substantive rights" by the court admitting the government chart evidence, additionally requiring the conviction and sentence to be reversed and vacated. Ferguson, 653 F.3d at 69, 75. Cf. GX-92, GX-93 series.

On October 12, 2007 (S. Tr. 35 L 3-8) District Judge Pauley and AUSA Feldman (who was completely over his head regarding advanced securities laws, the same as District Judge Pauley) had the following angry exchange in open court:

Judge Pauley: Where is the [government's] proof in this case of an efficient market in these stocks [INZS and SVSY]?
AUSA Feldman: Your honor -- [Judge Pauley angrily cutting off AUSA Feldman].

(15)

4/2/2012

Judge Pauley: Just point to me [in the trial record] the [government's] proof of an efficient market and that these stock [INZS and SVSY] that they weren't thinly traded. (emphasis added).

The above passage clearly proved that Judge Pauley rejected in total the government's risible contentions and arguments futilely advanced by former AUSA Feldman (who resigned from the USAO rather than be humiliated by the reversal of 1115), and accepted Mr. Ware's contentions and arguments regarding the insufficiency of the government's **trial** proof.

Approximately three (3) minutes later on October 12, 2007 at 3:16 PM, AUSA Feldman capitulated and did in fact concede that the government's trial proof was insufficient (S. Tr. 36 L 11-23): judicial estoppel binding on all courts (including the Second Circuit Court of Appeals, the Supreme Court of Georgia, the District Court (N.D. GA), and others).

Judge Pauley: If the government is advancing a fraud on the market theory, then the government should be able to prove the elements [(materiality, market efficiency), etc.] of a fraud on the market theory. That is what a [Fatico evidentiary] hearing would be about.

AUSA Feldman: Your Honor, if that is your holding [a judicial ruling in Mr. Ware's favor on factual elements of the government's trial burden of proof] ... I know we [the USAO] are not going to be able to meet that burden [of proof] ... I know I cannot meet it [and I don't know why we brought this bogus case to trial[.] (emphasis added).

So there you have both the trial judge (Pauley) and the AUSA Feldman, who tried the case with AUSA Southwell (who resigned immediately after trial) agreeing that (a) the government did not at **trial** meet its burden of proof "beyond a reasonable doubt", and (2) the prosecutor who tried the case agreeing that even **after** trial the government still cannot meet its **"burden"** of proof.

Again the billion dollar conundrum is posed:

Exactly how was Mr. Ware purportedly found guilty by a jury "beyond a reasonable doubt" on April 30, 2007, when on October 12, 2007 both the trial judge (Pauley) and the government's trial lawyer (AUSA Feldman) both agree that the government did not meet its burden of proof at trial, and "I [AUSA Feldman] know I cannot meet it [even now **after** trial]." (emphasis added).

If the trial judge (Pauley) made a "holding" on October 12, 2007 (S. Tr. 36 L 15), in Mr. Ware's favor, on a factual element of the government's trial proof ("among other things the efficiency of the market"), exactly what was Mr. Ware convicted of by the jury who heard the exact same evidence as Judge Pauley, and AUSA Feldman?

AUSA Feldman's admissions are proof the USAO did not have probable cause to even seek an indictment in 1115, evident by AUSA Feldman's admission: "I know

(16)

I cannot meet [our burden of proof]."

Therefore, if the USAO knew after trial, and Judge Pauley also knew during trial the government's proof was not met "beyond a reasonable doubt", then why did Judge Pauley not, sua sponte, grant a Rule 29(c) directed verdict of acquittal on behalf of Mr. Ware? Corruption is the reason why.

Furthermore, the USAO knew that it could not meet its trial burden of proof "beyond a reasonable doubt", which is clearly both **Brady** and **Giglio** evidence, newly discovered evidence not available at trial -- Brady and Giglio evidence intentionally suppressed by the USAO and the trial judge (Pauley) to frame Mr. Ware, and have Mr. Ware convicted for not joining the CCE run from within the USAO and Judge Pauley's courtroom.

AUSA Feldman's admission is clearly an admission the USAO violated the Court's May 19, 2006 discovery order (Dkt. #17) entered by Judge Pauley ("This Court will direct the government to produce no later than the Thursday **before** the start of the trial that exculpatory [Brady] material unless the government believes that such early disclosure creates a security risk for a witness[.]" Tr. at P. 5 L 23.

In regard to the Giglio evidence the USAO was ordered to produce, the May 19, 2006 order (the "Discovery Order") at P. 5 L 17-22 ordered the government as follows:

> With respect to Jinx (sic) Act and Giglio material, obviously, that material needs to be produced in time for its **effective use at trial.** It's the government's responsibility to determine when that material should be produced to permit its **effective use.**" (citiation omitted).

## II.

In a recent Wall Street Journal article dated 03/17/2012 by Barry Scheck, Esq. discussing the special investigator (Henry Schuelke's) report of the Brady violations committed by the Department of Justice in former Senator Ted Stevens trial (Ex. #2 attached) commented:

> "The special investigator ... found that Justice Department lawyers committed ethical violations by the deliberate and 'systematic' withholding of critical evidence pointing to [Mr. Ware's] innocence [i.e., the Feldman Admission and the SEC lawyers testimony regarding the 0831 proceedings]."

Mr. Scheck further commented why the special investigator "declined to go further. The reason: There [unlike the May 19, 2006 Discovery Order (Dkt. #17:1115)] was no court order expressly directing the government's lawyers to turn over [Brady and Gigilo] evidence. Criminal [contempt] charges can only be brought

(17)

4/2/2012

when there is a knowing and intentional violation of a[] [court] order [the May 19, 2006 Discovery Order (Dkt. #17:1115) pursuant to Rule 42 of the Fed. R. Crim. Proc.]"

