Submitted by Counsel:



Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
12/12/2012 05:22:22 P.M. printed



**PRIORITY**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 19 2012

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ULYSSES THOMAS WARE,<br>    PETITIONER, | : <br> : <br> : <br> : |
| VS. | :   CASE #: 12-CV-<br> :   **1:12-CV-4397**<br> : |
| WARDEN DARLEEN DREW,<br>BUREAU OF PRISONS,<br>ATLANTA PRISON CAMP.<br>    RESPONDENTS. | : <br> : <br> : <br> : |

EMERGENCY PETITION FOR IMMEDIATE RELEASE
28 USC §2241: PETITION FOR A WRIT OF HABEAS CORPUS
ACTUAL AND FACTUAL INNOCENCE OF ALL CHARGES

**#6**

12/12/2012 Memorandum of Law in Support of Claims Regarding:
U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224").

The Proceedings in 02-CV-2219 where completely dismissed on 12/20/2007
(see Dkt. #90:2219), Rule 41(a) voluntary dismissal without prejudice.

Criminal Frauds Committed by the Judges and Federal Prosecutors

1224 Proceedings Moot as a Matter of Law as of 12/20/2007 (cf. Dkt. #90:1224).
1115 Moot as a Matter of Law as of 11/07/2008, i.e., Executive Branch's

2219 Being Dismissed without Prejudice, Mooted the 1224 Proceedingss.

**18**

----------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 11-4181 Cover letter
DATE: 02/21/2012 12:19:37 PM

Ulysses Thomas Ware
Reg. No. 56218-109
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

October 23, 2011                               via certified mail # 7003 0005 1680 1205 4235

Office of the Circuit Clerk
U.S. Court of Appeals
For the Second Circuit
500 Pearl St.
New York, NY 10007

RE: Ulysses Thomas Ware, et. al. v. Leonard B. Sand (personally and individually), Peter W. Hall (personally and individually), et al., 11-4181-CV.

Dear Ms. O'Hagan-Wolfe:

Enclosed is appellant Ware's "motion for leave"/ motion to dismiss filed in response to the bogus ultra vires "advisory" order purported entered by three unidentified circuit judges for the court allegedly on October 13, 2011 demanding Mr. Ware file a bogus ultra vires "motion for leave" when the court lacks subject matter jurisdiction (28 USC 1294(1)) to review 11-4181-Cv and 28 USC 46 (a-d) authority to "hear or determine any cause" in regard to 2219.

Accordingly, please docket and file the same in 11-4181-CV. By the way what is the Court's basis of authority and subject matter jurisdiction since its lacks a "live case or controversy" in which the Second Circuit can review 11-4181, and subject matter jurisdiction to issue the October 13, 2011 order where 28 USC 46 (2011) prohibits such an order?

Sincerely,

*Ulysses J. Ware*

Ulysses Thomas Ware

enclosures: Rule 26.1 certificate of interested persons; Motion for Leave/Motion to Dismiss, Exhibits.

-----------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 11-4181 Caption
DATE: 02/21/2012 12:18:14 PM

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

Ulysses Thomas Ware, Group Management Corp.,
Silver Screen Studio Group, Inc., Global One Investment
Holdings, Inc.,
  Appellants,

vs.                                                                    11-4181-CV

Leonard B. Sand, personally; Peter W. Hall, personally; Amalya L. Kearse, personally; Robert D. Sack, personally; Robert A. Katzmann, personally; Barbara S. Jones, personally; Rosemary S. Pooler, personally; Reena Raggi, personally; B.D. Parker, personally; Richard Wesley, personally, Chester C. Straub, personally, William H. Pauley, III, personally; Robert W. Sweet, personally; Stephen Underhill, personally; David Trager, personally; Preet Bharara, personally; Katherine Polk-Failla, personally; David Kelly, personally; Michael J. Garcia, personally; Alexander H. Southwell, personally; Steven D. Feldman, personally; Nicholas S. Goldin, personally, Maria E. Douvas, personally, Sarah E. Paul, personally, Alexander J. Wilson, personally; Edward T. M. Garland, Ari Rabinowitz, Kenneth A. Zitter, Edward Grushko, Barbara R. Mittman, LH Financial, Alpha Capital, AG, Markham Holdings, Ltd., Amro International, S.A., Stonestreet, L.P., Thomas V. Sjoblom. Prokauser & Rose, LLP., Dennis S. Meir, John W. Mills, III, Kilpartick, Townsend & Stockton, LLP., Manny Arora, David Levitt, et al., each federal judge is named in his or her individual and personal capacity,
  Appellees, and unindicted co-conspirators.

---

Ulysses Thomas Ware's Response to the Second Circuit's ultra vires, "advisory" order purportedly entered on October 13, 2011 in violation of 28 USC 46 (a-d) (2011), 28 USC 1294(1), Rule 41(a)(2) of the Fed. R. Civ. Proc., and Article III, sec. 2 of the Constitution, Celotex v. Edwards, 514 U.S. 300, 313 (1995); Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1995), Federated Department Stores, Inc v. Moitie, 452 U.S. 394, 398-400 (1981); Motion to Dismiss; and Motion for a Fraud on the Court proceeding to investigate the issuance of the bogus October 13, 2011 purported order.

Submitted by counsel:

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
October 23, 2011

Certificate of Service:

  I Ulysses Thomas Ware have this 23rd day of October 2011 served Kenneth A. Zitter, Esq. at 260 Madison Ave., New York, NY 10016 with a copy of this pleading and exhibits with correct first class postage.

Instructions: Please docket and file the enclosed pleadings and exhibits in 11-4181-CV.                                    1.

------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 11-4181- Part -0.1- Motion for Leave
DATE: 10/23/2011 11:22:58 AM

OPENING STATEMENT.

The United States Attorneys Office for the Southern District of New York, (the "USAO"), the vanguard of the 93 districts of the United States of America, (the "USA") operating under the authority of the USA's exclusive statutory delegee pursuant to 28 USC 516, et seqs., the Department of Justice, is a continuing criminal enterprise, (the "CCE"), operating under the color of law, and performing racketeering criminal activities as defines in 18 USC 1961 et. seqs., (the "RICO activities") in violation of federal law and the Constitution's Fourth, Fifth, and Sixth Amendments.

As as example of the RICO activities, the USAO procured the bogus and fraudulent criminal indictment in U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224") -- purportedly returned by a federal grand jury on November 17, 2004 -- because Mr. Ware refused to join the CCE and issue fraudulent and bogus Rule 144(k) legal opinions to the plaintiffs in Alpha Capital, AG., et al. v. IVG Corp., a/k/a/ Group Management Corp., ("GPMT"), 02-CV-2219 (LBS)(SDNY), ("2219"), which is not an "offense" against the laws of the USA.

The pressing questions must be asked of and answered by the Department of Justice (Attorney General Eric H. Holder, Jr.) are:

(1). How could a lawful indictment be returned in 1224 where there was no "offense" committed?

(2). How could a lawful "conviction" be obtained and be affirmed of Mr. Ware in 1224 when the U.S. Attorney for the USAO (Preet Bharara and his deputy AUSA Katherine Polk-Failla) conceded on August 12, 2010 there was no "offense" committed in 1224 in regard to the alleged conduct of Mr. Ware in 2219, which implies the indictment returned in 1224 was returned in violation of federal law 28 USC 547(1) and prosecuted in violation of federal law, 18 USC 3231?

I. CONTENTIONS AND ISSUES WHICH WILL BE RAISED ON APPEAL IN 11-4181-CV WHICH WILL REQUIRE THE SECOND CIRCUIT TO REVIEW FINAL ORDERS ENTERED IN GPMT'S AND SSSG'S CHAPTER 7 BANKRUPTCIES FILED IN THE ELEVENTH CIRCUIT OUTSIDE THE 28 USC 1294(1) TERRITORIAL SUBJECT MATTER JURISDICTION OF THE SECOND CIRCUIT, AND ARE THEREFORE MOOT ACCORDING TO STEEL CO. V. CITIZENS FOR A BETTER ENVIRONMENT, 523 U.S. 83, 94 (1995); AND 28 USC 46 (a-d) (2011).

A.     Mr. Ware contends that the Second Circuit Court of Appeals is without lawful authority (28 USC 46) to review any matter in 4181 as a result of the final orders which were not appealed by the 2219 plaintiffs -- and are res judicata and collateral estoppel -- entered in Group Management Corp., ("GPMT") and Silver Screen Acquisition Group, Inc., ("SSSG") chapter 7 bankruptcy filings on December 3, 2004 in the Atlanta, GA bankruptcy court. Cf. Celotex v. Edwards. 514 U.S. 300, 313 (1995) (court of first instance (Atlanta GA bankruptcy court) required to vacate or amend the automatic stay; 11 USC 362(a) automatic stay cannot be collaterally attacked in courts other than the court of first instance, i.e., issuing court -- the Atlanta, GA bankruptcy court sitting in Atlanta, GA).

B.     Mr. Ware further contends that the United States District Court (Leonard B. Sand in his individual and personal capacity) is a continuing criminal enterprise as defined in 18 USC 1961 et. seqs., run from within the federal courts of the Southern District of New York, in collusion and conspiring with the United States Attorneys Office for the Southern District of New York, (the "USAO") and the Securities and Exchange Commission, (the "SEC") to extort small publicly-traded companies of their free-trading securities in violation of 18 USC 2, 4, 201, 225, 371, 891-94 (loan sharking extortion), 1343, 1346, 1505, 1510, 1621-23, 1956-57, 1961-62; 15 USC 77 (e)(a, c), 77x, 78ff, and Rule 10b-5 by the use of racketeering activities while acting under the color of law.

C.     Mr. Ware contends that former U.S. attorney David Kelly and his surrogates (Alexander H. Southwell, Nicholas S. Goldin , et al.) acting in their personal capacity -- in violation of 28 USC 547(1) -- and acting in the absence of all subject matter jurisdiction, did on or about November 17, 2004 knowingly, deliberately, willingly, and intentionally present false and fabricated purported evidence to a purported federal grand jury sitting in New York, NY: the null and void ab initio December 22, 2003 ultra vires and "advisory" order of Leonard B. Sand (entered in 2219 at (Dkt. # 80:2219) while acting in his personal capacity and in the absence of all subject matter jurisdiction) to indict and frame Mr. Ware for not extorting GPMT of their free-trading shares by

----------------------------------------------------------------------------------------------------

issuing fraudulent Rule 144(k) legal opinions opining the 2219 plaintiffs were not Section 2(a)(11) statutory underwriters and affiliates of GPMT while Kelly, Southwell and Leonard B. Sand knew the 2219 plaintiffs had admitted in their complaint (paragraphs 10-20) (Ex. @ 1-3) and in their subscription agreement (paragraph 10.1(iv)), (Ex. @ 4) of being statutory underwriters ineligible for Rule 144(k) (2002).

D.    Mr. Ware further contends that the judgment and memorandum opinion (Dkt. ## 54 and 50, respectively) entered on November 25, 2002 by the 2219 court, reported at Alpha Capital, AG., et al. v. IVG Corp., et al., 2002 U.S. Dist. LX 22803 (SDNY Nov. 25, 2002), which was not appealed by the 2219 plaintiffs, is res judicata and collateral estoppel on the issue of whether the 2219 plaintiffs were 15 USC 77b(a)(11) (2002) statutory underwriters.

(1).    In Dkt. #50 @ pages 2-5, District Judge Sand found the 2219 plaintiffs to be statutory underwriters – based on the binding judicial admissions which cannot be controverted in this appeal – made by the 2219 plaintiffs in (a) their complaint (Dkt. #1, paragraphs 10-20) and, (b) in their subscription agreement, paragraph 10.1 (iv). As a result of being Section 2(a)(11) statutory underwriters SEC Release 33-7190 (1995) and SEC Interpretive Release 5121 prohibited any unregistered distributions of GPMT's shares by the 2219 plaintiffs, i.e., Rule 144(k) was not available to the 2219 plaintiffs to sell unregistered shares of GPMT. Berckeley Investment Group, Ltd. v. Colkitt, 455 F.3d 195, 220 (3d Cir. 2006) (referencing SEC Release 33-7190).

