Submitted by Counsel:

~Ulysses~ J. Ware

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
12/12/2012 05:22:22 P.M. printed



**PRIORITY**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 9 2012

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ULYSSES THOMAS WARE,<br>PETITIONER,<br><br>VS.<br><br>WARDEN DARLEEN DREW,<br>BUREAU OF PRISONS,<br>ATLANTA PRISON CAMP.<br>RESPONDENTS. | :<br>:<br>:<br>:<br>: CASE #: 12-CV-<br>: 1:12-CV-4397<br>:<br>:<br>.:<br>:<br>: |

EMERGENCY PETITION FOR IMMEDIATE RELEASE
28 USC §2241: PETITION FOR A WRIT OF HABEAS CORPUS
ACTUAL AND FACTUAL INNOCENCE OF ALL CHARGES

**#7**

12/12/2012 Memorandum of Law in Support of Claims Regarding:
U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224").

U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115").

The Proceedings in 02-CV-2219 where completely dismissed on 12/20/2007
(see Dkt. #90:2219), Rule 41(a) voluntary dismissal without prejudice.

Criminal Frauds Committed by the Judges and Federal Prosecutors

1224 Proceedings Moot as a Matter of Law as of 12/20/2007 (cf. Dkt. #90:1224).
1115 Moot as a Matter of Law as of 11/07/2008, i.e., Executive Branch's

2219 Being Dismissed without Prejudice, Mooted the 1224 Proceedingss.

United States prohibited by res judicata, collateral estoppel, and double
jeopardy from arguing the guilt of the Petitioner.

**19**

FROM: 56218019
TO:
SUBJECT: Part-1: Supreme Court Writ-Sup. #1.0.
DATE: 02/21/2012 12:32:08 PM

IN THE UNITED STATES SUPREME COURT

Case #:_____ _____

IN RE: ULYSSES THOMAS WARE,
PETITIONER,

UNITED STATES OF AMERICA, (Eric H. Holder, Jr.), THE SECOND CIRCUIT COURT OF APPEALS,
DISTRICT JUDGE WILLIAM H. PAULEY, III (SDNY), AND CIRCUIT JUDGE PETER W. HALL (2d CIR.).
RESPONDENTS.

_____
SUPPLEMENT 1.0 TO THE EMERGENCY
Petition for a Writ of Mandamus, Writ of Prohibition, and Extraordinary Writ pursuant to 28 USC 1651(a).

Submitted by Counsel:

*Ulysses J. Ware*

Ulysses Thomas Ware, pro se
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
September 9, 2011 via first class mail prepaid pursuant Houston v. Lack.

PROOF OF SERVICE: Pursuant to Supreme Court Rule 20.2(b) I Ulysses Thomas Ware have on the 9th day of September, 2011 deposited in the legal mail system at the Atlanta Prison Camp with correct first-class postage prepaid one copy of this pleading and appendix addressed to each of the above named respondents, Eric H. Holder, Jr., Catherine O'Hagan-Wolfe, District Judge William H. Pauley, III, and Circuit Judge Peter W. Hall.

---

FROM: 56218019
TO:
SUBJECT: S.Ct. Writ: Table of Contents
DATE: 09/14/2011 06:24:55 PM

TABLE OF CONTENTS

i.  Questions Presented for Review ------------------------------------------------------------------   **A – B**

1.  Relief requested from the Court ------------------------------------------------------------------   **1**

2.  Opening Statement ----------------------------------------------------------------------------------   **2 – 5**

3.  Response to Supreme Court Rule 20.1: ------------------------------------------------------------   **6 – 9**
    A.  The writ should issue in aid to the Court's appellate jurisdicition.
    B.  Exceptional circumstances exists for the writs to grant.
    C.  The relief requested is not available from any other court.

4.  Named respondents ----------------------------------------------------------------------------------   **10**

5.  Petitioner's contentions ----------------------------------------------------------------------------   **10**

6.  Statement of the case ------------------------------------------------------------------------------   **11 – 13**

7.  Reasons why the writs should issue ----------------------------------------------------------------   **14 – 17**

8.  Policy reasons why the writs should issue ----------------------------------------------------------   **18 – 20**

9.  Supplemental Appendices A-G ----------------------------------------------------------------------

10. Supplemental Appendices 1 - 3 ---------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: Writs:Questions Presented for Review
DATE: 02/21/2012 12:34:53 PM

### QUESTIONS PRESENTED FOR REVIEW

1. Whether the United States Court of Appeal for the Second Circuit is subject to federal law contained in 28 USC 46 requiring a live case or controversy to hear and determine a matter, and requiring a statutory quorum to conduct the official business of the United States court of appeals?

2. Whether the final judgment entered by the United States Court of Appeals for the Second Circuit in U.S. v. Ware, 07-5670-Cr (XAP) on August 18, 2009 (Dkt. #113) terminated an Article III of the Constitution live case or controversy in the adverse trial ruling of the District Court on October 26, 2007 (S. Tr. 73-79) on the issue of market efficiency for Investment Technology Incorporated and Service System International; (2) the issue of materiality, and the issue of restitution?

3. Whether an Article III of the Constitution "live case or controversy" currently exist in U. S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115") after November 7, 2008 unreviewable nonjusticiable Article II, sec. 3 of the Constitution "political decision" made by the United States' statutory delegee (28 USC 516) the Office of the Solicitor General, (the "OSG") pursuant to 28 CFR 0.20 (a, b) abandoning the United States' interests in its cross-appeal of the district court's October 12, 2007 (S. Tr. 39-40) and October 26, 2007 (S. Tr. 73-79) rulings rendering 1115 moot?

4. Whether an Article III of the Constitution "live case or controversy currently exists in U.S. v. Ware, 04-Cr-1224(RWS)(SDNY), ("1224") after May 18, 2011 entry of the final order of the District Court (Dkt. #125) finding the "absence of a live case or controversy" in 1224 rendering the proceedings moot?

5. Whether District Judge William H. Pauley, III the district judge in 1115 accepted, received or gave an bribe or illegal gratuity for the entry of the January 8, 2007 (Dkt. #35) order or any other order or judgment in 1115 or any other matter appearing before the district court?

6. Whether Circuit Judge Peter W. Hall accepted, received, or gave a bribe or illegal gratuity in regard to the proceedings in U.S. v. Ware, 07-5222-Cr, 07-5670-Cr (XAP), 09-0851-CR or 11-2151-CR, or any other matter appearing before the Second Circuit Court of Appeals?

7. Whether circuit clerk Catherine O'Hagan-Wolfe, Chief Judge Dennis G. Jacobs, Circuit Judge Peter W. Hall, and others known and unknown, agreed, conspired, colluded, fixed, rigged, or otherwise illegally or unethically placed Circuit Judge Peter W. Hall and others (Richard Wesley, Chester Straub, Robert A. Katzmann, Barbara S. Jones, Stephen Underhill, Davis Trager, and others) on panels of the Second Circuit where the interests on (FUGITIVE) Thomas Badian, (CONVICTED FELON) Edward Grushko, Esq., Kenneth A. Zitter, Esq., LH Financial Services, Ari Rabinowitz, and Ladenburg Thalmann & Co., Inc.

--------------------------------------------------------------------------------------------------------

appeared before the Second Circuit?

8. Whether the August 16, 2011 order entered by unidentified circuit judges in U.S. v. Ware, 11-2151-Cr was an illegal ultra vires "advisory" order entered in violation of 28 USC 46 (a-d)(2011) entered in violation of: 18 USC 2, 241, 242, 371, 891-894, 1201-02, 1343, 1346, 1505, 1510, 1621-23, 1956-57, and 1961-62?