## USAO BRADY VIOLATIONS

Therefore, the USAO's lawyers—who intentionally suppressed the SEC lawyers testimony (Garcia, Southwell, Feldman, Goldin, Fish, Douvas, Bharara, Polk-Failla, (the "DOJ Brady Violators")); who also intentionally suppressed the indisputable facts that the government could not meet its burden of proof at trial as admitted by AUSA Feldman; who also intentionally suppressed the indisputable fact that the press releases of INZS had no affect on INZS' stock price; who also intentionally suppressed the fact that the SEC lawyers (Norris, Barasch, Martin, Hannan, and others) concluded on or before July 14, 2003 that Jeremy Jones and Mr. Ware were not involved in any conspiracy involving INZS, all of the above constituted material exculpatory (**Brady**) evidence—are required to be prosecuted for a direct violation of the May 19, 2006 Discovery Order entered in 1115 (Dkt. #17), i.e., 18 USC §401(3), criminal contempt, where a life sentence is possible according to AUSAs Goldin and Douvas during Mr. Ware's trial in 1224 -- also not a bailable offense according to Douvas, Goldin, and Garcia.

Mr. Ware cites the case of Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir. 2001) as authority that due to the USAO's intentional Brady and Giglio evidence violations, Mr. Ware's conviction and sentence are required to be reversed and vacated, Id. at 97: The USAO intentionally violated the 1115 court's Discovery Order, and prevented Mr. Ware from making any use of the suppressed Brady and Giglio evidence possessed by the SEC lawyers, and possessed by the USAO regarding the proof of the efficiency of the markets for INZS and SVSY -- the Feldman Admissions.

Notwithstanding the admission of the government "stock-price" chart evidence, which violated "substantive rights" of Mr. Ware, and moreover the "stock-price" chart government trial exhibits were all "overly prejudicial" (quoting Ferguson, 653 F.3d at 69, 75), e.g., GX-92, GX-93 series in 1115 relied upon by the Second Circuit Racketeers (Ware, 577 F.3d at 449-51) in entering the bogus ultra vires August 18, 2009 Opinion -- the USAO intentionally filed its motions in limine (11/28/2006 (Dkt. #28) and 12/28/2006) to suppress the testimony of SEC lawyer Spencer Barasch (who bribed District Judge Pauley for the entry of the 01/08/2007 (Dkt. #35: the Barasch Bribe Order)) the Order preventing Mr. Ware "from offering at trial **any** evidence of collusion between the [SEC] and [USAO]." (emphasis added). (quoting Dkt. #35 at P. 1, ¶2).

The SEC has not denied that the Barasch Bribe Order was entered by Judge

Pauley pursuant to the bribe paid to Judge Pauley through Barasch's law firm (Andrews & Kruth, LLP), (the "Firm"), paid via the Firm, which was used as a conduit to commit mail and wire fraud, to Duke University's School of Law, during the pendency of 1115, titled: "Friends of Duke." (Cf. Dkt. #84 in 1115 for details of the Barasch Bribe; Dkt. #122 P. 4-7 in 03-0831-KJD-RJJ (D. NV) for concessions by the SEC regarding the Barasch Bribe Order's purpose).

### III.

MR. WARE'S MISSING RULE 33 MOTION FOR A NEW TRIAL BASED ON THE NEWLY DISCOVERED EVIDENCE (THE FELDMAN ADMISSIONS) FILED IN 1115 ON OCTOBER 7, 2010, BUT NEVER DOCKETED BY THE DISTRICT CLERK AND NEVER RULED ON BY DISTRICT JUDGE PAULEY -- OBSTRUCTION OF JUSTICE AND A FRAUD ON THE COURT.

Mr. Ware filed the Rule 33 Motion for a New Trial in 1115 on October 7, 2008 based on the "newly discovered evidence" (a) the Feldman Admissions, and (b) the new evidence discovered after trial the government conceded the markets for INZS and SVSY were not efficient.

After numerous requests for a ruling on the Rule 33 Motion, Mr. Ware discovered that District Judge Pauley had on August 17, 2011 (Dkt. #178) terminated 1115 stating in Dkt. #178: "This action has been terminated and in the absence of any pending proceedings, these documents will be docketed and no further actions will be ordered."

On August 17, 2011 the Rule 33 Motion had not been ruled on by the court, and thus was "pending"; the Rule 6(e) Motion (Dkt. #161) had not been ruled on by the court, and was also "pending"; the Curcio, Kastigar, Kordel, Franks, Motions; the Motion to Dismiss the Indictment; the Motion for a Special Prosecutor, the Motion to Vacate the Sentence, (the "Pending Motions") were all pending on August 17, 2011 when District Judge Pauley **lied** and committed perjury and obstruction of justice by **lying in a court order** (Judge Pauley is a **two-faced liar**) attempting to obstruct justice to save himself and his cronies from a **life sentence** for racketeering, bribery, perjury (e.g. see Dkt. #178 in 1115 for the **boldface lie told by Judge Pauley** regarding the Rule 33 Motion, and the other Pending Motions). (emphasis added).