(2)    Mr. Ware contends that the admissions made by 2219 plaintiff Stonestreet, L.P. on or about August 13, 2003 in Dkt. #65, admitted during illegal ex parte communications between Kenneth A. Zitter, Esq. and Leonard B. Sand in violation of the Code of Conduct for Federal Judges Canon 3(A)(4), is a binding judicial admission that Stonestreet, L.P. was an affiliate of GPMT and ineligible for Rule 144; and (2) further that the admissions by Stonestreet, L.P. in Dkt. #65 of beneficially owning more than 9.9% of GPMT's outstanding shares were attributed to the three remaining 2219 plaintiffs pursuant to Rule 13d-5(b)(1) of the 1934 Act. Roth v. Jennings, 498 F.3d 499, 506-10 (2d Cir. 2007) (J. Kearse).

Therefore, the attribution of Stonestreet's greater than 9.9% ownership of GPMT's securities pursuant to Rule 13d-5(b)(1) rendered each 2219 plaintiff an affiliate of GPMT as of February 2, 2001 ( the date of acquisition of the Notes from IVG Corp.), and conferred statutory insider status (prohibited the trading in GPMT's shares by the 2219 plaintiffs) on the 2219 plaintiffs which was not appealed by the 2219 plaintiffs, and accordingly is res judicata and collateral estoppel in this appeal.

The attribution of Stonestreet's 9.9% ownership of GPMT's securities to each 2219 plaintiffs based on the Stonestreet, L.P.'s admission on August 13, 2003 (Dkt. #65) pled the plaintiffs out of court, i.e., the 2219 complaint failed to state a claim for which relief can be granted.

E.    Mr. Ware contends that initiating plaintiff Alpha Capital, AG moved the 2219 court, ex parte, on or about December 20, 2007 pursuant to Fed. R. Civ. Proc. 41(a)(2) to be voluntary dismissed from 2219. District Judge Sand granted Alpha's ex parte motion on December 20, 2007 (Dkt. #90:2219) and voluntarily dismissed Alpha from 2219; annulled all orders and judgments entered on Alpha's behalf in 2219 (19, 50, 54, 57, 58, 61, 64, 65, 67, 77, 78, 80, 83, 88, and 102), nunc pro tunc March 20, 2002 (the filing date of the complaint in 2219); and implicitly required Alpha to refile its complaint on or before March 20, 2008, which was not done by Alpha.

Thus, as a result of Alpha Capital, AG not refiling its complaint in 2219 on or before March 20, 2008, N.Y. CPLR 213(2) six (6) year statute of limitation ran on Alpha's claims, which are res judicata and collateral estoppel, requiring Alpha to return the cash value of all shares received from GPMT as a result of any order or judgment entered in 2219 – estimated at $525.75 million plus interest; and Alpha and its counsel (Kenneth A. Zitter, Esq.) are liable for attorney fees for filing a frivolous complaint in 2219 in a Rule 11 proceeding, estimated at $22.2 million, plus expenses and fees.

II.    JURISDICTIONAL CHALLENGE TO SECOND CIRCUIT COURT OF APPEALS TO HEAR OR DETERMINE ANY CAUSE IN 11-4181.

A.    The Second Circuit's ultra vires "advisory" November 5, 2010 'filing injunction' purported order is null and void ab initio where the Court lacked lawful authority to enter any orders in U.S. v. Ware, 07-5222-Cr or 07-5670-Cr (XAP) after November 7, 2008 (the date the USA conceded a live case or controversy in 1115) and after August 18, 2009 (the date the Court entered final judgment and issued its mandate on the issues abandoned by the Executive Branch in 1115, terminating 1115 for res judicata and invoking double jeopardy).

i.    Thus the 07-5222 Court lacked authority to enter the November 5, 2010 filing injunction, purported order -- which is null and void without preclusive effect -- and the 4181 court currently lacking 28 USC 1294(1) statutory territorial subject matter jurisdiction to review any issue in regard to GPMT's and SSSG's chapter 7 filings in the Atlanta, GA bankruptcy court, Celotex, 514 U.S. at 313, accordingly, the 4181 court lacks 28 USC 46 (a-d) authority to review the contents of any "motion for leave"

**3.**

P. 6

TRULINCS 56218019 - WARE, ULYSSES THOMAS - Unit: ATL-S-F

--------------------------------------------------------------------------------

requiring the court to make a merit based determination on the issues in 11-4181, i.e., "hear or determine any cause" for which it is prohibited as a matter of law renders the purported "motion for leave" moot.

Therefore, the bogus and fraudulent October 13, 2011 "advisory" order demanding Mr. Ware file a "motion for leave", else Mr. Ware's appeal filed in 2219 will de dismissed is null and void ab initio, and lacks preclusive effect.

ii. Lacking lawful authority (28 USC 46 (a-d)) to hear or determine any cause in regard to 1115, i.e., lacking a live case or controversy in 1115 after November 7, 2008, the panel consisting of Circuit Judges Kearse, Sack, and Hall acted in their personal and individual capacity in entering the ultra vires "advisory" November 5, 2010 purported order which is null and void ab initio lacking preclusive effect, and is a nullity.

The unnamed and publicly unknown circuit judges who issued the bogus October 13, 2011 (Ex. A) order were not named (fearing for their personal financial assets and personal freedom acted in secret) in body of the October 13, 2011 order as required by 28 USC 46, and moreover, there is no proof a statutory quorum was present for the court to conduct "official" business, which was impossible for the court to conduct "official" business in regard to 11-4181 lacking 28 USC 1294(1) subject matter jurisdiction, ergo, 11-4181 is moot.

III. GARLAND, SAMUEL AND LOEB, P.C., ("GSL") IS A CONTINUING CRIMINAL ENTERPRISE PURPORTING TO BE A LAW FIRM.

A. Mr. Ware contends that GSL of Atlanta, GA which purports to be a law firm specializing in criminal defense, is in actuality a government agent conducting racketeering activities to steal the retainers and confidences of unsuspecting clients to assist the United States Department of Justice (the Executive Branch of government) in criminal prosecutions; rather than providing the "effective assistance of counsel" as required by the Sixth Amendment to the Constitution to its clients (victims).

i. Mr. Ware retained GSL for representation in 1224 on or about March 2005 after Mr. Ware was illegally seized, arrested, and searched in violation of the Fourth Amendment in Atlanta, GA on or about February 2005 by the U.S. Marshals acting on the bogus and fraudulent indictment procured on or about November 17, 2004 in 1224 by U.S. attorney David Kelly and his surrogates (AUSA Southwell and Goldin to perpetrate a fraud on the court).

4.

---

FROM: 56218019
TO:
SUBJECT: 11-4181- Part- 0.2- Motion for Leave
DATE: 02/21/2012 12:19:12 PM

MR. WARE'S BOGUS ARREST BY THE U.S. MARSHALS IN ATLANTA IN VIOLATION OF THE FOURTH AND FIFTH AMENDMENTS.

(B)i.  Mr. Ware was fraudulently arrested by the U.S. Marshals in his business office in Atlanta, GA in February 2005 on the fraudulent and bogus indictment in 1224 (three counts of criminal contempt, 18 USC 401(3) for not issuing fraudulent and bogus Rule 144(k) legal opinions to the 2219 plaintiffs opining the 2219 plaintiffs were not affiliates of GPMT and eligible for Rule 144(k) to enable the 2219 plaintiffs to distribute the unregistered shares of GPMT into the public capital markets without a valid registration statement being in effect) procured by David Kelly using the null and void ultra vires December 22, 2003 (Dkt. #80) purported order of Leonard B. Sand (issued while acting in his personal and individual capacity in 2219).

ii.  Mr. Ware retained GSL, Edward T. M. Garland, Esq., to represent his interests in 1224 in the Southern District of New York at trial; and paid GSL a retainer for the representation in the 1224 criminal matter. Mr. Ware informed Garland that the indictment was bogus and fraudulent and that GSL should move to have the indictment dismissed for failure to charge an "offense" against the laws of the USA, i.e., 28 USC 547(1) prohibited the USAO from seeking an indictment for the charged conduct.

iii.  Garland informed Mr. Ware that he would research the issue and inform Mr. Ware of his research. Mr. Ware agreed and once Garland was paid, Garland only purported to research the issues in the case. However, unknown to Mr. Ware, Garland, without Mr. Ware's permission or consent, contacted the USAO and worked out a purported "good plea deal" with AUSA Nicholas S. Goldin for Mr. Ware to plead guilty to the bogus and fraudulent indictment .

Which indictment did not charge an "offense" against the laws of the USA -- and therefore according to 28 USC 547(1) and the Fifth Amendment of the Constitution, the USAO lacked lawful authority to seek an indictment against Mr. Ware in 1224, i.e., the bogus indictment was null and void ab initio and without any legal effect; and the 1224 district court lacked 18 USC 3231 subject matter jurisdiction to adjudicate 1224.

Garland had no intentions of providing "effective assistance of counsel" to Mr. Ware in 1224; and during a status conference in GSL's Atlanta offices, Garland informed Mr. Ware that he thought the case was "hopeless", and that he had worked out a "good plea deal" for Ware to "plead guilty" to the bogus indictment: Ware would not receive any jail time, but would have to give up his license to practice law in the state of Georgia.

Garland stated:

> "We worked you out a good plea deal with AUSA Goldin ... you can't go against
> Judge Sand and his people up there in New York ... you better take the deal we
> worked out for you ... you won't have to go to jail, but you will have to give up
> your law license." (emphasis added).

C(i).  Garland, and his team at GSL (Manny Arora, Don Samuel, and David Levitt) rather than research the legality of the bogus charges in the indictment, Garland and GSL conspired and colluded with the USAO to have Mr. Ware plead guilty to a bogus, fraudulent null and void ab initio indictment, i.e., without Ware's permission arranged a bogus plea deal for Ware to plead guilt to a a fraudulent indictment -- a fraud on the court.

Exactly, what would a federal judge agree was a valid factual basis to accept the fraudulent plea pursuant to Rule 11 of the Fed. R. Crim. Proc.? Thus, District Judge Robert W. Sweet had to be involved in the criminal 'plan and scheme' to have Mr. Ware plead guilty to a bogus indictment designed and fabricated and presented (purportedly) to a federal grand jury in violation of federal law.

ii.  An indictment which as a matter of law failed to charge an "offense" against the laws of the USA, i.e., it is not an "offense" against the laws of the USA to not issue fraudulent Rule 144(k) legal opinions to admitted Section 2(a)(11) of the 1933 Act statutory underwriters of GPMT's shares, cf. SEC Release 33-7190, Berckley Investment Group, Ltd. v. Colkitt, 455 F.3d 195, 220 (3d Cir. 2006) (Section 2(a)(11) statutory underwriters (the 2219 plaintiffs) must register all distributions pursuant to Section 5 of the 1933 Act). (emphasis added to "register").

According to the binding judicial admissions made by 2219 plaintiff Stonestreet, L.P. on August 13, 2003 in Dkt. #65, each of the 2219 plaintiffs were statutory insiders and affiliates ineligible for Rule 144(k); thus, federal law contained in 28 USC 547(1)

---------------------------------------------------------------------------------------------------

strictly prohibited the USAO from seeking or prosecuting the bogus charges in the 1224 indictment; and federal law contained in 18 USC 3231 prohibited the 1224 district court from adjudicating -- trying the case at trial in November 2007 -- the proceedings lacking statutory subject matter jurisdiction rendering the proceedings in 1224, 09-0851-Cr (2d Cir.), and 11-2151-Cr (2d Cir.) null and void ab initio. Steel co. v. Citizens for a Better Environment, 523 U.S. 83, 94, 110-111 (1995) (court lacking subject matter jurisdiction lacks authority to adjudicate the issues in a matter; an advisory judgment is null and void ab initio).

iii. Garland and GSL refused to file any motion to dismiss the indictment or any other challenge to the bogus indictment of the USAO in 1224, e.g., see the clerk's docket report in 1224. Garland refused telling Ware, "I am not going to look behind the indictment and challenge it ... I cannot do that."