FROM: 56218019
TO:
SUBJECT: Part- 1.1- Writ S. Ct.–Relief Requested
DATE: 02/21/2012 12:30:11 PM

RELIEF REQUESTED FROM THE COURT:

1.   Petitioner is requesting that the writs issue to command the "real party in interest" the United States of America, via

its exclusive statutory delegee --the United States Department of Justice -- via the Attorney General Eric H. Holder, Jr.,

pursuant to 28 USC 516 on or before 12 noon on September 22, 2011 certify in writing under oath subject to the penalty of

perjury:

(a).   an Article III of the Constitution "live case or controversy" currently exists in U.S. v. Ware, 04-Cr-1224

(RWS)(SDNY), ("1224"); and

(b).   an Article III of the Constitution "live case or controversy" currently exists in U.S. v. Ware, 05-Cr-1115

(RWS)(SDNY), ("1115");

        else the indictments in 1224 and 1115 shall stand dismissed with prejudice and a judgment will be entered by this

Court consistent with the same; and petitioner will be ordered immediately released from custody of the Bureau of Prisons

within one (1) hour of the entry of the judgment of dismissal which shall be entered by the Court by 2:00 p.m EST on

September 22, 2011 and forwarded to the warden and Unit Manger G. Duncan via facsimile at the Atlanta Prison Camp in

Atlanta, GA if the United States waives response to the petition or fails to certify under oath subject to the penalty of

perjury a live case or controversy currently exists in both 1224 and 1115; and

2.   for circuit clerk Catherine O'Hagan-Wolfe to certify under oath subject to the penalty of perjury on or before September

22, 2011, that there was no fraud or illegal actions in the case assignment process in regard to assignment of Circuit Judge

Peter W. Hall to cases appearing before the Second Circuit Court of Appeals; and

3.   for District Judge William H. Pauley, III to certify under oath subject to the penalty of perjury on or before close of

business on September 22, 2011, that he did not accept; receive; or give an illegal gratuity or bribe in regard to the

proceedings in 1115, or any other matter regarding any party appearing before the court; and

4.   for Circuit Judge Peter W. Hall to certify under oath subject to the penalty of perjury on or before September 22, 2011,

that he has not received a bribe or illegal gratuity in regard to matters appearing before the Second Circuit concerning the

interests of LH Financial, Ari Rabinowitz, Kenneth A. Zitter, Esq., fugitive Thomas Badian, convicted felon Edward Grushko,

Esq., Ladenburg Thalmann & Co., Inc., or any other party appearing before the Second Circuit Court of Appeals.

FROM: 56218019
TO:
SUBJECT: S.Ct. Writ:Part-1.2: Opening Stmt.
DATE: 02/21/2012 12:35:35 PM

A.  OPENING STATEMENT.

1.  Petitioner, then a licensed attorney in the state of Georgia, was illegally arrested by the U.S. marshals in violation of the Fourth Amendment and 18 USC 2, 241, 242, and 371 on September 1, 2004 in Atlanta, GA on orders -- which were knowingly, willingly, intentionally, and deliberately, fabricated and counterfeited by District Judge Leonard B. Sand (SDNY) in collusion and conspiring with the United States attorney for the Southern District of New York, and his surrogates, in regard to matters in Alpha Capital, AG., et al. v. IVG Corp., a/k/a GPMT, et al., 02-CV-2219 (LBS)(SDNY), ("2219"), (Appx. A @ 15-21, 22-26) -- entered in 2219 on December 22, 2003 in violation of 11 USC 362(a) and 11 USC 365(c)(2).

B.  THE PROSECUTORIAL AND JUDICIAL CRIMINAL CORRUPTION:

   District Judge Sand, AUSA Alexander H. Southwell, and the U.S. Attorney for the Southern District of New York, (the "USAO") David Kelly in collusion and conspiring with District Judge Sand had District Judge Sand fabricate the December 22, 2003 order  (Appx. Id.) which referred petitioner to the USAO for criminal prosecution for refusing to violate the federal securities laws and federal criminal statutes and issue fraudulent Rule 144(k) legal opinions to the plaintiffs in 2219 -- admitted statutory underwriters (cf. Dkt. #1 paragraphs 10-20 in 2219 plaintiffs' complaint -- judicial admissions: Appx. Id. @ 15-21) and dealers in GPMT's securities to enable the 2219 plaintiffs to conduct an illegal unregistered 'public offering' of GPMT's securities in violation of 15 USC 77e (a, c), 77x, SEC Release 33-7190, SEC IR 5121, and Berckeley Investment Group, Ltd. v. Colkitt, 455 F.3d 195, 220 (3d Cir. 2006) (citing SEC Release 33-7190 -- Section 2(a)(11) statutory underwriters must register all distributions pursuant to Section 5 of the 1933 Act).

   Petitioner posted bail of $250,000 -- demanded by District Judge Thomas W. Thrash, Jr. (N.D. GA), even though petitioner informed District Judge Thrash the orders were null and void ab initio -- in Atlanta, GA after the illegal arrest and was released from jail on September 3, 2004, where the fraudulent criminal conspiracy to illegally prosecute petitioner for criminal contempt in 1224 and conspiracy in 1115 was initiated by District Judge Sand, AUSA Southwell, David Kelly, and later by Michael J. Garcia, all officers of the court. (Appx. A @ 15-21, 22-26).

   The USAO and the SEC in collusion then initiated a criminal conspiracy to violate petitioner's civil rights for refusing to issue the fraudulent Rule 144(k): Appx. D @ 3,  legal opinions to the 2219 plaintiffs to extort GPMT of +$18 million in free-trading securities to be sold without a lawful registration statement being in effect. (Appx. A @  Id.).

   Thus, the proceedings in both U.S. v. Ware, 04-Cr-1224(RWS)(SDNY), ("1224") the criminal contempt prosecution against petitioner for not violating the federal securities laws; and the U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115") prosecution

-----------------------------------------------------------------------------------------------------

because petitioner would not accept the bogus plea deal arranged by Edward T. M. Garland, Esq. (Garland, Samuel & Loeb, P.C. of Atlanta, GA) to have petitioner plead guilty to 18 USC 401(3): Appx. D @ 4 -- criminal contempt -- for not violating the federal securities laws by not issuing the fraudulent Rule 144(k) legal opinions which is not an "offense" against the laws of the United States, were both unconstitutional proceedings in violation of the Due Process Clause of the Fifth Amendment and federal laws: 18 USC 2, 4, 201, 241, 242, 371, 1621-23, 1956-57, and 1961-62.

Because it is not an "offense against the laws of the United States" to not issue fraudulent Rule 144(k) legal opinions to 15 USC 77b(a)(11): Appx. D @ 1-2, statutory underwriters, the indictment in 1224 (Appx. A @ 27-36) failed to charge an "offense" against the laws of the United States which occurred in the territorial jurisdiction of the USAO-SDNY; accordingly U.S. attorney David Kelly lacked legal authority (28 USC 547(1): Appx. D @ 8) circumscribes the authority of a United States attorney to only prosecute "offenses" against the United States committed in his district) to seek an indictment or prosecute petitioner for 18 USC 401(3) in the SDNY or in any other federal district because an "offense" was not committed.

Therefore the 1224 district court (Robert W. Sweet, District Judge) lacked statutory subject matter jurisdiction (Appx. Id. @ 3-4), (18 USC 3231: Appx. D @ 5) to adjudicate 1224 lacking an "offense" against the laws of the United States -- 1224 was conducted in the personal capacity of the USAO and the 1224 district court for which each has personal civil monetary liability; and the review of the conviction and sentence of 1224 was conducted in the personal capacity of the 09-0851-Cr panel of the Second Circuit for which each member has personal civil monetary liability.

C. PETITIONER'S LAWYERS COLLUDED WITH THE USAO AND VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHTS.

Petitioner's retained lawyers Garland, Manny Arora, Esq., and David Levitt, Esq. all acting in collusion with the USAO badgered and pressured petitioner to plead guilty to the fabricated indictment in 1224 knowing the indictment was counterfeit and fabricated and did not charge an "offense against the laws of the United States.

Garland refused to file any motions or pleadings in 1224 and secretly -- without petitioner's permission -- negotiated a pleas telling petitioner:

> "You can't go against Judge Sand and his people up there in New York ... we
> worked you out a good plea deal with AUSA Goldin ... you better take it ...
> but you will have to give up your license to practice law." (emphasis added).

Obviously petitioner declined Garland's generous "good plea deal" to plead guilty to a nonoffense, petitioner fired Garland and entered his appearance as pro se counsel and tried 1224 himself in November 2007 before District Judge Robert W. Sweet who acted as a second prosecutor -- in 1224 by abdicating his impartiality at every turn aiding and abetting the continuing criminal enterprise, (the "CCE") -- by displaying a "deep-seated favoritism which made fair judgment impossible."