District Clerk (Ruby Krajick) intentionally failed to comply with Rule 55 of the Federal Rules of Crim. Proc. and enter an order on the docket in 1115, on each motion ruled on by Judge Pauley, to obstruct justice and prevent Mr. Ware from, obviously, appealing any denial of the Pending Motions: No orders were entered because Judge Pauley **lied** as part of the CCE, and intentionally did not rule on the Pending Motions to prolong his and the Racketeers freedom, and to

(19)

4/2/2012

obstruct justice, impede a criminal investigations of himself, Preet Bharara, Michael J. Garcia, David Kelly, Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Katherine Polk-Failla, Robert W. Sweet, Leonard B. Sand, Ruby Krajick, Dennis G. Jacobs, Peter W. Hall, Reena Raggi, Rosemary S. Pooler, B. D. Parker, Jr., Robert D. Sack, Robert A. Katzmann, David Trager, Stephen Underhill, Barbara S. Jones, Catherine O'Hagan-Wolfe, Kent J. Dawson, Spencer C. Barasch, Jeffrey B. Norris, John C. Martin, Robert Hannan, Rebecca Fairchild, Stephen Korotash, Steven Webster, David Makol, Gargy G. Becker, Michael F. Bachner, Marlin Kirton, Jeremy Jones, Carlton Epps, Myron Williams, Rick Sadler, Charles H. Jackson, James H. Roth, Edward T.M. Garland, George H. Carley, William P. Smith, III, Jonathan Hewitt, William A. Myers, Manny Arora, Connie P. Henry, Dan O'Sullivan, Robert E. McCormack, Christina Petrig, Carmen Rojas-Rafter, Thomas W. Thrash, Jr., Linda T. Walker, Julie E. Carnes, Orinda D. Evans, Kenneth A. Zitter, Ari Rabinowitz, Lisa Scolari, Jenny Mittleman, Amalya L. Kearse, Richard C. Wesley, Chester W. Straub, Barbara R. Mittman, Edward D. Grushko, Thomas Badian, Dennis S. Meir, John W. Mills, III, Margaret H. Murphy, Kilpatrick Townsend & Stockton, LLP, Thomas V. Sjoblom, Prokauser & Rose, LLP, Andrews & Kruth, LLP, and others known and unknown, collectively, the "Unindicted Conspirators" or the "Unindicted Racketeers".

Judge Pauley had Ruby Krajick obstruct justice in violation of federal law and not file and docket the Rule 33 Motion due to the palpable fact, because Judge Pauley knows that Mr. Ware was acquitted on October 12, 2007 by his "holding" (S. Tr. 36 L 15-23) regarding the government's trial proof; (2) Judge Pauley further knows that as a result of the Executive Branch's November 7, 2008 Article II, §3 political decision terminating 1115 for insufficient evidence, the 1115 court lacks all subject matter jurisdiction to enter any ruling or order on the Pending Motions; and to do so will impose civil and criminal liability on Judge Pauley and any judge of the Second Circuit on the appeal of the denial of any Pending Motion. Cf. Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (judge civilly liable when acting in the absence of all subject matter jurisdiction), which Baker v. Carr, 369 U.S. 186, 217 (1962) terminated on November 7, 2008, absolutely, all subject matter jurisdiction of the Second Circuit and Judge Pauley.

GAME, SET, MATCH — THE SECOND CIRCUIT AND THE DISTRICT COURT ARE IN CHECKMATE.

QED

4/2/2012

EXHIBIT #2

# How to Rein In Rogue Prosecutors

**By Nancy Gertner
And Barry Scheck**

On Thursday, a special prosecutor released his report on the botched prosecution on corruption charges of the late Sen. Ted Stevens. It's worth noting the lessons learned from this investigation. Otherwise, wrongful convictions will continue.

The special prosecutor, Henry Schuelke, found that Justice Department lawyers committed ethics violations by the deliberate and "systematic" withholding of critical evidence pointing to Stevens's innocence, but he declined to go further. The reason: There was no court order expressly directing the government lawyers to turn over the evidence. Criminal charges can only be brought when there is a knowing and intentional violation of an order.

In sharp contrast, on Friday, Feb. 17, the chief judge of the Texas Supreme Court convened a court of inquiry to determine whether the former Williamson County district attorney violated state laws by failing to turn over evidence that could have prevented Michael Morton from spending 25 years in prison after his 1987 conviction for a murder that DNA evidence now proves he didn't commit.

The judge in the Morton case could deal directly with the prosecutor's alleged misconduct while the judge in the Stevens case could not. The Texas prosecutor had been expressly ordered by the trial court to turn over the lead investigator's complete report, an order that made certain all exculpatory evidence would be disclosed. The obligations of the Stevens prosecutors, while based on the Constitution and the disciplinary rules of the profession, were not formally embodied in a court order.

## What happened to Ted Stevens will keep happening to ordinary Americans unless judges change the rules.

The two cases present a simple solution for dealing with prosecutorial misconduct: Thirty days before trial, or at some reasonable time, the trial judge should convene a conference and issue a specific order directing prosecutors to produce all evidence that "tends to negate the guilt of the accused or mitigate the offense," as required by the American Bar Association's ethics rules. This should include the requirement that prosecutors consult the relevant law-enforcement personnel to make certain all such evidence is disclosed as soon as possible.

Issuing this order pretrial, at a time when most prosecutors are re-interviewing witnesses and reviewing their file, would encourage a more careful review of their case and their obligations. If prosecutors had a checklist similar to those the medical profession has used to dramatically reduce errors in intensive care units, they would not only discover more exculpatory evidence but develop valuable data about weaknesses in their evidence-gathering and evaluation processes.

This proposal can be implemented tomorrow by any federal or state judge in the nation without the need for legislation. Ultimately, it will benefit prosecutors, defendants and the courts by eliminating any confusion surrounding the disclosure of exculpatory evidence.