Clearly Garland and GSL had an actual conflict of interest, and violated Ware's Sixth Amendment rights and the rules of the State Bar of Georgia by not providing "effective assistance of counsel" and colluding and conspiring with the USAO in 1224 to frame Mr. Ware for not joining the continuing criminal enterprise, (the "CCE") run by the USAO and the federal courts in New York to extort small publicly traded companies of their free-trading securities in violation of 18 USC 2, 4, 201, 225, 241, 242, 371, 891-94, 1201-02, 1343, 1346, 1505, 1510, 1621-23, 1956-57, 1961-62, 15 USC 77e(a, c), 77x, 78ff, and Rule 10b-5, (the "Racketeering Activities").

iv. Any competent securities lawyer would have immediately observed that the bogus indictment in 1224 did not charge an "offense" and was required to the dismissed. The USAO's Preet Bharara and Katherine Polk-Failla agreed and conceded that issue on August 12, 2010 in their appeal brief filed in U.S. v. Ware, 09-0851-Cr (2d Cir.) by conceding Mr. Ware's points 1, 2, and 3 raised on appeal, e.g., cf. Ex. @ 9-13, the table of contents of the fraudulent brief filed by the USAO on behalf of the USA in U.S. v. Ware, 09-0851-Cr (2d Cir.).

*Note that the USAO did not respond to Mr. Ware's points 1, 2, 3, 4 (Ex. @ 14-31), 5, and 9 raised by Mr. Ware on direct appeal; and according to Fed. R. App. Proc. 28(b) (2010) forfeited and conceded the issues and contentions which cannot be controverted by the USAO in this proceeding.

In particular note at Ex. @ 14-31 where the USAO conceded the fact that it and District Judge Robert W. Sweet perpetrated a fraud on the court in 1224 using "Jim Crow" jurisprudence and other illegal means and methods.

Therefore, Garland had no viable reason or excuse for not moving to dismiss the indictment other than fraud, conspiracy and collusion with the USAO to violate Mr. Ware's civil rights for which Garland and GSL are jointly and severably liable for monetary damages estimated at $250 million (USD).

## CONCLUSION.

Mr. Ware has shown by overwhelming proof that the USAO procured a bogus and fraudulent indictment in 1224 based on the bogus and fraudulent orders entered by Leonard B. Sand acting in his personal and individual capacity -- entered lacking all subject matter jurisdiction -- to perpetrate a fraud on the court, aiding, abetted and with the direct participation of Preet Bharara, Katherine Polk-Failla, Edward T.M. Garland, Manny Arora, David Levitt, and other known and unknown.

## RELIEF REQUESTED.

Appellant Ware is requesting the Court, lacking subject matter jurisdiction (28 USC 1294(1)), and as a result of Alpha Capital's Rule 41(a)(2) on December 20, 2007 (Dkt. #90:2219) to:

1. Reverse and vacate the bogus order of the 1224 district court (Dkt. #125); and

2. remand with instructions to recuse District Judge Sand;

3. vacate all orders entered on behalf of Alpha Capital, AG and the 2219 plaintiffs;

4. vacate the judgment dismissing IVG Corp.'s counterclaim and enter judgment for IVG on the counterclaim due to the judicial admissions contained in the 2219 plaintiffs' complaint;

5. dismiss and enter judgment against the 2219 plaintiffs' claims;

6. set the matter down for a Rule 11 proceeding;

7. set the matter down for a 60(d)(3) proceeding;

---

8. enter and order order all 2219 plaintiffs to deposit into the registry of the court the cash value of all shares received of IVG or GPMT and any other relief the court deems just and proper.

Submitted by counsel:

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. box 150160
Atlanta, GA 30315
October 23, 2011.

-------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 11-4181/2151: Part 1- Motion for Leave
DATE: 02/21/2012 12:19:58 PM

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE/DISMISS FILED IN 11-4181.

Appellant Ulysses Thomas Ware's response in opposition to the execrable fabricated "advisory order" of the Second Circuit Court of Appeals entered purportedly on October 13, 2011 by 'unknown' circuit judges -- who fearing for their personal pecuniary interests and penal interests -- in violation of the Constitution's Due Process Clause; Article II, sec. 3; Article III, sec. 2; 28 USC 1294(1); 28 USC 46 (b, c); Celotex v. Edward, 514 U.S. 300 (1995); and the Supreme Court's authority contained in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1995) (J. Scalia); and (2) an Application for a fraud on the court proceeding to investigate the issuance of the fabricated October 13, 2011 ultra vires order.

I. CONTENTIONS:

Appellant Ware contends as a threshold issue which must be addressed by the Court prior to reaching any decision on the merits of this application, Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1995) (a federal court must "first" as a threshold matter, sua sponte, determine its jurisdiction over the subject matter of the proceedings before reaching the merits in the proceedings); Lumbermens Mut. Cas. Co. v. RGIS Inv. Spec., 356 Fed. Appx. 452, 454 (2d Cir. 2009)(same), that the United States Court of Appeals for the Second Circuit sitting in Manhattan, NY:

(1) lacks all territorial subject matter jurisdiction (28 USC 1294(1)) to determine any matter in regard to the 11 USC 362(a) automatic stay and 11 USC 365(c)(2) unappealed final orders entered in GPMT and SSSG's chapter 7 filing in the United States bankruptcy court sitting in the Eleventh Judicial Circuit; and

(2)(a) The members of the panel that purported to issue the fabricated August 16, 2011 and October 13, 2011 orders demanding that appellant Ware file a motion for leave to appeal in 1224/2219, else the proceeding 11-2151-Cr will be dismissed were not identified in the August 16, 2011 or October 13, 2011 orders as required by 28 USC 46 (a-d) (2011); and

(b) 28 USC 46 (d) requires a statutory quorum to be present in order for a United States court of appeals to conduct the "official" business of a court of appeals, i.e., to hear and determine matters where a "live case or controversy" exist in the matter before the court; and

(c) accordingly, the Court lacking an Article III, sec. 2 "live case or controversy" in 11-2151-Cr as a result of District Judge Robert W. Sweet's May 18, 2011 order entered in U.S. v. Ware, 04-Cr-1224(RWS)(SDNY), ("1224") at Dkt. #125 agreeing with appellant Ware's contentions and arguments finding a "live case or controversy" did not exist in 1224 rendering the 1224 proceedings moot; and lacking a live case or controversy in 11-4181-Cv as a result of 28 USC 1294(1)

(d) thus, lacking a "live case or controversy" in 11-2151-Cr and 11-4181-Cv-- necessary and required to invoke the authority of a court of appeals, 28 USC 46 (a-d), to conduct the "official" business of the Court in 11-2151-Cr, i.e., to enter the August 16, 2011 order: How was it possible that the Court has "lawful" authority to issue the October 13, 2011 order lacking a "live case or controversy" in 2219 as of October 13, 2011?

Therefore, appellant Ware submits the fabricated August 16, 2011 order and October 13, 2011 order are null and void ab initio as an illegal ultra vires "advisory order", worthless and a nullity lacking all legal force and effect and lacking all precedential value. Steel Co., supra.

II. OPENING STATEMENT:

1. On November 7, 2008 the Office of the Solicitor General, (the "OSG") the exclusive statutory delegee of the Executive Branch (28 USC 516, 28 CFR 0.20 (a, b)) to litigate in the appellate courts of the United States on behalf of the USA, notified the United States Court of Appeals for the Second Circuit of the mandate (political decision) of the United States in regard to U.S. v. Ware, 05-Cr-1115(WHP)(SDNY), ("1115").

(a) The OSG in a written brief filed in U.S. v. Ware, 07-5222-Cr, 07-5670-Cr (XAP) informed the Second Circuit pursuant to Article II, sec. 3 of the Constitution the Executive Branch was abandoning any and all interests in U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115") and was declining to pursue an appeal of District Judge William H. Pauley, III adverse trial rulings finding the United States' proof insufficient on the material factual issues of (1) market efficiency for the securities of INZS and

SVSY, (S. Tr. 75-76); (2) insufficient proof on the material factual issue of materiality (Id.); and (3) declining to award the United States any restitution in 1115 (Id.):

"The United States filed a notice of appeal [in 1115], but is not pursuing a cross-appeal [in 07-5670-Cr]"

in 07-5670-Cr (XAP) and has made a unreviewable nonjusticiable "political decision" pursuant to the constitutionally "demonstrable" prosecutorial prerogative contained in Article II, sec. 3 of the Constitution ("to take care for the faithful execution of the laws"); 28 USC 516; 18 USC 3742(b); and 28 CFR 0.20 (a, b); Baker v. Carr, 369 U.S. 186, 217 (1962)(political decisions affect the subject matter jurisdiction of a federal court -- justiciability -- of a controversy); United States v. Nixon, 418 U.S. 683, 693 (1974)(same); Castell v. U.S., 98 F.2d 88, 91 (2d Cir. 1938) ("[C]ontrol over litigation to which the United States is a party authorized the Attorney General to abandon the appeal"); U.S. v. Campo, 140 F.3d 415, 419 (2d Cir. 1998) (Executive Branch political decision is "isolated from judicial review by separation of powers."); Avar v. Ashcroft, 585 F.3d 559, 575 (2d Cir. 2009 (en banc)(same in foreign relations context), terminating the Second Circuit's jurisdiction over the subject matter of 1115, i.e., 1115 became moot.

(b) Justice Berger writing for the unanimous Court in Nixon, supra, explained in regard to Article II, sec. 3 Executive Branch authority:

"[T]he Executive Branch has exclusive authority and absolute discretion to
decide whether to prosecute a case [or terminate a case] ... since
[the political decision] involves a [constitutional] 'textually demonstrable' grant of
power under Article II, section 3 of the Constitution." Id. at 693. (emphasis added).

Accordingly, as a result of 1115, 07-5222-Cr and 07-5670-Cr (XAP) becoming moot on November 7, 2008, Castell, supra; Campo, supra; and upon entry of final judgment by the Second Circuit on August 18, 2009 (Dkt. #113:1115), Federated Dept. Stores, Inc., v. Moitie, 352 U.S. 394, 400-01 (1981)(J. Rehnquist) (res judicata is binding on all courts and there is no exception), the mandate of the OSG to abandon 1115 became res judicata and collateral estoppel on the Second Circuit and the United States in any subsequent litigation between the "real parties in interest" in 1115 -- Mr. Ware and the United States -- not the Second Circuit Court of Appeals; rendering the bogus opinion issued on August 18, 2009 and reported at U.S. v. Ware, 577 F.3d 442 (2d Cir. 2009) an ultra vires, null and void ab initio "advisory opinion" void of any and all legal force and effect, i.e., worthless without any preclusive effect. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1995) (J. Scalia).

(c) Therefore, once 1115, 07-5222-Cr and 07-5670-Cr became moot on November 7, 2008 and finalized on August 18, 2009, (Dkt. #113:1115) the fabricated November 5, 2010 fraudulent filing injunction is null and void ab initio as an "advisory order" without any preclusive effect on any party and must be immediately vacated and set aside. Steel Co., supra.

The OSG notified the Second Circuit of the mandate of the Executive Branch which was not subject to review or challenge by the judiciary, and is not currently subject to any review or challenge by the judiciary. Accordingly, on November 7, 2008 the proceedings in 1115 became moot: a live case and controversy ceased to exist in 1115 once and for all after the OSG filed its brief on behalf of the United States in the Second Circuit in 07-5222-Cr.

(d) Accordingly, conceptually the Second Circuit Court of Appeals, an Article III federal court, lacks subject matter jurisdiction to review or challenge an internal DOJ prosecutorial decision regarding 5222, 5670, and 1115 made on November 7, 2008 to "not pursue a cross-appeal" in 1115 (18 USC 3742(b), 28 CFR 0.20 (a, b)) is not a justiciable or reviewable controversy by a federal court -- the issue is "moot."

Once an issue becomes "moot" -- a "live case or controversy" no longer exists -- federal law (28 USC 46 (a-d)) strictly prohibits a federal circuit court of appeals (including the circuit clerk's office acting sua sponte) from conducting any "official" business in a proceeding.

(e) Thus, the Second Circuit and the circuit clerk's office as of November 7, 2008, lacking an Article III "live case or controversy" in 5222, 5670 and 1115 was strictly prohibited by federal law (28 USC 46 (a-d)) and Art. II, sec. 3 of the Constitution from issuing the ultra vires (execrable/bogus) Nov. 5, 2010, August 16, 2011, and October 13, 2011 orders.