District Judge Sweet on January 26, 2009 at petitioner's sentencing hearing in 1224 had appointed stand-by counsel Lisa

--------------------------------------------------------------------------------------------------------

Scolari, Esq. approach petitioner in the holding cell of the courthouse with an offer from Judge Sweet. Scolari informed petitioner that District Judge Sweet had offered petitioner the generous opportunity to plead "mental insanity" else District Judge Sweet vowed "'to sentence you to the maximum possible under the guidelines.'"

Petitioner declined District Judge Sweet's generous offer to plead "mental insanity." At sentencing later that day during the sentencing hearing Scalori got up and walked out the courtroom during the sentencing hearing stating "I have to pick up my child, I can't stay" and District Judge Sweet did, true to his word, sentenced petitioner to the maximum sentence under the guidelines: 37 months concurrent with District Judge Pauley's 97 months sentence in 1115, and ran 60 months of the sentence consecutive to District Judge Pauley's 97 months sentence in 1115 for not issuing fraudulent Rule 144(k) legal opinions to the plaintiffs in 2219 judicially admitted statutory underwriters cf. Appx. A @15-21 for the 2219 plaintiffs' judicial admissions made in 2219.

## D. WHY IT IS NECESSARY FOR THIS COURT TO EXERCISE ITS SUPERVISORY AUTHORITY OVER GOVERNMENT LAWYERS.

Thus leading to this petition for writs to issue on the parties responsible for the criminal actions which occurred in 1224 and 1115 to justify in writing their past and current criminal conduct and actions given the indisputable fact that an Article III "live case or controversy" ceased to exist on November 7, 2008 in 1115 (Appx. A @ 14) and on May 18, 2011 in 1224 (Appx. A @ 3-4) mooting the proceedings in both 1115 and 1224, respectively.

No decision of this Court has ever held that a federal judge has the authority or jurisdiction to order or command a person to violate federal or state law. Specifically, Congress restricted the scope of 18 USC 401(3): Appx. D @ 4) to the disobedience or violation of "lawful" orders or decrees of a federal court.

Which clearly is rational: If a federal judge had the authority or jurisdiction (cf. Ex parte Fiske) to order a person to perform a order or command in violation of federal or state law, a federal judge could order a person to murder another person or order a person to rob another person, else the person not committing the murder or robbery would be held in criminal contempt and sentenced as if he did in fact commit the murder -- clearly an absurd result.

But which is exactly what District Judge Sand purported to order the petitioner to do: Rob GPMT of its free-trading securities by issuing a fraudulent Rule 144(k) legal opinions to the transfer agent of GPMT authorizing +$18 million in free-trading shares of GPMT be issued within three (3) days to the plaintiffs' attorney -- Kenneth A. Zitter, Esq. in 2219 -- else petitioner would be held in contempt of court and incarcerated until the legal opinions were issued; and then would be criminally prosecuted in 1224 and sentenced based on the purported "loss" suffered by the 2219 plaintiffs for not being able to rob GPMT.

Imagine a bank robber attempting to rob a bank in New York on orders of District Judge Sand; the robber enters the bank

------------------------------------------------------------------------------------------------------

and shows the teller an order issued by District Judge Sand commanding the teller to fill the bag with $100's and not to inform the police else, the teller will be prosecuted any the USAO for foiling a bank robbery and conspiracy to foil a bank robbery, and once convicted sentenced by District Judge Sweet based on the amount of loot the robber did not get away with, unless the bank teller pleads "mental insanity."

Imagine when the robbers (Ari Rabinowitz and 2219 plaintiffs' lawyer Kenneth A. Zitter, Esq. testifying under oath at trial in 1224 of robbing GPMT) are caught they tells the FBI that they have to go free because District Judge Sand issued an order authorizing the robbery of the bank, and the bank's lawyer (petitioner) will be criminally prosecuted for stopping the robbery and sentenced for the amount of loot -- "loss" -- the robbers were not able to get away with -- insanity, and shear madness in the federal courts in New York to protect the CCE run by District Judge Sand, SEC officials, DOJ officials, the United States attorney, his surrogates, and private lawyers to extort publicly traded companies and their shareholders numbering in the tens of thousands, and billions of dollars extorted from the companies.

-------------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: Part 1.3: Supreme Court- Rule 20 Response
DATE: 02/21/2012 12:31:05 PM

I. RESPONSE PURSUANT TO SUPREME COURT RULE 20.1

A. The writ is in aid of the Court's appellate jurisdiction.

The writ of mandamus, prohibition, and extraordinary writs that petitioner is requesting the Court to issue will aid the Court's appellate jurisdiction where both 11-2151-Cr on petition for certiorari, and the appeal of the Rule 33 motion pending since October 7, 2010 in the 1115 district court will be presented to the Court once the Second Circuit denies the appeal to be filed once District Judge Pauley enters the order of denial of the Rule 33 motion which he must do else he knows he will be indicted for judicial corruption and racketeering.

B. Exceptional Circumstances Exists for the writ to grant: Criminal Acts Committed By Government Official and Lawyers.

The petitioner has been illegally incarcerated in violation of the Constitution and federal law by agents and officials of the Department of Justice and federal judges (Circuit Judges Kearse, Sack, Hall, Katzmann, Raggi, Pooler, Parker, Jacobs, and District Judge Barbara S. Jones (SDNY) sitting as an appellate judge in 07-5222-Cr and 09-0851-Cr) acting in collusion and conspiring with officials of the the DOJ to wit: David Kelly, Michael J. Garcia, Preet Bharara, Neal K. Katyal, Michael R. Dreeben, and others, who have filed false and fraudulent pleadings in the federal courts of the United States in 09-0851-Cr, 1115, 1224, and 07-5222-Cr, to aid and abet the financial interests of (FUGITIVE) Thomas Badian, (CONVICTED FELON) Edward Grushko, Esq., LH Financial Services, Kenneth A. Zitter, Esq., Ladenburg Thalmann & Co., Inc., District Judges Leonard B. Sand, Robert W. Sweet, William H. Pauley, III, David Trager, Stephen Underhill, Kent J. Dawson,(D. NV), Barbara S. Jones (SDNY), and others known and unknown.

(i). One need look no further than the emails between former AUSA Southwell and SEC counsel Jeffrey B. Norris (Appx. A @ 22-26) to determine that extraordinary circumstances exist: The criminal obstruction of justice, conspiring, and collusion of the SEC and DOJ to frame the petitioner because petitioner refused to allow agents and officials of the DOJ and SEC extort GPMT of more than +$18 million in free trading securities by issuing fraudulent Rule 144(k) (2002) legal opinions to District Judge Sand's clients -- the plaintiffs in 2219.

(ii). In the email dated October 6, 2004 (Appx. A @ 22) which bears the USAO's internal document stamp "3501-72" indicating the document was in the possession of the USAO, yet AUSA Southwell and Feldman lied in open court on January 5. 2007 (Dkt. #44) stating "no emails exist between myself and the SEC" which clearly was a bold-faced lie and perjury by both Southwell and Feldman -- Southwell had the emails in his possession and suppressed the evidence via perjury.

The emails (Brady and Giglio evidence) at Appx. A @ 22-26 were not disclosed at all in April 2007 pretrial in 1115, but

-----------------------------------------------------------------------------------------------------

were finally disclosed after trial of 1115, pretrial in 1224 in November 2007. The emails were suppressed by the USAO to

cover-up the collusion and conspiring between the DOJ and SEC, i.e., a government conspiracy. Cf. with District Judge

Pauley's January 7, 2007 order (Dkt. #35) finding there was not collusion between the SEC and DOJ based on AUSA
Southwell's

misrepresentations to the court on May 19, 2006 (Dkt. #17) and January 5, 2007 (Dkt. #44) and in fraudulent court filings in

violation of 18 USC 2, 241, 242, 371, 1343, 1346, 1505, 1510, 1621-23, and 1961-62.