The Supreme Court has long held that a criminal conviction will not be reversed for failure to disclose exculpatory or impeaching evidence unless the appellate court finds that the undisclosed evidence was "material," or so important that it "undermines confidence in the outcome of the trial." It can be difficult for a prosecutor, particularly in the heat of battle, to decide before a trial whether undisclosed evidence that appears favorable to the defense will be considered "material" by appellate courts after a conviction.

With this dilemma in mind, decades ago the American Bar Association promulgated an ethics rule which has been substantially adopted in 49 states, Guam and the District of Columbia: Prosecutors are obligated to make timely pretrial disclosure of any evidence they know about that "tends to negate the guilt of the accused or mitigate the offense."

A direct order by a judge to follow the ethics rule and disclose all evidence that "tends to negate guilt" will act as a deterrent to the overzealous prosecutor. Disobedience of a direct court order is contempt, which is an ongoing offense. So contempt prosecutions of unscrupulous prosecutors whose suppression of exculpatory evidence is discovered many years after the act won't be derailed by statute-of-limitations problems (which have been a significant obstacle to prosecuting in some cases).

Most failures to disclose exculpatory evidence are the result of inadvertence or negligence, and their eventual discovery would not normally result in disciplinary actions, much less criminal charges. The importance of this order would be to hold prosecutors accountable in the most egregious cases—such as Stevens's, in which the special prosecutor found but one instance in which a prosecutor deliberately and fully withheld information pointing to Stevens's innocence.

This simple proposal is not original or heretical. It has been raised in similar forms by many scholars and follows long-standing ABA policy. It goes nothing more than provide a concrete way to enforce an ethics rule that our profession insists the public we follow, an ethical rule that protects our most cherished objective—a fair trial.

*Ms. Gertner, a former judge of the United States District Court for the District of Massachusetts, teaches at Harvard Law School. Mr. Scheck is the co-director of the Innocence Project, a national organization dedicated to exonerating wrongfully convicted individuals.*

# Notable & Quotable

an "unreasonable period of time" in Maryland, in contrast, a 13-year-old is

*Law Prof. David Pimentel in "Criminal Child Neglect and the Free*

## THE WALL STREET JOURNAL.
*Published since 1889 by DOW JONES & COMPANY*

**Rupert Murdoch**
*Chairman*

**Robert Thomson**
*Editor in Chief*

**Lex Fenwick**
*Chief Executive Officer*

**Gerard Baker**, *Deputy Editor in Chief*

Dow Jones Management:
**Todd Larsen**, *President*
**Kevin S. Balpir**, *Chief Financial Officer*
**Mark H. Jackson**, *General Counsel*
**Gregory Giangrande**, *Chief Human Resources Officer*

**Deputy Managing Editors:**
**Michael W. Miller; Alan Murray**, *Senior Deputy;*
**Rebecca Blumenstein; Deborah Brewster; Alex Martin; Matthew J. Murray; Nyk Nazareth;**
**F. James Pensiero; Ann Podd; Elyse Tanouye**

**Operating Executives:**
**Alisa Bowen**, *Digital*
**Christine Brendle**, *Asia*

**Neal Lipschutz**, *Newswire Managing Editor*

3/17/2012

3/17/2012

# Report Excoriates Stevens Prosecutors

By Evan Perez
And Brent Kendall

WASHINGTON—A Justice Department prosecution team in 2008 withheld exculpatory evidence, in some instances intentionally, in the bungled prosecution of the late Sen. Ted Stevens, according to a court-ordered report released Thursday.

A jury convicted Mr. Stevens in October 2008 of accepting and concealing tens of thousands of dollars in free home renovations and other gifts. Six months later, after evidence of prosecutorial misconduct emerged, U.S. Judge Emmet G. Sullivan threw out the charges at the request of Attorney General Eric Holder.

The senator, Republican of Alaska, denied all wrongdoing and narrowly lost his re-election bid in 2008. He died in a plane crash in 2010.

Thursday's 500-page report came from Henry F. Schuelke III, a Washington lawyer appointed by Judge Sullivan to investigate the matter. The report, excerpts of which were released last year, concluded that the prosecution was "permeated by the systematic concealment of significant exculpatory evidence which would have independently corroborated Sen. Stevens' defense and his testimony."

Among the report's key findings, Mr. Schuelke found that prosecutor Brenda Morris,

The late Sen. Ted Stevens in 2009

brought in to lead the case just two days before the indictment in July 2008, largely left the trial team unsupervised. The report said she failed to oversee officials who were supposed to review materials for information favorable to Mr. Stevens and turn over relevant documents to the defense.

In particular, Mr. Schuelke said they failed to turn over evidence that would have undermined testimony by the government's star witness, Bill Allen, a onetime fishing "buddy" of Mr. Stevens whose firm did renovation work on the senator's house. Mr. Allen testified at that

a mutual friend said Mr. Stevens was "just covering his ass" when he asked for a bill and didn't want to pay. That directly conflicted with statements Mr. Allen made to investigators months earlier. The report says four prosecutors and an FBI agent said they "forgot" Mr. Allen's earlier statements. Mr. Schuelke said the "complete, simultaneous and long-term memory failure by the entire prosecution team" was "extraordinary" and "strains credulity."

Ms. Morris, in a letter to Mr. Schuelke, pointed the blame partly at senior Justice Department managers who she said installed her on the case over her objections. "My late assignment to the trial team sparked lingering tension and resentment," she wrote, adding she "did not commit prosecutorial misconduct."

Mr. Schuelke also singled out two junior members of the team, Joseph Bottini and James Goeke, saying they intentionally withheld evidence from a construction foreman corroborating Mr. Stevens's contention he thought he paid for the renovations.