Hence, the October 13, 2011 order was an illegal "advisory order" and was issued knowingly, intentionally, willfully, and deliberately to violate federal law and to violate appellant Ware's Fifth Amendment Due Process Clause right of access to the federal courts of the United States.

All proceedings in 1224 and 2219 are terminated and res judicata and collateral estoppel. Federated, supra.

---------------------------------------------------------------------------------------------------------

III. STATEMENT OF UNDISPUTED MATERIAL FACTS NOT IN DISPUTE.

1. On May 18, 2011 (Dkt. #125) District Judge Robert W. Sweet, in U.S. v. Ware, 04-Cr-1224(RWS)(SDNY), ("1224") entered an order finding that an Article III "live case or controversy" did not exist in 1224, feeling the heat and pressure of a criminal investigation of his conduct in 1224 washed his hands of 1224, (the "Art. III Finding"), and terminated 1224 for lack of subject matter jurisdiction by the 1224 district court -- 18 USC 3231 prohibited the 1224 court from any further actions in 1224 else the actions are taken in a personal capacity rendering 11-2151-Cr moot.

2. As a result of the 1224 court's Art. III Finding on May 18, 2011 the Second Circuit Court of Appeals an Art. III federal court, governed by 28 USC 46 (b, c, d) prohibited the Court from a hearing or determination of any "cause" in regard to 1224 on appeal in 11-2151, ("2151") because 1224 and 11-2151-Cr are moot.

3. The Executive Branch of government represented by the United States Attorney for the Southern District of New York, (the "USAO") exercised its exclusive constitutionally conferred prosecutorial prerogative and pursuant to 18 USC 3742(b) abandoned any and all appeals rights of the USA in regard to the Art. III Finding of District Judge Sweet; and accordingly, Dkt. #125 is now res judicata and collaterally estoppel on the USAO, the 1224 district court, the Second Circuit, the Office of the Solicitor General, (the "OSG"), and the Supreme Court. Federated Dept. Stores, Inc., v. Moitie, 352 U.S. 394, 400-01 (1981) (J. Rehnquist) (res judicata is binding on all courts and there are no exceptions). The proceedings in 1224 and 11-2151-Cr are moot.

4. As a result of the Executive Branch exercising an unreviewable nonjusticiable internal DOJ "political decision" not to appeal the Art. III Finding, the Second Circuit Court of Appeal on May 18, 2011 lost all subject matter jurisdiction over 1224 and 2151. Cf. Baker v. Carr, 369 U.S. 186, 217 (1962) (a DOJ prosecutorial "political decision" is a jurisdictional issue going to the court's subject matter jurisdiction -- a political decision in regard to a prosecutorial prerogative is not a justiciable controversy or case over which a federal court can exercise jurisdiction over the subject matter), the proceedings became moot.

5. As of December 3, 2003 the Second Circuit lacking all subject matter jurisdiction as a result of the Art. III Finding and the Executive Branch's political decision, any order or opinion entered in 2219 was a null and void ab initio "advisory order or opinion" without any legal force or effect, a nullity, worthless; and fraudulently entered to obstruct justice in preventing the dismissal of 1224 and the arrest and prosecution of Michael J. Garcia, Preet Bharara, Robert W. Sweet, Peter W. Hall, Robert A. Katzmann, and Barbara S. Jones.

6. The fabricated November 5, 2010, August 16, 2011, and Oct. 13, 2011 advisory orders were issued by the Court lacking all subject matter jurisdiction. Hence, Stump v. Sparkman, 435 U.S. 349 (1978) teaches that each judge involved has personal civil monetary liability (+$5.0 billion) for their actions.

------------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 11-4181: Part 1A: Motion for Leave
DATE: 02/21/2012 12:21:30 PM

I.    MATERIAL ISSUES WHICH WILL BE RAISED ON APPEAL IN 11-4181, HOWEVER, WHICH ARE ALL MOOT.

1.    The 2219 district court intentionally overlooked the palpable fact that on December 3, 2003 both Group Management

Corp., ("GPMT") and SSSG Acq. Corp., ("SSSG") filed for chapter 7 protection pursuant to Title 11 of the bankruptcy code in

Atlanta, GA, (the "Atlanta Bankruptcies") invoking the automatic stay injunction of 11 USC 362(a) terminating and staying all

pending litigation to which GPMT and SSSG were a party to including but not limited to Alpha Capital, AG, et al., v. IVG

Corp., 02-CV-2219(LBS)(SDNY), ("2219").

   Accordingly, both the fabricated December 22, 2003 judgment (the "RICO Proceeds Judgment") and the fabricated June

22, 2004 judgment (the "Kidnapping Judgment") are null and void ab initio without "preclusive" effect. In re Heating Oil

Partners, L.P., infra.   Expounding on Section 362(a)'s automatic stay and Circuit authority in the recent case of In re

Heating Oil Partners, L.P., 2011 U.S. App. LX 9978 (2d Cir. May 16, 2011) the Second Circuit held in reaffirming Eastern

Refractories Co. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998) that "[t]he stay is effective immediately

upon the filing of the petition, and any proceedings or actions described in section 362(a)(1) are void and without vitality if

they occur after the stay takes effect.", Id. at *4.

   Thus, applying binding Circuit precedent to the indisputable facts according to Mr. Zitter who testified for the

government at Mr. Ware's bogus criminal contempt trial in U.S. v. Ware, 04-Cr-1224(RWS)(SDNY), ("1224") in November

2007 at Tr. 350-51 that both he and Judge Sand had actual notice of SSSG's and GPMT's chapter 7 filings on December 4,

2003, the proof is overwhelming that Judge Sand fabricated the bogus judgments to have Mr. Ware illegally indicted for not

joining the CCE to extort GPMT of more than +$18 million in free-trading shares.

   Mr. Zitter under direct examination by Assistant United States attorney, ("AUSA") Nicholas S. Goldin testified as follows at Tr.
350-51:

Mr. Goldin: Take at look at [GX-32].
Mr. Zitter: ok.
Mr. Goldin: Do you have that?
Mr. Zitter: Yes, I do.
Mr. Goldin: ... what is it?
Mr. Zitter: It's a letter which Mr. Ware sent to Judge Sand on December 4, 2003.
Mr. Goldin: Did you received a copy of this letter in the course of the [2219] litigation?
Mr. Zitter: Yes, I did.
Mr. Goldin: The government offers 32 into evidence.
The Court: It's admitted.

   Later at Tr. 352 L 5-15 AUSA Goldin had Mr. Zitter read into the record the contents of GX-32, Mr. Ware's letter of December
4, 2003 notifying both Judge Sand and Mr. Zitter of the Section 362(a) automatic stay.

Mr. Goldin: Mr. Zitter can you read that to the jury?

Mr. Zitter: Judge Sand, enclosed you will find two chapter 7 liquidation petitions filed for SSSG Acquisition Corp. and Group Management Corp. in the Northern District of Georgia per section 362 of the United States Bankruptcy Co[de]. All proceedings against the debtors are hereby stayed and all collections and it is immediately terminated.
Mr. Goldin: What does that means?
Mr. Zitter: It means you can't take [any actions against SSSG or GPMT after December 3, 2003].
Mr. Goldin: Who is this document signed by?
Mr. Zitter: Thomas Ware.

Tr. 352 L 22
Mr. Goldin: Mr. Zitter, is this a voluntary petition of the United States Bankruptcy Court of the Northern District of Georgia?
Mr. Zitter: Yes.
Mr. Goldin: What is the name of the debtor?
Mr. Zitter: Group Management Corp.

Later under direct examination by AUSA Goldin Mr. Zitter testified that he did not understand Mr. Ware's December 4, 2003 letter (GX-32).

Tr. 359 L5 -14.
Mr. Goldin: What did you do when you received -- what , if anything, did you do when you received the December 4, 2003 letter?
Mr. Zitter: Well, I was already pretty familiar with the corporate transactions that's you've previously testified that I really couldn't make heads or tails out of what the corporations were attempting to do by them transactions. I couldn't understand them[.]

...
Tr. 359 L18.
Mr. Goldin: At this point, your Honor, we move into evidence Government Exhibits 252 and 253 which are certified copies of the Group Management and Silver Screen [A]cquisition bankruptcy petitions that we have been looking at.

The Court: They're admitted.

2. As part of the plan and scheme to commit a fraud on the court and to aid and abet the continuing criminal enterprise,

(the "CCE") AUSA Goldin on behalf of United States attorney Michael J. Garcia, and the USAO, moved into evidence at trial

in 1224 at Tr. 360 (GX-34) the void ab initio December 22, 2003 judgment ( the "Rico Proceeds Judgment) referenced in the

2219 District Court's bogus August 1, 2011 order (Dkt. #102).

The same fabricated void judgment was passed on to the SEC by former AUSA Alexander H. Southwell to SEC counsel

Jeffrey B. Norris who used the bogus fabricated RICO Proceeds Judgment to have fraudulent Rule 11 sanctions imposed on

Mr. Ware in the fraudulent SEC Las Vegas Litigation: SEC v. Small Cap Research, 03-0831-KJD-RJJ (D. NV), ("0831"). Which

as a result of Alpha' s Rule 41 dismissal voids the 0831 judgment which was used against Mr. Ware in U.S. v. Ware,

05-Cr-1115(WHP)(SDNY), ("1115") which judgment is now also void.

The scam was arranged by the U.S. Attorneys David Kelly and Michael J. Garcia and SEC officials who are participants in

the CCE and co-conspirators to extort GPMT of +$18 million of its free-trading shares, cf. with Mr. Ware's Rule 33 motion for

a new trial filed in 1115 on October 7, 2010 and still pending.

Compare Norris's and Southwell's emails attached to Mr. Ware's Rule 33 filed in 1115, which AUSA Southwell stated in open

court on May 19, 2006 (Dkt. #17) and again on January 5, 2007 (Dkt. #44) the emails between he and Norris did not exist,

which was a bold-faced lie and perjury.

The void RICO Proceeds Judgment (GX-34) was void ab initio according to Circuit precedent, In re Healing Oil Partners, L.P., supra, 11 USC 362(a) of which both Mr. Zitter and Judge Sand had actual notice of the Atlanta Bankruptcies filed on December 3, 2003 in Atlanta, GA (GX-32) in the Northern District of Georgia.

The Second Circuit Court of Appeals (09-0851-Cr, 11-2151-Cr), 1224 district court, and the 2219 district court all lack lawful territorial subject matter jurisdiction (28 USC 1294(1)) to adjudicate an unappealed Section 362(a) order entered on December 3, 2003 in the Atlanta Bankruptcies. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1995).

Thus, 28 USC 1294(1) and the overlooked Supreme Court precedent Celotex v. Edwards, 514 U.S. 300 (1995)(which held that the 2219 plaintiffs would have to file a motion in the bankruptcy court in Atlanta, GA to lift the automatic stay (11 USC 362(d)) in GPMT and SSSG's chapter 7s; and then if denied appeal to the district court in the Northern District of Georgia (not the 2219 district court), and then if denied appeal to the Eleventh Circuit Court of Appeals (not the Second Circuit) to continue the 2219 litigation after December 3, 2003); is binding authority on the 2219 court that it currently lacks authority to adjudicate any orders entered in the Atlanta Bankruptcies which are res judicata and collateral estoppel in the 2219 court, the Second Circuit and the USAO. Federated Dept. Stores, Inc. v. Moites, 352 U.S. 394, 400-01 (1981)(res judicata is binding on all courts and there are no exceptions) voiding any subject matter jurisdiction of the 2219 court!

Therefore, the RICO Proceeds Judgment (GX-34) was and is null and void ab initio as well as the Kidnapping Judgment pursuant to 28 USC 1294(1); Section 362(a), 365(c)(2), and the Rule 41(a)(2) order of dismissal of Alpha from 2219 on December 20, 2007. (Dkt. #90).