   In analyzing AUSA Southwell's 'nonexistent emails' Appx. A @ 24, "3501-60" is SEC counsel Norris' email of August 16, 2004

to AUSA Southwell asking Southwell to forward to him the fabricated December 22, 2003 null and void ab initio (11 USC

362(a)) criminal contempt referral order of District Judge Sand fabricated because petitioner refused to join the CCE and

extort GPMT by issuing fraudulent Rule 144(k) (2003) legal opinions to the 2219 plaintiffs -- statutory underwriters. Norris

asked:

> "[Alex] I would like to cite the case [02-CV-2219] or even attach the [fabricated
> December 22, 2003] order in my [frivolous] petition to fix Rule 11 sanctions
> against Ware in [the frivolous litigation in] the Nevada District Court. Thanks."

Appx. A @ Id. is AUSA Southwell's email dated August 19, 2004 in response to Norris' request in regard to 2219:

> "Cas is Alpha Capital v. Group Management, 02 Civ. 2219 (LBS) and the
> [fabricated] order of [criminal contempt] referral is dated 12/22/03.
> I will fax you a a copy.  Alex."

   AUSA Southwell stated in open court twice in 1115; first on May 19, 2006 (Dkt. #17) and again on January 5, 2007 (Dkt.

#44) his own official emails to SEC counsel Norris "do not exist" which were just cited above was clearly perjury,

obstruction of justice and conspiracy to obstruct justice by officers of the court and government lawyers of the SEC and DOJ.

   SEC counsel Norris' email dated August 30, 2004 (Appx. A @ 24), Norris boasted to Southwell how he used the fabricated

null and void ab initio fraudulent December 22, 2003 bogus referral order "to fix Rule 11 sanctions against Ware."

> "[Alex] [t]hanks for the information.  I was able to use it [the fabricated
> December 22, 2003 null and void order of District Judge Sand] in a [frivolous]
> brief to fix [bogus] Rule 11 sanctions against Ware. As you can see, he
> is still misbehaving in Nevada. I have additional [frivolous] motions for
> default pending on a couple of different grounds. What's happening in New York?"

   The evidence is indisputable that Norris and Southwell (the SEC and DOJ) colluded and conspired to frame the petitioner by

using the fabricated December 22, 2003 null and void ab initio (11 USC 362(a), 11 USC 365(c)(2)) order of District Judge

Sand to fabricate the bogus Rule 11 sanctions in the SEC's Las Vegas Litigation which the USAO introduced through Norris at

trial in 1224, and which Norris knowingly testified to at trial in 1224 on behalf of the USAO committing perjury. (Tr.

614-28).

   Beginning at Tr. 614 at trial in 1224 under direct examination by AUSA Maria E. Douvas assisted by AUSA Nicholas S.

Goldin*, SEC counsel Norris knowingly, willingly and deliberately committed perjury and obstructed justice as an officer of

the court, while knowing that the fabricated December 22, 2003 referral order of District Judge Sand was null and void ab

initio and 'inadmissible in a court of law'.

 * All lawyers of the USAO who committed the fraud on the court: Goldin, Southwell, Feldman, Douvas, and Garcia have all
resigned from the USAO. SEC lawyer Spencer Barasch, Esq. who paid the bribe to District judge Pauley for the issuance of the
January 7, 2007 order (Dkt. #35, cf. Dkt. ## 84, and 88 in 1115 for details of the bribe) was in charge of the SEC's Las Vegas
case has also resigned from the SEC and referred for disbarment by the SEC's Inspector General for unethical conduct.

 AUSA Douvas perpetrated a fraud on the court by the introduction into evidence the Rule 11 sanctions order obtained

fraudulently by SEC counsel Norris with the illegal assistance of the DOJ's agent AUSA Southwell. AUSA Douvas, TR. 615 L 6

- 25 examined Norris in regard to the sanctions entered by District Judge Dawson in the Las Vegas litigation:

Tr. 616 L 12:
Q: Did Mr. Ware comply with his discovery obligations?
A: The court held that Mr. Ware was impeding the progress of discovery and, therefore, preventing the parties [Ware, and the
SEC in collusion with the DOJ] from reaching this goal.

L 24:
A: ... I [and the DOJ] filed a [frivolous] motion with the court to strike his [petitioner Ware's] motion to dismiss that was still
pending and enter a default judgment against all of the defendants, including Mr. Ware.

At Tr. 617- 19 AUSA Douvas introduced government exhibits GX-111, 112; at Tr. 617 L 19-20 Norris read into the record the

text of the fraudulent order: "It is so furthered ordered that plaintiff's [SEC's] motion for discovery sanctions is granted[,]"

which was the fraudulent sanctions order entered by District Judge Dawson as a result of SEC counsel Norris' fraud on the

court by presenting to the court the null and void December 22, 2003 fabricated referral order of District Judge Sand entered

in 2219. cf. Appx. A @ 22-26 emails.

 Under direct examination (Tr. 623 L 7) SEC counsel Norris further testified that he filed a contempt motion in the SEC's

case to hold petitioner in contempt of court for allegedly not assisting the DOJ in obtaining evidence to be used against

petitioner in the imminent indictment to be filed by AUSA Southwell and U.S. attorney Michael J. Garcia in 1115 for

conspiracy to commit securities fraud and securities fraud.

 Norris, (Tr. 623- 626) unwittingly admitted under direct examination that he and the SEC committed a fraud on the Ninth

Circuit Court of Appeals and on the Eleventh Circuit court of Appeals in regard to the bogus sanctions judgment and default

judgment entered in the SEC case.

 AUSA Southwell and Norris failed to inform the Nevada court that the SEC and DOJ were operating in collusion and

conspiring to gather evidence in the Las Vegas litigation using the generous rules of the Federal Rules of Civil Procedure

rather than the restrictive Federal Rules of Criminal Procedure, which the DOJ is required to use in a criminal proceeding had

the SEC informed the court as it was required to do under the Due Process Clause, United States v. Kordel, 397 U.S. 1, 12-13

(1970) once the SEC knew that the petitioner was under investigation by criminal investigators for the same alleged conduct

the SEC was prosecuting in the Las Vegas case.

Finally SEC counsel Norris' is seen boasting and bragging to a SEC colleague, SEC lawyer Mark Pennington in an email

dated April 18, 2005 (Appx. A @ 26) in regard to the bogus fabricated Las Vegas litigation initiated to gather evidence

against petitioner to be used in 1224 (criminal contempt) and 1115 (conspiracy to commit securities fraud and securities

fraud):

"This is one of my favorite e-mails of all time. Ware sent it to me after I
filed the Supplemental Memo in Opposition to his motion to vacate the
[bogus] final judgment [entered by District Judge Kent J. Dawson in collusion
and conspiring with District Judge Sand]. Of course, everything [petitioner]
says is true [in regard to the fabrication of evidence and the fraud committed
in the SEC's Las Vegas case], but the fact that it's [petitioner] Ware saying it
makes it somehow inappropriate [due to "Jim Crow jurisprudence theory
used by District Judge Dawson]." (emphasis added to "Jim Crow jurisprudence theory".)

In an email dated October 6, 2004: Appx. A @ 22, AUSA Southwell informed Norris that petitioner "was improperly

arrested" on bogus and fraudulent orders of District Judge Sand entered in violation of 11 USC 362(a) on December 22, 2003

in 2219: entered while GPMT was under the protection of chapter 7 of the bankruptcy code in violation of the automatic

injunction terminating and staying the litigation in 2219 as of December 3, 2003.

(iii). The referral of petitioner to the USAO for criminal prosecution was fabricated by AUSA Southwell and District Judge

Sand to pressure petitioner to issue the bogus Rule 144(k) legal opinions, and then were used by the USAO in the fraudulent

indictments in both 1224 and 1115.

The bogus ultra vires "advisory" referral order of December 22, 2003 was the catalyst used by the USAO (David Kelly,

Garcia, and Southwell) to procure the fraudulent indictments in both 1224 and 1115 by presenting the null and void December

22, 2003 fabricated order to a federal grand jury in violation of 18 USC 1621-23 (2004), i.e., a fraud on a federal grand jury

by officers of the court to violate the petitioner's civil rights in violation of 18 USC 2, 241, 242, and 371.

C. The relief petitioner is seeking is not available from any other court.

Petitioner has requested the relief he is seeking in this Court from both the district courts (1224 and 1115) and the

Second Circuit Court of Appeals in 09-0851-Cr, 07-5222-Cr and 11-2151-Cr as the docket reports will reflect. In each and

every instance the courts have denied all relief despite no opposition from the respondent (USA).