The report said the men failed to disclose conflicting accounts about whether Mr. Allen might have induced perjury in an unrelated sex case. That evidence would have "significantly impeached" Mr. Allen's credibility as a witness, Mr. Schuelke said. Matthew Menchel, a lawyer

for Mr. Goeke, said the report's assertions against his client were "against the weight of the evidence." He said Mr. Goeke pushed higher-level prosecutors to turn over information to the defense, but "those superiors made the decision not to make those disclosures."

Bottini lawyer Ken Wainstein said in a statement that his client was "a man of honor and integrity" who "would never commit intentional misconduct."

Williams & Connolly, the law firm that represented Mr. Stevens, said the report documented "widespread and severe corruption that is shocking in its boldness and its breadth."

Mr. Schuelke said he couldn't prove beyond a reasonable doubt some of the prosecutors' misconduct was intentional, and he didn't recommend criminal charges against them. It is rare for prosecutors to be charged with misconduct, because they generally enjoy immunity for actions at a trial unless it can be proven they acted in bad faith to subvert the justice system.

However, the prosecutors could face other actions, including dismissal from the Justice Department or disbarment. The department's Office of Professional Responsibility has separately been investigating the lawyers' conduct, and the report could be used as the basis for a disciplinary action by state bars.

*Since 1891, accuracy under adverse conditions*

Hand ceramic bezel carved with luminous numerals

Self-powered micro gas lights

Chronometer certified

**Engineer Hydrocarbon Ceramic XV**
*submarine – 42mm*

Old Northeast Jewelers Tampa, FL

Adt Time Boutique Glenview, IL

Long's Jewelers Boston, MA

Shreve & Co. Portland OR

BALL Watch USA    Tel: 727-896-4278    www.ballwatch.com
(see web site for complete list of Authorized BALL dealers)

4/2/2012

I.

1.      Exhibit #1 attached, is the response brief filed by the Department of Justice, (the "DOJ"), in U.S. v. Ware, 07-5222-Cr (Mr. Ware's direct appeal of U.S. v. Ware, 05-Cr-1115) (WHP)(SDNY), ("1115"); and (2) the DOJ's abandonment of its Rule 28.1 cross-appeal (07-5670-Cr (XAP), (the "Double Jeopardy Political Decision") regarding the insufficiency of the United States' trial evidence in 1115). (Ex. #1 is an excerpt of the USA's response brief).

2.      On April 30, 2007, a federal jury purportedly returned a verdict of guilty of Mr. Ware in 1115 on both counts of the indictment. (Dkt. 04/30/07).

        On October 12, 2007 District Judge William H. Pauley, III, after trial, ruled (10/12/07 (Dkt. #99) S. Tr. 31 L 19-25) the Executive Branch's trial proof was insufficient on (1) market efficiency and (2) materiality commenting: "I think we should have a Fatico [evidentiary] hearing [because I agree with Mr. Ware's contentions and arguments that the government's trial proof was insufficient] concerning among other things the efficiency of the market [for INZS and SVSY's securities]." (emphasis added)      (the "Fatico Decision").

3.      On October 12, 2007 Assistant United States attorney, ("AUSA") Steven D. Feldman conceded that the government's trial proof on market efficiency and materiality was insufficient (S. Tr. 36 L 8-23), and in open court conceded, in regard to the government's trial proof: "I know I am not going to be able to meet that burden ... I know [the USAO] cannot meet it [and I do not know why we brought this bogus case to trial]." (emphasis added).

4.      Thus, on October 12, 2007 at 3:22 PM both the trial judge (Pauley) and the government's trial lawyer (AUSA Feldman) both  agreed the government's trial proof was **insufficient** on factual elements required to have been proven "beyond a reasonable doubt" at trial: District Judge Pauley's Fatico Decision, and AUSA Feldman's admission on the factual elements of the USA's **trial** proof, were a "holding" (S. Tr. 36 L 15), in Mr. Ware's favor; and therefore, "functionally equivalent" to an acquittal of Mr. Ware of all charges in 1115 at 3:30 PM in New York, NY on October 12, 2007. U.S. v. Lynch, 162 F.3d 732, 735 (2d Cir. 1993).

4/2/2012

5.     On October 12, 2007, at 3:30 PM, as a result of the trial judge's (1) Fatico Decision and (2) AUSA Feldman's Admissions, double jeopardy attached to Mr. Ware terminating 1115, terminating the subject matter jurisdiction of the 1115 district court (the Fatico Decision and the Feldman Admissions terminated a "case" or "controversy" regarding "among other things the efficiency of the market [for INZS and SVSY's securities]." (emphasis added).

     District Judge Pauley's Fatico Decision was a "holding" the government did not meet its trial burden of proof "beyond a reasonable doubt" on "among other things the efficiency of the market", as required by the Fifth Amendment of the United States' Constitution, In re Winship, 397 U.S. 358 (1970) (Government has burden of proof of all factual elements "beyond a reasonable doubt"). Id. at 364 (emphasis added).

     Furthermore, it is axiomatic in the criminal law jurisprudence a judge cannot direct a verdict of guilty on any factual element of the government's trial proof, Smelcher v. AG of Ala., 947 F.2d 1472, 1476 (11th Cir. 1991) ("It is beyond dispute that a judge may not direct a verdict of guilty in a criminal trial.") citing Rose v. Clark, 478 U.S. 570, 578 (1986).

6.     The mere fact that on October 12, 2007, the trial judge, District Judge William H. Pauley, III, after reviewing the government's trial evidence on "among other things the efficiency of the market" (Id. at 31 L 23-25), ordered a Fatico evidentiary hearing "on October 26th [, 2007] at 3:00 [PM]", (Id. at 40), is proof positive the government did not meet its trial burden of proof "beyond a reasonable doubt" on "concerning among other things the efficiency of the market." (emphasis added).