3. Furthermore, since the N.Y. CPLR 213(2): New York state contract statute of limitation (six years), St. Johns Univ. v. Bolton, 2010 U.S. Dist. LX 136339 (SDNY Dec. 10, 2010) ran on March 20, 2008 without Alpha refilling its complaint in 2219, Alpha is also barred by res judicata from any recovery, Willard v. Wood, 164 U.S. 502, 523 (1896) and must immediately return the cash value of all GPMT's shares received ($525.75 million plus attorneys fees for filing the frivolous complaint in 2219 in violation of Rule 11) pursuant to any order entered in 2219 which fell with Alpha's Rule 41(a)(2) order falling out of 2219 on December 20, 2007 (Dkt. #90) cf. U.S. v. Alaska S.S. Co., 253 U.S. 113, 116 (1920)("Where, by an act of the parties [Rule 41(a)(2) motion] ... the existing controversy has come to an end, the existing case becomes moot, and should be treated accordingly."); A.B. Dick Co. v. Marr, 197 F.2d 498, 502 (2d Cir. 1952):

> ("Voluntary dismissal [Rule 41(a)(2)] of a suit leaves the situation so far as procedures therein are concerned the same as though the suit had never been brought ... thus vitiating and annulling all prior proceedings and orders [Dkt. #50, 54, 58, 61, 65, 67, 77, 78, 80, 83, and 88] in the case and terminating [subject matter] jurisdiction over the matter for the reasons that the case has become moot.");

Hill v. W. Burns & Co., 498 F.2d 565, 567 (2d Cir. 1974)(same); Oneida Indian Nation v. Oneida County, 622 F.2d 624, 629

----------------------------------------------------------------------------------------------------

n. 7 (2d Cir. 1980)(same); In re Piper Aircraft Dist. Sys. Antitrust Litig., 551 F.2d 213, 219 (8th Cir. 1977)(same, "neither res judicata nor collateral estoppel is [] applicable to a voluntary dismissal."); Bryan v. Smith, et al., 174 F.2d 212, 214 (7th Cir. 1949) held that the proceedings were a nullity explaining:

> "It is a well-settled rule that after a plaintiff has ... dismissed his cause of action ... the court is without further [subject matter] jurisdiction and has no right to render any judgment either for or against the plaintiff."

National R. Pass. Corp. v. Int'l Assn. of Mach., 915 F.2d 43, 48 (1st Cir. 1990) held orders and judgments moot as a result of Rule 41(a)(2) and cannot be relied upon even if not expressly vacated by district court; and to rely upon is "improper" because annulled orders and judgments lack preclusive value, i.e., res judicata and collateral estoppel not available to pleadings vacated by Rule 41(a)(2) without prejudice: "In effect, then the doctrines of collateral estoppel and res judicata are no longer available to the court's previous opinions [November 25, 2002 (Dkt. ##50,54)] and orders [2219 court's RICO Proceeds Judgment and the Kidnapping Judgment]," (the "Void Judgments").

(a)    Thus, the district court's reliance ... upon the [Void Judgments] was improper, even though such [judgments] had not been expressly vacated." Ibid. Lacking preclusive effect, the 1224 court nor the 09-0851-Cr nor the 11-2151-Cr panel could rely on any order entered on behalf of Alpha in 2219, and are required to vacate their judgments.

The matter in 2219 regarding Alpha being "moot" after December 20, 2007, nunc pro tunc, March 20, 2002 (the filing date of the complaint in 2219) and Circuit authority in Lumbermens Mut. Cas. Co. v. RGIS Inv. Spec., 356 Fed. Appx. 452, 454 (2d Cir. 2009) "mootness is a jurisdictional question, it must precede the determination of substantive issues." citing Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998) (J. Scalia), the 2219 court and the 11-2151-Cr courts are required to confirm their subject matter jurisdiction, which they lacks, before entry of the bogus August 1, 2011 order, (Dkt. #102); and bogus August 16, 2011 order, respectively.

(b)    Overlooked by the district court was 11 USC 365(c)(2) which by operation of law terminated all contracts of IVG Corp. to issue its securities on March 17, 2003 upon GPMT filing its chapter 11 in Atlanta, GA, i.e., the subscription agreement and the convertible debenture notes and promissory notes issued by IVG Corp. to the 2219 plaintiffs.

4.   Also overlooked, intentionally by the district courts was the indisputable fact that on December 20, 2007 at docket # 90 District Judge Leonard B. Sand entered an order on Alpha's ex parte Rule 41(a)(2) of the Fed. R. Civ. Proc. to be voluntary dismissed without prejudice from 2219, (the "Rule 41 Order") which as a matter of law: (1) mooted all claims of Alpha in

P. 17

TRULINCS 56218019 - WARE, ULYSSES THOMAS - Unit: ATL-S-F

----------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 11-4181: Part 2: Motion for Leave
DATE: 02/21/2012 12:22:20 PM

2219, (2) ceased an Article III live case or controversy in 2219 regarding Alpha's claims filed in the frivolous complaint by

Mr. Zitter, and (3) terminated the 2219 court's Article III subject matter jurisdiction over the claims of Alpha in 2219, i.e.,

the claims became moot prohibiting the Court from issuing an "advisory opinion" on behalf of Alpha., Steel Co., supra.

5. Also overlooked by the 1224 district court were the binding judicial admissions pled by the 2219 plaintiffs through their

attorney of record Kenneth A. Zitter, Esq. in their own complaint (Dkt. #1) paragraphs 10-20 which pled the 2219 plaintiffs

out of court.

Zitter pled the indisputable fact and make the binding admission that the 2219 plaintiffs were statutory underwriters of

GPMT's securities and therefore ineligible for Rule 144(k), ld. (Dkt. #1 @ para. 13).

Also overlooked by the 1224 district court was the obvious fact that due to the Atlanta Bankruptcies all orders entered by

the district court after December 3, 2003 are null and void initio as entered in violation of Section 362(a) automatic stay, In

re Heating Oil, supra, and Rule 60(b)(4) voided the legally void orders and judgments knowingly and intentional entered after

Judge Sand had actual notice of the filing of SSSG and GPMT's chapter 7's on December 3, 2003 in Atlanta, GA. (GX-252,

GX-253) according to government witness 2219 plaintiffs' counsel Mr. Zitter.

6. Also overlooked by the 1224 district court, intentionally, was the indisputable fact that the 2219 court entered its

August 13, 2003 (Dkt. #65) order after unethical ex parte communications in violation of Canon 3(a)(4) with Stonestreet,

L.P.'s counsel, Mr. Zitter, where Stonestreet, L.P. admitted that its did in fact beneficially own more than 9.9% of GPMT's

outstanding shares, and was in fact an affiliate of GPMT ineligible for Rule 144(k); moreover, Stonestreet's admission had

dire consequences for the other 2219 plaintiffs.

Stonestreet's admission that it was an affiliate and the fact that GPMT's Notes were acquired by the 2219 plaintiffs via a

single subscription agreement conferred 17 C.F.R. 240.13d-5(b)(1) statutory group membership status on each of the 2219

plaintiffs rendering each ineligible for Rule 144(k) as of February 7, 2001. (emphasis added). Roth v. Jennings, 489 F.3d

499, 506-10 (2d Cir. 2007) (J. Kearse) (each of the 2219 plaintiffs deemed the "beneficial" owner of Stonestreet's more than

9.9% of GPMT's shares from the date of acquisition February 2, 2001 rendering the frivolous 2219 complaint moot which the

USAO and OSG knew and currently know, but are covering-up the fraud.).

Rule 144(k) (2003) is circumscribed in its scope and prohibited affiliates, dealers, and underwriters from any eligibility of

the exemption from Section 5 to conduct a 'public offering' or "distribution" of unregistered securities. SEC IR 5121; SEC

Release 33-7190.

---

Thus, Stonestreet's August 13, 2003 binding judicial admission in (Dkt. #65 August 13, 2003 order), Hoodo v. Holder, 558

F.3d 184, 1991 (2d Cir. 2009) ("Facts admitted by a party are judicial admissions that binds that party throughout the

litigation.") (brackets omitted), in (Dkt. #65) prohibited any and all Rule 144(k) (2003) eligibility for each of the 2219

plaintiffs, notwithstanding Mr. Zitter's judicial admissions pled in paragraphs 10-20 of the 2219 complaint (Dkt. #1)

admitting that the 2219 plaintiffs were statutory underwriters (Section 2(a)(11)) of GPMT's Notes, and accordingly not 'bona

fide investors' of GPMT's securities.

II. JUDICIAL ADMISSIONS OF VIOLATIONS OF FEDERAL SECURITIES LAWS.

1. Furthermore, Mr. Zitter's binding judicial admissions pled in paragraphs 10-20 of the 2219 complaint pled primary

violations of the federal securities law: (1) the admissions made by referencing paragraph 10.1(iv) of the Subscription

Agreement proved that the 2219 plaintiffs were not 'bona fide investors' but underwriters and dealers of GPMT's securities;

an admission that the 2219 plaintiffs made material false and misleading statements to GPMT's in the subscription

Agreement paragraphs (1 (a-i); 3) to induce GPMT to issue its Notes and Promissory Notes pursuant to a statutory

exemption 15 USC 77d(2) (2001) which it was not eligible for given that Section 2(a)(11, 12) statutory underwriters and

dealers, respectively, were present in the transaction, i.e., Alpha Capital, AG as admitted by Ari Rabinowitz at trial in 1224

(Tr. 204-06).

2. The material false and misleading misrepresentations admitted by Mr. Zitter were violations of 15 USC 77e(a), 77x,

78j(b), 78o(a), 78ff, Rule 10b-5, 18 USC 2, 371, 225, 891-94, 1343, 1956-57, and 1961-62 which now cannot be disputed by

the 2219 plaintiffs and their proxies, surrogates and alter-egos: David Kelly, Preet Bharara, Michael J. Garcia, Leonard B.

Sand, William H. Pauley, III, Robert W. Sweet, Kent J. Dawson, Barbara S. Jones, Kenneth A. Zitter, Esq., Barbara R.

Mittman, Edward Grushko, Ari Rabinowitz, Alexander H. Southwell, Nicholas S. Goldin, Sarah E. Paul, Maria E. Douvas, Lisa

Scolari, James H. Roth, Nathan Ladenburg, Peter W. Hall, Amalya L. Kearse, Robert D. Sack, Reena Raggi, Rosemary S.

Pooler, B.D. Parker, Chester J. Straub, Richard Wesley, Dennis G. Jacobs, Catherine O'Hagan-Wolfe, Ruby Krajick, Loretta

A. Preska, Katherine Polk-Failla, Alexander J. Wilson, Stephen Underhill, David Trager, John W. Mills, III, Dennis S. Meir,

Kilpatrick, Townsend & Stockton, LLP, Thomas V. Sjoblom, Prokauser & Rose, LLP, Jeffrey B. Norris, Esq., Edward T. M.

Garland, (FUGITIVE Thomas Badian), and others known and unknown.

3. Mr. Zitter pled the binding judicial admissions in paragraph 13 of the complaint (Dkt. #1) as follows:

"Pursuant to Section 10.1(iv) of the Subscription Agreement , IVG was obligated to file on or before
May 3, 2001 a Form SB-2 registration statement with the United States Securities and Exchange
Commission registering the stock underlying the Notes [sold on February 7, 2001 for an immediate
public offering] so that upon conversion the [GPMT] stock could be sold on the open market without,
[i.e., an 'immediate public offering'] restriction. IVG was obligated to have such registration
statement declared on or before June 17, 2001 [less than 135 days from purchase of the Notes]."

----------------------------------------------------------------------------------------------------

4. Mr. Zitter's binding judicial admissions in the 2219 complaint overwhelmingly proved that the 2219 plaintiffs did not purchase GPMT's Notes for 'investment', but the Notes were purchased for immediate distribution, i.e., the 2219 plaintiffs were not 'bona fide' investors, i.e., the 2219 plaintiffs had no intention of holding the Notes for at least two years to qualify for Rule 144(k) (2001), but were 15 USC 77b(a)(11, 12) statutory underwriters and unregistered broker/dealers, respectively, operating in violation of 15 USC 78o(a); as well as affiliates of GPMT. Gilligan Will & Co. 267 F.2d 461, 467-68 (2d Cir. 1959). ("Petitioner conceded that if such sales [of the debentures] were intended at the time of purchase, the debentures would not have been held as investments.").