II. NAMED RESPONDENTS:
A.

1. Attorney General of the United States Eric H. Holder, Jr. is purported to be the chief "law enforcement officer" of the United States and the exclusive statutory delegee, the Department of Justice, ("DOJ"), (28 USC 516) accorded exclusive prosecutorial discretion to dismiss the indictments in both 1224 and 1115.

Relief in sought in this Court because the Second Circuit Court of Appeals is acting in collusion and conspiring with agents and officials of the DOJ, and has refused to exercise its constitutional duty to dismiss both 1224 and 1115 which are moot as a result of the DOJ abandoning the appeal rights of the United States in both 1224 and 1115.

2. The United States Court of Appeals for the Second Circuit -- a federal Article III of the Constitution court subject to federal law contained in 28 USC 46, and the 1115 District Court, William H. Pauley, III, subject matter jurisdiction are subject to the circumscriptions of Article III, sec. 2 live case or controversy requirements -- both have refused to act on petitioner's emergency motion to dismiss the indictment filed on October 7, 2010 in 1115 and on June 26, 2011 in 11-2151-Cr., respectively.

III. PETITIONER'S CONTENTIONS:

A. Petitioner contends that both 1224 and 1115 are currently moot as a result of the lack of an Article III of the Constitution "live case or controversy" as of (a) May 18, 2011 in 1224 and (b) November 7, 2008 in 1115.

May 18, 2011 Mootness of 1224.

1. On May 18, 2011, 1224 became moot as a result of the District Court entering at Dkt. #125 an order agreeing with petitioner's contentions and arguments and finding the "absence of a live case or controversy" in 1224. (Appx. A @ 3-4).

November 7, 2008 Mootness of 1115.

2. On November 7, 2008 (Appx. A @ 14) the United States Attorney for the Southern District of New York, (Michael J. Garcia), with permission of the Office of the Solicitor General, (the "OSG") pursuant to Art. II, sec. 3 of the Constitution, 18 USC 3742(b), and 28 CFR 0.20 (b) informed the United States Court of Appeals for the Second Circuit in U.S. v. Ware, 07-5670-Cr (XAP)(2d. Cir.) of the unreviewable nonjusticiable discretionary prosecutorial mandate of the USA:

"The United States filed a notice of appeal [in 1115], but is not pursuing a cross-appeal"

of the 1115 District Court's October 26, 2007 (S. Tr. 73-76: Id. @ 5-8) adverse rulings finding -- (1) the USA's trial proof was insufficient on the issue of the efficiency of the markets for Investment Technology, Inc., (OTCBB: INZS) and Service Systems International, Inc., (OTCBB:SVSY), (Id.); (2) the USA's proof was insufficient on the material factual element of the government's trial proof -- materiality (id.); and (3) declining to award the USA any restitution in 1115 (Id.), therefore abandoning the USA's interests in 1115 -- 1115 became moot on November 7, 2008 terminating the proceedings in 1115 as

-------------------------------------------------------------------------------------------------------

res judicata and collateral estoppel for insufficient evidence.

IV. STATEMENT OF THE CASE.

A. District Court Proceedings.

1. Purportedly a federal grand jury to returned an indictment on or about November 17, 2004 in the Southern District of New York, charging the petitioner (then a licensed attorney at law in the state of Georgia) with three counts of criminal contempt (18 USC 401(3)), (Appx. A @ 27-36), for refusing to violate the federal securities laws and criminal statutes by not issuing fraudulent legal opinions, pursuant to 17 CFR 230.144(k) (2003) (Appx. D @ 1-2), opining the plaintiffs in Alpha Capital, AG., et al. v. IVG Corp, a/k/a GPMT., et al., 02-CV-2219 (LBS)(SDNY), ("2219") -- self admitted 15 USC 77b(a)(11), (Id.), statutory underwriters of GPMT's securities attempting to extort GPMT of +$18 million in free-trading securities -- were not statutory underwriters in violation of SEC Release 33-7190, SEC IR 5121, 15 USC 77e(a, c), Id. 77x, Id. 78ff, and 18 USC 2, 371, 891-94, and 1961-62.

(i) Because petitioner refused to issue the fraudulent and illegal opinions to the 2219 plaintiffs District Judge Sand and U.S. attorney David Kelly had petitioner fraudulently indicted. (Appx. A @ 22-26: Emails of former AUSA Southwell to SEC counsel Norris explaining that petitioner was "improperly arrested" on September 1, 2004 in Atlanta, GA but was "released the same day" and the USAO was therefore going to seek a criminal indictment for criminal contempt because petitioner could not be civilly arrested in Atlanta, GA outside the Southern District of New York).

2. Petitioner proceeded to trial as pro se counsel after retained counsel Edward T.M. Garland, Esq., et al. refused to file any motions on behalf of petitioner to move to dismiss the indictment pursuant to Fed. R. Crim. Proc. 12(b)(3)(B) for failure to charge an "offense." Garland did nothing more than pressure petitioner to plead guilty stating; "You can't beat Judge Sand and his people up there in New York ... we worked you out a good plea deal ... but you will have to give up your law license." (emphasis added).

3. Petitioner rejected Garland's "good plea deal" and entered his appearance as pro se counsel and proceeded to trial in November 2007. On or about November 20, 2007 the jury hung on counts II, and III of the indictment and were pressured into returning a verdict by District Judge Robert W. Sweet.

4. The jury returned a special verdict form answering the questions as yes, in regard to some elements of 18 USC 401(3) , however, the jury did not find on the special verdict form that the orders petitioner was alleged to have violated were "lawful" orders; nor did the jury find petitioner "guilty" on the special verdict form.

5. On November 26, 2007 District Judge Sweet on application by the USAO-SDNY remanded petitioner into custody stating: "Ware was found guilty at trial and because petitioner faces a life sentence Ware is not eligible for bail and is to be immediately remanded to the custody of the U.S. marshals pending sentencing."

-----------------------------------------------------------------------------------------------------------

6. On January 26, 2009 District Judge Robert W. Sweet -- after offering petitioner the opportunity to plead "mental insanity" conveyed via Lisa Scolari, Esq. -- District Judge Sweet sentenced petitioner to 36 months to run concurrent with the sentence of District Judge William H. Pauley, III's sentence in U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115"), of 97 months, and 60 months to run consecutive to the 97 month sentence of District Judge Pauley.

7. Petitioner is currently incarcerated at the Atlanta Prison Camp, and has been incarcerated since remand on November 26, 2007.

B. Second Circuit Proceedings: U.S. v. Ware, 09-0851-Cr, Ware-I; 11-2151-Cr, Ware-II.

1. Petitioner timely filed a notice of appeal of his sentence and conviction, case # 09-0851-Cr (2d Cir.), and raised the issues: (1) the 2219 plaintiffs were statutory underwriters; (2) the orders of the 2219 court that petitioner was alleged to have violated were not "lawful" orders within the scope of 18 USC 401(3); and (3) that the indictment in 1224 failed to charge an "offense" against the laws of the United States.

2. The USAO-SDNY (Preet Bharara and Katherine Polk-Failla) with the tacit approval of the OSG conceded the above issues on appeal in 09-0851-Cr; thus terminating an Article III "live case or controversy" on August 12, 2010 in 1224. However, the 09-0851-Cr panel (Circuit Judges Hall, Katzmann, and District Judge Barbara S. Jones (SDNY)) disregarded the concessions of the United States, and instead entered the "Summary Order" on November 4, 2010 reported at U.S. v. Ware, 2010 U.S. App. LX 22956 (2d Cir. Nov. 4, 2010) affirming petitioner's conviction and sentence.

3. Petitioner filed a Rule 33 motion for a new trial (Dkt. #107) on November 24, 2010 based on the fact that after trial in 1224 terminated, the initiating plaintiff in 2219, Alpha Capital, AG, did on December 20, 2007 move the 2219 district court for an order which was granted (Dkt. #90: Appx. A @ 2) dismissing Alpha Capital without prejudice from 2219 pursuant to Federal R. Civ. Proc. 41(a)(2).