     Therefore, accordingly, "efficiency of the market" being a **factual** element of the government's trial burden of proof, it is axiomatic, when reading U.S. v. Martin Linen Supply Co., 435 U.S. 564, 572-73 (1977) in pari materia with Sandstrom v. Montana, 442 U.S. 510, 512 (1979), i.e., "efficiency

of the market" being a **jury** issue, violated the Due Process Clause of the Fifth Amendment by on October 26, 2007 (S. Tr. 41-81) conducting the purported sentencing hearing, i.e., "directing a verdict of guilty" on the jury factual issue of "efficiency of the market." Smelcher, Id. at 1476.

District Judge Pauley, on October 12, 2007 abandoned any patina of "impartiality" and donned, illegally, and usurped the authority of the Executive Branch, and scheduled a **'bench trial'** of the jury factual issues ("among other things efficiency of the market") where District Judge Pauley, in violation of the Fifth Amendment, and federal law (18 USC §§2, 4, 201, 241, 242, 371, 891-94, 1201-02, 1343, 1346, 1505, 1520, 1621-23, 1956-57, and 1961-64, (the "Racketeering Offenses")), acted as (a) prosecutor, (b) judge, and (c) jury, and "directed a verdict of guilty" on the factual elements of the government's trial burden of proof, while acting in service to the continuing criminal enterprise, (the "CCE"): on October 26, 2007 convicted Mr. Ware of the 1115 charges in violation of the Double Jeopardy Clause; and fabricated, and manufactured a judgment of conviction and sentence (Dkt. #96:1115).

In essence District Judge Pauley on October 12, 2007 stated that he did not care that the jury had acquitted Mr. Ware of all charges on April 30, 2007, and further did not care that he also found the government's trial evidence insufficient (S. Tr. 31-32), and further did not care that the DOJ's trial lawyer (AUSA Feldman) conceded that, after trial, "I know I cannot meet [the burden of proof beyond a reasonable doubt]", and on October 26, 2007 permitted, in a **bench trial** of 1115, the government, after trial, to present evidence on jury factual issues in an execrable, gross, and flagrant violation of the Due Process and Double Jeopardy Clauses.

The October 12, 2007 and October 26, 2007 purported sentencing hearings, which intentionally violated Mr. Ware civil rights, also violated 18 USC §§ 241, 242, 371, and 1201-02, and were "structural errors" requiring "automatic"

(3)                                                    **4/2/2012**

"reversal" of the conviction and sentence. Johnson v. U.S., 520 U.S. 461, 468 (1997); Arizona v. Fulminate, 499 U.S. 279, 309-10 (1991) (same) (a judge who was not impartial defies a harmless error analysis).

The structural error occurred given that District Judge Pauley was not only biased, but also had a financial interest in the outcome of the case, i.e. District Judge Pauley was bribed by a potential witness in the case (03-0831-KJD-RJJ (D. NV), ("0831") SEC lawyer Spencer C. Barasch, Esq.,) for the entry of the 01/08/2007 order (Dkt. #35) "pleclud[ing] [Mr. Ware] from offering at trial [in 1115] any evidence of collusion between the [SEC] and [USAO-SDNY]." (emphasis added). Cf. Dkt. #84 in 1115 for details of the bribe.

The SEC lawyers (Barasch, Norris, Martin, and Hannan) possessed both Brady and Giglio evidence that the SEC had concluded on or before July 14, 2003: (1) there was no securities fraud in regard to INZS, and (2) there was no conspiracy between Mr. Ware and codefendant Jeremy Jones. (Cf. 0831 complaint (Dkt. #1 at ¶¶30, 31, and 33) and SEC lawyer Norris' emails to Jeremy Jones informing Jones he was not added to the 0831 complaint because the SEC did not believe Jones was involved with Ware).

Evidence which if Mr. Ware was allowed to present to the jury would have undermined the government's conspiracy charge, as well as the government's securities fraud charge (the SEC judicially admitted INZS' press releases had no affect on the stock price of INZS, cf. ¶31 in the 0831 complaint written by the SEC lawyers names above): Brady and Giglio evidence which the District Court (Dkt. #17: 05/19/2006) ordered the USAO to disclose on or before "the Thursday before trial" (quoting District Judge Pauley at P. 5 L 9-25 05/19/2006 conference transcript (Dkt. #17)).

The SEC's judicial admissions in the 0831 complaint (¶¶30, 31, and 33), collaterally estopped the United States from arguing in 1115 on the same issue: INZS press releases had any affect on its stock price, i.e, the securities fraud charge, as a matter of law, was required to be dismissed, pretrial.

See U.S. v. Cunan, 156 F.3d 110 (1st Cir. 1998), the First Circuit in following the Eighth Circuit, U.S v. Maull, 855 F.2d 514, 517 (8th Cir. 1998) (Dissent); and the Tenth Circuit in U.S. v. Lots 43 Through 46, 935 F.2d 1134-37-38 (10th Cir. 1991) (res judicata principles precluded a criminal forfeiture of the same property after a civil forfeiture proceeding was dismissed with prejudice, also, Id. at 120, held a subsequent criminal forfeiture proceeding against the same property was barred by res judicata if a prior civil forfeiture proceeding was dismissed with prejudice.