5. Mr. Zitter's binding judicial admissions in the 2219 complaint (Dkt. #1) made on behalf of the 2219 plaintiffs, and U.S. attorney David Kelly's admissions made in the 1224 indictment at para. 8-15 are binding on the plaintiffs and their proxies, surrogates, and alter-egos, and are binding in this matter and in all proceedings in regard to this matter.

Thus there is no defense by the 2219 plaintiffs including District Judge Sand, and there is no defense by the USA and any defense is frivolous as well as moot where the admissions in the 1224 indictment and 2219 complaint cannot be disputed as matter of law. Gen'l Ins. Co. of Am. v. Mezzacappa Bros., Inc., 110 Fed. Appx. 183, 185 (2d Cir. 2004) citing Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, 322 F.3d 147, 167 (2d Cir. 2002) citing Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985) (Judicial admissions contained in party's pleadings bound party throughout litigation, party cannot contradict its own pleadings with affidavits). (emphasis added) Cf. Oscanyan, infra.

6. The USAO knowingly and deliberately committed a fraud on the grand jury, petit jury, and the Second Circuit (09-0851-Cr) panel by presenting evidence known to have been fabricated by District Judge Sand and former AUSA Alexander H. Southwell in violation of federal law (18 USC 2, 214, 242, 371, 1621-23, and 1961-62).

The USAO purportedly (there is no proof) presented to a federal grand jury sitting in New York, NY on or about November 17, 2004 and procure the fraudulent indictment in 1224 using the fabricated null and void ab initio December 22, 2003 RICO Proceeds Judgment (GX-34:1224) referenced in Judge Sand's bogus August 1, 2011 order (Dkt. #102).

7. In the 1224 indictment at paragraph 26 the U.S. attorney David N. Kelly (SDNY) purportedly told the 1224 grand jury the following -- knowing the same was false and fabricated by District Judge Sand and AUSA Alexander H. Southwell to frame Mr. Ware for not joining the CCE and aiding and abetting and assisting in the extortion of GPMT of more than +$18 million in free-trading shares by issuing fraudulent Rule 144(k) (2003) legal opinions fraudulently opining the 2219 plaintiffs were not affiliates and insiders of GPMT while knowing that they were --:

"'On or about December 22, 2003, the [2219] Court issues a written order in the [2219] civil action that, among other things, reconfirmed the Court's August 23, 2003 order to the extent of holding GMC and THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, in civil contempt of its [advisory] November 25, 2002 order and "based upon their willful and continued disobedience of this Court's [bogus and

--------------------------------------------------------------------------------

fraudulent] orders," referred the matter to the [USAO] for prosecution of criminal contempt against, among others, WARE.'"

FROM: 56218019
TO:
SUBJECT: 11-4181: Part 3: Motion for leave
DATE: 02/21/2012 12:22:45 PM

III.   JUDICIAL ADMISSIONS MADE BY DAVID KELLY AND 2219 PLAINTIFFS' COUNSEL KENNETH A. ZITTER, ESQ. PLED
THE PLAINTIFFS OUT OF COURT IN 1224 AND 2219.

1.     2219 plaintiffs' counsel Mr. Zitter in the 2219 complaint (Dkt. #1) at paragraph #12 pled the following judicial

admission binding on the 2219 plaintiffs, the 2219 court and the Second Circuit. Hoodo v. Holder, 558 F.3d 184, 191 (2d

Cir. 2009) ("Facts admitted by a party 'are judicial admissions that bind that party throughout the litigation.'") (brackets

omitted) citing Oscanyan v. Arms Co., 103 U.S. 261, 263 (1881)("the power of the court to act in the disposition of a trial

upon facts conceded by counsel [Kelly, Garcia, Bharara, and Zitter] is plain as its power to act upon evidence produced.").

Paragraph 12 reads as follows:

"Plaintiffs purchased the Notes pursuant to the terms of the Subscription Agreement
(the "Subscription Agreement") entered into between the parties on or about February
2, 2001. Plaintiffs collectively paid $1.1 million to IVG and each Plaintiff received a
Note in proportion to its investment, as set forth in paragraph 10." (emphasis added
to "investment").

Mr. Zitter knowingly and intentionally misrepresented to the court that the 2219 plaintiffs made an "investment" in IVG

which was false and misleading and unsupported by the language of the Subscription Agreement at paragraph 10.1(iv).

2.   The Subscription Agreement at paragraph 10.1(iv) read as follows:

(a) "The Company [GPMT] shall file with the Commission within 90 days of the Closing Date
(the "filing Date"), and use its reasonable commercial efforts to cause to be declared
effective a Form SB-2 registration statement (or such other form that it is eligible to
use) within 135 days of the Closing Date in order to register the Registrable Securities
for resale and distribution under the Act. (emphasis added to "resale" and "distribution").

(b) Para. 13 of the complaint reads as follows:

"Pursuant to Section 10.1(iv) of the Subscription Agreement, IVG was obligated to file
on or before may 3, 2001, a form SB-2 Registration Statement with the {SEC] registering
the stock underlying the Notes [the "Conversion Shares'] so that upon conversion the
stock could be sold on the open market without restrictions. IVG was obligated to have
a registration statement effective on or before June 17, 2011."

Mr. Zitter then pled the exact language of Section 10.1(iv) of the Subscription Agreement verbatim in para. 13 which is

binding as judicial admissions in this as well as on appeal of this case in the Second Circuit, and if necessary in the Supreme

Court, State Farm Mut. Ins Co. v. Worthington, 405 F.2d 683, 686 (8th Cir. 1968) ("[J]udicial admissions are binding for the

purpose of the case in which the admissions are made including appeals ... [t]he purpose of a judicial admission is that it

acts as a substitute for evidence in that is does away with the need for evidence in regard to the subject matter of the

judicial admission."); Bellefonte Re Ins. Co. v. Argonaut Ins Co., 757 F.2d 523, 528 (2d Cir. 1985) (same).

There is clearly an inconsistency between para. 12 and 13 of the complaint: on the one hand Mr. Zitter pled in para. 12

--------------------------------------------------------------------------------------------------

the plaintiffs made an "investment" in IVG, and on the other hand in para. 13 pled the language of Section 10.1(iv) of the Subscription Agreement which unequivocally rendered the plaintiffs statutory underwriters ineligible for Rule 144(k) (2002), Berckeley, 455 F.3d at 220 citing SEC Release 33-7190 (Section 2(a)(11) statutory underwriters must register all distributions ["public offering", Id. at 215] pursuant to Section 5 of the Act.")

It is indisputable according to the language of paragraph 10.1(iv) of the Subscription Agreement that the 2219 plaintiffs did not purchase the Notes for "investment", but the Notes were purchased "for resale and distribution" as admitted by Mr. Zitter in paragraph 13 of the complaint: a binding judicial admission and affirmative defense "on the face of the complaint" admitting the 2219 plaintiffs were 15 USC 77b(a)(11, 12) statutory underwriters and dealers, respectively, as well as statutory affiliates, which are binding on the 11-2151-Cr, 09-0851-Cr, 1224 and 2219 courts, the 2219 plaintiffs and Mr. Zitter in a Rule 11 proceeding for attorneys fees estimated at $22.2 million plus costs and expenses.

IV.   SUBSCRIPTION AGREEMENT MISREPRESENTATIONS BY THE 2219 PLAINTIFFS:

1.   The Subscription Agreement at paragraphs 1 (a-i) contained the misrepresentations made by the 2219 plaintiffs to IVG to induce IVG to sell its Notes pursuant to the statutory exemption contained in 15 USC 77d(2) (2001), ("Section 4(2)") at Subscription Agreement para. 3.

(a)   The 2219 Plaintiffs misrepresented their intentions in regard to the Notes at paragraph 1(b) where they misrepresented the material fact that they were accredited "investors" while secreting the material fact that they were unregistered brokers-dealers operating in violation of the federal securities laws (15 USC 78o(a)) and 18 USC 2, 371, 891-94, 1343, 1967-57, and 1961-62.

(b)   At paragraph 1(c) the plaintiffs lied in stating "the Subscriber [2219 plaintiffs] will purchase the Note for its own account and not with a view to any distribution thereof." (emphasis added to "distribution").

Comparing 3(b) above with paragraph 10.1(iv) language in 2(a) above where the 2219 plaintiffs stated IVG was required to register the "Registrable Securities for resale and distribution under the Act" ... "within 135 days days of the Closing Date" of February 2, 2001, defined the 2219 plaintiffs as underwriters who were not investors purchasing for "investment" but unregistered dealers and underwriters purchasing for "resale and distribution", i.e., unregisters dealers operating in violation of the federal securities laws (15 USC 77e(a), 77x, 78o(a), 78ff, Rule 10b-5 and 18 USC 2, 371, 1343, 1956-57, and 1961-62).

(c)   At para. 1(d) of the Subscription Agreement the 2219 plaintiffs made the materially false and misleading misrepresentation in violation of Id. 78j(b) and Rule 10b-5, that: "The Subscriber [2219 plaintiffs] will purchase the Note[s] for [their] own account and not with a view to any distribution" thus the Subscription Agreement and the Notes

-------------------------------------------------------------------------------------------------------

became unenforceable by the 2219 plaintiffs -- terminating any subject matter jurisdiction of the 2219 court since there was not a causally connected identifiable injury to the 2219 plaintiffs' as a result of GPMT's conduct or actions necessary for an Article III live case or controversy.

The plaintiffs' injury, if there was one, was caused by Congress passing the '34 Act, thus Congress was the proper party to sue for damages) and voidable by 15 USC 78cc(b), Mills v. Electric Auto-Lite, 396 U.S. 375, 387 (1970) ("Party [2219 plaintiffs] guilty of violating '34 Act is prohibited from enforcing a contract [Subscription Agreement and Notes] against an unwilling party [GPMT]."); Regional Prop. v. Fin & Real Estate Consult., 678 F.2d 552, 564 (5th Cir. 1982) ("[a]n unregistered broker-dealer [2219 plaintiffs according to the testimony of Ari Rabinowitz at trial in 1224 at Tr. 204-06] could not enforce executory contract engaging broker-dealer to sell securities using interstate facilities.").

2. The plaintiffs further made material false and misleading statements at Para. 1(d) of the Subscription Agreement in regard to the February 2, 2001 "issuance [of GPMT's Notes] in a transaction that does not require registration under the 1933 Act (based in part on the accuracy of the representations and warranties of the Subscriber [2219 plaintiffs] contained herein) where the February 2, 2001 issuance of the Notes to the 2219 plaintiffs was required to be registered pursuant Section 5(a, c) given that the plaintiffs admitted the Notes were purchased for "resale and distribution" conferring statutory underwriter status on all the 2219 plaintiffs eliminating any Section 4 transactional exemption for the issuance of GPMT's Notes.

3. Applying the Court's definition of the term "distribution" adopted in Berckeley Investment Gp. v. Colkitt, 455 F.3d 195, 215 (3d Cir. 2006):

"We agree with the rationale of those courts and similarly hold that the term "distribution" in Section 2(a)(11) is synonymous with "public offering" citing Gilligan, 267 F.2d at 466, it is overwhelming clear that Mr. Zitter's averments -- which were affirmative defenses -- on the "face of the complaint" pled the 2219 plaintiffs out of court in 2219. Whitlock v. Brown, 596 F.3d 406, 412 (7th Cir. 2009) citing Murrey v. U.S., 73 F.3d 1448, 1455 (7th Cir. 1996)("A judicial admission trumps evidence. This is the basic principal that a plaintiff can plead himself out of court.").

The 1224 indictment containing the judicial admissions adopted from Mr. Zitter's complaint bound the USAO and pled itself out of court -- pled affirmative defenses on the fact of the 1224 indictment para. 8-15.

The Second Circuit in Gibbs v. Cigna Corp., 440 F.3d 571, 578 (2d Cir. 2006) explained in regard to judicial admissions made by a party:

> "We need not determine whether or not [plaintiff] falls under the definition of a
> CFA Associate ...because [defendant] admitted in its answer [to the complaint]
> that [plaintiff] was not a CFA Associate. Facts admitted in an answer, as in any
> pleading, are judicial admissions that bind the [party] throughout this litigation
> ... and this Court must be bound by them; we are not free to pick and choose at

---------------------------------------------------------------------------------------------------

will." (citations omitted).