4. Petitioner on April 1, 2011 and April 5, 2011 (Dkt. #120, 123) filed supplemental briefs and memorandums challenging the 1224 court's subject matter jurisdiction and for the indictment in 1224 to be dismissed. The 1224 district court denied petitioner's reconsideration of its denial of his Rule 33 motion on March 18, 2011 (Dkt. #118:1224); and petitioner filed a timely notice of appeal of the denial of the reconsideration and denial of the Rule 33 motion for a new trial on April 14, 2011 (Dkt. #124:1224), U.S. v. Ware, 11-2151-Cr, Ware-II.

5. On May 18, 2011 (Dkt. #125) in response to petitioner's challenge to the 1224 court's subject matter jurisdiction (Dkt. ## 120, 123), which the respondent did not oppose, the 1224 district court entered an order agreeing with petitioner's contentions and arguments that there was an "absence of a live case or controversy" in 1224 (Appx. A @ 3-4) and the proceedings were moot.

6. On June 13, 2011 in Ware-II petitioner filed a dispositive motion to dismiss the indictment in 1224.

7. On June 26, 2011 petitioner filed an emergency motion to dismiss the indictment in 1224 based on the May 18, 2011 Appx. A @ 3-4) final order -- which the respondent did not file a notice of appeal -- finding the "absence of a live case or controversy" in 1224 terminating 1224 as moot.

8. As a result of the Executive Branch making a deliberately unreviewable nonjusticiable Article II, sec. 3 discretionary prosecutorial decision abandoning its appeal rights in the May 18, 2011 final order (Dkt. #125: Appx. Id.) the issue is res judicata and collateral estoppel on the United States, (the real party in interest), the Second Circuit, and the 1224 district court.

9. In response to petitioner's emergency motion to dismiss filed in 11-2151-Cr seeking the dismissal of the indictment in 1224, the Second Circuit entered an "advisory" order dated August 16, 2011 (Appx. A @ 2) purportedly to threaten petitioner that unless petitioner filed "a motion seeking leave to appeal" the moot issues in 11-2151-Cr, else the appeal of 1224 -- which is moot -- will be dismissed.

10. Petitioner responded to the "advisory [August 16, 2011] order" filed in 11-2151-Cr on August 25, 2011 via certified mail #7003 1680 0005 1205 3924 (Appx. B) addressed to the office of the circuit clerk, and the Donald Verilli, Esq., Solicitor General, was served with a copy of the pleading in opposition to the "advisory" order of August 16, 2011.

---------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: Part-2: S. Court -- Why the Writ Should Issue
DATE: 02/21/2012 12:33:02 PM

V. REASONS WHY THE WRITS SHOULD ISSUE:

A.

1.   The Court should issue the writs because both 1224 and 1115 are moot according to the Court's indisputable precedent: Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1995) (J. Scalia) (A federal court must "first", sua sponte, determine its jurisdiction over the subject matter before proceeding to the merits of the matter -- a federal court is without authority to issue "advisory opinions and orders" and the same are moot and have been disapproved "from the beginning by this Court."); (2) Article II, sec. 3 of the constitution (the USA made an unreviewable and nonjusticiale "political decision" to not cross-appeal in 1115: abandoned its appeal rights in 1115 on November 7, 2008: Appx. A @14); and in 1224 on May 18, 2011: Appx. A @ 3-4); and (3) Article III of the Constitution (a "live case or controversy" does not exist in 1224 as of May 18, 2011 (Appx. Id.) and in 1115 as of November 7, 2008, Appx. Id.) for which the respondents do not deny.

(i).   The proceedings in 1224 became moot as a matter of law on May 18, 2011 upon the entry of the District Court's order (Dkt. #125: Appx. @ 3-4) in Ware-II stating: "Due to the absence of a live case or controversy ... no further action will be taken [in this case]." (emphasis added).

  Therefore, as of May 18, 2011 the proceedings in 1224 have been moot, and accordingly the Second Circuit lacks Art. III of the Constitution subject matter jurisdiction to proceed in U.S. v. Ware, 11-2151-Cr., Ware-II. Steel Co. Id. at 94; and (2) 28 USC 46 (a-d) (2011) (Appx. D @ 6) prohibits a federal circuit court of appeals from hearing or determining any cause lacking (1) a live case or controversy and (2) a statutory quorum.

  Thus, as of May 18, 2011 the United States Court of Appeals for the Second Circuit, lacking a "live case or controversy" in 1224 -- 1224 is moot -- lacked lawful statutory authority to hear or determine any cause in 11-2151-Cr. (Id.), requiring the Court to remand with instructions to dismiss the indictment in 1224 with prejudice and mark the case closed because the proceedings became "moot" while on appeal. Arizonans for Off. English v. Arizona, 520 U.S. 43, 67 (1997) (J. Ginsburg) (unanimous opinion) (A live case or controversy must be "extant" at each level of appellate review).

  Accordingly, any order or opinion entered by the Court in Ware-II after May 18, 2011 was an illegal "advisory opinion" begetting an ultra vires "advisory judgment", Steel Co., Id. at 101.

(ii).   However, the Second Circuit has refused to issue the palpable order of dismissal in both 1224 and 1115, and rather, instead issued the execrable risible "advisory" ultra vires August 16, 2011 order (Appx. A @ 1) demanding that the petitioner "file a motion seeking leave of this Court" to appeal a moot case in 1224. (Id.) cf. Appx. B @ 0-8).

-----------------------------------------------------------------------------------------------------

The motives of the Court are called into questions especially where the USA -- the real party in interest -- has not opposed dismissal of the indictments in either 1224 or 1115; and binding authority of this Court makes absolutely clear that the Second Circuit must "first" determine its subject matter jurisdiction over, 07-5670(XAP), 11-2151-Cr and 07-5670-Cr (XAP) before proceeding to hear or determine any cause in on the merits, Steel Co., supra., which is exactly what a "motion for leave" requires the Court to "hear and determine" in violation of federal law -- 28 USC 46. (Appx. D @ 6).

2. Accordingly, the writs should issue on the respondents, (Eric H. Holder, Jr.) the statutory delegee (28 USC 516; 28 CFR 0.20(b)) of the "real party in interest" in 1224, Circuit Judge Hall who sat on the 09-0851-Cr panel and has also sat on every panel in the Second Circuit (a statistical impossibility) in which LH Financial Services, Kenneth Zitter, Esq., Ari Rabinowitz, have appeared before the Second Circuit, to justify in writing on why the United States continues to prosecute 1224 and 1115 why the Second Circuit will not enter the order of dismissal in 1225 and 1115 given that each case is moot: 1224 lacking a "live case or controversy" as of May 18, 2011, and 1115 lacking a "live case or controversy" since November 7, 2008.

Had the United States desired to continue to prosecute 1115 or 1224, it was required file a timely notice of appeal pursuant to 18 USC 3742(b) in the District Court perfecting its appeal rights in regard in the October 26, 2007 (Appx. A @ 5-8) and the May 18, 2011 (Id. @ 3-4) final order.

However, the USAO-SDNY on behalf of the USA abandoned all appeal rights by declining to perfect a timely notice of appeal in 1224 in regard to the May 18, 2011 final order, which is now res judicata and collateral estoppel on the USA, the "real party in interest" in 1224. Federated Department Stores, Inc. v. Moitie, 352 U.S. 394, 400-01 (1981) (res judicata is binding on all courts, parties and their privies, there are not exceptions); and on November 7, 2008 (Id. @ 1) abandoned its appeal in 1115.

3. Accordingly, (1) the Solicitor General's, (the "OSG's") client, the USA, is barred by res judicata and collateral estoppel from continuing to prosecute a moot case; and (2) the OSG is required -- as officers of the court -- to set the record straight before this Court in regard to the USA's abandonment of appeal of the May 18, 2011 order terminating the Second Circuit's subject matter jurisdiction over 11-2151-Cr and authority to hear and determine 11-2151-Cr pursuant to 28 USC 46; and (3) the abandonment by the USA via the OSG on November 7, 2008 (Appx. A @ 14) abandoning the USA's interests in 1115 -- the insufficiency of the USA's trial evidence issue on material factual issues necessary to convict petitioner on counts I, and II of the indictment in 1115 -- conceded by the USA pursuant to Article II, sec. 3, which is unreviewable and nonjusticiable by this Court. U. S. v. Nixon, 418 U.S. 683, 694 (1974) (J. Berger) (unanimous opinion) (Executive Branch's discretionary prosecutorial decision making is not subject to judicial review according to separation of powers principles.), Baker v. Carr, 369 U.S. 186, 217 (1962) (same). Cf. Appx. B @ page 2(1)(a-b).