The SEC's judicial admissions in the 0831 complaint (Dkt. #1 at ¶¶30, 31, and 33), which were binding on the 0831 court and also binding on appeal, were the equivalent of res judicata on the SEC's claims; and therefore, res judicata applying to the parties and "their privies" (quoting Federated Dept. Stores, Inc. v. Moities, 452 U.S. 394, 396-400 (1981), and there are "no exceptions", barred the United States, in 1115, from bringing the same claims regarding securities fraud involving INZS). Cf. SEC v. Mumford, 630 F.2d 1023, 1027 (4th Cir. 1980) (collateral estoppel will bar the United States from pursuing the same issues in a subsequent criminal prosecution, resolved against it in a prior civil proceeding).

In the 0831 complaint, the SEC conceded and thus resolved the factual issue that INZS press releases had no affect on the stock price of INZS, by judicially admitting the same in the 0831 complaint at ¶33.

The United States' binding judicial admission in 0831 collaterally estopped the United States from raising the same issue in 1115 or in U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224") which prejudiced the jury and violated Mr. Ware's "substantive rights" (quoting U.S. v. Ferguson, 653 F.3d 69, 75, n.10 (2d Cir. 2011)) (conviction and sentence reversed).

Accordingly, the partiality and bias of District Judge Pauley is overwhelmingly established by his "deep-seated favoritism" (conducting the October 26, 2007 'bench trial' in 1115 while agreeing with Mr. Ware's argument

(5)                                                        4/2/2012

(S. Tr. 31 L 23-25) regarding the insufficiency of the United States' <u>trial</u> proof), and the financial interests of District Judge Pauley in precluding Mr. Ware from presenting a "complete defense", in violation of the Sixth Amendment's Confrontation Clause, and the Fifth Amendment Due Process Clause, constituted a "structural error" not subject to harmless error analysis, and thus, requiring the "automatic reversal" of the conviction and sentence of Mr. Ware. <u>Fulminate</u>, Id. at 309-10.

## II.

APPLYING THE ABOVE PRINCIPLES OF LAW TO THE USA'S RESPONSE BRIEF (EX. #1).

### 1.

First, and foremost, the USA did in fact on 12/17/2007 (Dkt. #103), purportedly, file a notice of appeal of the 1115 district court's October 12, 2007 and October 26, 2007 Fatico Decisions, (S. Tr. 31, 39-40, 73-76), and was assigned the Second Circuit case number 07-5670-Cr (XAP), (the "Executive Branch's Cross-Appeal").

However, cf. at P. 2* of Ex. #1, the Executive Branch notified the Second Circuit on November 7, 2008 as follows: "The Government filed a notice of appeal [Dkt. #103 in 1115] but [is exercising its prosecutorial prerogative and has in its sole and exclusive discretion, determined pursuant to Article II, §3 of the Consitution -- a political decision -- it is in the interests of the United States to terminate 1115 for insufficient evidence and] is not pursuing a cross-appeal [in 07-5670-Cr (XAP), and necessarily determined that 1115 shall be immediately dismissed with prejudice, and Mr. Ware's conviction and sentence reversed and vacated]." (emphasis added), (the "Double Jeopardy Political Decision").

### 2.

The Executive Branch's November 7, 2008 Double Jeopardy Political Decision stripped the Second Circuit **and** the 1115 district court of "all

(6)                                                      4/2/2012

subject matter jurisdiction", <u>Baker v. Carr</u>, 369 U.S. 186, 217 (1962); and terminated all "cases" and "controversies" in 07-5222-Cr and the Executive Branch's Cross-Appeal, prohibiting the Second Circuit (28 USC §§46 (b, c)) from conducting any <u>lawful</u> review of 07-5222-Cr and 07-5670-Cr (XAP): On November 7, 2008 all issues in 1115 became, as a matter of law, moot. <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 94, 101 (1995) (Courts lack authority to review any issue lacking subject matter jurisdiction. Any order or judgment entered is merely an "advisory" order or judgment, "disfavored by the Court from the beginning").

Requiring the Second Circuit to "announce the fact, and dismiss the cause" (quoting <u>Steel Co.</u>, Id. at 94).

### 3.

Therefore, the Second Circuit was on notice as of November 7, 2008 the Executive Branch had made a political decision, and in its sole and exclusive discretion, determined continued prosecution of 1115 was not in the interests of the United States, pursuant to federal statute, (18 USC §3742(b)), and had a "high ranking" official of the Department of Justice notify Michael J. Garcia, (U.S. Attorney (SDNY)), to abandon the United States' cross-appeal (07-5670-Cr (XAP), in the United States' response brief filed in 07-5222-Cr (EX. #1).

However, the Second Circuit's Judges Kearse, Sack, and Hall, (the "Second Circuit Racketeers"), conspired, confederated, acted in concert, and agreed, i.e., formed an illegal association-in-fact, as defined in 18 USC §1961(4), and conspired to and in fact did initiate a **'judicial prosecution'** in violation of the 'separation of powers' doctrine, 28 USC §516, and Article II, §3 of the Constitution; and conspired to violate 18 USC §§2, 4, 201, 241, 242, 371, 891-94, 1201-02, 1343, 1346, 1505, 1510, 1621-23, 1956-57, and 1961-61, (the "Racketeering Offenses"), and in fact did commit the Racketeering Offenses to punish Mr. Ware for no joining the continuing criminal enterprise, (the "CCE") run from within the Second Circuit and the USAO-SDNY.

4/2/2012

4.

Rather than heeding the Executive Branch's November mandate to terminate
1115, the Second Circuit, in furtherance of the CCE, took matters into its
own hands -- usurping the Executive Branch's constitutionally conferred prerogative --
and in violation of 28 USC §516 became a prosecutor, judge, and jury in regard
to 1115.