The Court held, "[t]he District Court, therefore, erred by disregarding th[e] admission and relying on contrary

evidence[.]", Id. Accordingly, District Judges Sand and Sweet, and the 09-0851-Cr panel "erred when they disregar[ed] the

[judicial] admissions" in the 2219 plaintiffs' complaint and the USAO's 1224 indictment, respectively, which pled the

plaintiffs out of court in 2219 and 1224, i.e., both 2219 and 1224 and 11-2151-Cr are moot lacking an Art. III "live case or

controversy".

5. Therefore, 28 USC 46 (b, c) prohibits any "hearing or determination" by the Second Circuit in regard to a purported

merit review "motion for leave to appeal" referenced in the bogus August 16, 2011 order by the Second Circuit.

In U.S. v. McKeon, 738 F.2d 26, 31 (2d Cir. 1984) the court in regard to judicial admissions made by a party's attorney,

citing Kunglig Jarn. v. Dexter & Carpenter, Inc., 32 F.2d 195, 198 (2d Cir. 1929) explained quoting Judge Swan:

> "One ground of objection to its admission was lack of proof of authority of the party's
> attorney to bind his client by averments of the pleadings. Such an objection is clearly
> not sustainable. A pleading [indictment] prepared by [U.S. attorney David N. Kelly] an
> attorney [Mr. Zitter] is an admission by one presumptively authorized to speak for his
> principal [the Executive Branch pursuant to 28 USC 547(1)]... [w]hen a pleading is ...
> withdrawn [Alpha's Rule 41(a)(2) on December 20, 2007 (Dkt. #90)] ... it still remains
> as statements once seriously made by an authorized agent [.]"

6. Applying the above reasoning to the USAO's 1224 indictment, and Alpha's Rule 41 Order, the Court reasoned that even

though Alpha withdrew its complaint in 2219 by Mr. Zitter's ex parte application for the Rule 41(a)(2) voluntary dismissal

without prejudice on or about December 20, 2007, the judicial admissions averments in the 2219 complaint regarding Alpha's

claims "still remain as statements made by "one presumptively authorized to speak" for Alpha" its counsel, Mr. Zitter.

7. Thus on the face of the 1224 indictment and 2219 complaint at paragraphs 10-20 (Dkt. #1) David Kelly and Mr. Zitter, the

USA's and 2219 plaintiffs' counsel, respectively, on behalf of the USA and 2219 plaintiffs, made binding judicial admissions

binding on the 2219 and 1224 district courts, the 09-0851-Cr and 11-2151-Cr panels, and the plaintiffs which "[having agreed

on a set of facts, [the 2219 plaintiffs], and this Court, must be bound by them; [the Court is] not free to pick and choose at

-------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 11-4181: Part 4- Motion for Leave
DATE: 02/21/2012 12:23:10 PM

will" (quoting Stanley Works v. FTC, 469 F.2d 498, 506 (2d Cir. 1972); Kunglig, supra, which facts it will accept and reject

rendering the 2219, 1224, 09-0851-Cr and 11-2151-Cr proceedings as a matter of law moot.

V. LIVE CASE OR CONTROVERSY LACKING IN 2219, 1224 AND 11-2151.

1.   Because the above proceedings are moot -- lacking a live case of controversy -- any order or opinion purported to have

been issued by the respective court was an illegal "advisory opinion/order" null and void ab initio, and lacking in all legal

force and effect. Steel Co., infra.

Accordingly, where the judicial admissions made by Mr. Zitter at paragraphs 10-20 of the 2219 complaint and by David

Kelly at paragraphs 8-15 of the 1224 indictment are affirmative defenses which appeared on the "fact of the complaint

[/indictment]", Mr. Ware's yet to be docketed -- though submitted to Chief Judge Loretta A. Preska (SDNY) on July 11, 2011

-- the Rule 12(b) motions to dismiss the complaint in 2219, and the outstanding motion to dismiss the indictment in 1224

submitted to the Second Circuit in June 2011 for failure to state a claim are both required to be granted. Pani v. Empire

Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998). (Motion to dismiss is proper where affirmative defenses appear on

the "face of the complaint.").

2.   This notice of appeal memorandum (leave for permission to file an appeal even though the Second circuit lacks 28 USC

46 (b, c) authority to hear or determine the issues presented in the motion for leave: lacking a "live case or controversy" as

a result of District Judge Sweet's May 18, 2011 order (Dkt. #125:1224 at page 2) ) clearly shows that officers of the court,

David Kelly and Michael J. Garcia and their proxies, surrogates, and alter-egos perpetrated a fraud on the federal court in

1224, and 09-0851-Cr; and Kenneth A. Zitter, Esq. an officer of the court, also perpetrated a fraud on the 2219 court and

committed perjury under oath when testifying at trial in 1224 on behalf of the CCE to extort more than +$18 million in

free-trading shares from GPMT using an illegal debt instrument as defined in 18 USC 1961.

District Judge Sand, Sweet, and the 09-0851-Cr panel committed a fraud on the court where the judges knew as of August

13, 2003 as a direct result of the judicial admissions made by 2219 plaintiff Stonestreet, L.P. in government trial exhibit

GX-24:1224, the fraudulent order of August 13, 2003 (Dkt. #65:2219) where Judge Sand made the following findings of fact:

" On August 1, 2003, the [2219] Court received from Plaintiff copies of a[] [fraudulent]
affidavit and opinion letter [prepared by convicted felon Edward Grushko, Esq. and his
law partner Barbara R. Mittman, Esq.] relating not to Plaintiff Stonestreet, but rather
to Plaintiff Alpha Capital. Plaintiff explained [judicially admitting], upon inquiry from
Chamber [during improper ex parte communication in violation of Canon 3(a)(4) of the
Code of Conduct for Federal Judges], [judicially admitted] that Stonestreet [had previously
lied in their affidavits to the Court prepared by convicted felon Edward Grushko, Esq.
and Barbara R. Mittman, Esq.] in fact beneficially owned more than 9.9% of Group Management's

Stock."
  Given the above facts, the Court observes that the conditions set in the [bogus] July 2,
  order regarding Stonestreet conversion request have not been met, and that Defendant is
  therefore not in contempt of that Order, or the follow-up Order of July 23 [2003.]"

3. Thus, 17 C.F.R. 240.13d-5(b)(1) conferred statutory group status on each of the 2219 plaintiffs as a result of

Stonestreet's admission of "beneficially" owning more than 9.9% of GPMT's shares, cf. Roth v. Jennings, 489 F.3d 499,

506-10 (2d Cir. 2007)(J. Kearse) (group status conferred on each of the 2219 plaintiffs as a result of Stonestreet's admission

in GX-24 where GPMT's securities (the Notes -- GX 1-4:1224) were acquired on February 2, 2001 using a single subscription

agreement, (GX-5:1224) which was negotiated by government 1224 trial witness Ari Rabinowitz (Tr. 189 L 13-23).

  The statutory group status of each of the 2219 plaintiffs conferred affiliate status on each of the 2219 plaintiffs as of the

acquisition date of GPMT's Notes (February 2, 2001), Roth, 489 F.3d at 507-08; accordingly, Stonestreet's binding judicial

admission binding on the 2219, 1224, 09-0851-Cr and 11-2151-Cr courts pled the 2219 and 1224 plaintiffs out of court as a

matter of law, i.e., 2219 and 1224 are moot; terminating any Art. III "live case or controversy" in 2219 and 1224.

  Thus, as a result of mootness -- subject matter jurisdiction terminated -- resulting from Stonestreet's August 13, 2003

judicial admission in (GX-24:1224) admitted at trial via government witness Rabinowitz at (Tr. 188-190:1224) the United

States therefore admitted that Stonestreet and the 2219 plaintiffs never qualified for Rule 144(k) (2003); the 2219 plaintiffs

were affiliates and statutory insiders of GPMT and any trading by the 2219 plaintiffs in GPMT shares constituted insider

trading.

4. All the 2219 court had after August 13, 2003 was "hypothetical jurisdiction" insufficient to adjudicate 2219; hence, all

orders entered in 2219 after February 2, 2001 are null and void ab initio, as a result that 2219 was moot from March 20,

2002 (the filing date of Mr. Zitter's frivolous complaint in violation of Rule 11 -- $22.2 million in attorneys fees plus cost and

expenses of GPMT from defending itself in the bankruptcy court in Atlanta, GA from frivolous pleading filed by Dennis S.

Meir, Esq., John W. Mills, III of Kilpatrick, Townsend, & Stockton, LLP).

  Accordingly, with 2219 and 1224 being moot, the 09-0851-Cr panel did not have lawful subject matter jurisdiction to

review 1224 issues: 28 USC 1294(1) territorial subject matter jurisdiction circumscriptions prohibited the Court from hearing

or determining any issue in regard to government trial exhibits (GX 250-253:1224 -- the bankruptcy petitions filed by GPMT

and SSSG in Atlanta, GA).

  Hence, the bogus and fraudulent "Summary Order" entered by the 09-0851-Cr panel of Circuit Judges Hall, Katzmann, and

District Judge Barbara S. Jones on November 4, 2010 reported at 2010 U.S. App. LX 22956 (2d Cir. 2010) constituted an

illegal null and void ab initio "advisory opinion" which the Supreme Court has disapproved from the beginning. (quoting Steel

Co. v. Citizens for a Better Environment, 523 U.S. 83, 101 (1995).

5. Justice Scalia writing for the majority in Steel Co., noted, Id. at 94, "[h]ypothetical jurisdiction produces nothing move than a hypothetical judgment -- which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." citing Muskrat v. United States, 219 U.S. 346, 362 (1911). (emphasis added to "advisory opinion").

District Judge Sweet, and Michael Garcia both knew at Mr. Ware's bogus sentencing hearing on January 26, 2009 in 1224 that Alpha Capital, AG had been voluntarily dismissed from 2219 (Dkt. #90) on December 20, 2007 less than one (1) month after the kangaroo trial in 1224.

Both District Judge Sweet and Garcia further knew at trial in 1224 in November 2007 that District Judge Sand on August 13, 2003 (Dkt. #65) trial exhibit (GX-24:1224) that 2219 plaintiff Stonestreet, L.P had made binding judicial admissions via their counsel Mr. Zitter, that Stonestreet, L.P. has previously committed perjury and did in fact "beneficially" own more than 9.9% of GPMT's shares; rendering Stonestreet and each of the 2219 plaintiffs 15 USC 78p(a) statutory insiders/affiliates of GPMT. 17 C.F.R. 240.13d-5(b)(1); Roth v. Jennings, supra.

6. Accordingly, Judges Sand, Sweet, and Zitter, Rabinowitz, Kelly, and Garcia all knew in December 2007 that Stonestreet's judicial admissions in 2003 contained in government trial exhibit GX-24 in pari materia with Rule 13d-5(b)(1) and Alpha's Rule 41(a)(2) determined 1224 to be moot as a matter of law requiring the 1224 indictment to be immediately dismissed with prejudice.

Preet Bharara (the current U.S. attorney for the SDNY) and Katherine Polk-Failla (the appeals chief in the USAO-SDNY) both knew on August 12, 2010 knew when they filed the fraudulent brief on behalf of the USA in 09-0851-Cr that 1224 and 2219 were both moot.

Rather than "set the record straight" as officers of the court, instead Bharara and Polk-Failla perpetrated a fraud on the Second Circuit Court of Appeals, and intend to commit a fraud on the United States Supreme Court in the petition for certiorari.

Neither intend to inform the Supreme Court that 09-0851-Cr, 1224, and 2219 are moot as a result of Alpha Capital's December 20, 2007 Rule 41(a)(2) (Dkt. #90:2219) voluntary dismissal from 2219; Stonestreet's August 13, 2003 (Dkt. #65:2219) judicial admission admitting to beneficially owning more than 9.9% of GPMT's shares and Mr. Zitter's binding judicial admissions in the 2219 complaint (Dkt. #1) at paragraphs 10-20 rendered 2219 moot by pleading the plaintiffs out of court, the same as paragraphs 8-15 in the indictment in 1224 pled the USAO out of court -- 1224 is moot.