--------------------------------------------------------------------------------------------------------

4. The writs should issue because the USA, the 'real party in interest' has not opposed, via its statutory delegee (28 USC

516) the United States Department of Justice, in writing, the dismissal of its own indictment in neither 1224 nor 1115

despite numerous attempts by the petitioner to have the issue addressed by the District Courts or the Second Circuit. (Appx.

E, F, and G.).

(i) Furthermore, the USA's 1224 indictment failed to charge an "offense against the laws of the United States" in counts

I-III: It is not an "offense" to not issue fraudulent 17 CFR 230.144(k) (2002), (Appx. D @ 3), legal opinions to 15 USC

77b(a)(11), (Id. @ 1-2), statutory underwriters (which the plaintiffs in Alpha Capital, AG. et al. v. IVG Corp., et al.,

02-CV-2219 (LBS)(SDNY)), ("2219") judicially admitted in their complaint (Dkt. #1 paragraphs 10-20) filed in 2219 on March

20, 2002 of being statutory underwriters. (Appx. A @ pages 15-21).

(ii) Because the 1224 indictment failed to charge an "offense" against the laws of the United States, the USAO lacked

lawful statutory authority (28 USC 547(1): Appx. D @ 8) to prosecute petitioner in 1224; (2) the 1224 district court lacked

statutory subject matter jurisdiction (18 USC 3231): Id. @ 5) to adjudicate 1224; and (3) the U.S. v. Ware, 09-0851-Cr

panel (Ware-I) of the Second Circuit lacked Article III of the Constitution "live case or controversy" pursuant to 28 USC 46

(a-d): Id. @ 6) to hear or determine Ware-I: The case was moot. Steel Co., supra; Arizonans, supra.

5. The USA has had numerous opportunities to defend its indictments and in all cases has declined to defend its

indictments after October 7, 2010 once the petitioner filed a motion for new trial (Rule 33) in 1115 detailing the fraud on the

court committed by government lawyers officers of the court in 1115.*

> *(Appx. A @ pages 22-26: emails of former AUSA Alexander H. Southwell and SEC
> counsel Jeffrey B. Norris which were discovered by the petitioner after trial in 1115
> where the USAO-SDNY provided the emails to petitioner as part of SEC counsel
> Norris' Jencks Acts material in 1224: Norris testified on behalf of the USAO in 1224.
> AUSA Southwell stated in open court first on May 16, 2006 (Dkt. #17:1115) and
> again in open court on January 5, 2007 (Dkt. #44) the email at Appx. A @
> 22-26 "do not exist", which was a lie and perjury on behalf of the USA in 1115).

Once petitioner obtained access to the suppressed Brady and Giglio evidence which the USAO's AUSA Southwell had lied

about stating the emails "do not exist", the USAO and District Court have gone silent: The USAO has not filed any opposition

to petitioner's Rule 33 motion for a new trial; nor filed any opposition to petitioner's Rule 6(e) motion for the 1115

district court to order the disclosure of the grand jury minutes; nor has the USAO opposed the dismissal of the indictment in

1115, which is pending since October 7, 2010 -- almost one (1) year -- without any actions by the district court or USAO to

defend its indictment.

Why? Because, the USAO's agents -- in collusion with agents of the Securities and Exchange Commission (disgraced

former SEC lawyer Spencer Barasch, Esq. who has been referred for disbarment by SEC Inspector General H. David Kotz,
Esq.

------------------------------------------------------------------------------------------------

for unethical conduct in regard to the Allan Stanford Ponzi scam investigation, and SEC counsel Jeffrey B. Norris who

billionaire Marc Cuban accused of unethical conduct in regard to an SEC investigation -- obstructed the orderly

administration of justice and conspired to do the same.

And also committed a fraud on the 1115 district court by inducing government trial witnesses Jeremy Jones, Carlton

Epps, Myron Williams, Rick Sadler, and Charles H. Jackson, (the "Government Witnesses") to commit perjury and obstruct

justice by knowingly and deliberately fabricating false testimony under direct examination by AUSA Southwell at trial in 1115

to fabricate a nonexistent conspiracy to enable the USAO to introduce manufactured hearsay statements -- purportedly of

the petitioner -- to be introduced pursuant to the exception to the hearsay rule (FRE 801(d)(2)(E)) to convict the petitioner

for conspiracy -- for not issuing the fraudulent Rule 144 legal opinions to the statutory underwriters in 2219 -- in

exchange for fabricated nonprosecute agreements in 1115.

6. The writs should issue to have Circuit Judge Peter W. Hall explain how he has been able to perform a statistical

impossibility and have himself appointed to each and every panel in which LH Financial, Kenneth A. Zitter, or Ari Rabinowitz

have appeared in the Second Circuit, cf. Appx. E.

7. The writ should issue to have Eric H. Holder, Jr. (the Attorney General) explain why the federal judges, Ari Rabinowitz,
Kenneth A. Zitter, (FUGITIVE) Thomas Badian, (CONVICTED FELON) Edward Grushko, District Judge Leonard B. Sand
(SDNY),

District Judge William H. Pauley, III, (Appx. G), Spencer Barasch, District Judge Robert W. Sweet, Circuit Judges Peter W.

Hall, Robert A. Katzmann, District Judge Barbara S. Jones (SDNY), David Trager, Stephen Underhill, Richard Wesley, Chester

Straub, and others have not been arrested for public corruption and racketeering. Appx. F.

8. The USA's agents and the federal judges have systematically engaged in criminal and unethical conduct in collusion with

federal court judges in the courts of the Second Judicial Circuit to cover up the continuing criminal enterprise, ("CCE") run

from within the USAO in conspiring with the federal judges and private lawyers to extort small publicly traded companies of

their free-trading securities, cf. Appx. E, where Circuit Judges Peter W. Hall, Chester W. Straub, Richard Wesley, Robert A.

Katzmann, Dennis G. Jacobs, Amalya L. Kearse, Robert D. Sack, Reena Raggi, Rosemary S. Pooler, B.D. Parker, and the

circuit clerk's office have all violated federal law by rigging and fixing matters appearing before the Court in aiding and

abetting the CCE in violation of 18 USC 2, 4, 201, 225, 241, 242, 371, 891-94, 1201-02, 1343, 1346, 1505, 1510, 1621-23,

1956-57, and 1961-62.

--------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: Part-3: Policy Reasons Why the Writs Should Issue
DATE: 02/21/2012 12:33:36 PM

Vi. POLICY REASONS WHY THE WRITS SHOULD ISSUE.

A.

1.   The writs should issue for the salutary policy reasons that the Constitution of the United States in Article III limits the

judicial power of the United States to live cases and controversies, which without a federal court lacks authority and

jurisdiction to adjudicate matters presented to the court.

   In this Court's long standing jurisprudence this principle -- the constitutional limitations of the judicial power -- this

Court has not waivered. Justice Scalia exquisitely writing for the majority in Steel Co., 523 U.S. at 101 emphatically

brilliantly explained:

   "Hypothetical jurisdiction produces nothing more than a hypothetical judgment -- which
   comes to the same thing as an advisory opinion, disapproved by this Court from the
   beginning." (quoting Muskrat v. United States, 219 U.S. 346, 362 (1911)).

   Justice Scalia further explained in Steel Co., Id. at 94 in regard to the rejected Ninth Circuit's "doctrine of hypothetical

jurisdiction", adopted by the court in U.S. v. Troescher, 99 F.3d 933, 944 n.1 (9th Cir. 1996):

   "We decline to endorse such an approval because it carries the court beyond the
   bounds of authorized judicial action and offends fundamental principles of
   separations of powers ... [w]ithout jurisdiction the court cannot proceed at all
   in any cause. Jurisdiction is the power [of a federal court] to declare law, and
   when it ceases to exist, the only function remaining to the court is that of announcing
   the fact and dismissing the cause." (emphasis added).