Circuit Judge Peter W. Hall, the former U.S. attorney for the District
of Vermont, the junior member of the 07-5222-Cr panel, took the lead in
executing the criminal conspiracy and racketeering activities: Hall's ultra
vires orders (entered in violation of 28 USC §46(b, c, d)), regarding 1115, were
designed to ensure the Second Circuit and Judge Pauley had effective immunity
from any subsequent criminal prosecution of the actions taken after November
7, 2008 ("D[OJ] - Day") for the Second Circuit, i.e., the "Pearl"St. Invasion.

November 7, 2008, "a day which shall live in infamy" the Second Circuit
ceased all pretense of being an impartial tribunal, and crossed the Judicial
Rubicon, and plunged the integrity of the Court, once again (after Martin
Manton), into the abyss -- from which it shall never recover, never.

### III.

In Ex. #1, the USAO, knowingly, and intentionally, on the one hand at
P. 2* notified the Second Circuit to abandon the issues from 1115 on appeal in
07-5222-Cr and 07-5670-Cr (XAP), and then on the other proceeded to argue at
P. 3 §A, ¶1: "Ware inflated the price of [INZS] and [SVSY] stock by issuing
and causing others to issue fraudulent press releases regarding the
companies." (emphasis added).

The USAO was collaterally estopped from arguing that Mr. Ware "inflated"
the price of INZS stock, because the United States conceded that issue in the
0831 complaint (Dkt. #1 at ¶¶30, 31, and 33), and the United States conceded
that allegation on the previous page (2*) of the United States' brief: The USA

4/2/2012

by "not pursuing a cross-appeal" in 07-5670-Cr necessarily conceded and agreed that Mr. Ware did not "inflate" the stocks of INZS and SVSY, i.e., the United States conceded on October 12, 2007, through AUSA Feldman (S. Tr. 36 L 15-23): "I know we are not going to be able to meet that burden [of proof] ... I know I cannot meet it[.]" (emphasis added).

AUSA Feldman's Admissions conceded that the government did not meet its trial burden of proof, [ ]in addition to the Executive Branch's Article II, §3 November 7, 2008 Double Jeopardy Political Decision, and District Judge Pauley's October 12, 2007 "holding" (S. Tr. 31 L 17-25), which implicitly held that a "reasonable jury" could not have found Mr. Ware guilty "beyond a reasonable doubt", i.e., the court's October 12, 2007 Fatico Decision was a ruling, in Mr. Ware's favor, on a factual element of the government's burden of proof, resolved by the Fatico Decision -- the government's trial evidence was not proven "beyond a reasonable doubt".

The USAO presented a false and fraudulent appeals brief to the Second Circuit written by AUSAs Andrew L. Fish, Nicholas S. Goldin, and U.S. Attorney Michael J. Garcia.

False and fraudulent where the USAO knew 'prior to' filing the November 7, 2008 brief, AUSA Feldman, on behalf of the USAO had on October 26, 2007 (S. Tr. 76) "declined the Court's [inconsequential] invitation [without a proper RSVP] to present [post-trial evidence on a jury question of fact[]", a legal oxymoron.

Thus, an interesting conundrum is presented by the helter-skelter of the USAO at P.2* of its November 7, 2008 brief conceding 1115, and then in the next page attempt to argue the USA proved its case at trial, while knowing the USAO "declined the Court's invitation to present evidence" at the October 26, 2007 Fatico hearing, waiving and forfeiting all issues regarding the insufficiency of the government's trial proof.

Which thus segues into the pertinent inquiry: If pursuant to 18 USC

(9)                                                        4/2/2012

§3742(b) "high ranking" officials of the DOJ had to authorize the USAO to abandon the United States' appeal in 07-5670-Cr (XAP), terminating 1115 for insufficient evidence, then who authorized the USAO to take the litigation position it took in the November 7, 2008 brief; and (2) who authorized the USAO to oppose dismissal of 1115 after November 7, 2008?

However, after November 7, 2008, the Second Circuit was operating and conducting Executive Branch functions (for which there is no immunity), prosecuting 1115 -- the ultra vires and illegal 'judicial prosecution' -- in violation of the 'separation of powers' doctrine to, according to SEC lawyer Jeffrey B. Norris, in an internal SEC email disclosed in 1224, Norris told another SEC employee, pleadings in the 0831 litigation were being filed "to punish Ware for questioning our judgment", an improper purpose, and an egregious violation of Rule 11, and 28 USC §1927.

Thus, it is logical to assume, and a permissible inference, that the Second Circuit Racketeers were directing the litigation positions taken in the papers purported filed on behalf of the United States, while at the same time masquerading, and full of mischief, as an Article III court.

Hence, all orders and judgments entered in 07-5222-Cr after November 7, 2008 are null and void ab initio as "advisory" orders and judgments, Steel Co., 523 U.S. at 94; and most importantly, lack any preclusive affect, as a matter of law.

## RECALL OF MANDATE REQUIRED.

Therefore, the bogus and fraudulent August 18, 2009 opinion reported at U.S. v. Ware, 577 F.3d 442 (2d Cir. 2009) (J. Kearse), the August 12, 2010 remand order (Dkt. #149), and all others orders, and the bogus August 18, 2009 mandate must be immediately recalled due to fraud on the court and the manifest injustice (Mr. Ware is factually and actually innocent of all charges in 1115 according to both District Judge Pauley and AUSA Feldman October 2007 statement) occurring in this matter; and the writ of habeas corpus is required

(10)

4/2/2012

to issue immediately after a show cause hearing if Attorney General Eric H.

Holder, Jr. contests the issue, within three (3) days of service. 28 USC §2243.

Submitted by Counsel

Ulysses Thomas WAre, pro se
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
03/29/2012  05:22:22 PM

(11)