7. District Judges Sweet's May 18, 2011 order (Dkt. #125) finding an Art. III "live case or controversy" did not exist in 1224 which the Executive Branch made an unreviewable nonjusticiable internal DOJ Art. II, sec. 3 "political decision", Baker v. Carr, 369 U.S. 186, 217 (1962), and decided not to file an notice of appeal pursuant to 18 USC 3742(b) of the May 18, 2011 order mooted the 1224 indictment terminating 1224 and 11-2151-Cr (2d Cir.).

------------------------------------------------------------------------------------------------------

The 1224 district court lacking a "live case or controversy" cf. May 18, 2011 order (Dkt. #125), the Second Circuit also lacks a "live case or controversy" in 11-2151-Cr -- the proceedings are moot -- currently lack lawful USC 46 (b, c,, d) authority to review this motion for leave to file an appeal of moot 1224; and is required to reverse and vacate the judgment of the 1224 District Court (28 USC 2106) and remand to the 1224 district court with instructions to dismiss the indictment with prejudice. cf. College Student Mag. Student Ass'n of the State of New, 610 F.3d 33 (2d Cir. 2008) (Once an issue has been conceded by a party, i.e., not appealed there is no longer a live controversy in regard to that issue, and any opinion by a federal court on that issue is an illegal ultra vires advisory opinion without force or affect of law. Id. 34-35.

8. The Court further noted at, College Student Mag., Id. at n. 2: "When the appellee [Alpha in 2219 and the Office of the Solicitor General, (the "OSG") on behalf of the USA in 09-0851-Cr by conceding Mr. Ware's points 1, 2, 3, 4, 5, and 9 presented for review cf. Exhibit #2 attached] has caused the case to become moot [Alpha's Rule 41(a)(2) motion] ... we vacate the district court's judgment to prevent the appellee [USA in 1224] from insulating a favorable decision from appellate review."

Thus, the Second Circuit in collusion and conspiring with the USAO and OSG is attempting to do through fraudulent procedural maneuvers (demand Ware file a moot motion for leave knowing the Court lacks lawful jurisdiction to review any "cause" in 11-2151-Cr after District Judge Sweet's May 18, 2011 unappealed order (Dkt. #125)) what it cannot do legally by attempting to have Mr. Ware file a motion for leave which the Court knows that Circuit Judge Peter W. Hall and his co-conspirators/surrogates will in violation of federal law (28 USC 46) illegally deny.

Furthermore, the indictment in 1224 failed to state an "offense" per 18 USC 401(3): It is not unlawful to not issue fraudulent Rule 144(k) (2003) legal opinions to the 2219 plaintiffs -- judicially admitted by Mr. Zitter at paragraphs 10-20 in the 2219 complaint -- Section 2(a)(11, 12) statutory underwriters and dealers of GPMT as of February 2, 2001.

9. Point 3 on appeal in 09-0851-Cr is moot as a result of the OSG conceding points 3 on appeal in 09-0851-Cr (See. Ex. #2 attached), i.e., applying the reasoning in College Student Mag., supra, to the fact that the OSG conceded point #3 conceding that the indictment in 1224 failed to state an "offense" against the laws of the United States, thus, David Kelly and Michael J. Garcia, both lacked authority (28 USC 547(1)) to: (1) seek an indictment in 1224; (2) to prosecute Mr. Ware in 1224 --

FROM: 56218019
TO:
SUBJECT: 11-4181:Part 5- Motion of Leave
DATE: 02/21/2012 12:23:33 PM

(3) and the November 4, 2010 fabricated advisory opinion issued by the 09-0851-Cr panel (Circuit Judges Hall, Katzmann, and District Judge Barbara S. Jones (SDNY)) was null and void ab initio, Steel Co., supra, a nullity without any legal force or effect, or preclusive value.

CONCLUSION:

Appellant Ware has overwhelming proved to a mathematical certainty that the 11-4181-CV and 11-2151-Cr courts currently lacks subject matter jurisdiction as a result of lacking a "live case or controversy" as a result of 1224 District Judge Sweet's May 18, 2011 order (Dkt. #125) finding a "live case or controversy" did not exist in 1224; and in 11-4181-Cv as a result of 28 USC 1294(1) territorial subject matter jurisdiction prohibiting the Second Circuit from exercising any judicial authority to "hear or determine any cause" relating to 1224 or 2219.

Accordingly, 28 USC 46 (a-d) prohibits the Second Circuit, a federal appeals court, from conducting any "official" business of a court of appeals in regard to U.S. v. Ware, 11-2151-Cr on appeal from U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), i.e., the proceedings in 1224 are moot, therefore mooting 11-2151-Cr; and in 11-4181-Cv as a result of 28 USC 1294(1) cf. Celotex v. Edwards, 514 U.S. 300, 313 (1995).

A federal court lacks authority to enter a judgment in a matter that is moot -- an advisory opinion, Steel Co., 523 U.S. at 94; or issue a fabricated "advisory" order (August 16, 2011 or October 13, 2001) demanding an appellant file a 'motion for leave' to appeal a moot issue -- a legal isomorphism.

RELIEF REQUESTED:

Appellant Ware is requesting that:

(1) the Court enter a judgment dismissing the indictment in 1224 with prejudice and remand to the 1224 district court with a mandate consistent with the same;

(2) refer this matter to a U.S. magistrate judge for the issuance of federal arrest warrants ordering the arrest of the Circuit Judges who sat on the 07-5222-Cr, 07-5670-Cr (XAP), and 09-0851-Cr panels; District Judge Leonard B. Sand, and District Judge Robert W. Sweet, David Kelly (for procuring a fabricated indictment in 1224); Michael J. Garcia (for prosecuting 1224 lacking an "offense" against the laws of the United States); Preet Bharara (for knowingly and deliberately filing a fabricated and fraudulent appeals brief in U.S. v. Ware, 09-0851-Cr (2d Cir.)); Kenneth A. Zitter, Esq., (perjury); Ari Rabinowitz (perjury); (convicted felon) Edward Grushko, Esq., Barbara R. Mittman, Esq., Dennis S. Meir, Esq., John W. Mills, III, Edward T.M. Garland, Esq., Manny Arora, Esq., David Levitt, Esq., Thomas V. Sjoblom, Esq., Thomas J. McCarthy (filing a

-----------------------------------------------------------------------------------------------------

fraudulent PSR knowing Alpha Capital, AG was dismissed from 2219 on December 20, 2007), in the district where located and

to be held without bail, where probable cause currently exist for the arrest and prosecution of each person for 18 USC 2, 201,

225, 241, 242, 371, 891-94, 1201-02 (not a bailable offense), 1343, 1346, 1505, 1510, 1621-23, 1956-57, and 1961-62; and

(3) remand to the 1224 district court with a mandate to conduct a fraud on the court proceeding in regard to the USAO's

Preet Bharara and Katherine Polk-Failla filing of a fraudulent appeals brief with the Court dated August 12, 2010 in U.S. v.

Ware, 09-0851-Cr in violation of Fed. R. App. Pro. 46 and Local Rule 46.2 for to put it mildly "conduct unbecoming an officer

of the court"; and

(4) any other relief the Court deems just and proper given the criminal actions by the above named officers of the court.

Submitted by Counsel:

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
October 23, 2011

CERTIFICATE OF SERVICE:

I Ulysses Thomas Ware have this 23rd day of October, 2011 deposited into the legal mail system at the Atlanta Prison

Camp with correct first class postage prepaid addressed to the Office of the District Clerk and Circuit Clerk, 500 Pearl St.,

New York, NY 10007 one copy of this document according to Houston v. Lack via certified mail # 7003 1680 0005 1205

_____.

INSTRUCTIONS:

Please docket and file this pleading in U.S. v. Ware, 11-4181-Cr (2d Cir.).

----------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 11-4181-Exhibits Table of Contents
DATE: 02/21/2012 12:20:29 PM

PAGES                           DESCRIPTION

1-6          Complaint-- Docket #1 in 02-CV-2219 (LBS)(SDNY) paragraphs 10-20 containing judicial admissions.

7-8          Excerpts paragraph 10.1(iv) of subscription agreement of 2219 plaintiffs.

9-13         USAO's fraudulent Aug. 12, 2010 brief's table of contents filed in U.S. v. Ware, 09-0851-Cr (2d Cir.)
             signed by U.S. attorney Preet Bharara and AUSA Katherine Polk-Failla committing a fraud on the court
             and conceding Mr. Ware's points 1, 2, 3, 4, 5, and 9 raised on appeal.

14-31        Mr. Ware's point #4 raised in 09-0851-Cr (2d Cir.): USAO and District Judge Robert W. Sweet committed a
fraud on the court,  conceded by the USAO on behalf of the USA on August 12, 2010.

(I)

----------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: 11-4181-Rule 26.1 Cert. of Interested Persons
DATE: 02/21/2012 12:21:08 PM

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____
ULYSSES THOMAS WARE, GROUP MANAGEMENT CORP.,
IVG CORP., SILVER SCREEN STUDIO GROUP, INC., AND GLOBAL ONE
INVESTMENT HOLDINGS CORPORATION,
APPELLANTS,

VS.                                                        CASE # 11-4181-CV


LEONARD B. SAND, (INDIVIDUALLY), PETER W. HALL, (INDIVIDUALLY), AMALYA L. KEARSE, (INDIVIDUALLY),
PROKAUSER & ROSE, LLP, THOMAS V. SJOBLOM, ESQ., PREET BHARARA, (INDIVIDUALLY),
KILPATRICK, TOWNSEND & STOCKTON, LLP., EDWARD T. M. GARLAND, ET AL.,
APPELLEES.
_____  _____  _____  _____


Pursuant to Rule 26.1 of the Fed. R. Appellate Procedure appellant Ware list the following persons as having a substantial

pecuniary and liberty interests in the outcome of the proceedings and each are designated as an appellee:

1. Amalya L. Kearse                LH Financial
2. Robert D. Sack                  Amro International, S.A.
3. Peter W. Hall                   Stonestreet, L.P.
4. Robert A. Katzmann              Markham Holdings, Ltd.
5. Dennis G. Jacobs                Alpha Capital, AG
6. Rosemary S. Pooler              Edward T. M. Garland
7. Reena Raggi                     Manny Arora
8. Barrington D. Parker            David Levitt
9. Leonard B. Sand                 Thomas J. McCarthy
10. Robert W. Sweet                Jeffrey B. Norris
11. William H. Pauley, III         Nicholas S. Goldin
12. Barbara S. Jones               Dennis S. Meir
13. Michael J. Garcia              John W. Mills, III
14. David Kelly                    Kilpatrick, Townsend & Stockton, LLP
15. Preet Bharara                  Thomas V. Sjoblom
16. Katherine Polk-Failla          Prokauser & Rose, LLP
17. Andrew L. Fish                 Edward D. Grushko
18. Alexander H. Southwell         Barbara R. Mittman
19. Steven D. Feldman              Nathan Ladenburg
19. Alexander J. Wilson            Ari Kluger
20. Sarah E. Paul                  Ruby Krajick
21. Maria E. Douvas
22. Kenneth A. Zitter
23. Ari Rabinowitz
24. James H. Roth
25. Lisa Scolari
26. Stephen UnderHill
27. David Trager
28. Richard C. Wesley
29. Chester A. Straub

----------------------------------------------------------------------------------------------------

30. Loretta A. Preska
31. Kent J. Dawson
32. Ralph Winter
33. Catherine O'Hagan-Wolfe
34. Ladenburg Thalmann & Co., Inc.

II.    Each Article III judges is facing a life sentence and $25 billion in personal civil liability depending on the outcome of this

proceeding:  Circuit Judges Kearse, Sack, Pooler, Raggi, Parker, Katzmann, Hall, Jacobs; District Judges: Sand, Sweet,

Pauley, Jones, Dawson (D. NV) and who all are disqualified to adjudicate any matter in this proceeding according to 28 USC

144, 455 (a), (b)(1); and all are facing impeachment for high crimes and misdemeanors.

III. Each Article III judge named above is named in their individual and personal capacity because each acted in the absence

of all jurisdiction and therefore outside Article III judicial authority and each is personally liable for any monetary damages.

IV.  Each Article III judge is named as an appellee in this matter in their personal individual capacity.

_Ulysses T. Ware_

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
October 23, 2011