   Justice Scalia reasoned that the judicial power of a federal court is not unlimited and is circumscribed by the tenets of

the foundational principles of the founding of the United States that in a democracy "separation of powers" ensures liberty

and the judiciary has its bounds fixed by Article III which cannot be exceeded; nor when the causes presented to the court do

not measure up to the constitutional requirements of a case of controversy, "the only function remaining to [] [a federal]

court is that of ... dismissing the cause."

2.   In the 78th Federalist Alexander Hamilton writing to the citizenry in regard to the new Constitution's judicial powers

and authorities explained the philosophical concepts of the judicial power of the United States noting:

   "It equally proves that though individual oppression may now and then proceed from
   the courts of justice, [however] the general liberty of the people can never be endangered
   from that quarter [the judiciary]. I mean [not endangered] so long as the judiciary
   [stays in its place] and remains truly distinct from ... the executive [branch].
      For I agree [wholeheartedly] that 'there is no liberty [of the people] if the power of
   judging be not separated from the ... executive powers' ... as liberty can have nothing
   to fear from the judiciary alone, but would have everything to fear from its union with
   ... the [executive] department[] [.]" (quoting Montesquieu, Spirit of Laws, Vol. I, page 186).

   Hamilton was clearly concerned that if the judiciary and the executive departments colluded -- as they did in the 2219,

-----------------------------------------------------------------------------------------------------

1224, 1115, and SEC's Las Vegas case -- individual liberty was at risk. Cf. Appx. A @ 22-26 for the collusion of the judiciary and the executive branch.

By illegally colluding in 2219, 1224, 1115, and the SEC's case, in violation of the separation of powers and the Due Process Clause, the DOJ , SEC, and the District Courts combined and blended their separate and distinct constitutional functions vitiating the necessary and required constitutional 'checks and balances' principles explained by Hamilton essential to "the general liberty of the people."

Applying Hamilton's first principles of constitutional judicial powers and Justice Scalia's brilliant analysis in Steel Co. to the indisputable facts in 1224 and 1115, the United States, the "real party in interest" in every federal criminal proceeding, rather than the judiciary, elected and made a deliberate Article II, sec. 3 Executive Branch prosecutorial decision -- which is unreviewable and nonjusticiable -- Baker v. Carr, supra; Nixon, supra; to abandoned the United States' interests in 1224 on August 12, 2010 and deciding to not appeal the 1224 District Court's May 18, 2011 final order (Appx. A @ 3-4) and in 1115 on November 7, 2008 (Appx. A @ 14) by not appealing the 1115 district court's final order (Appx. A @ 5-8), accordingly both 1224 and 1115 are moot as a matter of Article III and Federated, 352 U.S. at 400-01; Nixon; supra; and Baker, supra.

In both instances (1115 and 1224) the United States' statutory delegee, pursuant to federal law (28 USC 516: Appx. D @ 7), the Department of Justice via the United States of Attorney for the Southern District of New York, (the "USAO") refused to file an opening brief on behalf of the United States in appeal of the District Court's adverse trial rulings in 1115, (Appx. A @ 14), rendering the same res judicata and collateral on the United States and its privies mooting 1224 and 1115. Federated, 352 U.S. at 400-01. (Res judicata is binding on all courts and parties and their privies -- there are no exceptions).

B.

1. Justice Ginsburg writing writing for a unanimous Court in Ruhrgas, AG v. Marathon Oil Co., 526 U.S. 574 (1999) which reversed a Fifth Circuit en banc decision in reaffirming Steel Co. brilliantly explained:

> "The requirement that [subject matter] jurisdiction be established as a threshold
> matter ... is inflexible and without exception", Steel Co., 523 U.S. at 94-95
> (quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). Id. at 577.

The Court in holding noted, Id. at 578: "We hold that ... [c]ustomarily a federal court first resolves doubts about its jurisdiction over the subject matter" before proceeding to the merits of the proceeding.

Thus, it is indisputable according to the jurisprudence of this Court that lacking subject matter jurisdiction in 1224 and 1115, the district courts lacked statutory authority (18 USC 3231); the United States attorney lacks Article III standing and 28 USC 547(1) authority to continue to prosecute the proceedings in 1224 and 1115; and continues to do so in collusion with the

-----------------------------------------------------------------------------------------------------------

judiciary who perpetrated and operated a CCE in the federal courts of the Second Judicial Circuit operated from the USAO by
DOJ officials and its agents.

The CCE was operated as a racketeering criminal enterprise using the federal courts of the United States by Article III
judicial officers and Executive Branch officials of the SEC and DOJ while acting under the color of law in violation of the
separation of powers and the Due Process Clause of the Fifth Amendment by the kidnapping and incarceration of the
petitioner for refusing to issue fraudulent legal opinions to coconspirators (the 2219 plaintiffs) for the extortion of GPMT of
+$18 million of free-trading stock to be sold illegally on the "open market" without a registration statement being in effect in
violation of 15 USC 77e(a, c), and 77x. (quoting the testimony of government witness Ari Rabinowitz at trial in 1224).

The writs should issue to reaffirm the decisions of this Court and ensure the first principles of the circumscriptions of
judicial power and authority; and for the Court to announce an unwavering principle that the federal courts of the United
States have a zero tolerance for fraud regardless of the actors; and to expose the criminal judicial and prosecutorial
corruption in operation in the federal courts of the United States in the Second Judicial Circuit.

Respectfully Presented by Counsel:

Ulysses Thomas Ware, pro se
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
September 2, 2011

------------------------------------------------------------------------------------------------------------

FROM: 56218019
TO:
SUBJECT: Writ -Appx. Table of Contents Description
DATE: 09/01/2011 05:11:06 PM

Description of Documents Appearing in each Appendix

Pages                    Description

Appendix A:

1       Second Cir. Aug. 16, 2011 "advisory" order entered in U.S. v. Ware, 11-2151-Cr.

2       Alpha Capital, AG et al v. IVG Corp., a/k/a GPMT, 02-CV-2219 (LBS)(SDNY), ("2219") Rule 41(a)(2) dismissal.

3-4     U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224") May 18, 2011 order finding the "absence of a live case or controversy.

5-13    U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115") Oct. 26, 2007 sentencing hearing transcripts: S. Tr. 73-81.

14      United States Nov. 7, 2008 mandate to Second Cir. in U.S. v. Ware, 07-5222-Cr, 07-5670-Cr (XAP) abandoning 1115.

15-21   2219 complaint excepts paragraphs 1-20.

22-26   Official emails between AUSA Southwell and SEC counsel Jeffrey B. Norris.

27-36   Excerpts from 1224 indictment.

Appendix B:

Pages

1-20    Petitioner's Aug. 22, 2011 response to Aug. 16, 2011 advisory order filed in U.S. v. Ware, 11-2151-Cr (2d Cir.).

Appendix C: Omitted.

Appendix D:

Pages

1       15 USC 77b(a)(11)

2-3     17 CFR 230.144(k) (2002)

4       18 USC 401(3)

5       18 USC 3231

6       28 USC 46 (a-d)

7       28 USC 516

8       28 USC 547(1)

---------------------------------------------------------------------------------------------------

9    Fed. R. Civ. Proc. 41(a)(2)

Appendix E:

Pages

1-6    June 22, 2011 letter to Senate Judiciary Committee requesting petitioning the DOJ to appoint a special prosecutor to investigate Circuit Judge Peter W. Hall's suspicious activities in matters before the Court involving LH Financial Services, Ari Rabinowitz, and Kenneth A. Zitter, Esq.

Appendix F:

Pages

1-11    Petitioner's supplement 1.1 filed on Aug. 18, 2011 to the notice of appeals file filed in 2219 which the District Clerk's office refuses to file or docket according to a certified copy of the docket report dated 8-29-11.

Appendix G:

Pages

1-4    Petitioner's April 26, 2011 6th request for a ruling in regard to the Rule 33 and 12(b)(3)(B) motion filed in 1115 pending since Oct. 7, 2010 which have not been opposed by the United States.

Supplement Appendix:

Excerpts of Aug. 29, 2011 certified copy of docket report in 2219.   District clerk's office refuses to file or docket notice of appeal of Aug. 1, 2011 order of district court (Dkt. #103).   Petitioner's notice of appeal was filed on Aug. 10, 2011 with district clerk's office.